Michael Shipley (SBN 139582)
KIRKLAND & ELLIS LLP
555 South Flower Street, 37th Floor
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*Pro Hac Vice*)
Kevin M. Neylan, Jr. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No. 5:24-cv-03567-BLF <br><br> **PLAINTIFF TEVA PHARMACEUTICALS USA, INC.'S OPPOSITION TO DEFENDANTS CORCEPT THERAPEUTICS, INC.'S, AND OPTIME CARE INC.'S, MOTIONS TO STAY DISCOVERY** <br><br> Date: December 5, 2024 <br> Time: 9:00 a.m. <br> Ctrm: 3 – 5th Floor <br> Judge: Honorable Beth Labson Freeman |

# TABLE OF CONTENTS

Introduction ................................................................................................................................... 1

Legal Standard .............................................................................................................................. 2

Argument ...................................................................................................................................... 3

    I.    Defendants' Motions to Dismiss Do Not Potentially Dispose of the Entire Case. ................... 3

    II.    Defendants' Motions to Dismiss Raise Factual Issues that Require Discovery. ...................... 9

    III.    No Burden on Defendants Outweighs Teva's Right to Discovery. ........................................ 10

Conclusion .................................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*24/7 Customer, Inc. v. 24-7 Intouch*,
    2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) ................................................................. 4

*Arellano v. Calderon*,
    2023 WL 4568772 (S.D. Cal. July 14, 2023) .................................................................. 3

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
    2009 WL 10674453 (C.D. Cal. May 15, 2009) ........................................................... 5, 6

*Barrett v. Apple Inc.*,
    2020 WL 13815568 (N.D. Cal. Oct. 22, 2020) ............................................................... 3

*Bourns, Inc. v. Raychem Corp.*,
    331 F.3d 704 (9th Cir. 2003) ........................................................................................... 5

*In re Canadian Imp. Antitrust Litig.*,
    470 F.3d 785 (8th Cir. 2006) ........................................................................................... 5

*Chemi SpA v. GlaxoSmithKline*,
    356 F. Supp. 2d 495 (E.D. Pa. 2005) .............................................................................. 6

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    144 S. Ct. 2440 (2024) .................................................................................................... 4

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
    773 F.2d 1506 (9th Cir. 1985) ........................................................................................ 7

*Eminence Cap., LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ........................................................................................ 9

*Ethypharm S.A. France v. Abbott Lab'ys*,
    707 F.3d 223 (3d Cir. 2013) ........................................................................................ 5, 6

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) ............................................................................ 8

*Freeman v. Lasky, Haas & Cohler*,
    410 F.3d 1180 (9th Cir. 2005) ........................................................................................ 7

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) .................................................................................. 2, 4

*In re Lantus Direct Purchaser Antitrust Litig.*,
    950 F.3d 1 (1st Cir. 2020) ............................................................................................... 8

Case 5:24-cv-03567-BLF   Document 38   Filed 09/09/24   Page 4 of 18

*In re Lithium Ion Batteries Antitrust Litig.*,
    2013 WL 2237887 (N.D. Cal. May 21, 2013) ..................................................................10

*Oliver v. SD-3C LLC*,
    751 F.3d 1081 (9th Cir. 2014) ........................................................................................6

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
    2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) ............................................................3, 10

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    220 F.R.D. 349 (N.D. Cal. 2003) ..............................................................................2, 3, 9

*Pedro v. Millennium Prods., Inc.*,
    2016 WL 3029681 (N.D. Cal. May 27, 2016) ................................................................10

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) ..................................................................3

*Roule v. Petraeus*,
    2012 WL 2367873 (N.D. Cal. June 21, 2012) ...............................................................10

*RSA Media, Inc. v. AK Media Grp., Inc.*,
    260 F.3d 10 (1st Cir. 2001) .............................................................................................5

*Samsung Elecs. Co. v. Panasonic Corp.*,
    747 F.3d 1199 (9th Cir. 2014) ...............................................................................5, 6, 7

*Singh v. Google, Inc.*,
    2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ..........................................................2, 9, 10

*Solinger v. A&M Recs., Inc.*,
    586 F.2d 1304 (9th Cir. 1978) .........................................................................................7

