**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
　robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:　(650) 801-5000
Fax:　　　　(650) 801-5100

Adam B. Wolfson (Bar No. 262125)
　adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:　(415) 875-6600
Fax:　　　　(415) 875-6700

*Attorneys for Defendant Corcept Therapeutics, Inc.*

**DUANE MORRIS LLP**
Lucas C. Wohlford (admitted *Pro Hac Vice*)
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail: lwohlford@duanemorris.com

*Attorney for Defendant Optime Care Inc.*

[Additional Counsel Listed On Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC.,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CORCEPT THERAPEUTICS, INC., et al.,<br><br>　　　　　Defendants. | Case No. 5:24-cv-03567-BLF<br><br>Honorable Beth Labson Freeman<br><br>**DEFENDANTS CORCEPT THERAPEUTICS, INC. AND OPTIME CARE INC.'S NOTICE OF JOINT RENEWED MOTION TO STAY DISCOVERY PENDING RESOLUTION OF THEIR FORTHCOMING RENEWED JOINT MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: January 2, 2025 at 9:00 a.m. |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION TO STAY DISCOVERY ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................... 1

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. BACKGROUND ........................................................................................................................ 2

III. LEGAL STANDARD ................................................................................................................ 3

IV. ARGUMENT ............................................................................................................................. 4

    A. The Two-Part Test Supports Staying Discovery Pending Defendants' Motion ................................................................................................................................ 4

        1. Defendants' Motion to Dismiss Is Potentially Case Dispositive ................... 4

        2. The Court Can Decide Defendants' Motion Without Discovery .................. 8

    B. Good Cause and Equitable Considerations Also Strongly Support A Stay ............... 8

V. CONCLUSION ........................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Al Otro Lado, Inc. v. Nielsen*,
    2018 WL 679483 (S.D. Cal. Jan. 31, 2018) .............................................................................. 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................ 8

*Braun v. Yahoo*,
    2018 WL 10809622 (N.D. Cal. Mar. 28, 2018) ....................................................................... 3

*Calvary Chapel San Jose v. Cody*,
    2021 WL 5353883 (N.D. Cal. Nov. 12, 2021) (Freeman, J.) ............................................... 7, 8

*Crowder v. LinkedIn Corp.*,
    2023 WL 2405335 (N.D. Cal. Mar. 8, 2023) ........................................................................... 9

*Est. of Graham v. Sothebys Inc.*,
    2012 WL 13227047 (C.D. Cal. Mar. 28, 2012) ....................................................................... 9

*Hamilton v. Rhoads*,
    2011 WL 5085504 (N.D. Cal. Oct. 25, 2011) .......................................................................... 4

*Hydro-Tech Corp. v. Sundstrand Corp.*,
    673 F.2d 1171 (10th Cir. 1982) ............................................................................................. 10

*In re German Auto. Manufacturers Antitrust Litig.*,
    497 F. Supp. 3d 745 (N.D. Cal. 2020) ..................................................................................... 8

*In re Google Digital Advert. Antitrust Litig.*,
    2020 WL 7227159 (N.D. Cal. Dec. 8, 2020) (Freeman, J.) ............................................ 1, 4, 9

*In re Graphics Proc. Units Antitrust Litig.*,
    2007 WL 2127577 (N.D. Cal. July 24, 2007) .......................................................................... 9

*In re Nexus 6p Prod. Liab. Litig.*,
    2017 WL 3581188 (N.D. Cal. Aug. 18, 2017) (Freeman, J.) ................................................... 8

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ................................................................................................. 8

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) ................................................................................................... 3

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*,
    508 U.S. 49 (1993) .................................................................................................................. 5

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    2024 WL 1975478 (N.D. Cal. May 3, 2024) ................................................................ 9, 10

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
    2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) (Freeman, J.) ................................. 3, 4, 7, 9, 10

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ................................................................................................ 2, 9

*SSI (U.S.), Inc. v. Ferry*,
    2021 WL 4812952 (C.D. Cal. May 25, 2021) ........................................................................ 4

*Tavantzis v. Am. Airlines, Inc.*,
    2024 WL 812012 (N.D. Cal. Feb. 23, 2024) (Freeman, J.) .................................................... 4

*Top Rank, Inc. v. Haymon*,
    2015 WL 9952887 (C.D. Cal. Sept. 17, 2015) ........................................................................ 9

