Michael Shipley (SBN 139582)
KIRKLAND & ELLIS LLP
555 South Flower Street, 37th Floor
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*Pro Hac Vice*)
Kevin M. Neylan, Jr. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No. 5:24-cv-03567-BLF <br><br> **PLAINTIFF TEVA PHARMACEUTICALS USA, INC.'S OPPOSITION TO DEFENDANTS CORCEPT THERAPEUTICS, INC.'S, AND OPTIME CARE INC.'S, JOINT RENEWED MOTION TO STAY DISCOVERY** <br><br> Date:   January 2, 2025 <br> Time:  9:00 a.m. <br> Ctrm:  3 - 5th Floor <br> Judge: Honorable Beth Labson Freeman |

# TABLE OF CONTENTS

Introduction .................................................................................................................................. 1

Legal Standard ............................................................................................................................ 2

Argument .................................................................................................................................... 2

I.   Defendants' Forthcoming Motion to Dismiss Is Not Potentially Dispositive. ......................... 2

II.  Defendants' Motion to Dismiss Will Raise Fact Issues that Require Discovery. .................... 9

III. No Burden on Defendants Outweighs Teva's Right to Discovery. ........................................ 10

Conclusion ................................................................................................................................ 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*24/7 Customer, Inc. v. 24-7 Intouch*,
 2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) ............................................................................ 4

*Arellano v. Calderon*,
 2023 WL 4568772 (S.D. Cal. July 14, 2023) ............................................................................. 3

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
 2009 WL 10674453 (C.D. Cal. May 15, 2009) ...................................................................... 5, 6

*Barrett v. Apple Inc.*,
 2020 WL 13815568 (N.D. Cal. Oct. 22, 2020) ........................................................................... 3

*Bourns, Inc. v. Raychem Corp.*,
 331 F.3d 704 (9th Cir. 2003) ...................................................................................................... 5

*In re Canadian Imp. Antitrust Litig.*,
 470 F.3d 785 (8th Cir. 2006) ...................................................................................................... 5

*Chemi SpA v. GlaxoSmithKline*,
 356 F. Supp. 2d 495 (E.D. Pa. 2005) .......................................................................................... 7

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
 144 S. Ct. 2440 (2024) ................................................................................................................ 5

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*,
 773 F.2d 1506 (9th Cir. 1985) .................................................................................................... 7

*Eminence Cap., LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003) .................................................................................................... 9

*Ethypharm S.A. France v. Abbott Lab'ys*,
 707 F.3d 223 (3d Cir. 2013) ................................................................................................... 5, 6

*Feitelson v. Google Inc.*,
 80 F. Supp. 3d 1019 (N.D. Cal. 2015) ........................................................................................ 8

*Freeman v. Lasky, Haas & Cohler*,
 410 F.3d 1180 (9th Cir. 2005) .................................................................................................... 7

*Gray v. First Winthrop Corp.*,
 133 F.R.D. 39 (N.D. Cal. 1990) ............................................................................................. 2, 4

*In re Lantus Direct Purchaser Antitrust Litig.*,
 950 F.3d 1 (1st Cir. 2020) ........................................................................................................... 9

*In re Lithium Ion Batteries Antitrust Litig.*,
 2013 WL 2237887 (N.D. Cal. May 21, 2013) .......................................................................10

*Nat'l Union Fire Ins. Co. v. Res. Dev. Servs., Inc.*,
 2010 WL 3746290 (N.D. Cal. Sept. 18, 2010) ......................................................................10

*Oliver v. SD-3C LLC*,
 751 F.3d 1081 (9th Cir. 2014) ................................................................................................6

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
 2018 WL 1569811 (N.D. Cal. Feb. 16, 2018) ...................................................................3, 10

*Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
 220 F.R.D. 349 (N.D. Cal. 2003) ............................................................................................2

*Pedro v. Millennium Prods., Inc.*,
 2016 WL 3029681 (N.D. Cal. May 27, 2016) ......................................................................10

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
 2020 WL 2843369 (N.D. Cal. Apr. 10, 2020) ........................................................................3

*Roule v. Petraeus*,
 2012 WL 2367873 (N.D. Cal. June 21, 2012) ......................................................................10

*RSA Media, Inc. v. AK Media Grp., Inc.*,
 260 F.3d 10 (1st Cir. 2001) .....................................................................................................5

