Michael Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
555 South Flower Street, 37th Floor
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*Pro Hac Vice*)
Kevin M. Neylan, Jr. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Robert W. Stone (Bar No. 163513)
 robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Fax:              (650) 801-5100

*Attorneys for Defendant Corcept Therapeutics, Inc.*

DUANE MORRIS LLP
Lucas C. Wohlford (admitted *Pro Hac Vice*)
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail: lwohlford@duanemorris.com

*Attorney for Defendant Optime Care Inc.*

[Additional Counsel Listed On Signature Page]

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No.  5:24-cv-03567-BLF <br><br> **JOINT CASE MANAGEMENT STATEMENT & RULE 26(f) REPORT; [PROPOSED] ORDER** <br><br> Date:     October 31, 2024 <br> Time:     9:00 a.m. <br> Ctrm:     3 – 5th Floor <br> Judge:    Honorable Beth Labson Freeman |

Plaintiff Teva Pharmaceuticals USA, Inc. and Defendants Corcept Therapeutics, Inc. and Optime Care Inc. jointly submit this JOINT CASE MANAGEMENT STATEMENT, RULE 26(f) REPORT, & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California, Civil Local Rule 16-9, and Federal Rule of Civil Procedure 26(f).

1.      **JURISDICTION & SERVICE**

The complaint includes a claim under the federal antitrust laws, 15 U.S.C. §§ 1, 2, 15(a), and 26, giving rise to subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337. The Court also has subject matter jurisdiction under 28 U.S.C. § 1367 of state law claims that are so related to the federal law claims as to form part of the same case or controversy.

The parties agree that there are no issues regarding jurisdiction, venue, or service at this time. No parties remain to be served at this time.

2.      **FACTS**

The parties set forth below their respective statements as to the main factual issues in dispute.

A.      **Plaintiff's Position**

The FDA granted Korlym orphan drug status on July 5, 2007.  On February 17, 2012, the FDA approved Corcept's New Drug Application for Korlym as a treatment for endogenous Cushing's syndrome.  Corcept launched Korlym in 2012.

On December 30, 2014, Corcept obtained the '348 patent and thereafter listed it in the Orange Book on January 27, 2015.  Further, on November 28, 2017, Corcept obtained the '495 patent and thereafter listed it in the Orange Book on November 28, 2017.  Neither of these patents had any connection to Korlym, and Corcept listed them only to delay generic entry – which it did with respect to Teva's ANDA.

On August 4, 2017, Corcept entered into a highly unusual, long term, exclusive-dealing agreement with Optime, a specialty pharmacy, to distribute Korlym.   The Agreement was subsequently amended on August 1, 2022, and September 16, 2022.  Unredacted versions of these amendments are not publicly available, but publicly available redacted versions indicate that these amendments made numerous adjustments to the terms of Corcept and Optime's relationship, including revising the fees, services, and other obligations Corcept and Optime owed each other in connection

1

with the distribution of Korlym.  A further amendment dated April 1, 2024 comprehensively "amend[ed] and restate[d] the 2017 Distribution Services Agreement in its entirety."  An unredacted version of the Agreement is not publicly available, but a publicly available redacted version indicates that the Agreement has a current term that runs until March 31, 2027, with automatic renewal for successive three-year terms after that, and that it expressly forbids Optime from distributing any rival Korlym products, including Teva's generic.

On December 15, 2017, Teva filed its ANDA seeking FDA approval of a generic version of Korlym, which included a Paragraph IV certification with respect to the '348 and '495 patents. Concept sued Teva for infringing the '348 and '495 patents in the D.N.J. on March 15, 2018, thereby triggering a 30-month stay of FDA approval for Teva's generic drug.  As such, Teva's ANDA received a tentative approval on October 12, 2018, and received a final approval in August 2020, after the expiry of the 30-month stay period.

