**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Fax:            (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Fax:            (415) 875-6700

*Attorneys for Defendant Corcept Therapeutics, Inc.*

**DUANE MORRIS LLP**
Lucas C. Wohlford (admitted *Pro Hac Vice*)
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail: lwohlford@duanemorris.com

*Attorney for Defendant Optime Care Inc.*

[Additional Counsel Listed On Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CORCEPT THERAPEUTICS, INC., et al., <br><br> Defendants. | Case No. 5:24-cv-03567-BLF <br><br> Honorable Beth Labson Freeman <br><br> **DEFENDANTS' NOTICE OF MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S 33 NON-PARTY DOCUMENT SUBPOENAS AND MEMORANDUM OF POINTS IN AUTHORITIES IN SUPPORT** |

**NOTICE OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

**PLEASE TAKE NOTICE** that Defendants Corcept Therapeutics, Inc. and Optime Care Inc. will and hereby do jointly move for a protective order under Federal Rule of Civil Procedure 26(c)(1) with respect to 33 non-party document subpoenas that Plaintiff Teva Pharmaceuticals USA, Inc. has purported to propound around the country.[1] The Court should enter an order requiring Teva to withdraw these subpoenas in full.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       PRELIMINARY STATEMENT**

On January 16, 2025, Corcept learned that Teva was in the process of serving non-party document subpoenas (each containing 13 identical requests) on various healthcare providers (*i.e.*, doctors, nurse practitioners, and institutions that have or could prescribe Corcept's Korlym medication). Notably—and in violation of Federal Rule of Civil Procedure 45(a)(4)—notice of the subpoenas did *not* come from Teva itself. Given the lack of prior notice, on January 17, Corcept asked that the six non-party subpoenas Corcept knew about be withdrawn. Three days later, on January 20, Teva refused to withdraw the six subpoenas and then, surprisingly, claimed that it had in fact served— or was serving—*33* (not six) subpoenas. Despite Corcept's request, Teva refuses to withdraw its improperly served subpoenas and has refused to provide basic information such as when each subpoena was actually served (if at all). Teva's gamesmanship should *not* be countenanced, and the

---

[1] Teva served at least one subpoena on January 16, 2025, making objections to that subpoena potentially due by today: January 30, 2025 (14 days later). *See* Fed. R. Civ. P. 45(d)(2)(B). Out of an abundance of caution, Defendants submit this motion within the fourteen-day objection period to preserve their rights vis-à-vis the non-party subpoenas. Defendants understand that the Court typically refers discovery disputes to a Magistrate Judge but no Magistrate Judge is presently assigned to this case for discovery purposes. Defendants are requesting such assignment concurrently herewith. To the extent that the Court refers this motion to a Magistrate Judge or assigns one, Defendants will re-submit this motion to the Magistrate Judge in accordance with that Magistrate Judge's individual requirements for discovery disputes and briefs.

Court should issue a protective order requiring Teva to withdraw the 33 subpoenas. They are invalid for lack of notice, aim to circumvent first-party discovery by seeking Defendants' materials through non-parties, including before an ESI or Protective Order have even been entered, seek irrelevant and disproportionate information, and are an attempt to harass the recipients and disrupt Defendants' relationships with the non-parties.

## II.     LEGAL STANDARD

A party to an underlying case can seek a protective order under Rule 26(c) against subpoenas directed to non-parties. *City of San Jose v. JUM Glob., LLC*, 2018 WL 4520981, at *3 (N.D. Cal. Sept. 21, 2018). A party seeking a protective order may seek relief against all the non-party subpoenas in the court where the action is pending, which "has authority under Rule 26(c) to issue a protective order concerning the subpoenas no matter where compliance is required." *Kovalenko v. Kirkland & Ellis LLP*, 2024 WL 664691, at *2 n.1 (N.D. Cal. Feb. 16, 2024). Unlike a motion to quash, "standing is not an issue" for a party seeking a protective order against a non-party subpoena. *Akkawi v. Sadr*, 2022 WL 4484056, at *3 n.1 (E.D. Cal. Sept. 27, 2022). At most, the non-party subpoena need only seek irrelevant documents or confidential information of the moving party, or "put a strain" on the moving party's "business relationships" with the non-parties. *See Loop AI Labs Inc v. Gatti*, 2016 WL 787924 (N.D. Cal. Feb. 29, 2016); *Wahoo Int'l, Inc. v. Phix Dr., Inc.*, 2014 WL 3573400, at *7 (S.D. Cal. July 18, 2014). A court may issue a protective order in favor of a party against the non-party subpoenas on grounds including relevance, burden, confidentiality, and harassment. *See, e.g.*, *Wahoo*, 2014 WL 3573400, at *3, *5.

