Michael Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
555 South Flower Street, 37th Floor
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*Pro Hac Vice*)
Kevin M. Neylan, Jr. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No. 5:24-cv-03567-BLF <br><br> **TEVA'S CASE MANAGEMENT STATEMENT; [PROPOSED] ORDER** <br><br> Date: February 20, 2025 <br> Time: 11:00 a.m. <br> Ctrm: 3 – 5th Floor <br> Judge: Honorable Beth Labson Freeman |

Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") hereby submits this SEPARATE CASE MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9. Pursuant to Local Rule 16-9, Teva has enclosed a declaration describing the conduct of Defendants Corcept Therapeutics, Inc. ("Corcept") and Optime Care Inc. ("Optime," and together with Corcept, "Defendants,"), which prevented the preparation of a joint statement.

**1.   JURISDICTION & SERVICE**

Teva's Amended Complaint includes a claim under the federal antitrust laws, 15 U.S.C. §§ 1, 2, 15(a), and 26, giving rise to subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1337. The Court also has subject matter jurisdiction under 28 U.S.C. § 1367 of state law claims that are so related to the federal law claims as to form part of the same case or controversy.

The Parties have agreed that there are no issues regarding jurisdiction, venue, or service at this time. No parties remain to be served at this time.

**2.   FACTS**

Teva sets forth below its statement as to the main factual issues in dispute.

**A.   Teva's Position**

The FDA granted Korlym orphan drug status on July 5, 2007. On February 17, 2012, the FDA approved Corcept's New Drug Application for Korlym as a treatment for endogenous Cushing's syndrome. Corcept launched Korlym in 2012. Defendants have not disputed that Korlym is in a market that is properly defined to include only brand Korlym and its AB-rated generics.

On December 30, 2014, Corcept obtained the '348 patent and thereafter listed it in the Orange Book on January 27, 2015. Further, on November 28, 2017, Corcept obtained the '495 patent and thereafter listed it in the Orange Book on November 28, 2017. Neither of these patents had any connection to Korlym, and Corcept listed them only to delay generic entry—which it did with respect to Teva's ANDA.

On August 4, 2017, Corcept entered into a highly unusual, long term, exclusive-dealing agreement with Optime, a specialty pharmacy, to distribute Korlym. The Agreement was subsequently amended on August 1, 2022, and September 16, 2022. Unredacted versions of these

amendments are not publicly available, and Defendants have not produced them in discovery. But publicly available redacted versions indicate that these amendments made numerous adjustments to the terms of Corcept and Optime's relationship, including revising the fees, services, and other obligations Corcept and Optime owed each other in connection with the distribution of Korlym. A further amendment dated April 1, 2024 comprehensively "amend[ed] and restate[d] the 2017 Distribution Services Agreement in its entirety." An unredacted version of the Agreement is not publicly available, and Defendants have not produced it in discovery, but a publicly available redacted version indicates that the Agreement has a current term that runs until March 31, 2027, with automatic renewal for successive three-year terms after that, and that it expressly forbids Optime from distributing any rival Korlym products, including Teva's generic.

On December 15, 2017, Teva filed its ANDA seeking FDA approval of a generic version of Korlym, which included a Paragraph IV certification with respect to the '348 and '495 patents. Corcept sued Teva for infringing the '348 and '495 patents in the D.N.J. on March 15, 2018, thereby triggering a 30-month stay of FDA approval for Teva's generic drug. As such, Teva's ANDA received a tentative approval on October 12, 2018, and received a final approval in August 2020, after the expiry of the 30-month stay period.

Knowing that its patents had no connection to Korlym, Corcept continued its sham litigation against Teva to delay its generic entry. This included asserting nine different patents against Teva in four separate lawsuits filed between 2018 and 2023, which were strategically timed to maximize delay. Corcept then went on to voluntarily dismiss suits asserting seven of these patents. As regards the remaining two asserted patents, on December 29, 2023, Judge Bumb ruled in Teva's favor, holding that Teva's generic did not infringe either of them, and that Corcept failed to introduce credible record evidence that anyone—including Corcept's own witnesses—had ever previously infringed the asserted claims, even though Korlym had been commercially available for more than a decade. Corcept's improper Orange Book listings and sham litigations had the effect of delaying Teva's FDA approval and launch by several years.

