| | |
|---|---|
| Michael Shipley (SBN 233674)<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street, 37th Floor<br>Los Angeles, California 90071<br>Tel:  (213) 680-8400<br>michael.shipley@kirkland.com | **QUINN EMANUEL URQUHART & SULLIVAN, LLP**<br>Robert W. Stone (Bar No. 163513)<br>robertstone@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065<br>Telephone:    (650) 801-5000<br>Fax:               (650) 801-5100 |
| Devora W. Allon, P.C. (*Pro Hac Vice*)<br>Kevin M. Neylan, Jr. (*Pro Hac Vice*)<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Tel:  (212) 446-4800<br>devora.allon@kirkland.com<br>kevin.neylan@kirkland.com | *Attorneys for Defendant*<br>*Corcept Therapeutics, Inc.*<br><br>**DUANE MORRIS LLP**<br>Lucas C. Wohlford (admitted *Pro Hac Vice*)<br>100 Crescent Court, Suite 1200<br>Dallas, TX 75201<br>Telephone: +1 214 257 7200<br>Facsimile:  +1 214 257 7201<br>E-Mail:  lwohlford@duanemorris.com |
| *Attorneys for Plaintiff*<br>*Teva Pharmaceuticals USA, Inc.* | *Attorney for Defendant*<br>*Optime Care Inc.* |
| | [Additional Counsel Listed On Signature Page] |

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC.,<br><br>Defendants. | Case No.  5:24-cv-03567-BLF<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge:  Honorable Beth Labson Freeman |

**A.   PURPOSE**

This ESI Protocol Order ("Order") will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

**B.   COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**C.   LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**D.   PRESERVATION**

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. The Parties agree the following sources of ESI are not reasonably accessible and need not be preserved, collected, processed, reviewed, and/or produced, absent specific Court order to the contrary: (1) deleted data, instant messages that have not been subject to retention, or fragmented or otherwise compromised data only retrieved by forensics; (2) random access memory, temporary files, or other ephemeral data that are difficult to preserve without disabling the operation system; (3) online data such as temporary internet files, history, cache, cookies, and the like; (4) server, system, and/or network logs; (5) data from systems no longer in use that cannot reasonably be accessed; and/or (6) backup and/or disaster recovery tapes or files.

E.  **SEARCH**

1.  Search Methodology:

    a.  The Parties agree to take reasonable and good faith steps to identify, review, and produce documents responsive to the propounded discovery, the propounded discovery as modified by the Parties' agreements following meet-and-confers, or Court order (as may be applicable). Except as to matters specifically addressed herein, nothing in this Order will narrow or limit the Parties' respective discovery obligations under the Federal Rules of Civil Procedure.

    b.  The Parties will meet and confer in good faith regarding document custodians and any reasonably accessible and proportional non-custodial document sources (*e.g.*, centralized document sources other than an individual document custodian's files, including sources of structured data) that are most likely to have non-duplicative information and/or documents responsive to an agreed-upon or Court-ordered scope of document requests.

    c.  If, after the Parties identify document custodians, a Requesting Party believes that additional document custodians or document sources should be added, then the Requesting Party shall advise the Producing Party in writing of the proposed additional document custodians or sources and the basis for the request; provided, however, that such requests will be made promptly and must not be unduly burdensome. Where such a request is made, the Parties will meet and confer and attempt in good faith to reach agreement. If the Parties cannot reach agreement, any dispute may be presented to the Court.

    d.  To locate potentially relevant ESI, the Parties may use search terms, in which case the Parties will meet and confer in good faith regarding search terms. Any Party that asserts that a proposed search term is overbroad, unduly burdensome, or otherwise unreasonable shall produce a report containing details of hit counts based on that search term within seven (7) days of a request

for such a report. If the Parties cannot reach agreement on search terms, either Party may present such dispute to the Court.

    e.    Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's request. Similarly, nothing in this Order may be construed or interpreted as requiring the production of all documents captured by any search term if any such document(s) is, in good faith, reasonably deemed not relevant to the Requesting Party's request or is otherwise privileged or protected from discovery.[1]

2. Deduplication:

    a.    A Party is only required to produce a single copy of a responsive document. Parties are permitted to deduplicate stand-alone documents or entire document families: vertically within each document custodian, and/or horizontally (also referred to as globally) across document custodians.

    b.    Attachments to emails will not be eliminated from their parent emails. Where a standalone document is an exact duplicate of an email attachment, the email attachment must be produced, and the standalone document may be deduplicated.

