February 28, 2025

**VIA ECF**

| | |
|---|---|
| The Honorable Virginia K. DeMarchi<br>United States District Court for the<br>Northern District of California<br>San Jose Courthouse, Courtroom 2 – 5th Floor<br>280 South First Street<br>San Jose, California 95113 | **PURSUANT TO SECTION 4(C) OF THE COURT'S STANDING ORDER RE CIVIL CASES** |

   Re: Joint Discovery Dispute Letter Brief Regarding Protective Order in *Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc., and Optime Care Inc.*, Case No. 5:24-cv-03567-NW

To the Honorable Judge DeMarchi:

  Pursuant to Section 4 of Your Honor's Standing Order for Civil Cases, the parties submit this joint discovery letter regarding their dispute over a discrete issue with respect to the protective order that will govern discovery in this case: the ability of in-house counsel to access information designated as Highly Confidential. The parties have engaged in extensive negotiations regarding the protective order, beginning on October 7, 2024 when Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") sent a draft protective order to Defendants Corcept Therapeutics, Inc. ("Corcept") and Optime Care Inc. ("Optime"). The parties have exchanged correspondence and held a lead-counsel meet-and-confer on this issue on February 18, 2025, but remain at an impasse. The parties therefore request Your Honor's assistance in resolving this dispute.

  **1.** **Statement of Dispute Requiring Resolution**

  The parties disagree over whether, as Teva asserts, the protective order should permit the parties to share Highly Confidential information with certain designated in-house litigation counsel who are not involved in competitive decision-making, or whether, as Defendants assert, Highly Confidential information should be limited to outside counsel only.

  **2.** **Parties' Position Statements**

   **(a)** **Teva's Position**

  In order to ensure that the parties can meaningfully participate in this litigation, the protective order in this case should permit certain designated in-house litigation counsel to view Highly Confidential material. That is consistent with the Northern District of California's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information

and/or Trade Secrets ("Model Order"), which provides a framework for protecting sensitive information while enabling necessary client input in litigation strategy.

Defendants suggest that there is no need for in-house counsel to review Highly Confidential material. But this case is very likely to include key documents designated as Highly Confidential, including distribution strategies, pricing structures, manufacturing costs, and other proprietary data critical to the antitrust claims at issue. Designated in-house litigation counsel must be permitted to review those key Highly Confidential materials in order to effectively guide discovery strategy, prepare for depositions, assess summary judgment arguments, review expert reports, and participate meaningfully in mediation discussions.

Teva's proposal, adopted from the Model Order, would permit disclosure to Designated House Counsel (1) who have no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the notice provisions of Section 7.4(a)(1) have been followed. Those notice provisions would require the Receiving Party to first make a written request to the Designating Party that identifies the Designated House Counsel and describes their current and reasonably foreseeable job duties. The Designating Party may then provide a written objection, which would initiate the discovery dispute procedures under Your Honor's standing order. *See* Exhibit 1.

Defendants' proposal, in contrast, would require the parties to seek de-designation of Highly Confidential materials on a document-by-document basis in order to share any such materials with in-house counsel. Defendants' approach would incentivize overly restrictive designations, which generate unnecessary disputes and motion practice over confidentiality issues. Teva's proposed framework, on the other hand, maintains strong confidentiality protections while establishing clear procedures for necessary access.

Teva's proposal is the most efficient framework by which the parties can protect highly sensitive business information while ensuring client access to key information. It is also consistent with protective orders in other matters in which Teva is a party. As explained in Teva's Motion for Leave to Submit the Declaration of Conrad Johnson, Teva's in-house litigation counsel, including Conrad Johnson (Senior Director of Antitrust and Complex Commercial Litigation), Daniel Forchheimer (Senior Counsel for Complex Commercial and IP Litigation), Brian Savage (Senior Vice President and General Counsel), Colman Ragan (Vice President and General Counsel for North America IP Litigation), and Rivka Jungreis (Executive Counsel for U.S. IP Litigation), have been Designated In-House Litigation Counsel under the governing protective orders in other matters. In every instance, they have agreed to be bound by the governing protective order and have complied with the protective order. If the Court adopts Teva's proposal, Teva's Designated In-House Litigation Counsel would likewise agree to be bound by the protective order and would comply with the provisions of that protective order.

