Michael Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
555 South Flower Street, 37th Floor
Los Angeles, California 90071
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*Pro Hac Vice*)
Kevin M. Neylan, Jr. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
 robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Fax:       (650) 801-5100

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

**DUANE MORRIS LLP**
Lucas C. Wohlford (admitted *Pro Hac Vice*)
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail: lwohlford@duanemorris.com

*Attorney for Defendant Optime Care Inc.*

[Additional Counsel Listed On Signature Page]

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No. 5:24-cv-03567-NW <br><br> **JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |

Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") and Defendants Corcept Therapeutics, Incorporated ("Corcept") and Optime Care Inc. ("Optime") submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Court's order, ECF No. 81.

## 1. JURISDICTION & SERVICE

Teva's Complaint includes claims under the federal antitrust laws and factually-related state law claims, giving rise to subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367. There are no issues regarding jurisdiction, venue, or service at this time. No parties remain to be served.

## 2. FACTS

### A. Teva's Position

This is an antitrust case about anticompetitive conduct in the market for a pharmaceutical product called Korlym. Korlym is the only FDA-approved drug to treat endogenous Cushing's syndrome, a rare and debilitating condition that results when the body produces too much cortisol. Korlym is sold by Defendant Corcept Therapeutics, and distributed by Defendant Optime Care—a specialty pharmacy and the only pharmacy that distributes Korlym.

Plaintiff Teva Pharmaceuticals makes a generic version of Korlym. Teva launched the first generic version of Korlym in January 2024, and it has been the only generic on the market ever since.

When a first generic product enters the market, it almost always quickly captures a very large market share, and prices rapidly drop. And that makes sense, because generic drugs are carbon copies of brand drugs—they are identical in all respects—except they are typically cheaper than brand drugs. Studies show that when a first generic enters the market, it reliably captures 60-75% of the market within its first six months, and often more than 80% within the first year. The beneficiaries are patients, who switch over to a more affordable but equally effective medicine.

But that has not happened here. Teva's generic has been on the market for over a year. It has been priced at a material discount to brand Korlym the entire time. But Teva has captured virtually zero market share. All the while, Corcept has charged astronomical prices at profit margins close to 99%. That result would be impossible to explain in a functioning, competitive pharmaceutical market.

Teva's generic has been unable to threaten Corcept's monopoly because Corcept and Optime are using three categories of unlawful tactics to suppress competition from Teva.

The first category is exclusive dealing. Corcept and Optime have a highly unusual, long term, exclusive-dealing agreement that requires Optime to distribute Korlym, and expressly forbids Optime from distributing any rival products, including Teva's generic. This agreement has had a near-total foreclosure effect in the downstream market for Korlym, meaning it has prevented Teva from reaching Korlym patients. The agreement is not easily terminable or incentive-based. It checks every box that signals a Sherman Act violation. The agreement's anticompetitive effects are confirmed by Teva's inability to reach consumers despite vigorous efforts to do so through alternative distribution channels.

The second category relates to Corcept's abuse of the patent system to delay Teva's receipt of FDA approval and launch. Corcept's motion to dismiss does not dispute that it deliberately listed two patents in the FDA's Orange Book that it knew were not eligible to be listed there. That misconduct unlawfully delayed Teva's FDA approval by 30 months. Corcept also sued Teva for infringing a total of nine patents, but those lawsuits were shams. In fact, Corcept voluntarily dismissed as to seven patents and lost resoundingly on the remaining two. These lawsuits were objectively baseless, but Corcept brought them anyway to delay Teva's FDA approval and launch.

The third category relates to Corcept's payment of bribes and kickbacks to prescribers to induce them to prescribe brand Korlym over Teva's generic. Corcept is currently being investigated by the U.S. Attorney's Office for the District of New Jersey for making improper payments to prescribers. Independent journalists have written exposés about Corcept's improper payments to prescribers, and several years' worth of public payment and prescription data show that Corcept has made many payments to prescribers that are vastly higher than the norm, and that are suspiciously timed to coincide with when prescribers began writing large volumes of Korlym prescriptions.