*United States, ex rel. Solis v. Millennium Pharms., Inc.*,
    2015 WL 1469166 (E.D. Cal. Mar. 30, 2015) .................................................................9

*SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*,
    2024 WL 1898439 (N.D. Cal. Apr. 29, 2024) ........................................................ passim

*Tavantzis v. Am. Airlines, Inc.*,
    2024 WL 812012 (N.D. Cal. Feb. 23, 2024) ................................................................3, 9

*Tele Atlas N.V. v. Navteq Corp.*,
    397 F. Supp. 2d 1184 (N.D. Cal. 2005) ...........................................................................8

*Tevra Brands LLC v. Bayer HealthCare LLC*,
    2024 WL 1909156 (N.D. Cal. May 1, 2024) ...................................................................8

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*,
  296 F. Supp. 3d 1142 (N.D. Cal. 2017) ................................................................................7

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
  401 U.S. 321 (1971) ..............................................................................................................4

**Other Authorities**

N.D. Cal. Standing Order re Civil Cases § IV.D ............................................................................4

Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") files this combined Opposition to Defendants Corcept Therapeutics, Inc.'s ("Corcept") and Optime Care Inc.'s ("Optime") Motions to Stay Discovery Pending Resolution of their Motions to Dismiss. (Dkts. 35 and 37.)

## INTRODUCTION

On June 13, 2024, Teva filed its Complaint (Dkt. No. 1) against Corcept and Optime, alleging that Defendants have engaged in an ongoing scheme to unreasonably restrain trade in, and monopolize, the market for Korlym (mifepristone), a cortisol receptor blocker indicated to treat endogenous Cushing's syndrome, a rare and debilitating disease that can be fatal if left untreated. Corcept launched the brand version of Korlym in 2012, which it currently sells for hundreds of thousands of dollars per patient, per year, at profit margins close to 99%. (¶¶69–72.)[1] Optime has been the only pharmacy dispensing Korlym since 2017. (¶135–36.) Teva launched the first (and still only) generic version of Korlym in January 2024, and has maintained a material price discount to Corcept's identical brand product from day one. (¶¶123–30.) But instead of quickly capturing a significant majority of the market—as nearly always happens, by Congressional and state-law design, when a first generic pharmaceutical product launches—Teva has captured virtually zero market share, a fact that Corcept has gleefully boasted about on earnings calls ever since. (¶¶123–32.) That result would be impossible to explain in a properly functioning, competitive pharmaceutical market. The true explanation is now clear: as alleged in Teva's detailed Complaint, Corcept and Optime have thwarted generic competition by entering into a long-term, blanket exclusive dealing agreement that expressly forbids Optime from distributing any rival versions of Korlym, including Teva's generic. (¶¶123–64.) This exclusive-dealing agreement is unheard-of in the pharmaceutical industry and has had a near-total foreclosure effect in the downstream Korlym market, allowing Corcept to maintain its monopoly with no meaningful erosion, and forcing patients and health plans to continue paying astronomical prices notwithstanding the availability of Teva's lower-priced, therapeutically equivalent generic. (*Id.*)

---

[1] Unless otherwise noted, "¶" refers to Teva's complaint, all internal citations and quotations are omitted, and all emphases are added.

Compounding the harm from Defendants' exclusive dealing agreement, Corcept successfully delayed Teva's generic launch by abusing the patent system through improper Orange Book listings and sham patent infringement litigation. (¶¶73–122.) And substantial evidence suggests that Corcept has further undermined competition by paying illicit bribes and kickbacks to prescribers to continue steering patients toward Corcept's more expensive brand product. (¶¶165–85.)

This multipronged scheme violates the Sherman Act, California's Cartwright Act and Unfair Competition Law, and various state antitrust and consumer protection laws, among others. (¶¶ 222–73.) Teva's ongoing harms warrant significant damages and injunctive relief.