*Yiren Huang v. Futurewei Techs., Inc.*,
    2018 WL 1993503 (N.D. Cal. Apr. 27, 2018) (Freeman, J.) ............................................... 4, 9

**NOTICE OF MOTION TO STAY DISCOVERY**

**PLEASE TAKE NOTICE** that on January 2, 2025, at 9:00 a.m., Defendants Corcept Therapeutics, Inc. and Optime Care Inc., will and hereby do move to stay discovery pending the resolution of their forthcoming joint motion to dismiss. Pursuant to Fed. R. Civ. Proc. 26(c)(1), counsel for Corcept, Optime, and Teva conferred on July 30, August 21 and 23, and September 16, 17, and 18, 2024, in an unsuccessful effort to resolve without Court action Defendants' request.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     PRELIMINARY STATEMENT**

As Defendants explained in their initial motions to dismiss (Dkts. 34, 36), Teva's claims are facially deficient—they are time-barred; fail to plausibly establish antitrust injury or harm to competition; implicate Corcept's constitutionally-protected decisions to enforce its patent rights; rest on implausible and threadbare innuendo; and do not allege, much less satisfy, multiple basic elements of the laws they purport to invoke. Teva's First Amended Complaint (Dkt. 39) ("FAC") suffers from the same problems as the initial complaint. Given these deficiencies, Defendants seek a limited stay of discovery pending the Court's resolution of their forthcoming renewed motion to dismiss.[1] And because Teva's FAC is near-identical to its prior complaint and Defendants' prior motions to dismiss detailed the defects in that complaint, the Court may look to Defendants' prior dismissal motions in evaluating their present stay request. *In re Google Digital Advert. Antitrust Litig.*, 2020 WL 7227159, at *2 (N.D. Cal. Dec. 8, 2020) (Freeman, J.) (staying discovery where plaintiffs amended after defendant moved to dismiss and stay discovery and before defendant filed renewed motion to dismiss).

Defendants meet the requirements for a temporary stay. Their prior motions to dismiss raised legal arguments that were case dispositive because they identified fatal defects in each of Teva's claims, and their forthcoming motion will raise those arguments again. These arguments can all be resolved with no discovery, as they turn on Teva's own deficient allegations and on information that can properly be considered at the pleading stage. Defendants thus satisfy the two-part test this Court has employed in previous cases to similarly stay discovery. A stay is particularly appropriate here, because the Ninth Circuit has explained that Rule 12(b)(6)'s very purpose is to "enable defendants to

---

[1] To streamline briefing, Defendants intend to file a single, joint renewed motion to dismiss.

challenge the legal sufficiency of complaints without subjecting themselves to discovery," and this rule is nowhere more important than in "antitrust cases" like this one, where "the costs of discovery" are "prohibitive." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

Good cause and the equities further support Defendants' request for a limited stay. A stay will conserve the parties' resources by postponing time-consuming and expensive discovery unless and until the Court determines that any of Teva's flawed theories or claims can proceed. Moreover, a stay will streamline discovery by allowing the Court to provide guidance on which of Teva's claims and theories (if any) are viable and which are not. A stay will also ensure that Corcept's sensitive commercial and constitutional interests are not needlessly impacted by discovery from Teva, a competitor, unless and until the Court determines Teva's case may proceed. Nor would a stay prejudice Teva, given there is no scheduling order and, in any event, Teva waited years to sue. The Court should therefore stay discovery until it resolves Defendants' forthcoming motion to dismiss.

## II.  BACKGROUND

Teva filed this case against Corcept and Optime on June 13, 2024. Dkt. 1. Corcept is a pharmaceutical company that manufactures Korlym, an FDA-approved medication that Corcept launched in 2012 and which treats certain patients with endogenous Cushing's syndrome, also called hypercortisolism.[2] (¶¶2, 94.) Optime is a "specialty pharmacy" that contracts with Corcept to distribute Corcept's Korlym product. (¶1.) Teva is a large pharmaceutical company that offers a generic drug that competes with Korlym, which received final FDA approval in August 2020 but which Teva did not launch until January 2024. (¶¶1, 77, 123.)

Teva asserts claims against Corcept under Section 2 of the Sherman Act (Counts I–II), and against both Defendants under Section 1 of the Sherman Act (Count III), California's Unfair Competition Law (Count IV), Section 16600 (Count V), various states' antitrust and consumer protection statutes (Count VI), and for unjust enrichment (Count VII). (¶¶211–275.) Teva's claims are based on a supposed "multi-pronged scheme" consisting of Corcept's: (1) listing patents in the

---

[2] "¶" refers to the FAC; "C. MTD" and "O. MTD" refer respectively to the initial motions to dismiss of Corcept (Dkt. 36) and Optime (Dkt. 34); and all internal citations are omitted and emphases added.