*Samsung Elecs. Co. v. Panasonic Corp.*,
 747 F.3d 1199 (9th Cir. 2014) ........................................................................................5, 6, 7

*Singh v. Google, Inc.*,
 2016 WL 10807598 (N.D. Cal. Nov. 4, 2016) ..............................................................2, 9, 10

*Solinger v. A&M Recs., Inc.*,
 586 F.2d 1304 (9th Cir. 1978) ................................................................................................7

*United States, ex rel. Solis v. Millennium Pharms., Inc.*,
 2015 WL 1469166 (E.D. Cal. Mar. 30, 2015) ........................................................................9

*SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*,
 2024 WL 1898439 (N.D. Cal. Apr. 29, 2024) ............................................................. passim

*Tavantzis v. Am. Airlines, Inc.*,
 2024 WL 812012 (N.D. Cal. Feb. 23, 2024) ......................................................................3, 9

*Tele Atlas N.V. v. Navteq Corp.*,
 397 F. Supp. 2d 1184 (N.D. Cal. 2005) ..................................................................................8

*Tevra Brands LLC v. Bayer HealthCare LLC*,
 2024 WL 1909156 (N.D. Cal. May 1, 2024) ..........................................................................8

iii
PLAINTIFF TEVA PHARMACEUTICALS USA, INC.'S OPPOSITION TO JOINT MOTION TO STAY /
CASE NO. 3:24-cv-03567

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*,
    296 F. Supp. 3d 1142 (N.D. Cal. 2017) ...................................................................................8

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
    401 U.S. 321 (1971) ...............................................................................................................4

**Other Authorities**

N.D. Cal. Standing Order re Civil Cases § IV.D ............................................................................4

# INTRODUCTION

On September 13, 2024, Teva filed an Amended Complaint (Dkt. No. 39) against Corcept and Optime, alleging that Defendants have engaged in an ongoing scheme to unreasonably restrain trade in, and monopolize, the market for Korlym (mifepristone), a cortisol receptor blocker indicated to treat endogenous Cushing's syndrome, a rare and debilitating disease. Corcept launched the brand version of Korlym in 2012, which it currently sells for hundreds of thousands of dollars per patient, per year, at profit margins close to 99%. (¶¶69-72.)[1] Optime has been the only pharmacy dispensing Korlym since 2017. (¶¶136-37.) Teva launched the first (and still only) generic version of Korlym in January 2024, and has maintained a material price discount to Corcept's identical brand product from day one. (¶¶123-31.) But instead of quickly capturing a significant majority of the market—as nearly always happens, by Congressional and state-law design, when a first generic pharmaceutical product launches—Teva has captured virtually zero market share, a fact that Corcept has gleefully boasted about on earnings calls ever since. (¶¶123-33.) That result would be impossible to explain in a properly functioning, competitive pharmaceutical market. The true explanation is now clear: as Teva alleges in detail, Corcept and Optime have thwarted generic competition by entering into a long-term, blanket exclusive dealing agreement that expressly forbids Optime from distributing any rival versions of Korlym, including Teva's generic. (¶¶123-66.) This exclusive dealing agreement is unheard-of in the pharmaceutical industry and has had a near-total foreclosure effect in the downstream Korlym market, allowing Corcept to maintain its monopoly with no meaningful erosion, and forcing patients and health plans to continue paying astronomical prices notwithstanding the availability of Teva's lower-priced, therapeutically equivalent generic. (*Id.*)

Compounding the harm from Defendants' exclusive dealing agreement, Corcept successfully delayed Teva's generic launch by abusing the patent system through improper Orange Book listings and sham patent infringement litigation. (¶¶73-122.) And substantial evidence suggests that Corcept has further undermined competition by paying illicit bribes and kickbacks to prescribers to continue

---

[1] Unless otherwise noted, "¶" refers to Teva's Amended Complaint, all internal citations and quotations are omitted, and all emphases are added.

1

steering patients toward Corcept's more expensive brand product. (¶¶167-87.) This multipronged scheme violates the Sherman Act, California's Cartwright Act and Unfair Competition Law, and various state antitrust and consumer protection laws, among others. (¶¶211-75.) Teva's ongoing harms warrant significant damages and injunctive relief.