Knowing that its patents had no connection to Korlym, Concept continued its sham litigation against Teva to delay its generic entry.  This included asserting nine different patents against Teva in four separate lawsuits filed between 2018 and 2023, which were strategically timed to maximize delay. Concept then went on to voluntarily dismiss suits asserting seven of these patents.  As regards the remaining two asserted patents, on December 29, 2023, Judge Bumb ruled in Teva's favor, holding that Teva's generic did not infringe either of them.  Concept's improper Orange Book listings and sham litigations had the effect of delaying Teva's FDA approval and launch by several years.

Teva launched its generic Korlym on January 19, 2024 at a material discount to Concept's brand Korlym.  However, since its launch, Teva's market share has been close to zero—approximately 1% of the market.  That result would be unheard-of in a properly functioning, competitive pharmaceutical market, where a first generic typically captures 60-75% or more of the market within the first six months, and usually more than 80% within the first year.  Teva's inability to effectively threaten Concept's monopoly in the market for Korlym is because of Concept's exclusive-dealing agreement with Optime, the only pharmacy that has distributed brand Korlym since 2017.  Because Optime has long been the only pharmacy dispensing brand Korlym, Concept and Optime have successfully established an entrenched distribution channel that makes it exceedingly difficult for

rivals to challenge Corcept's monopoly position through alternative means.  Corcept and Optime are now using their exclusive-dealing agreement to prevent rivals like Teva from making inroads on Corcept's monopoly.  Teva's experience shows that this anticompetitive strategy has worked as intended.

To further solidify physicians' use of brand Korlym and to undermine competition from Teva, significant evidence indicates that Corcept has also engaged in a years-long campaign to induce prescribers to select brand Korlym in exchange for bribes and kickbacks.  These suspected practices have been reported on by independent journalists, and are the subject of an ongoing investigation by the United States Attorney's Office for the District of New Jersey.

Through a combination of these tactics, Corcept continues to maintain its illegal monopoly over the market for Korlym, leading to multiple antitrust violations.  By entering into an exclusive-dealing agreement with Corcept, Optime is assisting it with maintaining this monopoly.

**B.     Defendants' Position**

Corcept is a small, innovative pharmaceutical company committed to pioneering novel treatments for serious disorders and providing patients and physicians with the support they need to use those treatments optimally.  Corcept has so far brought one product to market, Korlym, which was the first drug approved by the FDA to treat certain patients with endogenous Cushing's syndrome. Cushing's syndrome—also called hypercortisolism—is a rare disease that can debilitate patients; tragically, Cushing's can sometimes even cause death.  Corcept's Korlym treats certain patients with Cushing's and can drastically improve their quality of life.  In recognition of Corcept's willingness to focus on treatments for a small patient population and a rare disease, the FDA awarded Corcept with seven years of marketing exclusivity, which ran from February 2012 to February 2019.  Corcept primarily distributes Korlym through Optime, a small specialty pharmacy based in Missouri.

Teva is a global generic pharmaceutical behemoth—the largest generic pharmaceutical company in the world—which sells 3,600 different drug products, produces nearly 76 billion tablets and capsules a year, operates 53 facilities in more than 33 countries, and makes billions of dollars a year.  Coasting on Corcept's years of hard work, Teva in January 2024 launched a generic drug that competes with Corcept's Korlym.  Teva's generic has apparently flopped, and, despite being many times the size of

Corcept, Teva now seeks to blame Corcept and Optime (a pharmacy with whom Teva apparently would like to—but does not—deal) with this baseless lawsuit.

Teva primarily challenges Corcept's listing of certain patents in an FDA publication called "the Orange Book," its assertion of patents in underlying patent infringement litigation in the District of New Jersey, its relationship with Optime, and its routine payment of legally permissible speaker and other fees to certain prescribers and practitioners.  Teva's claims against Corcept and Optime lack factual and legal merit.  As Corcept and Optime explain in their joint motion to dismiss (ECF No. 55), each and every one of Teva's claims—and this case—should be dismissed with prejudice.