## III.     ARGUMENT

As explained below, good cause exists for this Court to issue a protective order requiring Teva to withdraw the 33 subpoenas. Defendants have standing to seek that order. The subpoena recipients are healthcare professionals, some of whom maintain professional consulting or educational relationships with Corcept and/or engage with Optime as to the writing and filling of prescriptions. Teva's subpoenas implicate Defendants' interests because they seek documents involving Defendants as well as their sensitive and confidential information, and the subpoenas threaten to put a strain on Defendants' relationships with the subpoena recipients. The subpoenas should be withdrawn because

they are procedurally invalid, inappropriately aim to prematurely circumvent first-party discovery, seek irrelevant and disproportionate information, and are harassing and disruptive.

### A.    TEVA'S SUBPOENAS ARE PROCEDURALLY INVALID

As a threshold matter, the Court should issue a protective order against Teva's non-party subpoenas because they are procedurally invalid. Rule 45 is clear: "notice and a copy" of a pre-trial non-party subpoena "must be served on each party" "***before*** it is served on the person to whom it is directed[.]" Fed. R. Civ. P. 45(a)(4); *see also* Advisory Committee Note to 2013 Amendment.

Here, Teva did not do what Rule 45(a)(4) requires. Instead, Teva admits that it served at least six non-party subpoenas between January 16 and 17 without prior notice; it did not acknowledge service until January 20 (days after Corcept contacted Teva about them). That renders the subpoenas invalid. *See, e.g.*, *Deuss v. Siso*, 2014 WL 4275715, at *4 (N.D. Cal. Aug. 29, 2014) (quashing non-party subpoenas because Rule 45(a)(4) requires pre-service notice, explaining that providing "a copy of the subpoena after service on the third party, or even at the same time as such service," does not suffice). Worse, the full scope of Teva's violation is not even clear, as Teva on January 20 claimed that it has served (or is serving) 33 subpoenas, but Teva has refused to confirm when each was actually propounded or served, making it impossible to determine whether the other subpoenas (beyond the six Corcept originally knew about) actually predate Teva's January 20 notice.

In response to subsequent requests for information, Teva claimed these issues were "trifles" and "an immaterial technical slip up" that has been cured because Teva provided notice on January 20 of all 33 subpoenas after it was caught serving at least six without prior notice. That is wrong. Teva's claim it "provided notice . . . shortly after the subpoenas were served . . . does not alter the fact that [Teva] . . . violated a governing federal rule." *Elite Lighting v. DMF, Inc.*, 2013 WL 12142840, at *3–4 (C.D. Cal. May 6, 2013) (quashing non-party subpoenas). Moreover, because Teva refuses to answer when it served each subpoena (if at all), it is unclear when the 14-day objection period for each subpoena began to run. As a result, Defendants were forced to quickly bring this motion—before this case has even been assigned a Magistrate Judge and prior to the entry of either a Protective or ESI Order—simply to protect their rights. Further, Rule 45(a)(4) requires that parties provide one another notice of subpoenas ***before*** they serve them to encourage transparency, reduce

gamesmanship, and prevent unnecessary chaos, all of which has now been frustrated by Teva's apparent "no harm, no foul" approach and refusal to provide basic information. While Teva cavalierly claims there is no prejudice—that is not the point, and is in any event wrong: Defendants were forced to bring this motion, and as discussed *infra*, Teva's subpoenas threaten to up-end first-party discovery, seek irrelevant and disproportionate information, and have disrupted both Defendants and the subpoena recipients themselves (who may decide it is not worth engaging with Defendants if the cost of doing so is Teva's dragging them into this lawsuit and subjecting them to voluminous discovery).