Teva launched its generic Korlym on January 19, 2024 at a material discount to Corcept's brand Korlym. However, since its launch, Teva's market share has been close to zero—approximately

1% of the market. That result would be unheard-of in a properly functioning, competitive pharmaceutical market, where a first generic typically captures 60-75% or more of the market within the first six months, and usually more than 80% within the first year. Teva's inability to effectively threaten Corcept's monopoly in the market for Korlym is because of Corcept's exclusive-dealing agreement with Optime, the only pharmacy that has distributed brand Korlym since 2017. Because Optime has long been the only pharmacy dispensing brand Korlym, Corcept and Optime have successfully established an entrenched distribution channel that makes it exceedingly difficult for rivals to challenge Corcept's monopoly position through alternative means. Corcept and Optime are now using their exclusive-dealing agreement to prevent rivals like Teva from making inroads on Corcept's monopoly. Teva has sought to compete by distributing its generic product through alternative channels, but those efforts have not allowed Teva to reach end users of Korlym. Teva's experience shows that Defendants' anticompetitive strategy has worked as intended.

To further solidify physicians' use of brand Korlym and to undermine competition from Teva, significant evidence indicates that Corcept has also engaged in a years-long campaign to induce prescribers to select brand Korlym in exchange for bribes and kickbacks. These suspected practices have been reported on by independent journalists, and are the subject of an ongoing investigation by the United States Attorney's Office for the District of New Jersey.

Through a combination of these tactics, Corcept continues to maintain its illegal monopoly over the market for Korlym, leading to multiple antitrust violations. By entering into an exclusive-dealing agreement with Corcept, Optime is assisting it with maintaining this monopoly.

**3.   LEGAL ISSUES**

Teva's Amended Complaint asserts seven causes of action, including: (1) monopolization under 15 U.S.C. § 2; (2) attempted monopolization under 15 U.S.C. § 2; (3) exclusive dealing under 15 U.S.C. § 1; (4) alleged violation of California's Bus. & Prof. Code § 17200; (5) alleged violation of California's Bus. & Prof. Code § 16600; (6) alleged violation of various state antitrust and consumer protection laws; and (7) unjust enrichment.

The case is currently at the pleading stage. Teva filed its operative first amended complaint on September 13, 2024 (ECF No. 39). Defendants on October 14, 2024 filed their joint motion to dismiss with prejudice (ECF No. 55). Defendants' motion raises legal issues, including:

- Whether Teva's claims are time barred;
- Whether Teva pleaded facts sufficient to plausibly establish antitrust injury;
- Whether Teva pleaded facts sufficient to plausibly establish harm to competition;
- Whether Teva pleaded facts sufficient to plausibly establish that Corcept pursued sham patent litigation against Teva;
- Whether Teva pleaded facts sufficient to plausibly establish that Teva's sham patent litigation claims are not otherwise barred by *Noerr-Pennington* immunity;
- Whether Teva pleaded facts sufficient to plausibly establish that Corcept's alleged payments to physicians and practitioners are improper "bribes";
- Whether Teva pleaded facts sufficient to plausibly establish that Corcept's alleged payments to physicians and practitioners unlawfully harmed competition;
- Whether Teva pleaded facts sufficient to state a claim under California's Unfair Competition Law;
- Whether Teva pleaded facts sufficient to state a claim under California's Bus. & Prof. Code § 16600;
- Whether Teva pleaded facts sufficient to state a claim under various state antitrust and consumer protection laws;
- Whether Teva pleaded facts sufficient to state a claim based on unjust enrichment.

Teva understands that Defendants have not answered the first amended complaint, as they filed a joint motion to dismiss with prejudice. Teva understands that the Parties may identify other legal disputes to the extent the case progresses.

**4.    MOTIONS**

On October 14, 2024, Defendants filed a motion to dismiss the first amended complaint. ECF No. 55. Teva opposed the motion on November 13, 2024, ECF No. 65, and Defendants filed a reply

on November 25, 2024, ECF No. 68.  Defendant's motion to dismiss is currently pending before the Court and is currently set for hearing on March 6, 2025.  ECF No. 76.