3. Responsiveness: The fact that an electronic file is returned by application of the search queries and the protocols used herein does not mean that such file or document is responsive to any propounded discovery request or is otherwise discoverable in this litigation. However, if one document in a document family is determined to be responsive, then the entire family must—subject

---

[1] The Producing Party may produce emails or documents that contain (or appear to contain) hyperlinks to other documents. The Producing Party is not required to identify and produce documents that are the target of such links. If the Requesting Party believes such a target document is responsive, it may submit a reasonable request to the Producing Party to investigate the target document(s). The Producing Party shall then make reasonable efforts to respond to the Producing Party's request. If the Parties cannot reach agreement with respect to the Requesting Party's hyperlink request, any such dispute may be presented to the Court.

to any claim of attorney-client privilege, work product doctrine, and/or any other applicable privilege or protection—be produced irrespective of whether other documents in that family are responsive/relevant.

    4.    Use of Technology Assisted Review ("TAR"): Nothing in this Order may be construed or interpreted as precluding a Producing Party from using TAR to fulfill its document production obligations. If a Producing Party elects to use TAR as a means of culling or otherwise limiting the volume of information to be reviewed for responsiveness, the Producing Party shall promptly notify the Requesting Party of such use. If the Requesting Party objects to the Producing Party's procedures for using TAR and the Parties are unable to resolve their dispute after meeting and conferring in good faith, any dispute may be presented to the Court, with the burden being on the Requesting Party to explain their objections to the Producing Party's use of TAR.

    5.    Email Threading: The Parties may use email thread suppression to avoid review of duplicative information, but their productions must include all messages from the most inclusive messages identified as responsive.

**F.    PRODUCTION FORMATS**

The Parties agree to produce documents and files in the formats and manner described below. If particular documents or files warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to materially degrade the searchability of documents as part of the document production process.

    1.    General Provisions: Documents will be produced using a secure file transfer protocol or similarly secure method (*e.g.*, encrypted hard drive) ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"); volumes should be numbered consecutively. Each piece of Production Media shall also identify: (a) the Producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

    2.    Bates Numbering: All images must be assigned a unique Bates Number that is sequential within a given document and across the production sets.

3.    TIFFs: Where practicable, single page Group IV TIFFs should be provided. Each TIFF image will be produced in black and white at 300 (or more) dots per inch and named according to a unique corresponding Bates Number associated with the document, with corresponding multi-page text and necessary load files. Documents containing colors other than black (or shades thereof, such as gray) or white shall be produced in color. Each image will be branded according to the Bates Number and the Designating Party's confidentiality designation (consistent with the confidentiality designations provided in the Parties' Stipulated Protective Order). Original document orientation should be maintained where possible (*i.e.*, portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the Requesting Party may request that the Producing Party provide a higher quality TIFF image or the native of the original document. Parties may make reasonable requests for color copies of particular documents on a document-by-document basis where it appears that a document produced in black and white contains color.

4.    Text Files: Where practicable, a single multi-page text file will be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents, and OCR text files will be substituted instead of extracted text files for redacted documents.

5.    OCR Text Files: Where practicable, a commercially acceptable technology for OCR will be used for all redacted documents and scanned documents. OCR text will be provided as a single multi-page text file for each document, and the filename should match its respective TIFF filename. The text files for redacted documents will not contain the redacted portions of the documents. OCR of non-English language files is not required.

6.    Database Load Files/Cross-Reference Files: Productions will include, in addition to single page TIFFs and Text Files: (a) an ASCII delimited data file (.txt, .dat, or .csv); and (b) an image load file that can be loaded into commercially acceptable production software (*e.g.*, Relativity). Each TIFF in a production must be referenced in the corresponding image load file.

7. Parent-Child and Document Families: Where feasible, parent-child relationships will be maintained in production. In addition, entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except for: (1) junk files (*e.g.*, thumbnails) and non-user-created content routinely excluded during processing; and (2) documents that are withheld on the bases of attorney-client privilege, work product doctrine, and/or any other applicable privilege. However, for documents that are withheld on the bases of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the Producing Party must instead produce a slipsheet indicating that the document has been withheld on such basis. For the avoidance of doubt, document families do not include hyperlinked files (*e.g.*, those that may be present in an email or stand-alone document).

8. Metadata Fields and Processing: Each of the metadata and coding fields set forth in Appendix A that can reasonably be extracted will be produced for each document, if such metadata is reasonably available to the Producing Party. Metadata that would reveal the substance underlying redacted portions of Documents need not be produced. The Parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct; however, the Parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process.