As the parties seeking an order that would limit the disclosure of discovery, Defendants, not Teva, bear the burden of proof. *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2017 WL 2591842, at *1 (N.D. Cal. June 15, 2017) ("As the party seeking an order that would limit the disclosure of discovery material to certain persons, plaintiff bears the burden of showing good cause." (citing Fed. R. Civ. P. 26(c)(1))); See Exhibit 1 & 2, Section 7.4(c) ("[T]he Party opposing

2

disclosure … shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material"). There is no good cause for Defendants' extreme proposal.

***First***, Defendants' proposal amounts to a blanket prohibition on access to highly confidential materials for any in-house counsel. But the Ninth Circuit has rejected "arbitrary distinctions based on type of counsel employed" and has instead required a factual inquiry on a counsel-by-counsel basis. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)); *see also Amgen Inc. v. Sandoz Inc.*, 2017 WL 22502, at *1–2 (N.D. Cal. Jan. 3, 2017) ("Courts may not deny access to confidential information solely on the basis of counsel's in-house or retained status."); *Pinterest, Inc. v. Pintrips, Inc.*, 2014 WL 5364263, at *1 (N.D. Cal. Oct. 21, 2014) (similar); *Intel Corp. v. VIA Techs.*, Inc., 198 F.R.D. 525, 529 (N.D. Cal. 2000) ("The court in *Brown Bag* incorporated the holding of the court in *U.S. Steel* that the risk of potential inadvertent disclosure by counsel must be determined by 'the facts on a counsel-by-counsel basis.'").

***Second***, Defendants' arguments in the abstract are premature. Defendants argue that there is no need to disclose highly confidential material to in-house counsel. But this litigation is still in its infancy. Indeed, despite Teva's having first served discovery in October, to date, Defendants have refused to produce any documents beyond a few organization charts until a protective order is formally entered by the court. There is no way for the parties to evaluate, in the abstract, whether specific counsel have a need to see specific materials. *See MD Helicopters, Inc. v. Aerometals, Inc.*, 2017 WL 495778, at *2 (E.D. Cal. Feb. 6, 2017) (observing that there was "no way for either side to know whether [in-house counsel] would need to see these materials" where no responsive discovery had yet been designated Attorney's Eyes Only). If discovery requires the parties to produce materials that are so highly sensitive that the producing party could suffer injury were they exposed to counsel who otherwise meet the criteria in Teva's version of the proposed order, the producing party is, of course, free to seek additional protection from the Court (protection that, if appropriate under the circumstances, Teva commits it would agree to).

Similarly, Defendants point to the titles of the attorneys referenced in Mr. Johnson's declaration, as well as certain public statements from three of the five attorneys, to suggest that they are not sufficiently insulated from competitive decision-making. Again those issues are premature. *Amgen Inc.*, 2017 WL 22502, at *1–2 (rejecting Outside Counsel Only provision and declining to rule on particular counsel designations where there was not yet "sufficient information regarding their responsibilities toward or their relationship with [the client] such that the Court can determine if these attorneys are involved in any competitive decisionmaking"). Mr. Johnson's declaration is not a stand-in for the notice and objection procedures described under Teva's proposed protective order. The parties have yet to have discussions about any particular counsel designations. If the Court adopts Teva's proposed protective order, those discussions can proceed in due course. *See Newmark Realty Cap., Inc.*, 2017 WL 2591842, at *2 ("The safeguards of Paragraph 7.[4] are designed to address the concerns raised by plaintiff specifically where, as here, the designating party has not demonstrated good cause for a blanket prohibition on access by in-house counsel to AEO information."). Teva is also willing to discuss, at that stage, any concerns that Corcept may have about equitable access for its own in-house counsel, and any safeguards that can be enacted to protect Teva's highly confidential material. But Corcept's concerns about

inequitable access are not enough to justify a wholesale prohibition on any in-house counsel access based on the unilateral decision of the producing party.