**B.    Defendants' Position**

Corcept is a small, innovative pharmaceutical company committed to pioneering novel treatments for serious disorders and providing patients and physicians with the support they need. Corcept has so far brought one product to market: Korlym. Optime is a small specialty pharmacy that distributes Corcept's Korlym. Teva's case is not motivated by any legitimate gripe against Defendants. Instead, Teva—a generic manufacturer whose portfolio of more than 500 generic drugs is made possible by innovators like Corcept—seeks to piggy-back off the years of research,

development, and hard work its much smaller competitor Corcept engaged in that led to Korlym. While Teva seeks to blame Defendants for its drug's poor performance and points to supposed conditions in other markets, Teva's generic is unsuccessful in this one due to its own unwillingness to actually compete, such as on price (Teva's generic is a 13% discount from Corcept's branded Korlym) or on quality (Teva offers little to no support to patients relating to its generic). Teva's claims lack merit and should be dismissed.

Teva claims that its "exclusive dealing" theory—based on a contract between Corcept and Optime—is the "focus" of its case. Oct. 31, 2024 Hrg. Tr. at 4. Teva asserts that aside from Optime—one small specialty pharmacy based in Earth City, Missouri—there are "no viable, practical, or feasible alternative distribution channels" and such alternatives only "might be theoretically available." Dkt. 39 ¶ 157; Dkt. 65 at 9. But Teva has admitted in discovery that it is actively distributing its generic mifepristone through at least *ten* different channels (including CVS, Walgreens, AmerisourceBergen, Cardinal Health, and others), Teva has access to others such as Walmart, Costco, Sam's Club, Publix, and in some cases it was ***Teva*** that decided not to move forward with the alternative channels. So, while Teva complains it cannot distribute through one pharmacy (Optime), Teva concedes it uses and has access to many others, dooming its exclusive dealing claim. Dkt. 55 at 17–20; Dkt. 68 at 2–5.

The other "categories" of Teva's claims similarly falter. Teva's claims based on Corcept's listing of two patents in the FDA's "Orange Book" in 2015 and 2017 fail because they are time-barred, and, in any case, did not plausibly cause Teva antitrust injury. Dkt. 55 at 7–9; Dkt. 68 at 6–10. Notably, the FTC is investigating Teva—not Corcept—for improper, anticompetitive Orange Book listings. Teva's "sham" patent litigation claims fail because they too are time-barred, Teva fails to overcome *Noerr-Pennington* immunity, and Corcept's patent lawsuits did not cause Teva any antitrust injury. Dkt. 55 at 9–15; Dkt. 68 at 10–14. Teva's "bribery" claims fail because the public data Teva itself relies on confirms the payments are for lawful speaker and similar fees, Teva does nothing to distinguish Corcept's payments from the ones that Teva itself makes and defends as lawful (and which are far higher in number and amount than Corcept's), Teva relies on only *innuendo* that does not make its allegations plausible (Teva relies on a government subpoena Corcept received years ago that has resulted in zero findings of wrongdoing, as well as a single web article—not multiple "exposés" from

"journalists"—which itself indicates Corcept's payments are proper), and Teva fails to allege any plausible harm to competition from the alleged payments. Dkt. 55 at 20–25; Dkt. 68 at 14–16. It was Teva—not Corcept—that recently paid a $450 million fine related to "kickback" payments.

### 3.  LEGAL ISSUES

Teva asserts seven causes of action: (1) monopolization under 15 U.S.C. § 2; (2) attempted monopolization under 15 U.S.C. § 2; (3) exclusive dealing under 15 U.S.C. § 1; (4) violation of California's Bus. & Prof. Code § 17200; (5) violation of California's Bus. & Prof. Code § 16600; (6) violation of various state antitrust and consumer protection laws; and (7) unjust enrichment. The case is at the pleading stage. Teva filed its operative first amended complaint on September 13, 2024 (ECF No. 39). Defendants on October 14, 2024 filed their joint motion to dismiss with prejudice (ECF No. 55). Defendants seek a hearing on their motion, which has been pending for several months and may eliminate or narrow this case. The parties may identify other legal disputes should the case progress.

### 4.  MOTIONS

On October 14, 2024, Defendants filed a motion to dismiss the first amended complaint, which is fully briefed: ECF Nos. 55 (motion), 65 (opposition), 68 (reply). Following reassignment to this Court, the parties requested that the Court hear the motion without re-briefing on April 30, 2025. Each side may file summary judgment, *Daubert*, *in limine*, and other motions should this case proceed.

### 5.  AMENDMENT OF PLEADINGS

Judge Freeman previously held that Teva could seek leave to amend its complaint until January 3, 2025. ECF No. 63. Teva did not file any motion for leave to amend by that deadline.