Seeking to extend the benefits of their illegal scheme, Defendants now seek a stay of discovery until the Court rules on their motions to dismiss. But they come nowhere close to fulfilling "the heavy burden of making a 'strong showing'" why discovery should be stayed. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). In fact, the Court's schedule contemplates that discovery should begin promptly. The parties are required to meet and confer pursuant to Rule 26(f) by October 10, must file a joint case management statement by October 24, and the Initial Case Management Conference is set for October 31. *See* Dkt. 14. Teva is not required to respond to Defendants' motions to dismiss until October 18, 2024—eight days after the parties' Rule 26(f) conference—and Defendants' replies are not due until November 12, 2024, more than a month after the Rule 26(f) conference. Dkt. 29. A discovery stay would be unwarranted and prejudicial.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*, 2024 WL 1898439, at *1 (N.D. Cal. Apr. 29, 2024). To the contrary, a blanket stay of discovery "is directly at odds with the need for expeditious resolution of litigation." *Gray*, 133 F.R.D. at 40. Courts in the Northern District apply a two-pronged test to determine whether discovery should be stayed pending resolution of a dispositive motion. *See, e.g., Singh v. Google, Inc.*, 2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016). First, "a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 351–52 (N.D. Cal. 2003). Second, "the court

must determine whether the pending dispositive motion can be decided absent additional discovery." *Id.* at 352. "[I]f either prong of this test is not established, discovery proceeds." *Id.*

**ARGUMENT**

**I.   DEFENDANTS' MOTIONS TO DISMISS DO NOT POTENTIALLY DISPOSE OF THE ENTIRE CASE.**

Defendants both begin with a faulty premise. Each suggests that the Court need not consider whether they will "ultimately prevail" on their motions to dismiss, so long as the motions to dismiss are "*potentially* dispositive." (Optime Br. at 3; Corcept Br. at 4 (similar).) They cite *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020), which stayed discovery because the movant raised "strong arguments, which could prove difficult for Plaintiffs to overcome, even considering that leave to amend is freely given." But a "'preliminary peek' still requires the Court to consider the merits of the motion to dismiss." *SVB Fin. Grp.*, 2024 WL 1898439, at *2; *Tavantzis v. Am. Airlines, Inc.*, 2024 WL 812012, at *2 (N.D. Cal. Feb. 23, 2024). ("To the extent that American Airlines seems to imply that an assessment of whether a motion is 'potentially dispositive' does not require looking into the merits of the motion … this implication is incorrect."). Defendants must make a "strong showing" that "convince[s]" the Court that Teva will be "unable to state a claim for relief." *Id.* at *1. "This is an onerous standard to meet—'[g]enerally there must be no question in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort.'" *Arellano v. Calderon*, 2023 WL 4568772, at *2 (S.D. Cal. July 14, 2023).

Defendants cannot make that showing. For starters, Teva's opposition to the motions to dismiss is not due until October 18, 2024—more than a month from the date of this filing. Without the benefit of Teva's opposition, the only way Defendants could satisfy their "heavy burden" to stay discovery would be to show that Teva's Complaint is "utterly frivolous, or filed merely in order to conduct a 'fishing expedition' or for settlement value." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018); *Barrett v. Apple Inc.*, 2020 WL 13815568, at *2 (N.D. Cal. Oct. 22, 2020) ("In the absence of a clear showing that dismissal is likely, the Court declines to make a premature determination on the merits of the motion to dismiss before Plaintiff has even filed its response. Thus, the mere possibility that the pending motion is dispositive of the suit

1  only 'superficially satisfie[s]' the first factor."). Defendants do not even argue (nor could they) that
2  Teva's Complaint is "utterly frivolous." The stay motions should be denied for this reason alone.

3  Furthermore, both motions are simply drive-by summaries of Defendants' motions to dismiss,
4  amounting to "no more than … conclusory [arguments] that their motions to dismiss … will succeed."
5  *Gray*, 133 F.R.D. at 40. That is insufficient. *Id.* And that is not saved by Corcept's extensive and
6  procedurally improper use of "incorporation by reference." (*See* Corcept Br. at 4–7 (repeatedly citing
7  "MTD at [_]"); *accord* Standing Order re Civil Cases § IV.D (forbidding incorporation by reference).)