FDA's Orange Book nearly a decade ago; (2) patent infringement litigation (which Teva characterizes as "sham" litigation); (3) contract with Optime (which Teva claims is an "exclusive dealing" agreement); and (4) paying speaker fees to physicians and other practitioners (which Teva implausibly challenges as "bribes" to induce them to prescribe Corcept's drug over Teva's generic). (¶¶4–5.) On September 13—the last business day before briefing on Defendants' prior stay motions closed—Teva filed the FAC, voiding Defendants' pending motions. Dkts. 39, 40. The FAC changes little substantively, and Defendants will file a substantively similar renewed motion to dismiss.

The Court has set the following dates: an initial case management conference on October 31, 2024, which requires a Rule 26(f) conference by October 10, 2024; a Rule 26(f) and case management report by October 24, 2024; and initial disclosures by October 24, 2024. The Court also set a briefing schedule for Defendants' renewed motion to dismiss: October 14, 2024 for Defendants' opening brief; November 13, 2024 for Teva's opposition; and November 27, 2024 for Defendants' reply. Dkt. 42.

Pending the Court's resolution of Defendants' renewed motion to dismiss, Defendants seeks a stay of discovery, including the dates for the Rule 26(f) conference, Rule 26(f) and case management report, initial disclosures, and the Court's case management conference. To the extent that the Court wishes to hold a case management conference, Defendants submit it would be most efficient to do so on the date that the Court holds a hearing on their motion to dismiss.

### III.  LEGAL STANDARD

This Court "has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). It may therefore stay discovery pending the resolution of a dispositive motion "as part of its inherent power to control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Al Otro Lado, Inc. v. Nielsen*, 2018 WL 679483, at *1 (S.D. Cal. Jan. 31, 2018). This Court and others in this district have applied a two-part test that finds a stay appropriate when a motion to dismiss: (1) is "potentially dispositive of the entire case," and (2) can be decided "absent additional discovery." *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *2 (N.D. Cal. Apr. 10, 2020) (Freeman, J.). The Court may also stay discovery upon a showing of "good cause" under Rule 26(c)(1). *Braun v. Yahoo*, 2018 WL 10809622, at *2 (N.D. Cal. Mar. 28, 2018). Both tests support a stay here.

## IV. ARGUMENT

### A. The Two-Part Test Supports Staying Discovery Pending Defendants' Motion

#### 1. Defendants' Motion to Dismiss Is Potentially Case Dispositive

Defendants' forthcoming motion to dismiss easily satisfies the two-part test's first step. Under that step, courts consider whether a motion to dismiss is "*potentially* dispositive of the entire case." *Reveal Chat*, 2020 WL 2843369, at *3. "[T]he Court **need not decide whether** [a defendant] **will ultimately prevail on the motion**" to dismiss. *Tavantzis v. Am. Airlines*, *Inc.*, 2024 WL 812012, at *2 (N.D. Cal. Feb. 23, 2024) (Freeman, J.). Here, Defendants' initial motions were potentially dispositive of Teva's entire case because they identified fatal problems with *each* of Teva's seven claims. Teva's FAC is substantially similar, and Defendants will file a renewed motion to dismiss raising arguments from their prior dismissal motions, such that the first step is met. *Google*, 2020 WL 7227159, at *2 (Freeman, J.) (where plaintiffs amended after defendant moved to dismiss and stay, initial motion to dismiss determined whether first step met); *SSI (U.S.), Inc. v. Ferry*, 2021 WL 4812952, at *3 (C.D. Cal. May 25, 2021) (staying discovery, first step met as motion "seeks to dismiss *all* claims").

To the extent that a "preliminary peek" at the merits of Defendants' dismissal arguments is required, *Reveal Chat*, 2020 WL 2843369, at *2, that only confirms a discovery stay is warranted. As this Court has explained, in determining whether the first step is met, courts should not "grapple with the merits," *id.* at *3, or engage in a "substantive analysis" of the motion to dismiss, which "would be premature." *Yiren Huang v. Futurewei Techs.*, Inc., 2018 WL 1993503, at *3 (N.D. Cal. Apr. 27, 2018) (Freeman, J.). Instead, the Court need only determine whether Defendants' "motion to dismiss, if meritorious, is potentially dispositive of the case[.]" *Hamilton v. Rhoads*, 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011). The legal defects in each of Teva's claims and theories show that Defendants' forthcoming motion is potentially case dispositive, as Defendants' prior motions showed.