Seeking to extend the benefits of their illegal scheme, Defendants now ask to stay discovery until the Court rules on their forthcoming motion to dismiss. But they come nowhere close to fulfilling "the heavy burden of making a 'strong showing'" why discovery should be stayed. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). In fact, discovery should begin promptly. The parties are required to hold a Rule 26(f) conference by October 10, and the Initial Case Management Conference is set for October 31. Dkt. 14. Teva's motion-to-dismiss opposition is not due until November 13—more than a month after the Rule 26(f) conference—and Defendants' reply is not due until November 27. Dkt. 42. A discovery stay would be unwarranted and prejudicial.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *SVB Fin. Grp. v. Fed. Deposit Ins. Corp.*, 2024 WL 1898439, at *1 (N.D. Cal. Apr. 29, 2024). To the contrary, a blanket stay of discovery "is directly at odds with the need for expeditious resolution of litigation." *Gray*, 133 F.R.D. at 40. Courts in the Northern District apply a two-pronged test to determine whether discovery should be stayed pending resolution of a dispositive motion. *See, e.g., Singh v. Google, Inc.*, 2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016). First, "a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003). Second, "the court must determine whether the pending dispositive motion can be decided absent additional discovery." *Id.* at 352. "[I]f either prong of this test is not established, discovery proceeds." *Id.*

## ARGUMENT

**I.    DEFENDANTS' FORTHCOMING MOTION TO DISMISS IS NOT POTENTIALLY DISPOSITIVE.**

Defendants begin with a faulty premise. They insist that the Court need not consider whether they will "ultimately prevail" on their yet-to-be-filed motion to dismiss, so long as their motion will

be "*potentially* dispositive." (Dkt. 47 ("Mot.") 4.) Defendants cite *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 2020 WL 2843369, at *3 (N.D. Cal. Apr. 10, 2020), and *Tavantzis v. Am. Airlines, Inc.*, 2024 WL 812012, at *2 (N.D. Cal. Feb. 23, 2024), but those cases do not support Defendants' argument. In *Reveal Chat*, the court explained that a discovery stay is warranted "when the district court is 'convinced that the plaintiff will be unable to state a claim for relief,'" and ultimately stayed discovery after concluding that the defendant raised "strong arguments, which could prove difficult for Plaintiffs to overcome, even considering that leave to amend is freely given." 2020 WL 2843369, at *1-3. In *Tavantzis*, the court repudiated the position Defendants take here, explaining that "[t]o the extent [defendant] seems to imply that an assessment of whether a motion is 'potentially dispositive' does not require looking into the merits of the motion … this implication is incorrect." 2024 WL 812012, at *2. The court then denied the motion to stay because it was evident that the defendant's motion to dismiss presented "contested issues" that would need careful consideration. *Id.* Similarly, in *SVB Financial Group*, the court held that a "'preliminary peek' still requires the Court to consider the merits of the motion to dismiss," and then denied a stay because the defendant's motion to dismiss involved "contested issues [that] will require careful consideration and are subjects of reasonable dispute." 2024 WL 1898439, at *2-3. Ultimately, to obtain a stay, Defendants must make a "strong showing" that "convince[s]" the Court that Teva will be "unable to state a claim for relief." *Id.* at *1. "This is an onerous standard to meet—'[g]enerally there must be no question in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort.'" *Arellano v. Calderon*, 2023 WL 4568772, at *2 (S.D. Cal. July 14, 2023).

Defendants cannot make that showing. For starters, Teva's opposition to the forthcoming motion to dismiss is not due until November 13—more than a month from the date of this filing. Without the benefit of Teva's opposition, the only way Defendants could satisfy their "heavy burden" to stay discovery would be to show that Teva's Amended Complaint is "utterly frivolous, or filed merely in order to conduct a 'fishing expedition' or for settlement value." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 2018 WL 1569811, at *1 (N.D. Cal. Feb. 16, 2018); *Barrett v. Apple Inc.*, 2020 WL 13815568, at *2 (N.D. Cal. Oct. 22, 2020) ("In the absence of a clear showing that dismissal is likely, the Court declines to make a premature determination on the merits of the motion to dismiss

3

before Plaintiff has even filed its response. Thus, the mere possibility that the pending motion is dispositive of the suit only 'superficially satisfie[s]' the first factor."). Defendants do not even argue (nor could they) that Teva's case is "utterly frivolous." A stay should be denied for this reason alone.