Teva's "Orange Book" allegations are based on Corcept's listing of the '348 and '495 patents in the Orange Book—conduct that Teva admits occurred years ago (in January 2015 and November 2017, respectively).  But the Hatch-Waxman Act and FDA regulations *require* brand manufacturers like Corcept to identify the patents associated with their drug and its uses, so that information can be listed in the Orange Book and generic manufacturers can understand the scope of the brand manufacturer's regulatory and patent protections in assessing whether to launch a competing generic.  During this period, Teva was separately prohibited from launching its generic due to a different regulatory bar: Corcept's FDA-awarded Orphan Drug Exclusivity.  And even after that exclusivity ended and even after Teva received final FDA approval, Teva chose to wait years to launch its generic.

Reflecting Corcept's research, development, and inventorship, the U.S.P.T.O. has awarded Corcept a number of patents.  When necessary, Corcept has—like many other intellectual property holders—sought to enforce its hard-earned patents, including against Teva.  The Hatch-Waxman Act encourages a brand manufacturer (like Corcept) to bring infringement litigation "in order to preserve" its rights vis-à-vis generic manufacturers (like Teva).  *In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 132, 158 (3d Cir. 2017); *Kaiser Found. Health Plan, Inc. v. Abbott Lab'ys, Inc.*, 552 F.3d 1033, 1047 (9th Cir. 2009).  And the First Amendment immunizes the filing of such lawsuits from antitrust liability as protected activity in all but the rarest of circumstances.  *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 56–57 (1993).  While Teva now belatedly challenges Corcept's assertion of its patents against Teva in consolidated infringement litigation that Corcept first filed years ago in 2018, such exceptional circumstances are not present here.  Indeed, several of

1   Corcept's claims in the underlying patent litigation survived both a motion to dismiss and a motion

2   for summary judgment by Teva; some even proceeded all the way to trial.

3          Teva's claims regarding Corcept's relationship with Optime also miss the mark.  Corcept first

4   entered into a distribution agreement with Optime years ago in 2017, which has been subsequently

5   renewed.   The antitrust laws generally permit alleged "exclusive dealing" agreements, and the

6   Supreme Court, Ninth Circuit, and other courts across the country have lauded the often ***pro-***

7   ***competitive*** benefits of such arrangements.  In any case, Optime is but one small "specialty" pharmacy,

8   and Teva remains free to (and does) distribute its generic through any number of pharmacies like CVS

9   and Walgreens, as well as through wholesalers.  Indeed, Teva ***boasts*** that its generic "is available and

10  stocked at all major national wholesalers and a specialty wholesaler," is available to "all major national

11  specialty pharmacies, several regional specialty pharmacies, and several other national retail

12  pharmacies," and has "pricing" on "government contracts."  FAC ¶ 158.

13         Teva's "bribes and kickback" allegations are similarly implausible.  Like virtually every other

14  pharmaceutical company, Corcept sometimes makes certain payments to prescribers and practitioners

15  for speaker, consulting, honorarium, and similar activities as part of efforts to educate the market about

16  its medication and the conditions that it treats.  Teva itself makes similar payments and defends them

17  as lawful and ultimately beneficial in increasing education, awareness, and treatment.  None of Teva's

18  innuendo demonstrate anything other than that Corcept makes the same payments as does Teva and

19  countless other pharmaceutical companies.

20  **3.     LEGAL ISSUES**

21         Plaintiff's Complaint asserts seven causes of action, including: (1) monopolization under 15

22  U.S.C. § 2; (2) attempted monopolization under 15 U.S.C. § 2; (3) exclusive dealing under 15 U.S.C.

23  § 1; (4) alleged violation of California's Bus. & Prof. Code § 17200; (5) alleged violation of

24  California's Bus. & Prof. Code § 16600; (6) alleged violation of various state antitrust and consumer

25  protection laws; and (7) unjust enrichment.