### B.   TEVA'S SUBPOENAS SEEK TO END-RUN THE PARTIES' NEGOTIATIONS AND OBTAIN CONFIDENTIAL INFORMATION PREMATURELY

This case is still in its early stages. Defendants' motion to dismiss is set for hearing just several weeks from today (February 20, 2025), and the parties are continuing to discuss the 231 document requests and 31 interrogatories Teva has so far served on Defendants. The entry of foundational protocols like Protective and ESI Orders will best facilitate that process, but as Teva knows, those orders have not yet been fully agreed to, much less entered. Rather than wait for the parties to complete their discussions and present any remaining disputes to the Court or the Magistrate Judge, Teva apparently chose to circumvent that process by seeking discovery indirectly through 33 non-parties (all but two of whom are individuals). Teva's efforts should be rejected at this stage.

While the parties are continuing to discuss the ultimate scope of discovery that Defendants may provide, many of Teva's document requests to the non-parties are cumulative of information that Teva seeks from Defendants. For example, Request Nos. 1 and 2 to the non-parties seek "All Documents and Communications relating to" transfers of values between Defendants and the subpoena recipient, as well as "any agreements or contracts between You and Corcept or Optime[.]" Ex. A at 13. Similarly, No. 3 seeks "All Communications" between the subpoena recipients, Corcept, and Optime, concerning Korlym, Teva, and potential other generic manufacturers. *Id.* at 14. No. 6 seeks communications between the subpoena recipients and Defendants related to government investigations, Nos. 7 and 8 seek documents regarding various services, tools, and resources Defendants provided to the non-party recipients, and Nos. 9 and 12 seek "marketing message[s], advertisements, or promotional materials" and "cost, safety, and/or efficacy" information relating to

Corcept's Korlym products. Ex. A at 14–15. Any contracts, payments, and communications **between** the subpoena recipients and Corcept and/or Optime may well be in Defendants' possession. The same is true as to marketing materials and cost, safety, and efficacy information related to Korlym.

Assuming the parties can agree on Protective and ESI Orders and narrow Teva's requests, Defendants may agree to search for such materials. If the parties are unable to reach agreement, they may well present any such dispute(s) to the Magistrate Judge for resolution. Either way, the prudent course is for the parties to continue their discussions, not for Teva to create uncertainty, sow chaos, and manufacture a race to production by prematurely seeking the same materials indirectly through the non-parties. *See Burns v. Bank of Am.*, 2007 WL 1589437, at *13–14 (S.D.N.Y. June 4, 2007) (explaining that "subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process" and quashing subpoena to non-party seeking "precisely the same documents as demanded in" requests to defendant).

Moreover, many of the materials sought by Teva's requests to the non-parties cover Defendants' information that is *confidential and sensitive*. As one example, Teva's Request No. 2 seeks contracts between the subpoena recipients and Defendants. Ex. A at 13. Nos. 5, 6, and 7 seek "Documents and Communications" concerning government investigations into Corcept and Optime. *Id.* at 14–15. Defendants' contracts (if any) with the subpoena recipients likely contain sensitive information which Defendants have an interest in protecting, as do materials produced in or relating to whatever government investigations there may be that involved Defendants. *See Novak & Gose, LLC v. Allstate Ins. Co.*, 2007 WL 5289731, at *10–11 (D. Ariz. Nov. 26, 2007) (partially granting party's motion for protective order against non-party document subpoena where subpoena might be "fishing for information" and explaining that party can properly seek protective order against non-party subpoena based on interest in "confidentiality" of its "business records"). Making matters worse, Teva's Request No. 6 even seeks investigation-related "Communications between You and Corcept or Optime—*including correspondence between counsel*[.]" Ex. A at 14. That likely implicates Defendants' privileged or otherwise protected common-interest communications. *See Cones v. Parexel Int'l Corp.*, 2018 WL 3046424, at *2 (S.D. Cal. June 20, 2018) (party can challenge non-party subpoena that seeks party's "potentially privileged or protected matter"). Defendants must

be permitted notice and meaningful opportunity to protect their information, not be cast aside by Teva.