On January 30, 2025, Defendants filed a motion for a protective order under Federal Rule of Civil Procedure 26(c)(1) with respect to Teva's non-party document subpoenas.  ECF No. 71.  In accordance with the Court's Case Management Order dated November 4, 2024, ECF No. 63, this case was assigned to Magistrate Judge Virginia K. DeMarchi for discovery on February 3, 2025.  ECF No. 72.  Judge DeMarchi's Standing Order for Civil Cases outlines her procedure for addressing any discovery disputes, including a mandatory meet and confer between lead counsel and a joint dispute letter following the meet and confer.  Since those procedures had not been followed by Defendants prior to filing their motion, Teva requested Defendants to withdraw their motion and comply with Judge DeMarchi's procedures on February 3, 2025.  Teva reiterated its request on February 6, 2025, following which Defendants agreed to withdraw their motion without prejudice.  Defendants withdrew their motion on February 10, 2025.  ECF No. 73.

Should this case proceed past the pleading stage, each side may move for summary judgment, move to exclude expert testimony, and/or file motions *in limine*, among other potential motions.

## 5.     AMENDMENT OF PLEADINGS

In its Case Management Order dated November 4, 2024, subsequent to the Case Management Conference on October 31, 2024, the Court held that Teva could seek leave to amend its complaint in accordance with Federal Rule of Civil Procedure 15 until January 3, 2025.  ECF No. 63.

## 6.     EVIDENCE PRESERVATION

The Parties have conferred about preserving evidence and have informed one another that they have appropriate litigation holds in place to preserve relevant evidence.  Teva has also reviewed the Guidelines Relating to the Discovery of Electronically Stored Information.  At this time, Teva is not aware of any ESI issues that may arise in this case, but it understands that the Parties will address those to the Court if they do arise and cannot be resolved by the Parties.

**7.    DISCLOSURES**

In accordance with Federal Rule of Civil Procedure 26, the Parties exchanged Initial Disclosures on October 24, 2024. Teva served its first supplemental Initial Disclosures on February 13, 2025. Teva will continue to supplement its disclosures as warranted as discovery progresses.

**8.    DISCOVERY**

    **A.    Discovery to Date**

        **1.    Teva's Position**

Defendants have consistently sought to delay Teva's discovery efforts. Defendants first filed separate motions seeking a stay of discovery, on August 26, 2024, ECF Nos. 35, 37, which were terminated as moot on September 16, 2024. ECF No. 40. Defendants then filed an administrative motion moving "for an order continuing the Initial Case Management Conference[,]" ECF No. 43 at 1, which Teva opposed as being "procedurally improper" and a "thinly veiled motion to stay discovery[.]" ECF No. 44 at 1. The Court agreed with Teva and denied Defendants' administrative motion with prejudice. ECF No. 45. At the Case Management Conference on October 31, 2024, Defendants again asked for a "brief stay on discovery" until the hearing on their motion to dismiss, ECF No. 62 at 8:1-3, which the Court denied. *Id*. at 8:14-15. Defendants then proposed extending their time to respond to Teva's discovery, *id*. at 10:15-18, which Teva noted would amount to a "de facto [stay of] discovery." *Id*. at 10:19-20. Indeed, the Court noted that if the Parties could not reach an agreement concerning any such extension, the deadline under Federal Rules would continue to apply because "the Federal Rules of Civil Procedure don't give any preference to staying discovery before the answer is filed." *Id*. at 11:22-23. Subsequently, the Court denied Defendants' motion to stay discovery noting that it "does not find that a stay is warranted." ECF No. 69 at 3. Yet, as outlined below, Defendants continue to engage in obstructionist practices, which have prevented Teva from obtaining any meaningful discovery since the last Case Management Conference. Put differently, through their inaction, Defendants have availed themselves of a *de facto* stay of discovery.