9. Native Files: Spreadsheets (*e.g.*, Microsoft Excel) and presentations (*e.g.*, Microsoft PowerPoint) will be produced in native format unless redacted. If a spreadsheet or presentation needs to be redacted, redactions may be applied: (1) onto the native spreadsheet and produced in native form; or (2) onto an image, or images, of the spreadsheet and/or presentation and produced as a set of TIFF images with OCR text, provided that the document and its content remains legible and reasonably readable. For all documents produced in native format, a TIFF placeholder indicating that the document was provided in native format must accompany the database record. The Parties will make reasonable efforts to ensure that any spreadsheets or presentations that are produced only as TIFF images are formatted so as to be readable. To the extent that they are produced in this action, audio, video, and multi-media files will also be produced in native format. Native format may also be requested for other documents, such as Microsoft Word document containing track changes and/or

1  comments, where the Requesting Party can, in good faith, show that the image does not adequately
2  capture the full contents of the document.

3      10.    System Files: The Parties are not required to produce System Files.  "System files"
4  refer to filed attached to emails that: (1) do not contain user-generated content; and (2) are either
5  empty or incomprehensible, also known as "junk files."  System files may end in file extensions
6  including, but not limited to: .htm, .bin, .dat, and .txt.

7  **G.    PRIVILEGE AND REDACTION LOGS**

8      1.    The Parties agree that for documents redacted or withheld from production on the
9  bases of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the
10 Producing Party will provide privilege logs.  For each document withheld based upon a claim of
11 privilege, each Party's privilege log must provide the objective metadata listed below (to the extent
12 it is reasonably available and does not reflect privileged or protected information), the privilege or
13 protection being asserted (*e.g.*, attorney-client; attorney work product; joint defense and/or common
14 interest; etc.), and a description (*e.g.*, "legal advice re patent litigation"), which may be generated
15 from metadata, but must, in any event, be adequate to ascertain the basis for the asserted privilege.
16 Attorneys or their staff must be identified on the log with an asterisk (or similar notation).

17     2.    Communications with outside counsel or such counsel's work-product that post-date
18 June 13, 2024 (the filing date of Teva's complaint in this action) need not be placed in a privilege
19 log.

20     3.    Objective metadata includes the following fields, as defined in Appendix A to this
21 Order (to the extent those fields are available for a particular document):

22     a.    BEGBATES[2]
23     b.    ENDBATES
24     c.    BEGATTACH
25     d.    ENDATTACH
26     e.    FILENAME

---

[2] A document being entirely withheld may receive an alternative ID rather than a Bates ID.

|   |   |   |
|---|---|---|
| f. | EMAILSUBJECT |
| g. | AUTHOR |
| h. | TO/FROM/CC/BCC |
| i. | DATETIMESENT |
| j. | DATETIMERECEIVED |
| k. | DATETIMECREATED |
| l. | CUSTODIAN |
| m. | ALLCUSTODIANS. |

4. Each Party reserves all rights to challenge the sufficiency of the other Party's privilege log(s).

5. Privilege logs shall be produced within 28 days after each production installment provided, however, that the Producing Party may request additional time to provide the log(s) and the Requesting Party shall evaluate any such request in good faith. As an alternative to producing each privilege log within 28 days after the applicable production installment for that log, the Parties may agree to exchange interim privilege logs (*e.g.*, a first log on a particular date that covers all productions made before that date, a second log on a later date that covers all productions between the first log and the second log, so on and so forth). The Producing Party shall provide its privilege log in PDF format, which shall be accompanied by a Microsoft Excel copy of the log. The PDF copy will be the official log of record.

6. In the event that a document family contains multiple documents and one or more but not all of the documents in that family are privileged, then the responsive non-privileged document(s) must be produced. In that case, the remaining documents in the family must be logged on the privilege log. However, documents that are privileged only by virtue of being attached to a privileged communication may be logged as privileged, but a copy of the otherwise unprivileged document shall be produced a stand-alone document.

7. To the extent a document is redacted, rather than withheld in full from document productions, the following information in the document may be redacted: (i) information withheld on

the basis of attorney-client privilege, work product privilege, joint defense and/or common interest privilege; and/or (ii) information listed in Federal Rule of Civil Procedure 5.2(a).

8. Where a Producing Party changes, in whole or in part, the redaction or privilege designation of a document, the updated document shall be produced with an overlay and load file indicating the document being replaced. The Producing Party shall, if reasonably possible, assign the replacement document the same Bates numbers as the document being replaced.

**H. MISCELLANEOUS**

1. Objections Preserved: Nothing in this Order will be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. All objections as to the relevance, proportionality, production, discoverability, admissibility, authenticity, and/or confidentiality of ESI are preserved and reserved by all Parties.