It is common for courts in the Northern District to adopt the designated house counsel provisions of the Model Order, and to conduct fact-specific inquiries on a counsel-by-counsel basis according to the notice and objection provisions of the Model Order. *Newmark Realty Cap., Inc.*, 2017 WL 2591842, at *2; *Amgen Inc.*, 2017 WL 22502, at *1–2; *OpenTV, Inc. v. Apple, Inc.*, 2014 WL 5079343, at *1 (N.D. Cal. Oct. 9, 2014); *see also Tevra Brands LLC v. Bayer HealthCare LLC*, Case No. 5:19-cv-04312-BLF (N.D. Cal.) (protective order with designated in-house counsel provision in exclusive dealing case). Indeed, the presence of these provisions in the Model Order suggests that they are inherently reasonable. *See In re Google Assistant Privacy Litig.*, 2020 WL 4698810, at *2 (N.D. Cal. Aug. 13, 2020) ("The Court finds, in concurrence with innumerable decisions in this District, that section 7.4 is inherently reasonable"). Even Defendants cite cases that support this approach. *See, e.g.*, *Pinterest, Inc.*, 2014 WL 5364263, at *3 (analyzing particular counsel designation under protective order that permitted disclosure to Designated House Counsel); *Adobe Sys. Inc. v. Davachi*, 2011 WL 2610170, at *4 (N.D. Cal. July 1, 2011) (same).

For these reasons, Teva respectfully requests that the Court adopt Teva's proposed protective order, which would permit the disclosure of Highly Confidential material to designated in-house litigation counsel who are not involved in competitive decision-making and to whom disclosure is reasonably necessary.

### (b) Defendants' Position

Overview. Teva, a generic drug manufacturer, brought this antitrust lawsuit against its direct competitor Corcept (which manufactures the Korlym drug) and Optime (a pharmacy that distributes Korlym). Discovery will concern the development, nature, marketing and distribution of products that treat Cushing's syndrome. Teva concedes discovery will involve highly competitively-sensitive material and it already seeks, *inter alia*, distribution strategies, pricing structures, manufacturing costs, business strategies, and proprietary data. The *optional* provision in the Northern District's model protective order permitting in-house counsel access to Highly Confidential ("HC") information is inappropriate here.

In determining whether in-house counsel may access HC information, the Court must balance (i) the risk of inadvertent disclosure to competitors or likelihood of competitive misuse against (ii) the risk that restricting access to HC material would prejudice a party's ability to litigate. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Teva overlooks this test, under which the demonstrated "prejudice" to Teva (or lack thereof) is critical. As the party seeking in-house access to HC information, the burden is on Teva, not Defendants, to "advance[] a persuasive argument why [its in-house counsel] must have access." *Pinterest, Inc. v. Pintrips, Inc.*, 2014 WL 5364263, at *3 (N.D. Cal. Oct. 21, 2014). Teva has not done so, and also fails to articulate how protecting HC material from in-house review impedes its prosecuting its claims. At the same time, the risk of inadvertent disclosure and misuse is inherently high.

Teva Fails to Demonstrate Need or Prejudice. Teva's generic arguments about in-house counsel's need to "effectively guide" and "participate" in the litigation and the burden of de-designating documents as needed (a procedure provided for in the agreed-upon portions of the

4

protective order) cannot justify access. *Pinterest*, 2014 WL 5364263, at *3 ("That Plaintiff prefers to closely supervise its outside counsel [] is insufficient to justify risking the inadvertent disclosure of Defendant's attorneys' eyes only information" through access to in-house counsel); *Adobe Sys. Inc. v. Davachi*, 2011 WL 2610170, at *4 (N.D. Cal. July 1, 2011) (rejecting party's claim it "cannot manage its litigation without" in-house counsel access); *Shared Memory Graphics, LLC v. Apple, Inc.*, 2010 WL 4704420, at *2-3 (N.D. Cal. Nov. 12, 2010) (similar); *Chrimar Sys. Inc v. Cisco Sys. Inc*, 2013 WL 12145873, at *2 (N.D. Cal. Oct. 24, 2013) ("re-designation approach" to downgrade documents to share with in-house counsel as needed would not "inhibit [party's] ability to fully and fairly litigate").

Beyond generalities about case strategy, evaluation, and settlement, Teva fails to explain why its able outside counsel cannot perform these tasks. Limiting access to HC information to outside counsel causes no prejudice that justifies in-house counsel access. *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 528-29 (N.D. Cal. 2000) ("Requiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.'"); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2012 WL 6160468, at *5-6 (E.D. Cal. Dec. 11, 2012) (rejecting party's need for confidential information to "guide the case" where its "attorneys and experts have full access"); *Pinterest*, 2014 WL 5364263, at *3 (party did not need in-house counsel access to opponent's information for settlement purposes since outside "counsel routinely facilitate the settlement of cases").

Teva's reliance on a boilerplate declaration from its in-house counsel, Mr. Johnson, is also unavailing. Courts reject attempts to gain in-house counsel access based on such generic assertions of need and assurances of protection. For example, *Intel* denied in-house counsel access based on a declaration from the "leader of Intel's litigation team" asserting "I need access to all information produced … so that I can understand the issues, assess the strength of the case, and plan strategy. Without access to such information, it will be impossible for me to effectively advise Intel or manage outside counsel." 198 F.R.D. at 528-29. Like the Johnson declaration, Intel in-house counsel failed to describe *how* the party's "ability to litigate through outside counsel will be impaired" beyond platitudes. The requisite prejudice to justify in-house counsel access does not exist "where outside counsel had sufficient time and resources to review confidential materials and was presumably competent to evaluate the information." *Id.*

Moreover, Teva's proposal is inequitable. If the Court determines only in-house counsel lacking competitive or business responsibilities can access HC information, that would prejudice Corcept, a relatively small company with in-house counsel who do not fully lack those responsibilities.

<u>Risk of Inadvertent Disclosure or Misuse is Acute</u>. Under the protective order's agreed-upon portions, HC information is "extremely sensitive [information], disclosure of which to another Party [] would create a substantial risk of serious harm." Teva employees' access presents unacceptable risks, and a lawsuit between direct competitors, as here, is where courts *bar* in-house access. *Adobe*, 2011 WL 2610170, at *4 ("The concern for inadvertent disclosure is particularly acute where the party seeking access to the information is a direct competitor."); *Chrimar*, 2013 WL 12145873, at *2 (rejecting request for in-house counsel access, which would increase likelihood of inadvertent disclosure); *Intel*, 198 F.R.D. at 530 (giving in-house counsel information about adversary's products and agreements would confer unacceptable "competitive advantage").

The Johnson declaration does not justify its conclusion that *nearly a half dozen* of Teva's legal team should be able to access its direct competitor's most sensitive information. The declaration concedes this case will involve highly-sensitive materials "including documents reflecting distribution and pricing strategies, manufacturing and development costs," ¶15, which weighs strongly against allowing access. Teva's rote statements the listed counsel are not—and are "not likely" to become—involved in competitive decision-making cannot justify access. *Fed. Trade Comm'n v. Advoc. Health Care Network*, 162 F. Supp. 3d 666 (N.D. Ill. 2016) ("merely insisting that one is not 'involved in competitive decision-making' cannot … serve as a shibboleth the mere invocation of which permits access to Highly Confidential information").

The sparse information the Johnson declaration does provide undermines its assertions about lack of competitive decision-making. Mr. Johnson has a supervisory role for "Antitrust and Complex Commercial Litigation," while the other listed individuals—Messrs. Forchheimer, Savage, Ragan, and Ms. Jungreis—have supervisory roles for "Complex Commercial," "Global," and/or "IP" litigation, ¶¶ 1, 10–13, indicating competitive responsibilities. *United States v. Aetna Inc.*, 2016 WL 8738420 (D.D.C. Sept. 5, 2016) (parties "failed to demonstrate ... in-house counsel designated [] not involved in competitive decision-making," where counsel "supervise[d] litigation" and involved in "antitrust and competition [and] intellectual property" matters).

Moreover, public information reveals there is a serious risk the listed individuals do or could easily find themselves in the "untenable position' of either refusing [their] employer legal advice or revealing [Defendant's] sensitive information." *Adobe*, 2011 WL 2610170, at *4. For example, Mr. Savage indicated he "considers himself as much a *business counselor* as a lawyer," stated he interacts with Teva's business personnel, and spoke about "Drug Pricing Transparency" at the 2023 session of a conference where "professionals" "come together" for "industry benchmarking[.]"[1] Mr. Colman "works closely" with "pharmaceutical trade associations."[2] Ms. Jungreis "advises" Teva on "trade secret, FDA regulatory, and antitrust issues."[3]

Courts decline to grant such persons access to HC information because "in-house counsel who is exposed to a competitor's confidential information often cannot simply forget" what they learned. *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010). Teva's listed counsel apparently have exposure to groups that involve other pharmaceutical companies, Teva's business functions, and/or Teva regulatory functions in which knowing a competitor's information may be strategically useful. *Pinterest*, 2014 WL 5364263, at *3 (denying in-house counsel access to confidential information where he had a "substantial role on the legal team," some "control" over its intellectual property, "influence" over whether to

---

[1] https://americanhealthcareleader.com/2019/brian-savage/; https://www.linkedin.com/posts/brian-savage-b7633a9_drug-pricing-transparency-2023-activity-7051535605263949824-tGAO?utm_source=share&utm_medium=member_desktop&rcm=ACoAACKuVBgBgQtLVGAC9_KImUk22a-jdpbelYM; https://informaconnect.com/pricing-contracting-usa/.

[2] https://thesedonaconference.org/bio/218068.

[3] https://www.aipla.org/sandbox/kemahl-test-pages/blog/2-2-concurrent-track-2---deep-dive-therapeutics.

pursue litigation, and performed "advisory work with product teams" because "[t]he risk of inadvertent disclosure" too great).

Although Teva claims it is "premature" to discuss particular counsel or their responsibilities, *Teva* put those facts in question, and they speak to the likelihood of inadvertent disclosure. Presumably, the counsel in Teva's declaration are those it intends to designate (if not, identifying them is useless). There is no point in granting Teva an in-house counsel access provision if the individuals it intends to designate present an acute risk of inadvertent disclosure or misuse of HC information. Public information about in-house counsel Teva has identified so far demonstrates overlap between Teva's legal and business functions of the kind courts guard against. While Teva critiques a distinction between in-house and outside counsel, the reality is the former poses an acute risk, as they would need to compartmentalize HC information once in their brains, avoid referring to it (intentionally or unintentionally) in daily interactions with fellow Teva employees, and zealously prevent its further spread once already inside Teva (such as on its email and computer systems). Given the nature of Teva's case and the discovery it is already pursuing, the risk of inadvertent disclosure from Teva's in-house litigation counsel is intolerably high compared to Teva's demonstrated need.

### 3. Parties' Views Regarding the Need For A Hearing

#### (a) Teva's Position

Teva believes the Court will be able to resolve this dispute without a hearing.

#### (b) Defendants' Position

Defendants defer to the Court regarding the need for a hearing. To the extent helpful, Defendants are happy to explain how the HC information at issue is competitively sensitive in this antitrust case and how Defendants' proposal—which would apply the same to each side—is practical and equitable.

### 4. Discovery Cut-Off Dates for Fact and Expert Discovery

The Court has not yet entered an order setting deadlines for the close of fact or expert discovery. However, in November 2024 the parties submitted a joint proposal as to the case schedule, in which the parties proposed November 21, 2025 as the close of fact discovery, and March 27, 2026 as the close of expert discovery.

### 5. Compliance With Meet and Confer Requirement

The parties met and conferred on this issue on February 18, 2025 via Zoom video call. Michael Shipley served as lead counsel for Teva, and he was accompanied by Aditya Garg, Madison Scott Roemer, and Seth Rosenberg. Adam Wolfson served as lead counsel for Corcept, and he was accompanied by Brantley Pepperman. Luke Wohlford was present on behalf of Optime.

**6.     Attachments**

Attached to this letter as Exhibit 1 is a copy of Teva's proposed protective order. Attached as Exhibit 2 is a copy of Defendants' redline to Teva's proposed protective order. Additionally, concurrently with this letter Teva has moved for leave to submit a declaration of Conrad Johnson, Senior Director of Antitrust and Complex Commercial Litigation at Teva in support of Teva's positions in this letter.

Respectfully submitted,

| | |
|---|---|
| Dated: February 28, 2025 | KIRKLAND & ELLIS LLP |
| | */s/ Michael Shipley* |
| | Michael Shipley |
| | *Attorney for Plaintiff Teva Pharmaceuticals USA, Inc.* |
| Dated: February 28, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | */s/ Robert W. Stone* |
| | Robert W. Stone |
| | *Attorney for Defendant Corcept Therapeutics, Inc.* |
| Dated: February 28, 2025 | DUANE MORRIS LLP |
| | */s/ Lucas Wohlford* |
| | Lucas Wohlford |
| | *Attorney for Defendant Optime Care Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I caused to be filed the foregoing document with the United States District Court for the Northern District of California using the CM/ECF system, and caused it to be served on all registered participants via notice of electronic filing.

> */s/ Michael Shipley*
> Michael Shipley