### 6.  EVIDENCE PRESERVATION

The parties have conferred about evidence preservation, informed one another that they have appropriate litigation holds in place, and reviewed the Northern District's ESI Guidelines.

### 7.  DISCLOSURES

In accordance with Federal Rule of Civil Procedure 26, the Parties exchanged Initial Disclosures on October 24, 2024. On February 13, 2025, Teva supplemented its Initial Disclosures.

### 8.  DISCOVERY

    **A.**    **Discovery to Date**

1. **Teva's Position**

Teva served requests for production ("RFP") on Corcept and Optime on October 8, 2024, and interrogatories on October 10, 2024. Judge Freeman denied Defendants' motion to stay discovery (ECF No. 69), but Defendants have consistently sought to delay Teva's discovery efforts by engaging in obstructionist practices, such as refusing to answer discovery correspondence from Teva for months under the guise of negotiating fairly standard protective order and ESI protocol. Defendants' efforts have prevented Teva from obtaining meaningful discovery since the last Case Management Conference. Until today, Corcept had only produced nine documents, consisting of organization charts from 2016 to 2024, despite Teva's offer to treat any documents produced prior to the entry of a protective order as "Outside Counsel's Eyes Only." Today, more than *five months* after Teva served its RFPs, Corcept has finally produced unquestionably relevant documents, such as its exclusive dealing agreement with Optime. Optime has not produced any documents to date.

On January 20, 2025, Teva provided Defendants with notice of 33 subpoenas it had served or was attempting to serve on healthcare providers concerning its bribery and kickback allegations. Teva has since served 21 of the 33 subpoenas. On February 25, Teva gave Defendants notice of a subpoena to Eversana (f/k/a Dohmen Life Sciences) concerning Corcept's relationship with Dohmen prior to its exclusive dealing arrangement with Optime. Teva has yet to receive any documents in response to these subpoenas.

Teva made its first production in response to Corcept's first set of RFPs on February 6, 2025, even though Corcept had not addressed any of Teva's responses and objections to Corcept's RFPs. Teva is currently negotiating the scope of additional productions in response to Corcept's RFPs. Similarly, Teva served its first supplemental responses to Corcept's interrogatories on February 13, 2025, and is likewise negotiating the scope of its interrogatory responses with Corcept.

2. **Defendants' Position**

Rather than serve focused discovery, Teva served ***231*** document requests and ***31*** interrogatories, seeking information across every aspect of Defendants' businesses and going back 13 years. Contrary to Teva's claim that Defendants have "sought to delay" discovery, Defendants have sought to proceed sensibly. Defendants first focused the parties' efforts on resolving foundational

documents like ESI and Protective Orders. Driven largely by Defendants' revisions, the parties reached agreement on the former, and a near-agreement on the latter (with the parties' one dispute now resolved by Judge DeMarchi). Defendants have also made progress on Teva's voluminous RFPs and ROGs, meeting-and-conferring and exchanging substantive proposals on them; Defendants have also answered certain of Teva's ROGs and agreed to provide supplemental responses to others.

Discovery in this case—which involves claims between direct competitors Teva and Corcept—will primarily involve confidential and competitively-sensitive materials. Defendants were not able to produce such materials until the Protective Order was resolved. Teva complains that Corcept in the meantime produced organizational charts, but Teva has not even done that. The one production Teva has made is fewer pages than Corcept's initial production and came only after Corcept pointed out Teva had produced nothing so far. Judge DeMarchi on Friday adopted without prejudice Defendants' proposed Protective Order; today, Defendants submitted their proposed Protective Order for entry, and Corcept accordingly produced thousands of documents, including Corcept-Optime agreements.

Corcept has propounded RFPs and ROGs to Teva. The parties are conferring over Teva's responses. Optime has not yet served discovery on Teva but anticipates doing so. As they have done to date, Defendants will meet-and-confer on discovery and seek agreement with Teva where possible; should agreement not be possible, Defendants will raise disputes before Judge DeMarchi as necessary.

**B.     Stipulated Protective and ESI Orders and Identified Discovery Disputes**

The parties agreed on an ESI Order, which Judge DeMarchi largely entered on February 19, 2025. ECF Nos. 79, 80. The parties on February 28, 2025 submitted a discovery dispute to Judge DeMarchi, concerning whether under the parties' Protective Order in-house litigation counsel (rather than just outside counsel) should have access to "Highly Confidential" discovery materials. Judge DeMarchi on Friday resolved that dispute, adopting Defendants' proposal without prejudice; Defendants today submitted for entry their proposed Protective Order. ECF Nos. 87, 88.

**9.     RELATED CASES**

A group of health insurers, including Aetna, Humana, and Molina Healthcare, recently filed a lawsuit against Corcept in California state court, alleging that Corcept blocked Teva's generic version of Korlym. *See Aetna, Inc., et al. v. Corcept Therapeutics, Inc.*, Case No. 25-cv-110493 (Cal. Alameda

Super. Ct.). Additionally, certain claims and issues from the parties' underlying patent litigation are presently pending before the United States Court of Appeals for the Federal Circuit in *Corcept Therapeutics, Inc. v. Teva Pharmaceuticals USA, Inc.*, Case No. 24-1346 (Fed. Cir.).

**10.  RELIEF**

Teva seeks damages, including actual, consequential, compensatory, treble, punitive, and/or other damages, including pre- and post-judgment interest at the statutory rates; equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment; an injunction invalidating the exclusive dealing arrangement between Corcept and Optime, and any other anticompetitive practices by Defendants; and any further legal and equitable relief that the Court may deem just and proper. ECF No. 39. Defendants dispute that Teva is entitled to any relief whatsoever and reserve their rights to seek relief and assert counterclaims against Teva.

**11.  SETTLEMENT AND ADR**

Judge Freeman previously referred this case to private mediation and ordered mediation to occur by November 14, 2025. ECF Nos. 63, 75. There have been no formal mediation efforts to date.

**12.  OTHER REFERENCES**

The case has already been assigned to Magistrate Judge DeMarchi for discovery. ECF No. 72.

**13.  CASE SCHEDULE**

Judge Freeman previously set certain deadlines and directed the parties to confer regarding others. ECF No. 63. The parties then did so and filed their further proposal. ECF No. 67. Following reassignment to this Court, on February 24, 2025, all future hearing dates were vacated. ECF No. 81. The parties' proposed schedule is included below, along with their respective positions:

| Deadline | Teva's Proposal | Defendants' Proposal |
|---|---|---|
| Substantial Completion of Document Productions and Final Privilege Logs | July 11, 2025 | N/A [Defendants oppose the setting of this deadline] |
| Close of Fact Discovery | November 21, 2025 | November 21, 2025 |
| Opening Expert Reports | January 9, 2026 | January 9, 2026 |
| Rebuttal Expert Reports | February 20, 2026 | February 20, 2026 |
| Completion of Expert Depositions | March 27, 2026 | March 27, 2026 |
| Final Date to File Dispositive Motions | May 15, 2026 | May 15, 2026 |
| Oppositions to Dispositive Motions | June 19, 2026 | June 19, 2026 |
| Replies on Dispositive Motions | July 17, 2026 | July 17, 2026 |

| Deadline | Teva's Proposal | Defendants' Proposal |
|---|---|---|
| Hearing Date for Dispositive Motions | August 13, 2026 | August 13, 2026 |
| Lead Counsel Meet-and-Confer Before Trial | October 29, 2026 | October 29, 2026 |
| Motions in Limine (Max. 5/Side) Due | November 9, 2026 | November 9, 2026 |
| Hearing Date for Non-in Limine *Daubert* Motions | November 12, 2026 | November 12, 2026 |
| Joint Pretrial Statement and Order | November 25, 2026 | November 25, 2026 |
| Jury Materials (Preliminary Statement of Case; Voir Dire; Jury Instructions; Verdict Form) | November 25, 2026 | November 25, 2026 |
| Oppositions to Motions in Limine | December 3, 2026 | December 3, 2026 |
| Pretrial Conference | December 10, 2026 | December 10, 2026 |
| Trial Briefs | January 4, 2027 | January 4, 2027 |
| Trial | January 11, 2027 | January 11, 2027 |

### 1. Teva's Position

The only issue of disagreement between the Parties is whether there should be a deadline for the substantial completion of document productions and final privilege logs. Since the Parties agree to a fact discovery cut-off, a substantial completion deadline will ensure that the Parties have an adequate opportunity to review and follow up on produced documents before conducting depositions, without having to seek an extension of the fact discovery deadline.

### 2. Defendants' Position

The parties agree on a fact discovery cut-off of November 21, 2025, which necessarily means document productions, privilege logs, and lay depositions must generally be completed by then. Further setting a July 11, 2025 substantial completion and privilege log deadline—which would practically advance by four months the deadline for document production—is unnecessary. That is all the more true since the universe of documents to be produced, much less reviewed, is unknown given the parties' ongoing discussions as to document requests, custodians, and search terms.

## 14. TRIAL

Teva has requested a jury trial. Teva estimates that the trial will last approximately 14 trial days after a jury is empaneled. Defendants submit that it is premature to estimate trial length, given the scope and extent to which Teva's claims may proceed is currently unclear. The parties will confer as to a reasonable trial estimate and plan, should this case proceed.

### 15. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Teva filed its Certification of Conflicts and Interested Entities or Persons Pursuant to Civil Local Rule 3-15 on June 13, 2024. ECF No. 5. Defendants filed their respective Corporate Disclosure Statements and Certification of Interested Entities in July 2024. ECF Nos. 25, 31.

### 16. PROFESSIONAL CONDUCT

Counsel of record have reviewed the Northern District's Guidelines for Professional Conduct.

### 17. OTHER

#### 1. List of Parties

Plaintiff is Teva Pharmaceuticals USA, Inc., and Defendants are Corcept Therapeutics, Incorporated and Optime Care Inc.

#### 2. Summary of Claims

Teva filed its Complaint on June 13, 2024, and amended it on September 13, 2024. ECF Nos. 1, 39. Teva claims that Corcept delayed the entry of its generic Korlym drug due to its fraudulent Orange Book listings and sham patent litigations, and is now preventing Teva's generic from meaningfully accessing the distribution channel for Korlym through its exclusive-dealing arrangement with Optime and through bribes and kickbacks paid to physician and non-physician practitioners to prescribe brand Korlym over Teva's generic. Defendants dispute Teva's claims, as stated above.

#### 3. Procedural History

| Date | ECF No. | Description |
| --- | --- | --- |
| June 13, 2024 | 1 | Teva filed its Complaint. |
| September 13, 2024 | 39 | Teva filed its Amended Complaint. |
| October 14, 2024 | 55 | Defendants' joint motion to dismiss Teva's amended complaint. |
| November 4, 2024 | 63 | Case Management Order. |
| November 13, 2024 | 65 | Teva's opposition to Defendants' joint motion to dismiss. |
| November 15, 2024 | 67 | Parties' joint notice regarding case schedule. |
| November 25, 2024 | 68 | Defendants' reply in support of joint motion to dismiss. |
| December 4, 2024 | 69 | Order denying Defendants' motion to stay discovery. |
| February 3, 2025 | 72 | Case assigned to Magistrate Judge Virginia K. DeMarchi. |
| February 10, 2025 | 75 | Order directing Parties to hold a private ADR session on or before November 14, 2025. |
| February 24, 2025 | 81 | Order re-assigning case to Judge Noël Wise. |

| | | |
|---|---|---|
| 1 | Dated: March 17, 2025 | Respectfully submitted, |
| 2 | | By: */s/ Michael Shipley* |
| 3 | | Michael Shipley |
| 4 | | KIRKLAND & ELLIS LLP<br>555 South Flower Street, 37th Floor |
| 5 | | Los Angeles, California 90071<br>Tel: (213) 680-8400 |
| 6 | | michael.shipley@kirkland.com |
| 7 | | Devora W. Allon, P.C. |
| 8 | | Kevin M. Neylan, Jr.<br>KIRKLAND & ELLIS LLP |
| 9 | | 601 Lexington Avenue<br>New York, NY 10022 |
| 10 | | (212) 446 5967<br>devora.allon@kirkland.com |
| 11 | | kevin.neylan@kirkland.com |
| 12 | | *Attorneys for Plaintiff* |
| 13 | | *Teva Pharmaceuticals USA, Inc.* |

By:     */s/ Robert W. Stone*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Fax:         (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:   (415) 875-6600
Fax:         (415) 875-6700

Steig D. Olson (admitted *pro hac vice*)
  steigolson@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone:   (212) 849-7000
Fax:         (212) 849-7100

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

By:     */s/ Lucas C. Wohlford*
Lucas C. Wohlford (admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail: lwohlford@duanemorris.com

Justin J. Fields (SBN 259491)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200 San Francisco, CA 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001
E-Mail: jfields@duanemorris.com

*Attorneys for Defendant Optime Care Inc.*

**[PROPOSED] CASE MANAGEMENT ORDER**

The above Joint Case Management Statement and [Proposed] Order is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

**IT IS SO ORDERED.**

Dated: _____,

_____
The Hon. Noël Wise
United States District Judge