8  In any event, it is clear from Teva's Complaint that Defendants' dismissal arguments are highly
9  unlikely to succeed—and, at minimum, "will require careful consideration and are subjects of
10 reasonable dispute," such that a discovery stay is unwarranted. *SVB Fin. Grp.*, 2024 WL 1898439, at
11 *3. Teva will refute Defendants' arguments at greater length when it formally opposes their motions
12 to dismiss, but even a peek at the merits reveals deep flaws in Defendants' arguments. For example:

13 **Statute of Limitations:** Defendants argue that a four-year statute of limitations bars Teva's
14 exclusive dealing, Orange Book listing, and sham litigation claims. These arguments will not succeed.
15 As an initial matter, "statute of limitations defenses often require a fact-intensive investigation that is
16 inappropriate on a motion to dismiss." *24/7 Customer, Inc. v. 24-7 Intouch*, 2015 WL 1522236 at *4
17 (N.D. Cal. Mar. 31, 2015). Regardless, Defendants' statute of limitations arguments are far off-base.

18 Most fundamentally, Defendants overlook the fact that Teva's generic Korlym product did not
19 enter the market until January 2024, and was *legally forbidden* from entering the market until it
20 obtained FDA approval in August 2020. (¶¶45, 77, 123.) As a result, Teva had no cause of action to
21 challenge Defendants' exclusive dealing agreement until January 2024, and could not possibly have
22 had a cause of action before August 2020, because under the antitrust laws, "a cause of action" only
23 "accrues" when a plaintiff "feels the adverse impact of an antitrust conspiracy." *Zenith Radio Corp.*
24 *v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971). The exclusive dealing agreement has injured Teva
25 by "blocking Teva's access to the key distribution channel and cutting off patients from accessing
26 Teva's lower-priced generic product." (¶5.) But that "injury" was not inflicted until Teva entered the
27 market and felt the effects of the exclusive dealing agreement, and *could not have been inflicted* during
28 a time when Teva was legally forbidden from being on the market. *Cf. Corner Post, Inc. v. Bd. of*

*Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2451 (2024) ("[A] cause of action accrues 'on the date that damage is sustained and not the date when causes are set in motion which ultimately produce injury.'" (brackets omitted)).  Teva's cause of action thus did not accrue until January 2024, and could not possibly have accrued before August 2020.  Either way, a lawsuit filed in June 2024 is timely.

For the same reason, Teva could not have challenged Defendants' exclusive dealing agreement before its product was on the market—and certainly not before it had FDA approval—because Teva would not have been able to allege causation or antitrust injury, which again proves that Teva's cause of action accrued within the limitations period.  *E.g.*, *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 10674453, at *2–3 (C.D. Cal. May 15, 2009) ("To state any substantive antitrust claim, Amphastar must allege that Aventis caused it antitrust injury.  To suffer antitrust injury, Amphastar must be 'an actual competitor or one ready to be a competitor.'…  However, Amphastar is presently excluded from the market because it lacks FDA approval….  Therefore, … Amphastar does not plead causation and antitrust injury."); *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711 (9th Cir. 2003) ("Only an actual competitor or one ready to be a competitor can suffer antitrust injury."); *Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223, 237 (3d Cir. 2013) ("Ethypharm did not suffer antitrust injury because it does not and indeed cannot compete in the United States fenofibrate market, unless and until it acquires the required FDA approval to do so.  As a result, Ethypharm lacks antitrust standing to sue Abbott."); *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (similar); *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (similar).

Teva also could not have challenged Defendants' exclusive dealing agreement before it obtained FDA approval and entered the market because a lawsuit before then would have been too speculative to support a cause of action.  *E.g.*, *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1204–05 (9th Cir. 2014) ("At the time of the adoption of the 2003 license, Samsung was not in the SD card market, and neither Samsung nor the SD Defendants could have known for certain whether Samsung would enter that market….  Because the harm to Samsung challenged in this suit was speculative at the time of the initial wrong, the law of limitations in federal antitrust actions allowed Samsung to file suit once the harm crystallized in 2006 [*i.e.*, when Samsung entered the market].");

*Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (statute of limitations did not run until plaintiff entered the market because antitrust suit before then would have been too speculative).

On top of all that, Defendants took actions to enforce their exclusive dealing agreement when, on May 1, 2024, representatives from Optime refused to "entertain a bid from Teva, even though Optime could potentially make more money by distributing Teva's generic," because, Optime explained, "the exclusivity provisions" of Defendants' agreement forbade Optime from distributing Teva's product, "no matter what terms Teva might propose." (¶137.) That was an "overt act" sufficient to restart the limitations period. *Samsung*, 747 F.3d at 1203–04 ("[A]n action taken under a pre-limitations contract [is] sufficient to restart the statute of limitations so long as the defendant had the ability not to take the challenged action, even if that would have required breaching the allegedly anti-competitive contract…. We have repeatedly held that acts taken to enforce a contract were overt acts that restarted the statute of limitations."). The limitations period also restarted every time Defendants took actions to "steer" patients to Optime, *id.* at 1203, which they have done—and continue to do—through a variety of ongoing tactics described in detail in the complaint. (*E.g.*, ¶¶148–54, 159–64, 165–85.) And Defendants' renewal of their exclusive dealing agreement in April 2024 likewise restarted the limitations period. *Samsung*, 747 F.3d at 1204 (statute of limitations restarts "when conspirators continue to meet to fine-tune their cartel agreement").

A similar analysis forecloses Corcept's statute of limitations arguments with respect to Teva's Orange Book and sham litigation claims. For one, as explained above, filing suit before Teva had FDA approval and entered the market would have been too speculative to support a cause of action, and would have failed for lack of antitrust injury and causation. *E.g.*, *Samsung*, 747 F.3d at 1204–05; *Oliver*, 751 F.3d at 1087; *Aventis*, 2009 WL 10674453, at *2 (holding that in pharmaceutical industry, "*any* substantive antitrust claim" by competitor would fail where competitor "lacks FDA approval"); *Ethypharm*, 707 F.3d at 230, 237 (holding a competitor's "antitrust and sham litigation claims" fail for lack of antitrust standing "unless and until it acquires … FDA approval"). Separately, "an antitrust claim based on baseless litigation requires proof that the litigation was unsuccessful, which can only be determined upon the termination of the initial action." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 500 (E.D. Pa. 2005). Here, it was only in January 2021 that Corcept voluntarily

dismissed its claims under the two patents that were improperly listed in the Orange Book, and only in December 2023 that Teva prevailed on the patents that went to trial. (¶¶113, 121.) In addition, between 2018 and 2023, Corcept filed four lawsuits against Teva asserting nine different patents, voluntarily dismissed *seven* of those patents, lost on the remaining two, and "strategically tim[ed] each lawsuit to maximize delay." (¶120; *see* ¶¶113–22.) Each lawsuit was a sham in its own right—and whether viewed individually, or as "a series of lawsuits" brought "without regard to the merits and for the purpose of injuring a market rival," *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005), each lawsuit was an "overt act" that restarted the limitations period on all of Teva's Orange Book and sham litigation claims, *see Samsung*, 747 F.3d at 1202–03. The same is true of Defendants' acts to "steer" patients to Optime, and their renewal and enforcement of their exclusive dealing agreement, all of which are "new and independent act[s]" that have "inflict[ed] new and accumulating injury" on Teva, exacerbating the harms inflicted by Corcept's Orange Book and sham litigation misconduct. *Samsung*, 747 F.3d at 1203–04. These claims are therefore timely.

**Antitrust Injury:** Corcept argues that Teva's Orange Book and sham litigation claims also fail for lack of antitrust injury, because Corcept asserts that other causal factors may have contributed to the delayed entry of Teva's generic. (Corcept Br. at 4–5.) These arguments raise disputed issues of fact and would not succeed even at summary judgment or trial, much less on a motion to dismiss. *E.g.*, *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509 (9th Cir. 1985) (holding antitrust plaintiff "need not rule out 'all possible alternative sources of injury,'" and that "antitrust violation need not be the 'sole' cause of the injury for causation to exist"); *Solinger v. A&M Recs., Inc.*, 586 F.2d 1304, 1309 (9th Cir. 1978) ("[I]f the plaintiff states sufficient facts to support his allegations that an antitrust violation has occurred and that he has sustained injury to his business or property, he is generally entitled to go to the jury on the violation and injury issues.").

**Plausibility:** Defendants contend that Teva's exclusive dealing, bribery, and sham litigation claims will fail because Teva's factual allegations are implausible. These arguments are highly unlikely to succeed. Teva's Complaint contains detailed factual allegations that the relevant product market is the market for Korlym and its AB-rated generic equivalents. (¶¶186–88, 195–97.) Defendants do not challenge that allegation; nor could they. *E.g.*, *United Food & Com. Workers Loc.*

*1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1171 (N.D. Cal. 2017) (holding that "in the pharmaceutical context courts have limited the market to . . . the brand product itself in absence of cross-elasticity evidence."). Teva's generic has been unable to gain a toehold in that market, despite months of vigorous efforts to compete through alternative channels and a materially lower price than Corcept's brand product—in stark contrast to the near-universal experience of pharmaceutical markets, where a first generic typically captures "60-75% or more of the market within the first six months, and usually more than 80% within the first year." (¶124; *see* ¶¶125–64.) And Teva has alleged in great detail that Defendants' express exclusive-dealing agreement is unheard-of in the pharmaceutical industry, is the product of a coercive relationship between Corcept and Optime, is not incentive-based, is not a short-term agreement, is not easily terminable, and has had a near-100% foreclosure effect in the downstream market for Korlym—which Corcept has boasted about on its earnings calls—due to the economic realities of the Korlym market and Defendants' unlawful tactics. (¶¶134–64.) These fact- and expert-laden allegations describe the exact circumstances that make exclusive dealing agreements anticompetitive. *E.g.*, *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1030 (N.D. Cal. 2015). They are highly likely to survive dismissal and beyond. *E.g.*, *Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp. 2d 1184, 1190 (N.D. Cal. 2005) ("Tele Atlas' exclusive dealing claims are sufficiently detailed to survive NAVTEQ's motion."); *Tevra Brands LLC v. Bayer HealthCare LLC*, 2024 WL 1909156, at *7–11 (N.D. Cal. May 1, 2024) (exclusive dealing claim survived summary judgment despite disputes about terminability of contract, effectiveness of alternative distribution channels, and foreclosure share).

Similarly, with respect to Teva's Orange Book and sham litigation claims, Teva has advanced detailed factual allegations that Corcept knew—and has publicly admitted—that two of its patents were improperly listed in the Orange Book and that Teva's generic Korlym did not infringe them because they did not "read on the Korlym label," and that none of its other seven patents gave rise to a reasonable, good-faith infringement claim, but that Corcept brought all of those lawsuits anyway without regard to the merits and for the purpose of delaying Teva's FDA approval and launch. (¶99; ¶¶101–22.) These allegations describe textbook examples of "'improper means' of maintaining [monopoly] power." *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 7 (1st Cir. 2020).

Likewise, Teva's Complaint includes detailed and specific allegations of Corcept's suspicious payments to physicians to shore up its monopoly and induce continued prescribing of its higher-priced brand product. (¶¶165–85.) These bribery and kickback allegations are based on in-depth analysis of publicly available data (¶¶169–82), and are more than plausible enough to survive a motion to dismiss, particularly given their support in reports from journalists, confidential witnesses, and an ongoing federal investigation into Corcept's payments to physicians by the U.S. Attorney's Office for the District of New Jersey (¶¶167–68, 177–78, 183). *E.g.*, *United States, ex rel. Solis v. Millennium Pharms., Inc.*, 2015 WL 1469166, at *7 (E.D. Cal. Mar. 30, 2015) ("The SAC plainly makes averments [regarding bribery and kickbacks] that survive a pleadings challenge."). Corcept's factual protestations demonstrate why discovery is necessary—not why it should be stayed.

**<u>Additional Grounds for Relief</u>:** The allegations described above establish ongoing harms that will entitle Teva to injunctive relief, damages, restitution, and unjust enrichment remedies under the laws of California and other states, in addition to injunctive relief and damages under federal law.

\* \* \*

Teva will only strengthen the above arguments when it formally opposes Defendants' motions to dismiss. But the foregoing analysis makes clear—even before Teva does so—that dismissal in this case is highly unlikely. At minimum, Defendants have not made a "strong showing" that Teva will be "unable to state a claim for relief," as Defendants must do to stay discovery. *Tavantzis, Inc.*, 2024 WL 812012, at *1. And even if Defendants *were* likely to prevail on their motions to dismiss after full briefing and argument, a stay of discovery still would not be warranted because Teva's Complaint could be amended to cure any defects. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (policy that leave to amend shall be "freely given" should "be applied with extreme liberality"). Absent a showing that leave to amend would be denied, courts routinely refuse to stay discovery. *E.g.*, *SVB Fin. Grp*, 2024 WL 1898439, at *3; *Singh*, 2016 WL 10807598, at *2.

## II. DEFENDANTS' MOTIONS TO DISMISS RAISE FACTUAL ISSUES THAT REQUIRE DISCOVERY.

To satisfy the second prong of the test for a stay, "whether the pending dispositive motion can be decided absent additional discovery," *Pac. Lumber Co.*, 220 F.R.D. at 352, Defendants merely assert that their motions are based solely on the allegations in Teva's complaint. But "granting a stay

on such a basic notion is unwarranted." *Optronic*, 2018 WL 1569811, at *2. Moreover, as illustrated above, the arguments in Defendants' motions raise a host of fact-intensive inquiries that cannot be resolved in Defendants' favor and require discovery, including the foreclosure effect of Defendants' exclusive-dealing agreement, the sham nature of Corcept's patent infringement lawsuits, and whether Corcept has been paying bribes and kickbacks to physicians to undermine competition from Teva.

### III.   NO BURDEN ON DEFENDANTS OUTWEIGHS TEVA'S RIGHT TO DISCOVERY.

Defendants must make a "particularized showing" of burden that would "outweigh the interests of [Teva], the public, and the Court ensuring the expeditious resolution of litigation." *SVB Fin. Grp.*, 2024 WL 1898439, at *4. Defendants have not done so. Defendants simply assert that "discovery in antitrust cases like this 'tends to be broad, time-consuming and expensive.'" (Optime Br. at 5; Corcept Br. 8 (similar).) That boilerplate observation is insufficient. As a general rule, "the costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint." *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013). Instead, courts have stayed discovery in antitrust cases involving "sprawling multidistrict litigation or a class action." *Optronic*, 2018 WL 1569811, at *2. This case is neither, and Defendants "offer[] no particular or specific facts" to show that discovery *in this case* would be unjustifiably burdensome. *Singh*, 2016 WL 10807598 at *2.

Teva, by contrast, would suffer prejudice if discovery is delayed. For one, "stays are disfavored where, as here, the plaintiff seeks an award of injunctive relief." *Pedro v. Millennium Prods., Inc.*, 2016 WL 3029681, at *6 (N.D. Cal. May 27, 2016). Further, since "memories fade and witnesses become unavailable over time," a stay would prejudice Teva because the passage of time increases the likelihood that evidence will be lost, destroyed, or altered. *Roule v. Petraeus*, 2012 WL 2367873, at *5 (N.D. Cal. June 21, 2012). A stay will also prevent the possibility of Teva obtaining discovery that allows for a more detailed complaint to be filed, if necessary. These concrete interests in proceeding with discovery far outweigh Defendants' vague and unsubstantiated concerns about the time and expense associated with discovery. *See SVB Fin. Grp.*, 2024 WL 1898439, at *4.

### CONCLUSION

Defendants' motions should be denied in full.

Dated: September 9, 2024  Respectfully submitted,

By: /s/ Devora W. Allon

Michael Shipley
KIRKLAND & ELLIS LLP
555 South Flower Street, 37th Floor
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C.
Kevin M. Neylan, Jr.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446 5967
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff
Teva Pharmaceuticals USA, Inc.*

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Devora Allon, attest that concurrence in the filing of this document has been obtained.

*/s/ Devora W. Allon*
Devora W. Allon

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2024, I caused to be filed the foregoing document with the United States District Court for the Northern District of California using the CM/ECF system and caused it to be served on all registered participants via notice of electronic filing.

/s/ *Devora W. Allon*
Devora W. Allon