**Orange Book Listings**: Teva's Section 2 claims challenge Corcept's listing of two patents—the '348 patent and the '495 patent—in the FDA's Orange Book. (¶82.) Teva itself alleges that Corcept listed these patents on January 27, 2015, and November 28, 2017. (*Id.*) Defendants' motion to dismiss will explain that Teva's Orange Book claims are time-barred as the statute of limitations periods for such claims expired years before Teva filed its complaint. *See* C. MTD at 6–7.

Defendants' motion also will show that Teva's Orange Book claims separately fail for lack of plausible antitrust injury. That is because Teva does not plausibly allege that or explain how Corcept's Orange Book listings—as opposed to a separate statutory bar (Corcept's FDA-awarded, Orphan Drug Exclusivity), or Teva's own choice to wait to launch until after the conclusion of the parties' patent litigation—delayed the entry of Teva's generic. C. MTD at 7–9.

**"Sham" Litigation**: Teva's Section 2 claims are also based on Corcept's supposed "sham litigations" in which Corcept enforced its patents and brought infringement claims against Teva in the District of New Jersey. (¶¶5, 76, 116–17.) Defendants' motion will establish that Teva's sham litigation claims fail multiple times over. For one, the claims are time-barred as the initial lawsuits that form the basis for Teva's claims were filed more than four years ago. C. MTD at 9–10.

Separately, Defendants' motion will demonstrate that Teva's sham litigation claims fail for lack of antitrust injury. Teva's allegations fail to plausibly establish that or explain how Teva's supposed "sham" suits—as opposed to other causes, like Corcept's Orphan Drug exclusivity or Teva's own voluntary choice to wait—delayed the entry of Teva's generic. C. MTD at 9–13.

Finally, Defendants' motion will explain Teva's sham litigation claims are barred by *Noerr-Pennington* immunity. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56–57 (1993) ("*PREI*") ("Those who petition government for redress are generally immune from antitrust liability."). Teva's claims fail since Teva does not establish any exception to this immunity applies. As to the "sham" exception, Teva does not, for example, plausibly allege the '214 litigation or the '800/'801 litigation was objectively baseless. C. MTD at 11–13. And as to the "series" exception, to the extent it is even available, Teva does not allege a sufficient number of suits (all of the underlying patent lawsuits were efficiently coordinated and consolidated into a single action) or that the patent litigation imposed a "crushing burden" on global giant Teva. *Id.* at 13–14.

**Exclusive Dealing**: Teva's Section 1 and 2 claims are also premised on an alleged exclusive dealing agreement between Corcept and Optime: a single pharmacy (¶¶1, 5.) Notably, this agreement is the sole basis for Teva's claims against Optime. (¶¶ 135–166, 226–229, 231, 242, 250). Defendants' motion will show that the exclusive dealing claims fail because they are time-barred. Teva itself alleges (¶137) Corcept and Optime first contracted in 2017—years outside of the limitations period.

1  C. MTD at 14; O. MTD at 5–6. Moreover, Teva alleges no new and overt act that restarts the
2  limitations period, only a mere renewal of the prior contract and vague, unsubstantiated "adjustments"
3  to "obligations" Defendants "owe each other in connection with the distribution of Korlym." *Id.*

4  Defendants' motion will also explain that Teva's exclusive dealing claims separately fail
5  because they do not define the relevant distribution market or plausibly establish substantial
6  foreclosure from any market. Instead, Teva itself admits that it has access to major wholesalers and
7  pharmacies and Optime is merely a "preferred" distribution channel. (¶¶158, 165.) Those allegations
8  necessarily fail under Ninth Circuit and other law. C. MTD at 14–16; O. MTD at 6–11.

9  **Speaker Fees**: Teva's Section 2 claims are also based on Corcept's payments to physicians
10 and other practitioners, which Teva alleges are "bribes" to induce them to prescribe Corcept's Korlym
11 over Teva's generic. (¶186.) Defendants' motion will show that allegations the payments were
12 "bribes" are both conclusory and implausible. Among other things, the same data that Teva's
13 complaint cites and relies on for these allegations makes clear that the payments are routine speaker,
14 consulting, honorarium, food/travel, and similar fees that many other pharmaceutical companies
15 (including Teva) make to help educate patients and physicians regarding diseases and the drugs that
16 can treat them. C. MTD at 17–20. Separately, Teva's allegations fail because even accepting them as
17 true, they establish no more than isolated payments, which comes nowhere close to establishing the
18 necessary harm to competition. C. MTD at 20–21.

19 **UCL**: Defendants' motion will also demonstrate that Teva's UCL claim—which is based on
20 the "unlawful" and "unfair" prongs—is fatally deficient. (¶¶231–40.) As a threshold matter, Teva's
21 UCL claim nowhere alleges, much less establishes, the inadequacy of legal remedies, dooming the
22 claim under both prongs. C. MTD at 21; O. MTD at 12. As to the unlawful prong, Teva merely lists
23 statutes (¶233)—the Sherman and Clayton Acts, and California's Cartwright Act, Section 16600,
24 prohibition on bribery, and prohibition on things of value in exchange for the prescription of drugs
25 covered by insurance—but does not establish a violation of any of them; and as to the unfair prong,
26 Teva cannot recast its flawed antitrust theories as a UCL claim. MTD at 21–23; O. MTD at 14–16.

27 **Section 16600**: Teva repackages its exclusive dealing claim under Section 16600. (¶¶241–
28 48.) But the California Supreme Court has explained that the rule of reason governs alleged exclusive

dealing claims under Section 16600. Defendants' motion will show that because Teva's federal exclusive dealing claim fails under the rule of reason—*e.g.*, for lack of substantial foreclosure—so, too, does Teva's Section 16600 claim. C. MTD at 23–24; O. MTD at 16–17.

**Omnibus Antitrust and Consumer Protection Claim**: Teva asserts an omnibus state-law claim under various states' antitrust and consumer protection statutes. (¶¶249–57.) Teva lists at least 85 different statutory provisions under a single count, and, even then, admits these are only "exemplars" and it "reserves all rights to assert any and all other state laws[.]" (¶¶250–51 & n.124.) But Teva's lump pleading merely lists statutes, it does not—particularly given the statutes' disparate requirements—"show[] that [Teva] is entitled to relief" under each. *See* Fed. R. Civ. P. 8(a)(2). And since mere listing is insufficient, Teva's claim—which is a mere list and does not even identify all the statutes Teva's omnibus claim relies on—necessarily fails. C. MTD at 24–25.; O. MTD at 17.

**Unjust Enrichment**: Defendants' motion also will show that Teva's unjust enrichment claim (¶¶258–75) should be dismissed for multiple reasons. *See* C. MTD at 25; O. MTD at 17–18. For one, Teva's claim does not even specify the state law under which it is brought. Instead, it vaguely refers (¶¶270, 275) to the "principles of California, or alternatively, all states and territories[,]" which this Court has explained is improper and does not state a claim. And to the extent that Teva's claim is construed under California law, it fails because there is no standalone cause of action for unjust enrichment under California law. No re-construed quasi-contract claim may lie because Teva does not allege any quasi-contractual relationship between it and Defendants (instead, Teva alleges that Corcept is its competitor and Optime is a pharmacy with which Teva would like to—but does not— deal), and Teva did not directly provide any benefit *to Defendants* that should supposedly be returned.

\* \* \*

Given the comprehensive and case-ending nature of the above arguments, these are precisely the circumstances in which this Court has explained that a motion to dismiss is potentially case dispositive so as to warrant a stay of discovery pending resolution of that motion. *Reveal Chat*, 2020 WL 2843369, at *3 (Freeman, J.) (staying discovery, as dismissal motion's arguments that claims "time-barred," "fail[ed] to adequately allege antitrust injury," and "fail[ed] to state a claim for relief" were "*potentially* dispositive" of entire case); *Calvary Chapel San Jose v. Cody*, 2021 WL 5353883,

at *1 (N.D. Cal. Nov. 12, 2021) (Freeman, J.) (staying discovery, as "immunity" defense a "[c]ommon situation[]" where stay of discovery is appropriate pending resolution of "dispositive" motion).

### 2. The Court Can Decide Defendants' Motion Without Discovery

A stay is also appropriate because Defendants' forthcoming renewed motion to dismiss can be decided without discovery. Defendants did and will move to dismiss on the basis of Teva's own deficient allegations, and facts that are either incorporated by reference into Teva's complaint (such as through documents Teva itself cites) or are subject to judicial notice (*e.g.*, judicial records and information on government websites and Teva's own website). All these matters are before the Court at the pleading stage. *See In re German Auto. Manufacturers Antitrust Litig.*, 497 F. Supp. 3d 745, 753–54 (N.D. Cal. 2020) ("[W]hen ruling on Rule 12(b)(6) motions to dismiss," courts "consider the complaint" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."). Defendants therefore easily satisfy the second step of the two-part test. *See, e.g.*, *Calvary*, 2021 WL 5353883, at *2 (Freeman, J.) (staying discovery, second step satisfied as motion to dismiss could be decided based on information subject to judicial notice); *In re Nexus 6p Prod. Liab. Litig.*, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) (Freeman, J.) (same, where motion to dismiss also based on information "incorporated by reference").

### B.   Good Cause and Equitable Considerations Also Strongly Support A Stay

Beyond the two-part test often used by courts in these circumstances, good cause and equitable considerations further support a stay of discovery pending the resolution of Defendants' renewed motion to dismiss. A stay will conserve the parties' and the Court's resources, maximize efficiency, and protect Corcept's constitutional and commercial interests, all without prejudice to Teva.

*First*, staying discovery pending the resolution of Defendants' forthcoming motion to dismiss would ensure that the parties and Court only expend resources on discovery if Teva's claims proceed past the pleading stage. The Supreme Court, Ninth Circuit, and district courts (including this Court) have all recognized that discovery in antitrust cases is extremely time-consuming and costly. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) ("antitrust discovery can be expensive" and "extensive," and its costs therefore "counsel against sending the parties into discovery" where complaint shows claims defective); *Kendall v. Visa U.S.A.*, *Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)

("discovery in antitrust cases frequently causes substantial expenditures"); *In re Google Digital Advert. Antitrust Litig.*, 2020 WL 7227159, at *3 (N.D. Cal. Dec. 8, 2020) (Freeman, J.) (similar).

The Ninth Circuit has long recognized that staying discovery pending a motion to dismiss "*especially makes sense*" in "antitrust cases" *precisely* because "the costs of discovery in such actions are *prohibitive*." *Rutman*, 829 F.2d at 738. For that reason, this Court and others routinely stay discovery in antitrust cases pending the resolution of a motion to dismiss. *See e.g.*, *Reveal Chat*, 2020 WL 2843369, at *4 (Freeman, J.); *Google Digital Advert.*, 2020 WL 7227159, at *3 (Freeman, J.); *Crowder v. LinkedIn Corp.*, 2023 WL 2405335, at *8 (N.D. Cal. Mar. 8, 2023); *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *2–3 (C.D. Cal. Sept. 17, 2015); *In re Graphics Proc. Units Antitrust Litig.*, 2007 WL 2127577, at *5–6 (N.D. Cal. July 24, 2007); *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 2024 WL 1975478, at *10–11 (N.D. Cal. May 3, 2024).

These considerations strongly support a stay here. Allowing Teva to take discovery before Defendants' motion is decided—particularly since Teva's allegations go back nearly a decade—would be wasteful, since all of Teva's claims may (and should) be dismissed. By contrast, allowing discovery to proceed if Teva's claims survive a motion to dismiss "makes good sense because a decision in favor of [Defendants] will dispose of the case completely and avoid the burdens and costs associated with discovery." *Est. of Graham v. Sothebys Inc.,* 2012 WL 13227047, at *1 (C.D. Cal. Mar. 28, 2012) (granting stay); *Crowder*, 2023 WL 2405335, at *8 (staying discovery in antitrust case because "the most prudent course now is to wait until it is clear if any claims will proceed").

*Second*, staying discovery until the Court resolves Defendants' motion to dismiss will allow for focus if discovery proceeds. Teva's scattershot complaint asserts a number of different claims across different timelines and based on wildly divergent theories. Allowing the Court to first decide Defendants' motion will provide guidance on what is and is not appropriate discovery, if any claims survive. *Yiren Huang v. Futurewei Techs.*, *Inc.*, 2018 WL 1993503, at *4 (N.D. Cal. Apr. 27, 2018) (Freeman, J.) (granting motion to stay discovery because "resolution on the Motion to Dismiss may narrow the issues and benefit both parties"); *Graphics*, 2007 WL 2127577, at *5–6 (granting stay, and explaining that "[a]fter full ventillation of the viability *vel non* of the complaint, we will all be in a much better position to evaluate how much, if any discovery to allow," such as discovery limited to

theories that survive dismissal).

*Third*, staying discovery would protect Corcept's commercial and constitutional interests by ensuring they are not needlessly impinged unless and until any of Teva's claims are allowed to proceed. Teva alleges that it and Corcept are competitors, and it has already stated its desire to take discovery on Corcept's competitive business strategy, including Corcept's relationship with Optime and doctors and the value-added services Corcept provides them. (¶¶ 152, 165, 176, 187.) Moreover, Teva's "sham" litigation claims necessarily implicate Corcept's First Amendment right to petition the courts. Courts have recognized this constitutional right is chilled by prematurely allowing discovery into an antitrust defendant's motivations for filing lawsuits. *Hydro-Tech Corp. v. Sundstrand Corp.*, 673 F.2d 1171, 1177, n.8 (10th Cir. 1982). Given these considerations, courts regularly stay discovery pending motions to dismiss in antitrust cases, as doing so protects against the potentially unnecessary "disclosure of sensitive business information to a competitor and the chilling of defendants' First Amendment-protected petitioning activity." *Realtek*, 2024 WL 1975478, at *10.

*Finally*, staying discovery until the Court rules on Defendants' motion to dismiss would impose little to no prejudice on Teva. There is currently no scheduling order, and Teva waited years to sue; it will have ample chance to conduct discovery, if the case proceeds. *Reveal Chat*, 2020 WL 2843369, at *4 (Freeman, J.) (limited stay of discovery pending motion to dismiss does not "unduly prejudice" plaintiff and instead "allows all parties to commence discovery with a better understanding of which claims, if any, they must answer"); *Jacksonville Police Officers & Fire Fighters Health Ins. Tr. v. Gilead Scis.*, Inc., 2022 WL 17418970, at *2 (N.D. Cal. Dec. 5, 2022) (staying discovery and explaining no prejudice as court had "not yet entered a scheduling order").

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay discovery pending its resolution of Defendants' forthcoming renewed motion to dismiss, including staying the upcoming deadlines for the parties' Rule 26(f) conference (October 10), Rule 26(f) and case management report (October 24), exchange of initial disclosures (October 24), and case management conference (October 31).

1  DATED: September 26, 2024

3              By:   */s/ Adam B. Wolfson*
               QUINN EMANUEL URQUHART & SULLIVAN, LLP

               Robert W. Stone (Bar No. 163513)
                robertstone@quinnemanuel.com
               555 Twin Dolphin Drive, 5th Floor
               Redwood Shores, California 94065
               Telephone:  (650) 801-5000
               Fax:     (650) 801-5100

               Adam B. Wolfson (Bar No. 262125)
                adamwolfson@quinnemanuel.com
               50 California Street, 22nd Floor
               San Francisco, California 94111
               Telephone:  (415) 875-6600
               Fax:     (415) 875-6700

               Steig D. Olson (admitted *pro hac vice*)
                steigolson@quinnemanuel.com
               51 Madison Avenue, 22nd Floor
               New York, New York 10010
               Telephone:  (212) 849-7000
               Fax:     (212) 849-7100

               *Attorneys for Defendant Corcept Therapeutics, Inc.*


             By:   */s/ Lucas C. Wohlford*
               Lucas C. Wohlford (admitted *Pro Hac Vice*)
               **DUANE MORRIS LLP**
               100 Crescent Court, Suite 1200
               Dallas, TX 75201
               Telephone: +1 214 257 7200
               Facsimile: +1 214 257 7201
               E-Mail: lwohlford@duanemorris.com

               Justin J. Fields (SBN 259491)
               **DUANE MORRIS LLP**
               Spear Tower
               One Market Plaza, Suite 2200 San Francisco, CA 94105-1127
               Telephone: +1 415 957 3000
               Facsimile: +1 415 957 3001
               E-Mail: jfields@duanemorris.com

               *Attorneys for Defendant Optime Care Inc.*

## CIVIL LOCAL RULE 5-1 ATTESTATION

I, Adam B. Wolfson, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the signatories listed above.

DATED: September 26, 2024

By _*/s/ Adam B. Wolfson*_
Adam B. Wolfson

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of September 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By _*/s/ Adam B. Wolfson*_
Adam B. Wolfson