Moreover, Defendants' motion is simply a drive-by summary of their anticipated motion to dismiss, amounting to "no more than … conclusory [arguments] that their motion[] to dismiss … will succeed." *Gray*, 133 F.R.D. at 40. That is insufficient. *Id.* And that is not saved by their extensive and improper use of "incorporation by reference." (*See* Mot. 4-7 (repeatedly citing "C. MTD at [_]" and "O. MTD at [_]"); Standing Order re Civil Cases § IV.D (forbidding incorporation by reference).)

In any event, it is clear from Teva's allegations that Defendants' dismissal arguments are highly unlikely to succeed—and, at minimum, "will require careful consideration and are subjects of reasonable dispute," such that discovery should proceed. *SVB Fin. Grp.*, 2024 WL 1898439, at *3. Teva will refute Defendants' arguments at greater length when it formally opposes their motion to dismiss, but even a peek at the merits reveals deep flaws in Defendants' arguments. For example:

**<u>Statute of Limitations</u>:** Defendants argue that a four-year statute of limitations bars Teva's exclusive dealing, Orange Book listing, and sham litigation claims. These arguments will not succeed. As an initial matter, "statute of limitations defenses often require a fact-intensive investigation that is inappropriate on a motion to dismiss." *24/7 Customer, Inc. v. 24-7 Intouch*, 2015 WL 1522236 at *4 (N.D. Cal. Mar. 31, 2015). Regardless, Defendants' statute of limitations arguments are far off-base.

Most fundamentally, Defendants overlook that Teva's generic Korlym product did not enter the market until January 2024, and was *legally forbidden* from entering the market until it obtained FDA approval in August 2020. (¶¶45, 77, 123.) As a result, Teva had no cause of action to challenge Defendants' exclusive dealing agreement until January 2024, and could not possibly have had a cause of action before August 2020, because under the antitrust laws, "a cause of action" only "accrues" when a plaintiff "feels the adverse impact of an antitrust conspiracy." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971). The exclusive dealing agreement has injured Teva by "blocking Teva's access to the key distribution channel and cutting off patients from accessing Teva's lower-priced generic product." (¶5.) But that "injury" was not inflicted until Teva entered the market and felt the effects of the exclusive dealing agreement, and *could not have been inflicted* during a time

when Teva was legally forbidden from being on the market. *Cf. Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2451 (2024) ("[A] cause of action accrues 'on the date that damage is sustained and not the date when causes are set in motion which ultimately produce injury.'" (brackets omitted)). Teva's cause of action thus did not accrue until January 2024, and could not possibly have accrued before August 2020. Either way, this lawsuit—filed in June 2024—is timely.

For the same reason, Teva could not have challenged Defendants' exclusive dealing agreement before its product was on the market—and certainly not before it had FDA approval—because Teva would not have been able to allege causation or antitrust injury, which again proves that Teva's cause of action accrued within the limitations period. *E.g.*, *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 10674453, at *2-3 (C.D. Cal. May 15, 2009) ("To state any substantive antitrust claim, Amphastar must allege that Aventis caused it antitrust injury. To suffer antitrust injury, Amphastar must be 'an actual competitor or one ready to be a competitor.'… However, Amphastar is presently excluded from the market because it lacks FDA approval…. Therefore, … Amphastar does not plead causation and antitrust injury."); *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711 (9th Cir. 2003) ("Only an actual competitor or one ready to be a competitor can suffer antitrust injury."); *Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223, 237 (3d Cir. 2013) ("Ethypharm did not suffer antitrust injury because it does not and indeed cannot compete in the United States fenofibrate market, unless and until it acquires the required FDA approval to do so. As a result, Ethypharm lacks antitrust standing to sue Abbott."); *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (similar); *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (similar).

Teva also could not have challenged Defendants' exclusive dealing agreement before it obtained FDA approval and entered the market, because a lawsuit before then would have been too speculative to support a cause of action. *E.g.*, *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1204-05 (9th Cir. 2014) ("At the time of the adoption of the 2003 license, Samsung was not in the SD card market, and neither Samsung nor the SD Defendants could have known for certain whether Samsung would enter that market…. Because the harm to Samsung challenged in this suit was speculative at the time of the initial wrong, the law of limitations in federal antitrust actions allowed Samsung to file suit once the harm crystallized in 2006 [*i.e.*, when Samsung entered the market].");

*Oliver v. SD-3C LLC*, 751 F.3d 1081, 1087 (9th Cir. 2014) (statute of limitations did not run until plaintiff entered the market because antitrust suit before then would have been too speculative).

On top of all that, Defendants have taken multiple actions to restart the limitations period on their exclusive dealing agreement. First, they have amended their agreement "three times since 2017," changing the terms each time, including twice in 2022 and a comprehensive amendment in 2024. (¶¶138, 143 & n.111.) Each amendment restarted the limitations period. *Samsung*, 747 F.3d at 1204 (statute of limitations restarts "when conspirators continue to meet to fine-tune their cartel agreement"). Second, Defendants took actions to enforce their exclusive dealing agreement when, on May 1, 2024, representatives from Optime refused to "entertain a bid from Teva, even though Optime could potentially make more money by distributing Teva's generic," because, Optime explained, "the exclusivity provisions" of Defendants' agreement forbade Optime from distributing Teva's product, "no matter what terms Teva might propose." (¶139.) That was an "overt act" that restarted the limitations period. *Samsung*, 747 F.3d at 1203-04 ("[A]n action taken under a pre-limitations contract [is] sufficient to restart the statute of limitations so long as the defendant had the ability not to take the challenged action, even if that would have required breaching the allegedly anti-competitive contract…. We have repeatedly held that acts taken to enforce a contract were overt acts that restarted the statute of limitations."). Third, the limitations period restarted every time Defendants took actions to "steer" patients to Optime, *id.* at 1203, which they have done—and continue to do—through a variety of ongoing tactics Teva has alleged in detail. (*E.g.*, ¶¶150-56, 161-66, 167-87.)

A similar analysis forecloses Corcept's statute of limitations arguments with respect to Teva's Orange Book and sham litigation claims. For one, as explained above, filing suit before Teva had FDA approval and entered the market would have been too speculative to support a cause of action, and would have failed for lack of antitrust injury and causation. *E.g.*, *Samsung*, 747 F.3d at 1204-05; *Oliver*, 751 F.3d at 1087; *Aventis*, 2009 WL 10674453, at *2 (holding that in pharmaceutical industry, "*any* substantive antitrust claim" by competitor would fail where competitor "lacks FDA approval"); *Ethypharm*, 707 F.3d at 230, 237 (holding that a competitor's "antitrust and sham litigation claims" fail for lack of antitrust standing "unless and until it acquires … FDA approval"). Separately, "an antitrust claim based on baseless litigation requires proof that the litigation was unsuccessful, which

can only be determined upon the termination of the initial action." *Chemi SpA v. GlaxoSmithKline*, 356 F. Supp. 2d 495, 500 (E.D. Pa. 2005). Here, it was only in January 2021 that Corcept voluntarily dismissed its claims under the two patents that were improperly listed in the Orange Book, and only in December 2023 that Teva prevailed on the patents that went to trial. (¶¶113, 121.) In addition, between 2018 and 2023, Corcept filed four lawsuits against Teva asserting nine different patents, voluntarily dismissed *seven* of those patents, lost on the remaining two, and "strategically tim[ed] each lawsuit to maximize delay." (¶120; *see* ¶¶113-22.) Each lawsuit was a sham in its own right—and whether viewed individually, or as "a series of lawsuits" brought "without regard to the merits and for the purpose of injuring a market rival," *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005), each lawsuit was an "overt act" that restarted the limitations period on all of Teva's Orange Book and sham litigation claims, *see Samsung*, 747 F.3d at 1202-03. The same is true of Defendants' acts to "steer" patients to Optime, and their amendment and enforcement of their exclusive dealing agreement, all of which are "new and independent act[s]" that have "inflict[ed] new and accumulating injury" on Teva, exacerbating the harms inflicted by Corcept's Orange Book and sham litigation misconduct. *Samsung*, 747 F.3d at 1203-04. These claims are therefore timely.

**Antitrust Injury:** Corcept argues that Teva's Orange Book and sham litigation claims also fail for lack of antitrust injury, because Corcept asserts that other causal factors may have contributed to the delayed entry of Teva's generic. (Mot. 4-5.) These arguments ignore well-pled allegations in the Amended Complaint. (*E.g.*, ¶¶78-81 & n.51 (alleging that Corcept forfeited its orphan drug exclusivity, and even if not, its Orange Book fraud still delayed Teva's FDA approval by 18 months).) At minimum, these arguments raise disputed issues of fact that would not succeed even at summary judgment or trial, much less on a motion to dismiss. *E.g.*, *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509 (9th Cir. 1985) (holding antitrust plaintiff "need not rule out 'all possible alternative sources of injury,'" and that "antitrust violation need not be the 'sole' cause of the injury for causation to exist"); *Solinger v. A&M Recs., Inc.*, 586 F.2d 1304, 1309 (9th Cir. 1978) (antitrust plaintiffs are "generally entitled to go to the jury on the violation and injury issues").

**Plausibility:** Defendants contend that Teva's exclusive dealing, bribery, and sham litigation claims will fail because Teva's factual allegations are implausible. These arguments are highly

unlikely to succeed. Teva has advanced detailed factual allegations that the relevant product market is the market for Korlym and its AB-rated generic equivalents. (¶¶188-201.) Defendants do not challenge that allegation; nor could they. *E.g.*, *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA*, 296 F. Supp. 3d 1142, 1171 (N.D. Cal. 2017) (holding that "in the pharmaceutical context courts have limited the market to . . . the brand product itself in absence of cross-elasticity evidence"). Teva's generic has been unable to gain a toehold in that market, despite months of vigorous efforts to compete through alternative channels and a materially lower price than Corcept's brand product—in stark contrast to the near-universal experience of pharmaceutical markets, where a first generic typically captures "60-75% or more of the market within the first six months, and usually more than 80% within the first year." (¶124; *see* ¶¶125-66.) And Teva has alleged in great detail that Defendants' express exclusive dealing agreement is unheard-of in the pharmaceutical industry, is the product of a coercive relationship between Corcept and Optime, is not incentive-based, is not a short-term agreement, is not easily terminable, and has had a near-100% foreclosure effect in the downstream market for Korlym—which Corcept has boasted about on its earnings calls—due to the economic realities of the Korlym market and Defendants' unlawful tactics. (¶¶135-66.) These fact- and expert-laden allegations describe the exact circumstances that make exclusive dealing agreements anticompetitive. *E.g.*, *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1030 (N.D. Cal. 2015). They are highly likely to survive dismissal and beyond. *E.g.*, *Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp. 2d 1184, 1190 (N.D. Cal. 2005) ("Tele Atlas' exclusive dealing claims are sufficiently detailed to survive NAVTEQ's motion."); *Tevra Brands LLC v. Bayer HealthCare LLC*, 2024 WL 1909156, at *7-11 (N.D. Cal. May 1, 2024) (exclusive dealing claim survived summary judgment despite disputes about terminability of contract, effectiveness of alternative distribution channels, and foreclosure share).

Similarly, with respect to Teva's Orange Book and sham litigation claims, Teva has advanced detailed factual allegations that Corcept knew—and has publicly admitted—that two of its patents were improperly listed in the Orange Book, and that Teva's generic Korlym did not infringe them because they did not "read on the Korlym label," and that none of its other seven patents gave rise to a reasonable, good-faith infringement claim, but that Corcept brought all of those lawsuits anyway

without regard to the merits and for the purpose of delaying Teva's FDA approval and launch. (¶99; ¶¶101-22.) These allegations describe textbook examples of "'improper means' of maintaining [monopoly] power." *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1, 7 (1st Cir. 2020).

Likewise, Teva's Amended Complaint includes detailed and specific allegations of Corcept's suspicious payments to physicians and non-physicians to shore up its monopoly and induce continued prescribing of its higher-priced brand product. (¶¶167-87.) These bribery and kickback allegations are based on in-depth analysis of publicly available data (¶¶171-84), and are more than plausible enough to survive a motion to dismiss, particularly given their support in reports from journalists, confidential witnesses, and an ongoing federal investigation into Corcept's payments to prescribers by the U.S. Attorney's Office for the District of New Jersey (¶¶169-70, 179-80, 185). *E.g.*, *United States, ex rel. Solis v. Millennium Pharms., Inc.*, 2015 WL 1469166, at *7 (E.D. Cal. Mar. 30, 2015) ("The SAC plainly makes averments [regarding bribery and kickbacks] that survive a pleadings challenge.").

**Additional Grounds for Relief:** The allegations described above establish ongoing harms that will entitle Teva to injunctive relief, damages, restitution, and unjust enrichment remedies under the laws of California and other states, in addition to injunctive relief and damages under federal law.

* * *

Teva will only strengthen the above arguments when it opposes Defendants' forthcoming motion to dismiss. But this analysis makes clear—even before Teva does so—that dismissal in this case is highly unlikely. At minimum, Defendants have not made a "strong showing" that Teva will be "unable to state a claim for relief," as Defendants must do to stay discovery. *Tavantzis, Inc.*, 2024 WL 812012, at *1. And even if Defendants *were* likely to prevail on their motion to dismiss after full briefing and argument, a stay of discovery still would not be warranted because Teva's allegations could be amended to cure any defects. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Absent a showing that leave to amend would be denied, courts routinely refuse to stay discovery. *E.g.*, *SVB Fin. Grp.*, 2024 WL 1898439, at *3; *Singh*, 2016 WL 10807598, at *2.

II. **DEFENDANTS' MOTION TO DISMISS WILL RAISE FACT ISSUES THAT REQUIRE DISCOVERY.**

To satisfy the second prong of the test for a stay, Defendants merely assert that their motion to dismiss will be based solely on the allegations in Teva's Amended Complaint. But "granting a stay

on such a basic notion is unwarranted." *Optronic*, 2018 WL 1569811, at *2. Moreover, as illustrated above, Defendants' arguments raise a host of fact-intensive inquiries that cannot be resolved in Defendants' favor and require discovery, including the foreclosure effect of Defendants' exclusive dealing agreement, the sham nature of Corcept's patent infringement lawsuits, and whether Corcept has been paying bribes and kickbacks to prescribers to undermine competition from Teva.

### III. NO BURDEN ON DEFENDANTS OUTWEIGHS TEVA'S RIGHT TO DISCOVERY.

Defendants must make a "particularized showing" of burden that would "outweigh the interests of [Teva], the public, and the Court ensuring the expeditious resolution of litigation." *SVB Fin. Grp.*, 2024 WL 1898439, at *4. Defendants have not done so. Defendants simply assert that "discovery in antitrust cases is extremely time-consuming and costly." (Mot. 8.) That boilerplate observation is insufficient. As a general rule, "the costs and burdens of antitrust discovery do not erect an automatic barrier to discovery in every case in which an antitrust defendant challenges the sufficiency of a complaint." *In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013). Instead, courts have stayed discovery in antitrust cases involving "sprawling multidistrict litigation or a class action." *Optronic*, 2018 WL 1569811, at *2. This case is neither, and Defendants "offer[] no particular or specific facts" to show that discovery *in this case* would be unjustifiably burdensome. *Singh*, 2016 WL 10807598 at *2. Further, Corcept's "concerns regarding confidential, private and proprietary documents may be addressed by a protective order." *Nat'l Union Fire Ins. Co. v. Res. Dev. Servs., Inc.*, 2010 WL 3746290 at *2 (N.D. Cal. Sept. 18, 2010).

Teva, by contrast, would suffer prejudice if discovery is delayed. For one, "stays are disfavored where, as here, the plaintiff seeks an award of injunctive relief." *Pedro v. Millennium Prods., Inc.*, 2016 WL 3029681, at *6 (N.D. Cal. May 27, 2016). Further, a stay would prejudice Teva because the passage of time increases the likelihood that evidence will be lost, destroyed, or altered. *Roule v. Petraeus*, 2012 WL 2367873, at *5 (N.D. Cal. June 21, 2012). A stay would also prevent Teva from obtaining discovery to file more detailed allegations, if necessary. These concrete interests far outweigh Defendants' vague, unsubstantiated concerns. *SVB Fin. Grp.*, 2024 WL 1898439, at *4.

### CONCLUSION

Defendants' motion should be denied in full.

| | |
|---|---|
| Dated: October 1, 2024 | Respectfully submitted, |
| | By: */s/ Devora W. Allon* |
| | Michael Shipley<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street, 37th Floor<br>Los Angeles, California 90071<br>Tel: (213) 680-8400<br>michael.shipley@kirkland.com |
| | Devora W. Allon, P.C.<br>Kevin M. Neylan, Jr.<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>(212) 446 5967<br>devora.allon@kirkland.com<br>kevin.neylan@kirkland.com |
| | *Attorneys for Plaintiff*<br>*Teva Pharmaceuticals USA, Inc.* |

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Devora Allon, attest that concurrence in the filing of this document has been obtained.

*/s/ Devora W. Allon*
Devora W. Allon

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2024, I caused to be filed the foregoing document with the United States District Court for the Northern District of California using the CM/ECF system and caused it to be served on all registered participants via notice of electronic filing.

*/s/ Devora W. Allon*
Devora W. Allon