26         The case is currently at the pleading stage.  Plaintiff filed its operative first amended complaint

27  on September 13, 2024 (ECF No. 39).  Defendants on October 14, 2024 filed their joint motion to

28  dismiss with prejudice (ECF No. 55).  Defendants' motion raises legal issues, including:

- Whether Plaintiff's claims are time barred;

- Whether Plaintiff pleaded facts sufficient to plausibly establish antitrust injury;

- Whether Plaintiff pleaded facts sufficient to plausibly establish harm to competition;

- Whether Plaintiff pleaded facts sufficient to plausibly establish that Corcept pursued sham patent litigation against Plaintiff;

- Whether Plaintiff pleaded facts sufficient to plausibly establish that Teva's sham patent litigation claims are not otherwise barred by *Noerr-Pennington* immunity;

- Whether Plaintiff pleaded facts sufficient to plausibly establish that Corcept's alleged payments to physicians and practitioners are improper "bribes";

- Whether Plaintiff pleaded facts sufficient to plausibly establish that Corcept's alleged payments to physicians and practitioners unlawfully harmed competition;

- Whether Plaintiff pleaded facts sufficient to state a claim under California's Unfair Competition Law;

- Whether Plaintiff pleaded facts sufficient to state a claim under California's Bus. & Prof. Code § 16600;

- Whether Plaintiff pleaded facts sufficient to state a claim under various state antitrust and consumer protection laws;

- Whether Plaintiff pleaded facts sufficient to state a claim based on unjust enrichment.

Defendants have not answered the first amended complaint, as they filed a joint motion to dismiss with prejudice. The parties may identify other legal disputes to the extent the case progresses.

## 4.    MOTIONS

On August 26, 2024 Defendants each filed a motion to dismiss and a motion to stay discovery. ECF Nos. 34, 35, 36, 37. On September 9, 2024, Plaintiff filed an opposition to Defendants' motions to stay discovery. ECF No. 38. On September 13, 2024, Plaintiff filed its first amended complaint, and on September 16, 2024, the Court terminated Defendants' motions to dismiss and to stay discovery as moot. ECF Nos. 39, 40.

On September 26, 2024, Defendants moved to stay discovery pending the Court's resolution of Defendants' motion to dismiss the first amended complaint. ECF No. 47. Defendants also proposed

that the Court continue the upcoming October 31, 2024 case management conference until the date that the Court holds a hearing on Defendants' motion to dismiss (now set for February 20, 2025). Plaintiff opposed the motion on October 1, 2024, ECF No. 49, and Defendants filed a reply on October 4, 2024, ECF No. 50.  Defendant's motion to stay discovery is currently pending before the Court.

On October 14, 2024, Defendants filed a motion to dismiss the first amended complaint.  ECF No. 55.  Plaintiff will file its opposition by November 13, 2024, and Defendants will file their reply by November 27, 2024.  ECF No. 42.  Defendants' motion to dismiss is currently set for hearing on February 20, 2025.

Should this case proceed past the pleading stage, each side may move for summary judgment, move to exclude expert testimony, and/or file motions *in limine*, among other potential motions.

## 5.   AMENDMENT OF PLEADINGS

### A.   Plaintiff's Position

Plaintiff amended its complaint on September 13, 2024.  Plaintiff is not currently anticipating additional amendments, but reserves its right to amend in response to a ruling on the pending motion to dismiss and further as discovery proceeds.  Plaintiff proposes that the deadline to amend pleadings be co-extensive with the close of fact discovery.  Plaintiff does not dispute that any such amendments would have to satisfy the requirements of Rule 15.

### B.   Defendants' Position

In filing its first amended complaint, Teva amended its original complaint in response to the many defects that Defendants identified in their prior motions to dismiss.  Defendants would oppose any leave for Teva to amend its first amended complaint for the reasons Defendants set forth in their joint motion to dismiss.  To the extent that Teva seeks to amend further, Defendants submit that Teva should, at the least, be required to move for leave to amend pursuant to Rule 15 and demonstrate that such amendment is warranted, including in satisfaction of the factors articulated in *Foman v. Davis*, 371 U.S. 178, 182 (1962).

To the extent that the Court is inclined to set a deadline to amend pleadings, Defendants submit that deadline should be sufficiently *in advance of* the close of fact discovery.  If—by proposing a deadline to amend pleadings that is "co-extensive" with the close of fact discovery—Teva means to

suggest that the deadline to amend pleadings should be ***on the same day*** that discovery closes, Defendants oppose that proposal. Under such a proposal, Teva could freely add entirely new theories, causes of action, or even parties on the very last day of fact discovery, preventing Defendants from being able to adequately prepare their defenses through any additional discovery that may be necessary in response to Teva's amendment (since fact discovery would close that same day). Teva should not be allowed to further amend since it has already had two bites at the apple; in any event, any case schedule must ensure the pleadings close timely as a matter of fairness and to prevent gamesmanship.

## 6.    EVIDENCE PRESERVATION

The parties have conferred about preserving evidence and have informed one another that they have appropriate litigation holds in place to preserve relevant evidence. The parties have also reviewed the Guidelines Relating to the Discovery of Electronically Stored Information. At this time, the parties are not aware of any ESI issues that may arise in this case, but they will address those to the Court if they do arise and cannot be resolved by the parties.

## 7.    DISCLOSURES

Absent a stay pursuant to Defendants' pending motion to stay discovery, the parties have agreed to exchange Rule 26 Initial Disclosures on or before October 24, 2024.

## 8.    DISCOVERY

### A.    Discovery to Date

#### 1.    Plaintiff's Position

Plaintiff served Requests for Production on Corcept and Optime on October 3, 2024 pursuant to Federal Rule Civil Procure 26(d)(2). The parties agree that Plaintiff's RFPs are considered served as of October 8, 2024, the date of the parties' Rule 26(f) conference.

Plaintiff served a first set of interrogatories on Corcept and Optime on October 10, 2024. Responses for those interrogatories are due pursuant to Rule 33(b)(2).

Defendants have not propounded any discovery to date.

#### 2.    Defendants' Position

Teva has already served voluminous discovery requests on both Corcept and Optime. On October 3, 2024, Teva served its first set of document requests, consisting of 231 separate requests

(139 to Corcept, and 92 to Optime), covering all aspects of Defendants' businesses and operations, and going back years to 2012.  On October 10, 2024, Teva served its first set of interrogatories, consisting of 31 separate requests (16 to Corcept, 15 to Optime, and with many distinct sub-parts), which are largely "contention" interrogatories that are premature at this early beginning of the case.

Defendants have moved to stay discovery pending the resolution of their joint motion to dismiss.  For the reasons specified in their stay motion and reply brief, Defendants submit that a short, limited stay of discovery pending the Court's resolution of the motion to dismiss is appropriate.  ECF Nos. 47, 50.

Defendants' responses to Teva's document requests and interrogatories are currently due November 7 and 12, 2024.  Absent a stay, Defendants anticipate serving responses and objections on those dates.

**B.      Scope of Anticipated Discovery**

      **1.      Plaintiff's Position**

Plaintiff anticipates discovery including, without limitation, Corcept's listing of the '348 and '495 patents in the Orange Book; Corcept's patent infringement litigations related to Teva's generic Korlym; the exclusive dealing agreement between Corcept and Optime; information about Korlym, including cost, pricing, and transactional data; payments made to any Korlym prescribers; any government investigations related to Korlym, including the ongoing investigation by the U.S. Attorney's Office for the District of New Jersey; and other subjects that come to light as discovery proceeds.

      **2.      Defendants' Position**

As detailed in Defendants' joint motion to dismiss, Teva fails to state even a single claim. Defendants therefore submit that the topics Teva identifies above are not appropriate subjects of discovery unless and until the Court determines that any of Teva's allegations and theories may proceed.  Absent a stay, Defendants will nonetheless respond to Teva's specific discovery requests in accordance with, and in the time specified by, the Federal Rules of Civil Procedure.  Should the Court allow any of Teva's claims to proceed, Defendants anticipate seeking discovery from Teva, including on topics that may be necessary for Defendants to adequately prepare their defenses.

1

**C.      Proposed Limitations or Modifications of the Discovery Rules**

2

The parties do not currently anticipate the need to modify the limitations on discovery set forth

3

in the Federal Rules of Civil Procedure, but respectfully reserve their respective rights to seek relief

4

from such limitations should the need arise later.  Should a dispute arise regarding a party's request to

5

expand discovery limitations in the future, the parties will present that dispute to the Court.

6

**D.      Stipulated E-Discovery Protocol and Protective Order**

7

The parties are currently discussing an e-discovery protocol and a protective order.  Given their

8

pending motion to stay discovery and motion to dismiss, Defendants submit that discovery is

9

premature such that the parties need not, at this time, agree on protocols like a stipulated ESI order or

10

a stipulated protective order.  Plaintiffs disagree, especially given that the triggering event for the

11

opening of discovery has occurred, *see* Fed. R. Civ. P. 26(d)(1), and the Court has not entered any

12

order staying or otherwise delaying discovery.  The parties nonetheless continue to discuss the e-

13

discovery protocol and protective order in parallel; absent a stay, the parties anticipate submitting a

14

stipulated ESI order and a stipulated protective order to the Court in the coming weeks, and if they are

15

unable to reach agreement on those orders, they will present any such dispute to the Court.

16

**E.      Proposed Discovery Plan**

17

The parties discuss their respective positions regarding scheduling in Section 16 below.

18

Defendants submit that the bases for Teva's claims—*e.g.*, Corcept's decisions to list certain

19

patents in the Orange Book, Corcept's underlying patent infringement suits against Teva, the

20

negotiation and performance of the Corcept-Optime deal, and the like—may implicate protected

21

materials (such as attorney-client communications and/or attorney work product).  The parties will

22

confer regarding those and other potential privileges issues as appropriate should they arise, and the

23

parties will submit any such dispute to the Court should they be unable to reach agreement.  The parties

24

do not, at this time, otherwise anticipate any issues relating to claims of privilege or of protection as to

25

trial-preparation materials, and they agree to address any such issues if and when they arise, and to submit

26

any such issue to the Court for resolution should it become necessary to do so.

27

28

JOINT CASE MANAGEMENT STATEMENT & 26(f) REPORT
CASE NO. 3:24-cv-03567-BLF

### F.      Identified Discovery Disputes

Defendants have moved to stay discovery pending resolution of the motion to dismiss.  Plaintiff has opposed the motion.  The parties have not identified any other discovery disputes to date.

### 9.      CLASS ACTIONS

This is not a class action lawsuit.

### 10.      RELATED CASES

There are no "related" cases between the parties now pending in the Northern District of California, as that term is used in N.D. Cal. Civil L.R. 3-12(a).  Corcept and Teva have been engaged in underlying patent litigation in the District of New Jersey, including Case No. 1:18-cv-03632; Case No. 2:19-cv-05066; Case No. 2:19-cv-21384; and Case No. 1:23-cv-01505.  Certain claims and issues from the parties' underlying patent litigation are presently pending before the United States Court of Appeals for the Federal Circuit in *Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA, Inc*., Case No. 24-1346 (Fed. Cir.).

### 11.      RELIEF

#### 1.      Plaintiff's Position

Plaintiff seeks an award of damages, including actual, consequential, compensatory, treble, punitive, and/or other damages, including pre- and post-judgment interest at the statutory rates; equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment; an injunction invalidating the exclusive dealing arrangement between Corcept and Optime, and any other practices by Defendants that effectively and unlawfully stifle competition; and any further legal and equitable relief that the Court may deem just and proper. ECF No. 39.

#### 2.      Defendants' Position

Defendants dispute that Teva is entitled to any relief whatsoever.  Defendants therefore seek that Teva take nothing by its first amended complaint, that each of Teva's causes of action be dismissed with prejudice, and that judgment be entered in favor of Defendants on each of Teva's causes of action. To the extent that any of Teva's claims are allowed to proceed, Defendants reserve their rights to seek additional and other relief and to assert counterclaims against Teva (to the extent warranted).

**12.   SETTLEMENT AND ADR**

There have been no formal ADR efforts to date. Although counsel for the parties have discussed the fact that this matter may ultimately benefit from a mediation by a private mediator, *see* ADR L.R. 3-4(b), the parties agree that it is too early in this case to assess the prospects of settlement. For that reason, counsel for the parties do not believe that an immediate ADR process would be beneficial or productive at this stage of the case. Counsel thus propose deferring the timing and selection of an ADR process until later in the case, such as following completion of some or all discovery or further dispositive motion practice. *See* ADR L.R. 3-5(d)(3).

**13.   OTHER REFERENCES**

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.   NARROWING OF ISSUES**

The parties do not believe that any issues can be narrowed at this time.

**15.   EXPEDITED TRIAL PROCEDURE**

The parties do not believe that this is a case that is suitable for the expedited trial procedure under the Expedited Trial Procedure of General Order No. 64.

**16.   SCHEDULING**

**A.   Plaintiff's Position**

Plaintiff proposes the following dates:

| Deadline | Plaintiff's Proposal |
|---|---|
| Initial Disclosures | October 24, 2024 |
| Fact Discovery Completed | July 24, 2025 |
| Expert Disclosures | August 25, 2025 |
| Rebuttal Experts | September 25, 2025 |
| Reply Experts | October 27, 2025 |
| Discovery Cut-Off | November 26, 2025 |
| Summary Judgment + *Daubert* Motions | December 30, 2025 |
| Summary Judgment + *Daubert* Oppositions | January 30, 2026 |

| Summary Judgment + *Daubert* Replies | February 20, 2026 |
|---|---|
| Summary Judgment + *Daubert* Hearing (per Judge Freeman standing order, should be 21 days after the reply brief and must be at least 90 days before trial) | March 20, 2026 |
| Final Pretrial Conference | May 21, 2026 |
| Trial | June 18, 2026 |

### B.     Defendants' Position

Defendants respectfully submit that it would be premature to set a case schedule at this time. Defendants have moved to dismiss each of Teva's claims, and it is unclear which, if any, of Teva's causes of actions and theories may be allowed to proceed.  Defendants' motion is also set for hearing several months from now, on February 20, 2025.   While Defendants respectfully submit that any dismissal should be with prejudice and that Teva should not be given further leave to amend, the Court may provide Teva further leave to amend, which may, in turn, necessitate further motion practice after that, and a hearing some time after that.  All of this means it could well be months before the ultimate scope of this case (if any) is settled.  That has real ramifications for both the parties and the Court, including because it could well affect what topics and time periods are proper subjects of discovery (and which are not), in turn affecting the time needed for discovery, as well as when it would be appropriate to brief dispositive motions and hold any trial.  Accordingly, Defendants respectfully believe the Court should hold off on setting a case schedule until and if it finds Teva plausibly states any claims.

### 17.     TRIAL

Plaintiff has requested a jury trial.

#### 1.     Plaintiff's Position

Plaintiff estimates that the trial will last approximately 14 days after a jury is empaneled.

#### 2.     Defendants' Position

Defendants submit that it is premature to estimate the duration of any trial at this early date, because the scope of Teva's claims is currently unclear.  Should this case proceed, Defendants will further confer with Teva as to a reasonable trial estimate and plan.

1

**18.     DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

2

        **1.     Plaintiff's Position**

3        Plaintiff filed its Certification of Conflicts and Interested Entities or Persons Pursuant to Civil

4 Local Rule 3-15 on June 13, 2024.  ECF No. 5.  Teva identified one entity with a financial interest in

5 the subject matter in this litigation—non-party Teva Pharmaceutical Industries Ltd., of which Plaintiff

6 Teva Pharmaceuticals USA, Inc. is an indirect, wholly owned subsidiary.

7

        **2.     Defendants' Position**

8        Corcept filed its Corporate Disclosure Statement and Certification of Interested Entities on

9 July 11, 2024.  ECF No. 25.  Corcept identified one entity—BlackRock, Inc., a publicly held

10 corporation—that owns 10% or more of Corcept's stock.  Corcept certified that it was unaware of any

11 conflict, or any person/entity other than the named parties, with a financial or other interest that could

12 be substantially affected by the outcome of this case.

13        Optime filed its Corporate Disclosure Statement and Certification of Interested Entities on July

14 23, 2024.  ECF No. 31.  Optime identified its parent, AscellaHealth, LLC, and stated that no publicly

15 held corporation owns 10% or more of Optime's stock.  Optime certified that it was unaware of any

16 conflict, or any person/entity other than the named parties, with a financial or other interest that could

17 be substantially affected by the outcome of this case.

18 **19.     PROFESSIONAL CONDUCT**

19        All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct

20 for the Northern District of California.

21 **20.     OTHER**

22        The parties understand that it is this Court's usual practice to refer discovery and certain other

23 disputes to a Magistrate Judge.  To the extent that this case is allowed to proceed, the parties agree

24 that it may make sense for the Court to name a Magistrate Judge to whom such disputes should be

25 directed.  Otherwise, the parties are currently unaware of any other matters that may facilitate the

26 disposition of this dispute.

27

28

1     Dated: October 24, 2024        Respectfully submitted,

2

3                                       By:  */s/ Michael Shipley*

4                                       Michael Shipley

5                                       KIRKLAND & ELLIS LLP
                                      555 South Flower Street, 37th Floor
                                      Los Angeles, California 90071

6                                       Tel: (213) 680-8400

7                                       michael.shipley@kirkland.com

8                                       Devora W. Allon, P.C.
                                      Kevin M. Neylan, Jr.

9                                       KIRKLAND & ELLIS LLP
                                      601 Lexington Avenue

10                                       New York, NY 10022

11                                       (212) 446 5967
                                      devora.allon@kirkland.com

12                                       kevin.neylan@kirkland.com

13                                       *Attorneys for Plaintiff*
                                      *Teva Pharmaceuticals USA, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT & 26(f) REPORT
CASE NO. 3:24-cv-03567-BLF

By:     /s/  Robert W. Stone

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Robert W. Stone (Bar No. 163513)
   robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Fax:             (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
   adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Fax:             (415) 875-6700

Steig D. Olson (admitted *pro hac vice*)
   steigolson@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:     (212) 849-7000
Fax:             (212) 849-7100

*Attorneys for Defendant Corcept Therapeutics, Inc.*


By:     /s/ Lucas C. Wohlford

Lucas C. Wohlford (admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail: lwohlford@duanemorris.com

Justin J. Fields (SBN 259491)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200 San Francisco, CA 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001
E-Mail: jfields@duanemorris.com

*Attorneys for Defendant Optime Care Inc.*

**[PROPOSED] CASE MANAGEMENT ORDER**

The above Joint Case Management Statement and [Proposed] Order is approved as the Case Management Order for this case and all parties shall comply with its provisions.

**IT IS SO ORDERED.**


Dated: _____,


                                              _____
                                              The Hon. Beth Labson Freeman
                                                United States District Judge