That no Protective Order has yet been entered in this case only further compounds the above problems. For example, given Teva's apparent desire to keep Defendants out of the loop, it is unknown what Teva has advised the non-parties as to the lack of a Protective Order. If the non-parties were to produce Defendants' confidential information now *without* such an order, that might impede Defendants' ability to maintain that information as confidential. All of this confirms a Protective Order must first be agreed to (else litigated) before Teva's desired discovery could ever even be produced, providing another reason why Teva's subpoenas should not be allowed to proceed now.

### C.     TEVA'S SUBPOENAS SEEK IRRELEVANT INFORMATION AND IMPOSE UNDUE BURDENS ON NON-PARTIES

Separately, the Court should issue a protective order against Teva's non-party subpoenas as they seek information that is irrelevant and in any event disproportionate. Teva (a generic manufacturer) asserts antitrust claims against Corcept (Teva's competitor) and Optime (a pharmacy that distributes Corcept's products, and with whom Teva wishes to—but does not—deal). Teva previously stated to the Court that the "focus" of its case was an alleged "exclusive dealing" agreement between Corcept and Optime. *See* Oct. 31, 2024 Hrg. Tr at 4. What, if anything, Teva's subpoenas to 33 different healthcare providers have to do with that is not at all clear.

For example, Request Nos. 1–2 relate to alleged agreements and transfers of value between Defendants and the subpoena recipients, No. 3 relates to communications regarding Korlym, Teva, and potential other generic manufacturers, Nos. 4–6 relate to purported government investigations into Defendants, Nos. 7–8 relate to services, tools, and resources provided to the subpoena recipients for prescribing Korlym and receiving reimbursements from payors (like insurers) for the same, No. 9 relates to marketing materials for Korlym, and Nos. 12–13 relate to the cost, safety, and/or efficacy of Korlym and generics and the comparative impact on patients between Korlym and generics. Ex. A at 13–15. At least 11 of Teva's 13 requests, then, seem to have little to nothing to do with the "exclusive dealing" theory—based on a *contractual* provision between Corcept and Optime—that *Teva* claims is the focus of its case. *See* Dkt. 39 ¶¶ 1, 131, 141 (Teva operative complaint alleging Optime is "*contractually* forbidden from distributing any competing products" and challenging

1    alleged "blanket *contractual* exclusivity provision" in alleged "exclusive dealing *contract*").

2    Teva does assert back-up theories of anticompetitive conduct related to Corcept's supposed fraudulent listing of patents in the FDA's Orange Book, alleged sham patent litigation against Teva, and purported "bribes" of healthcare practitioners. Dkt. 39 ¶ 5. But *all* of Teva's requests to the non-parties appear to have *nothing* to do with Orange Book listings or alleged sham litigation.

Even as to Teva's tertiary "bribery" theory, Teva has failed to justify why it should be the tail that wags the dog for the parties, much less for 33 *non-parties*. At absolute best, the bribery theory is peripheral to what Teva claims is the "focus" of its case—the alleged "exclusive dealing" contract between Corcept and Optime. Moreover the bribery theory does not even give rise to antitrust claims, as Defendants have explained in their pending motion to dismiss papers. *See* Dkt. 55 at 20–24; Dkt. 68 at 14–15. In addition, the vast majority of the 33 subpoena recipients are *not* even mentioned in Teva's complaint. Even as to the handful that are vaguely mentioned in Teva's complaint, Teva's allegations do not themselves justify the invasive discovery Teva seeks. Indeed, Teva's allegations are conclusory (not particular), and they are based only on innuendo that contradicts (not supports) Teva's allegations, as well as publicly available data that facially indicates the payments are lawful, particularly given Teva's own higher payments and defense of them as proper.

Further, whatever low probative value of Teva's desired discovery from the 33 non-parties Teva claims there may be is vastly outweighed by the disproportionate burdens that the discovery will impose. Indeed, 31 of the 33 subpoena recipients are *individuals*—doctors, nurse practitioners, and other medical professionals with patients and staff (the other two are medical centers). Necessarily, each of the 33 is a "non-party," a word that "serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Indeed, "[t]he Ninth Circuit does not favor unnecessarily burdening nonparties with discovery requests, and, as a result, non-parties deserve extra protection from the courts." *Robert Half Int'l Inc. v. Ainsworth*, 2015 WL 4662429, at *4 (S.D. Cal. Aug. 6, 2015) (cleaned up). The Court's protection is especially warranted here.

As noted *supra*, many of Teva's requests to the non-parties appear to seek discovery that Teva also seeks from Corcept or Optime. Defendants are continuing to evaluate Teva's requests to them,

-7-   Case No. 5:24-cv-03567-BLF
DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING TEVA'S 33 NON-PARTY SUBPOENAS

but the parties' discussions should be allowed to reach their completion (and any dispute resolved by the Magistrate Judge) before Teva burdens the non-parties with its requests. *See J.T. v. City & Cnty. of San Francisco*, 2024 WL 4361579, at *1 (N.D. Cal. Oct. 1, 2024) ("when an opposing party and a non-party both possess documents, the documents should be sought from the party to the case.").

Even if Teva's requests did seek some non-overlapping materials from the non-parties, its subpoenas are overbroad and burdensome. In evaluating the proportionality of a non-party subpoena, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406, 409 (C.D. Cal. 2014). Many of Teva's requests seek "All Documents and Communications" regarding a number of topics. Ex. A at 13–15. Teva generally defines the "Relevant Time Period" for its Requests as "February 1, 2012 to the present"—a time period of nearly **13 years** (including more than a decade before Teva even launched its generic in 2024). *Id.* at 12. And, at least one—No. 11 (*id.* at 15)—seems to encompass *every* document concerning *every* Korlym prescription the subpoena recipient may have prescribed over those 13 years (which, on its face, would implicate vast amounts of patient and other health information protected by HIPAA, despite no HIPAA-qualified Protective Order having been entered yet and there being no indication Teva has tried to comply with HIPAA regulations like 45 C.F.R. § 164.512(e)(ii)). Under the circumstances, Teva's requests are disproportionate, as they would impose an unnecessary, crushing burden on non-parties, almost all of whom are busy, individual healthcare practitioners. *See Fed. Trade Comm'n v. DIRECTV, Inc.*, 2015 WL 8302932, at *4 (N.D. Cal. Dec. 9, 2015) (granting party protective order against subpoenas to non-parties, explaining "it is not clear that the subpoenas are proportional to the needs of this case," "permissible discovery from nonparties is narrower than that permitted for parties," and it was "unnecessary to burden" the non-parties—who are "private citizens"—with "the time and expense of collecting responsive documents").

D. **TEVA'S SUBPOENAS ARE HARASSING AND DISRUPTIVE**

The Court should issue a protective order against Teva's non-party subpoenas for another independent reason: they are harassing non-parties and also disrupting Defendants' operations. Indeed, the Court may enter a protective order "to protect a . . . person from annoyance, embarrassment, [or] oppression." Fed. R. Civ. P. 26(c). That is exactly what has happened here.

In evaluating whether to issue a protective order, courts consider "whether the information is sought for a legitimate purpose." *Rivera v. NIBCO, Inc.*, 204 F.R.D. 647, 649 (E.D. Cal. 2001). The circumstances of Teva's mass subpoena campaign suggest it is a tactical ploy to disrupt the non-parties and Defendants (by getting the subpoena recipients to forego engaging with Defendants due to their being dragged into this case) and ramp up litigation pressure. There is little other explanation for why Teva would: (a) serve non-party subpoenas without first providing notice to the actual parties in the litigation (as Rule 45(a)(4) requires, and as counsel normally does); (b) wait to provide notice until after Defendants raised the issue and the few subpoenas that Corcept then knew about; (c) then double down by refusing to withdraw the subpoenas and indicating more had been served; and (d) continue to refuse to provide basic information when asked, such as the date each subpoena had actually been propounded or served. That Teva chose to proceed in this manner, with voluminous and largely irrelevant requests that seek to end-run first-party discovery Teva is already seeking from Defendants directly—and all before Protective and ESI Orders have been entered—suggests as much.

Even if Teva did not intend the disruption that Teva's subpoenas caused, it still exists. And it more than provides grounds for relief. *See Wells Fargo & Co. v. ABD Ins.*, 2012 WL 6115612, at *3 (N.D. Cal. Dec. 10, 2012) (partially granting protective order to party against non-party subpoenas because plaintiff's decision to "serv[e] . . . a large number of subpoenas" on a defendant's business associates had a tendency to "oppress Defendants"); *Accusoft Corp. v. Quest Diagnostics, Inc.*, 2012 WL 1358662, at *10–11 (D. Mass. Apr. 18, 2012) (granting protective order against 19 subpoenas to defendants' customers which defendants contended were "designed to harass by disrupting defendants' relationships with their customers."); *Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (granting protective order against allegedly "harrass[ing]" subpoenas of defendant's customers because the parties were "fierce competitors" and plaintiff had not demonstrated "a specific need for evidence available only from third party customers.").

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue a protective order requiring Teva to withdraw its 33 non-party subpoenas.

1  DATED: January 30, 2025

2                                                          By:  _____*/s/ Robert W. Stone*_____
                                                                **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

3
                                                                Robert W. Stone (Bar No. 163513)
4                                                                 robertstone@quinnemanuel.com
                                                                555 Twin Dolphin Drive, 5th Floor
5                                                               Redwood Shores, California 94065
                                                                Telephone:     (650) 801-5000
6                                                               Fax:           (650) 801-5100

7                                                               Adam B. Wolfson (Bar No. 262125)
                                                                  adamwolfson@quinnemanuel.com
8                                                               50 California Street, 22nd Floor
                                                                San Francisco, California 94111
9                                                               Telephone:     (415) 875-6600
                                                                Fax:           (415) 875-6700
10
                                                                Steig D. Olson (admitted *pro hac vice*)
11                                                                steigolson@quinnemanuel.com
                                                                51 Madison Avenue, 22nd Floor
12                                                              New York, New York 10010
                                                                Telephone:     (212) 849-7000
13                                                              Fax:           (212) 849-7100

14
                                                                *Attorneys for Defendant Corcept Therapeutics, Inc.*
15

16                                                         By:  _____*/s/ Lucas C. Wohlford*_____
                                                                Lucas C. Wohlford (admitted *Pro Hac Vice*)
17                                                              **DUANE MORRIS LLP**
                                                                100 Crescent Court, Suite 1200
18                                                              Dallas, TX 75201
                                                                Telephone: +1 214 257 7200
19                                                              Facsimile: +1 214 257 7201
                                                                E-Mail: lwohlford@duanemorris.com
20

21                                                              Justin J. Fields (SBN 259491)
                                                                **DUANE MORRIS LLP**
22                                                              Spear Tower
                                                                One Market Plaza, Suite 2200 San Francisco, CA
23                                                              94105-1127
                                                                Telephone: +1 415 957 3000
24                                                              Facsimile: +1 415 957 3001
                                                                E-Mail: jfields@duanemorris.com
25

26                                                              *Attorneys for Defendant Optime Care Inc.*

27

28

-10-                                                        Case No. 5:24-cv-03567-BLF
DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING TEVA'S 33 NON-PARTY SUBPOENAS

**CONFER CERTIFICATION**

The undersigned hereby attests that counsel for Defendant Corcept and counsel for Plaintiff Teva conferred. Corcept on January 17 requested that Teva withdraw the subpoenas, and Teva on January 20 confirmed unequivocally that Teva would not do so. *See* Declaration of Robert W. Stone, ¶¶ 2–9. The parties were unable to resolve this dispute, as Teva in later correspondence again declined to withdraw the at-issue subpoenas, and today is potentially the 14-day objection deadline for at least one of the subpoenas. *Id.*

Dated: January 30, 2025          By:     */s/ Robert W. Stone*
                                          Robert W. Stone

## CIVIL LOCAL RULE 5-1 ATTESTATION

I, Robert W. Stone, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the signatories listed above.

DATED: January 30, 2025

By  */s/ Robert W. Stone*
Robert W. Stone

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By  */s/ Robert W. Stone*
Robert W. Stone