        **a.    Teva's Discovery to Corcept**

On October 3, 2024, Teva served Requests for Production ("RFPs") on Corcept pursuant to Federal Rule Civil Procure 26(d)(2). The parties agreed that Teva's RFPs were considered served as

of October 8, 2024, the date of the parties' Rule 26(f) conference. Subsequent to the October 31, 2024 Case Management Conference, Corcept sought an extension to serve its responses and objections ("R&Os") to Teva's RFPs, which Teva granted. Corcept then served its R&Os on November 14, 2024. In response to *all but four* of Teva's RFPs, Corcept's R&Os did not provide its position but instead asserted that it would not produce any documents until the Parties mutually agreed on the scope of the RFPs. The Parties met and conferred on December 6, 2024, following which Teva sent Corcept a letter on December 12, 2024, in which it offered compromises concerning certain positions and sought further clarification from Corcept. In the *eight weeks* since, despite Teva following up repeatedly, Corcept has failed to provide a response to Teva's letter. Given the obvious lack of progress, Teva sent a subsequent letter to Corcept on February 3, 2025, demanding a meet and confer regarding this dispute within five court days, in accordance with Judge DeMarchi's Standing Order for Civil Cases. The Parties met and conferred on February 13, 2025. Corcept was not prepared to discuss its positions with respect to Teva's requests, and simply stated that it would provide a response to Teva's December 12, 2024 letter this week. To date, Corcept has only produced nine documents—on January 31, 2025—which consist of only its organization charts from 2016 to 2024. Corcept has not even produced an unredacted copy of its distribution agreement with Optime. In an effort to keep discovery moving forward, Teva sent proposed search terms and custodians to Corcept on February 3, 2025, but has received no response.

Teva served a first set of interrogatories on Corcept on October 10, 2024. Similar to the RFPs, Corcept sought an extension to respond, which Teva granted. Corcept subsequently served its R&Os on November 19, 2024, offering the same response to *each* of Teva's 16 interrogatories—namely, that Corcept will not produce any information until the Parties agree on the scope of the interrogatory. The Parties met and conferred on December 18, 2024. Subsequently, Teva sent a letter on December 23, 2024, providing certain information sought by Corcept, agreeing to put a pause on certain interrogatories in good faith, and outlining the interrogatories with respect to which Corcept needed to provide a response. Corcept served supplemental responses on February 7, 2025. In response to eight of Teva's interrogatories, Corcept repeated the identical response: "Corcept anticipates identifying documents in its possession, custody, or control from which the answer to the non-

objectionable portions of this Interrogatory may be derived pursuant to Fed. R. Civ. P. 33(d)." On February 10, 2025, Teva demanded a meet and confer regarding Corcept's failure to "separately and fully" answer Teva's interrogatories, and its failure to identify specific documents as required under Rule 33(d), as well as Corcept's refusal to provide any response to two of Teva's interrogatories. The parties are working to schedule that meet and confer.

### b. Teva's Discovery to Optime

Teva served its RFPs on Optime at the same time as Corcept, and granted Optime a similar extension to respond. Optime served its R&Os on November 14, 2024 in which it similarly—in response to *all* RFPs—stated that it was refusing to produce any documents until the Parties agreed on the scope of production. Teva met and conferred with Optime on December 4, 2024, following which it sent a letter on December 11, 2024, to which Optime only responded on January 31, 2025. Teva followed up with a letter on February 3, 2025. Teva and Optime had a productive meet and confer on February 10, 2025 and reached agreement on the relevant time period for Teva's requests. Teva also sent its proposed search terms and custodians to Optime along with its February 3 letter but has not received a response.

Teva served its interrogatories on Optime at the same time as Corcept, and granted Optime a similar extension of time to respond. Optime served its R&Os on November 19, 2024, and the Parties met and conferred on December 19, 2024. The parties had a productive meet and confer in which Optime agreed to provide more detailed responses to Teva's interrogatories, which Teva memorialized in a letter sent on December 23, 2024. Optime provided supplemental responses to Teva's first set of interrogatories on February 7, 2025.

### c. Teva's Discovery to Non-Parties

On January 20, 2025, Teva provided Defendants with notice of 33 subpoenas it had served or was attempting to serve on healthcare providers concerning its bribery and kickback allegations. It has since been able to serve 18 out of the 33 subpoenas, the earliest of which was served on January 16, 2025, and is in the process of continuing to serve the others. Certain subpoena recipients—through counsel or themselves—have since reached out to Teva, and Teva is in the process of meeting and conferring with them or scheduling such meet and confers.

        **d.**        **Teva's Discovery Efforts**

Teva provided substantive responses to Corcept's first set of RFPs on January 6, 2025. Corcept has not asked to meet and confer about those responses. Nevertheless, to keep discovery moving, Teva made its first production of documents on February 6, 2025.

Teva responded to Corcept's first set of interrogatories on January 9, 2025, and served its first supplemental responses on February 13, 2025. Teva will continue to supplement its interrogatory responses as circumstances warrant.

**B.**        **Scope of Anticipated Discovery**

        **1.**        **Teva's Position**

Teva anticipates discovery including, without limitation, Corcept's listing of the '348 and '495 patents in the Orange Book; Corcept's patent infringement litigations related to Teva's generic Korlym; the exclusive dealing agreement between Corcept and Optime; information about Korlym, including cost, pricing, and transactional data; payments made to any Korlym prescribers; any government investigations related to Korlym, including the ongoing investigation by the U.S. Attorney's Office for the District of New Jersey; and other subjects that come to light as discovery proceeds.

**C.**        **Limitations or Modifications of the Discovery Rules**

In its Case Management Order dated November 4, 2024, subsequent to the Case Management Conference on October 31, 2024, the Court held that "[t]he presumptive limits on discovery set forth in the Federal Rules of Civil Procedure shall apply to this case unless otherwise ordered by the Court." ECF No. 63.

**D.**        **Stipulated Protective Order and E-Discovery Protocol**

        **1.**        **Teva's Position**

The Parties are in the process of negotiating a stipulated protective order, a draft of which was first circulated by Teva October 7, 2024, and an e-discovery protocol, which Teva first circulated on December 5, 2024. The Parties have exchanged several rounds of negotiation on both documents and are close to an agreement on the e-discovery protocol. As discussed in subsection F below, the Parties

have reached an impasse on one issue with respect to the Protective Order and are in the process of scheduling a meet and confer on that issue.

### E.   Proposed Discovery Plan

Teva discusses its position regarding scheduling in Section 16 below.

Teva understands that Defendants submit that the bases for Teva's claims—*e.g.*, Corcept's decisions to list certain patents in the Orange Book, Corcept's underlying patent infringement suits against Teva, the negotiation and performance of the Corcept-Optime deal, and the like—may implicate protected materials (such as attorney-client communications and/or attorney work product). Teva further understands that the Parties will confer regarding those and other potential privileges issues as appropriate should they arise, and the Parties will submit any such dispute to the Court should they be unable to reach agreement. Teva does not, at this time, otherwise anticipate any issues relating to claims of privilege or of protection as to trial-preparation materials, and Teva understands that the Parties agree to address any such issues if and when they arise, and to submit any such issue to the Court for resolution should it become necessary to do so.

### F.   Identified Discovery Disputes

As noted earlier, Defendants moved for a protective order concerning Teva's non-party subpoenas. Defendants withdrew their motion on February 10, 2025.

In accordance with Judge DeMarchi's Standing Order for Civil Cases, Teva and Corcept are working to schedule a meet and confer regarding (1) whether the Protective Order should include a provision to designate certain in-house counsel who may view Highly Confidential – Attorneys' Eyes Only material, consistent with the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets, and (2) Corcept's failure to provide substantive responses to Teva's interrogatories. Additionally, on February 13, 2025, Teva and Corcept met and conferred regarding Corcept's failure to provide substantive responses to Teva's Requests for Production. Corcept was not prepared to discus its positions with respect to any of Teva's Requests for Production, but Corcept represented that it would provide a substantive response this week. Corcept has not yet done so, and Teva reserves all rights.

**9.  CLASS ACTIONS**

This is not a class action lawsuit.

**10. RELATED CASES**

There are no "related" cases between the Parties now pending in the Northern District of California, as that term is used in N.D. Cal. Civil L.R. 3-12(a). Corcept and Teva have been engaged in underlying patent litigation in the District of New Jersey, including Case No. 1:18-cv-03632; Case No. 2:19-cv-05066; Case No. 2:19-cv-21384; and Case No. 1:23-cv-01505. Certain claims and issues from the parties' underlying patent litigation are presently pending before the United States Court of Appeals for the Federal Circuit in *Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA, Inc.*, Case No. 24-1346 (Fed. Cir.).

**11. RELIEF**

      **1.  Teva's Position**

Teva seeks an award of damages, including actual, consequential, compensatory, treble, punitive, and/or other damages, including pre- and post-judgment interest at the statutory rates; equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment; an injunction invalidating the exclusive dealing arrangement between Corcept and Optime, and any other practices by Defendants that effectively and unlawfully stifle competition; and any further legal and equitable relief that the Court may deem just and proper. ECF No. 39.

**12. SETTLEMENT AND ADR**

In its Case Management Order dated November 4, 2024, subsequent to the Case Management Conference on October 31, 2024, the Court referred this case to Private Mediation. ECF No. 63. The Court subsequently ordered the parties to hold an ADR session on or before November 14, 2025. ECF No. 75.

**13. OTHER REFERENCES**

Teva does not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14.   NARROWING OF ISSUES**

Teva does not believe that any issues can be narrowed at this time.

**15.   EXPEDITED TRIAL PROCEDURE**

Teva does not believe that this is a case that is suitable for the expedited trial procedure under the Expedited Trial Procedure of General Order No. 64.

**16.   CASE SCHEDULE**

In its Case Management Order dated November 4, 2024, subsequent to the Case Management Conference on October 31, 2024, the Court set certain deadline in the case schedule and directed "the parties to meet, confer, and submit a stipulation and order setting all deadlines not set by the Court … including discovery cut-offs and expert disclosure deadlines" by November 15, 2024.  ECF No. 63. The Parties filed their proposal, which is included below for Court's reference.  ECF No. 67.

In the proposal below, dates that the Court has already set are highlighted in dark green, and dates that the Court did not previously set but that parties agree on are *not* highlighted.  The Parties' lone dispute—regarding a date for substantial completion of document productions and final privilege logs, a date that the Court did not previously set—is highlighted in red.  The Parties also below provide their respective positions on that one disputed date.

| **Deadline** | **Teva's Proposal** | **Defendants' Proposal** |
|---|---|---|
| Last Day to Request Leave to Amend Under Rule 15 | January 3, 2025 | January 3, 2025 |
| Case Management Statement Due | February 13, 2025 | February 13, 2025 |
| Case Management Conference | February 20, 2025, at 11 a.m. | February 20, 2025, at 11 a.m. |
| Motion to Dismiss Hearing | March 6, 2025, at 11 a.m. | March 6, 2025, at 11 a.m. |
| Substantial Completion of Document Productions and Final Privilege Logs | July 11, 2025 | N/A  [Defendants oppose the setting of a substantial completion deadline] |
| Close of Fact Discovery | November 21, 2025 | November 21, 2025 |
| Opening Expert Reports | January 9, 2026 | January 9, 2026 |
| Rebuttal Expert Reports | February 20, 2026 | February 20, 2026 |

| Completion of Expert Depositions | March 27, 2026 | March 27, 2026 |
|---|---|---|
| Final Date to File Dispositive Motions | May 15, 2026 | May 15, 2026 |
| Oppositions to Dispositive Motions | June 19, 2026 | June 19, 2026 |
| Replies on Dispositive Motions | July 17, 2026 | July 17, 2026 |
| Hearing Date for Dispositive Motions | August 13, 2026, at 9 a.m. | August 13, 2026, at 9 a.m. |
| Lead Counsel Meet-and-Confer Before Trial | October 29, 2026 | October 29, 2026 |
| Motions in Limine (Max. 5/Side) Due | November 9, 2026 | November 9, 2026 |
| Hearing Date for Non-in Limine *Daubert* Motions | November 12, 2026 at 9:00 | November 12, 2026 at 9:00 |
| Joint Pretrial Statement and Order | November 25, 2026 | November 25, 2026 |
| Jury Materials (Preliminary Statement of Case; Voir Dire; Jury Instructions; Verdict Form) | November 25, 2026 | November 25, 2026 |
| Oppositions to Motions in Limine | December 3, 2026 | December 3, 2026 |
| Pretrial Conference | December 10, 2026, at 1:30 | December 10, 2026, at 1:30 |
| Trial Briefs | January 4, 2027 | January 4, 2027 |
| Trial | January 11, 2027, at 9 a.m. | January 11, 2027, at 9 a.m. |

### 1. Teva's Position

Given that the Parties have agreed to a cutoff for fact discovery, Defendants have thus far provided no cogent reason why a deadline for the substantial completion of document productions and final privilege logs should not be set as well. In the Parties' prior proposal as to the case schedule, Defendants raised numerous hypothetical concerns—based on pending motions and issues the parties *may* end up litigating—to argue why setting such a deadline would be premature at this stage. But the possibility of future contingent events is not a sound basis to not set a substantial completion deadline now. (Indeed, the same could be said for all deadlines.) Should those contingencies actually arise, the Parties will, of course, be free to diligently approach the Court for any necessary modifications to the substantial completion deadline, or any other deadline for that matter. *See* Fed. R. Civ. Proc.

16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). As the point of a substantial completion deadline is to ensure that Parties have an adequate opportunity to review and follow up on documents received in discovery before conducting depositions, any modification of that deadline will very likely entail a similar modification of the fact discovery deadline too. Defendants have identified no unique concern about setting a substantial completion deadline that would not equally apply to a fact discovery deadline. Finally, Defendants' claim that a substantial completion deadline should not be set because neither the Northern District's Local Rules nor this Court's standing orders requires it is not persuasive. To the contrary, given the recognized importance of completing document production and review before the onset of depositions, setting substantial completion deadlines in complex litigation is a routine occurrence in this district. *See generally Valentine v. Crocs, Inc.*, 2023 WL 7461852, at *2 (N.D. Cal. Nov. 10, 2023); *In re Google RTB Consumer Priv. Litig.*, 2023 WL 3046793, at *1 (N.D. Cal. Apr. 21, 2023); *In re Telescopes Antitrust Litig.*, 2022 WL 3590342, at *1 (N.D. Cal. Aug. 22, 2022); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282213, at *3 (N.D. Cal. Nov. 14, 2021). Doing so adds significant value for the administrative efficiency of the case. For all those reasons, Teva submits that the Court should include a substantial completion deadline to the case schedule, and that July 11, 2025 is a reasonable deadline under the circumstances.

**17.   TRIAL**

Teva has requested a jury trial.

      **1.   Teva's Position**

Teva estimates that the trial will last approximately 14 days after a jury is empaneled.

**18.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

      **1.   Teva's Position**

Teva filed its Certification of Conflicts and Interested Entities or Persons Pursuant to Civil Local Rule 3-15 on June 13, 2024. ECF No. 5. Teva identified one entity with a financial interest in the subject matter in this litigation—non-party Teva Pharmaceutical Industries Ltd., of which Plaintiff Teva Pharmaceuticals USA, Inc. is an indirect, wholly owned subsidiary.

**19.    PROFESSIONAL CONDUCT**

All attorneys of record for Teva have reviewed the Guidelines for Professional Conduct for the Northern District of California.

| | | |
|---|---|---|
| 1 | Dated: February 13, 2025 | Respectfully submitted, |
| 2 | | |
| 3 | | By: */s/ Michael Shipley* |
| 4 | | Michael Shipley<br>KIRKLAND & ELLIS LLP |
| 5 | | 555 South Flower Street, 37th Floor<br>Los Angeles, California 90071 |
| 6 | | Tel: (213) 680-8400<br>michael.shipley@kirkland.com |
| 7 | | |
| 8 | | Devora W. Allon, P.C.<br>Kevin M. Neylan, Jr. |
| 9 | | KIRKLAND & ELLIS LLP<br>601 Lexington Avenue |
| 10 | | New York, NY 10022<br>(212) 446 5967 |
| 11 | | devora.allon@kirkland.com<br>kevin.neylan@kirkland.com |
| 12 | | |
| 13 | | *Attorneys for Plaintiff*<br>*Teva Pharmaceuticals USA, Inc.* |

16
TEVA'S CASE MANAGEMENT STATEMENT
CASE NO. 5:24-cv-03567-BLF

**[PROPOSED] CASE MANAGEMENT ORDER**

The above Case Management Statement and [Proposed] Order is approved as the Case Management Order for this case and all parties shall comply with its provisions.

**IT IS SO ORDERED.**

Dated: _____,

_____
The Hon. Beth Labson Freeman
United States District Judge