2. Costs: Generally, and except as otherwise provided herein, the costs of discovery will be borne by the Producing Party unless otherwise ordered by the Court.

3. Timing: Production of ESI will be in accordance with the applicable Court rules, schedules, and orders, as well as any agreements by the Parties as to the timing and scope of discovery (including document production).

4. Dispute Procedures: The Parties will make their best efforts to comply with—and resolve any differences concerning compliance with—this Order. No Party may seek relief from the Court and/or Magistrate Judge concerning compliance with the Order until it has conferred with the other Parties to the action or made reasonable efforts to confer with the other Parties. If the Parties cannot resolve any dispute regarding any discovery right or obligation hereunder without Court intervention, then any Party may seek relief from the Court and/or Magistrate Judge consistent with the Court's Individual Practices, the Magistrate Judge's Individual Practices, the Federal Rules of Civil Procedure, and the Northern District of California Local Rules.

5. Re-Productions from Other Matters: To the extent any Party re-produces in this action materials from other cases or matters, nothing in this Order requires material changes or modifications to those materials—except with the addition of Bates numbering and confidentiality designations

1  specific to this action. To the extent reasonably possible, the prior production materials must be re-
2  produced with at least basic metadata/objective coding (*i.e.*, CUSTODIAN, AUTHOR,
3  DATETIMECREATED, FILENAME, TITLE, DOCEXT). If a Requesting Party raises a reasonable
4  issue regarding the usability or format of such re-produced materials, then the Parties will meet and
5  confer on that issue, attempt to resolve it in good faith, and seek Court intervention only if appropriate.

**I.   MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

DATED: _____

_____
Honorable Beth Labson Freeman
United States District Judge

## APPENDIX A: METADATA AND CODING FIELDS

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODUCTIONVOLUME | Name of the production volume |
| CUSTODIAN | Individual from whom the document originated |
| ALLCUSTODIAN(S) | Individual(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties<br><br>(Edoc or attachment only) |
| DATETIMECREATED | Date and time the document was created (format: MM/DD/YYYY HH:MM:SS)<br><br>(Edoc or attachment only) |
| DATETIMEMODIFIED | Date and time when document was last modified according to filesystem information (format: MM/DD/YYYY HH:MM:SS)<br><br>(Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |

| Field Name | Field Description |
|---|---|
| DATETIMERECEIVED | Date and time email was received (format: MM/DD/YYYY HH:MM:SS) |
| DATETIMESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM:SS) |
| FILESIZE | The original file size of the produced document |
| REDACTIONS | Indicate Yes if document redacted |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading (Microsoft application documents only) |
| EMAILSUBJECT | Subject line of email |
| TIMEZONEUSED | Time zone used to standardize date/time during document processing |
| FILENAME | File name of the edoc or email |
| TITLE | Any value populated in the Title field of the document properties |
| SUBJECT | Any value populated in the Subject field of the document properties |
| DOCEXT | File extension of the document |
| WITHHELD PLACEHOLDER | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y" |

| | |
|---|---|
| Dated: February 18, 2025 | Respectfully submitted, |
| | By: /s/ Michael Shipley |
| | Michael Shipley |
| | KIRKLAND & ELLIS LLP |
| | 555 South Flower Street, 37th Floor |
| | Los Angeles, California 90071 |
| | Tel: (213) 680-8400 |
| | michael.shipley@kirkland.com |
| | |
| | Devora W. Allon, P.C. |
| | Kevin M. Neylan, Jr. |
| | KIRKLAND & ELLIS LLP |
| | 601 Lexington Avenue |
| | New York, NY 10022 |
| | (212) 446 5967 |
| | devora.allon@kirkland.com |
| | kevin.neylan@kirkland.com |
| | |
| | *Attorneys for Plaintiff* |
| | *Teva Pharmaceuticals USA, Inc.* |

By: _____/s/ Robert W. Stone_____
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Fax:             (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Fax:             (415) 875-6700

Steig D. Olson (admitted *pro hac vice*)
  steigolson@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone:   (212) 849-7000
Fax:             (212) 849-7100

*Attorneys for Defendant*
*Corcept Therapeutics, Inc.*


By: _____/s/ Lucas C. Wohlford_____
Lucas C. Wohlford (admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone:  +1 214 257 7200
Facsimile:   +1 214 257 7201
E-Mail:  lwohlford@duanemorris.com

Justin J. Fields (SBN 259491)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone:  +1 415 957 3000
Facsimile:   +1 415 957 3001
E-Mail:  jfields@duanemorris.com

*Attorneys for Defendant*
*Optime Care Inc.*

-15-                                       Case No. 5:24-cv-03567-BLF
STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION