May 23, 2025

**VIA ECF**

The Honorable Virginia K. DeMarchi          **PURSUANT TO COURT ORDER**
United States District Court for the          **(DOCKET 105)**
Northern District of California
San Jose Courthouse, Courtroom 2 – 5th
Floor
280 South First Street
San Jose, California 95113

      Re:    Joint Status Report Re Discovery Into Teva's Conduct in *Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc., and Optime Care Inc.*, Case No. 5:24-cv-03567-NW

To the Honorable Judge DeMarchi:

      Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") and Defendant Corcept Therapeutics, Incorporated ("Corcept") submit this joint status report pursuant to: (1) the parties' May 2, 2025 joint discovery letter over whether Teva should be compelled to search for and produce documents related to its own use of practices with respect to the development, marketing, and distribution of drugs other than generic mifepristone (Dkt. 98); (2) the May 13, 2025 hearing before Your Honor; and (3) Your Honor's May 16, 2025 Order that the parties "confer regarding parameters defining a representative sample of responsive documents" to certain Corcept requests for production, then "file a joint status report describing their agreed or respective proposals for Teva's production of documents" by May 23, 2025 (Dkt. 105).

    **1.**    **Parties' Position Statements**

        **(a)**    **Corcept's Position**

      Corcept moved to compel non-custodial documents (custodian selection and custodial documents are separately governed by the parties' ESI order) regarding Teva's Orange Book listing and patent litigation practices and drug distribution agreements and speaker program fees to physicians.[1] At the hearing, the Court indicated it would grant the motion as to documents relating to the distribution of branded and generic drugs and speaker program fees paid with respect thereto. Dkt. 103 at 9, 10–13, 17, 20. In response to the Court's concern about burden, Corcept explained the evidence it produced is exemplary (not necessarily exclusive) of what was being

---

[1]    Corcept reserves the right to seek identification of one or more custodians who are likely to have been materially involved in Teva's orange book listings, patent litigation, drug distribution activities, and/or speaker fee programs.

requested from Teva on a per-drug basis and consisted of just two distribution agreements and a database report showing the speaker fees paid relating to Corcept's branded drug Korlym. *Id.* at 13–14. Corcept further explained Teva apparently had 10 or fewer branded drugs currently.[2] *Id.* at 11. After allowing Teva an opportunity to present its view on the burden of compliance, the Court then asked counsel for Teva:

> THE COURT: Okay, but it sounds like, at least what Mr. Powell is proposing, is a database query. You know, find the -- find the contracts, the contracts with any exclusive distributor or what have you, and then run a database search for physicians who have prescribed and physicians who have been paid speaker fees, not custodians.

And counsel for Teva replied:

> MR. SHIPLEY: We could live with that, your Honor. *Id.* at 16.

Corcept respectfully submits that Teva should be ordered to produce responsive documents for all of its ***branded*** drugs as it made no objection following the discourse noted above.[3] Teva has never made a concrete, substantiated burden objection as to the effort to collect and produce the information outlined above with respect to its own ***branded*** drugs.

As to Teva's generics, Corcept acknowledged at the hearing it did not need discovery as to all 500 and suggested a 30% sample would suffice. The Court then ordered the parties to meet-and-confer to determine the proper sampling methodology for the generics. During the parties' meet and confer on May 16, Teva had no proposal, and Corcept suggested that Teva collect and produce the responsive distribution agreements and speaker program payments for all generic drugs identified as Orphan drugs and/or Risk Evaluation and Mitigation Strategy ("REMS") drugs, which Corcept believes includes 64 of Teva's generics. Corcept believes these are the Teva generics most analogous to its at-issue generic mifepristone—which is useful as ***comparison*** evidence. In addition, to identify appropriate ***contrasting*** evidence, Corcept asked for a listing of Teva generics by revenue to select an additional 84 generic drugs (from those remaining once the 64 Orphan and REMS drugs are excluded) comprising the top, bottom, and middle 28 drugs in terms of revenue. This would give a total sample of 148 generics, roughly 30% of the 500 generic drugs distributed by Teva. Teva said it would consider Corcept's proposal. Corcept specifically requested Teva provide its generic drug catalog sorted by revenue ahead of the parties' next meeting so Corcept could create a complete sampling proposal. Teva did not do so.

During the May 20 conference, Teva again had no counterproposal but stated its generics are distributed under master agreements that govern distribution of numerous drugs (presumably

---

[2]    Corcept learned for the first time on May 23 when reading Teva's 1:42 p.m. position statement Teva has 20 branded drugs.

[3]    Teva's contention Corcept did not raise branded drugs on the initial May 16 meet-and-confer is a red herring. There was no need to raise branded drugs then since the understanding from the hearing was all were within the Court's order. The discussion about burden at the hearing and during the parties' May 16 meet-and-confer necessarily focused on selecting an appropriate sample size for the more than 500 generic drugs.

a contract with a pharmacy like Walmart that might carry 400 of Teva's 500 generics, although Teva counsel did not provide any details). Teva further explained it did not have speaker payments for any of its generics.[4]  In response, Corcept indicated it expected Teva to produce all responsive distribution agreements for an agreed sample of Teva generics but it would accept a production of all such distribution agreements given Teva's explanation as to how its generic distribution model worked.  Corcept additionally indicated it expected that production to include all amendments, supplements, and addenda to the master agreements that apply to any of the generic drugs individually or as a sub-group under the master agreements. As to the speaker payments, Corcept indicated it was up to Teva whether it would confirm the lack of any payments for its generics in a verified interrogatory response or in a database report showing $0 for each generic (again, Corcept said such information could be with respect to Corcept's proposed sample of 148 generic drugs, or as to all 500 of Teva's generics).

At the end of the May 20 call, counsel for Corcept indicated it would send a draft joint status report indicating that Teva would produce distribution agreements and speaker program fee data for all of its branded drugs and for either (i) all generics or (ii) the sample proposed by Corcept since Teva had never proposed an alternative.  Unexpectedly, Teva indicated for the first time that it did not understand the Court to have ordered discovery as to its branded drugs. This was a surprise to Corcept, which understood the Court to have stated at the hearing that Teva's ten branded drugs would be included in the scope of the order—"brand[ed] products is one domain" (Dkt. 103 at 12)—and understood Teva to have acquiesced on the issue (per the discourse between the Court and Mr. Shipley set forth above).  Teva's position to the contrary should be rejected.

On May 23 at 1:42 p.m.—the day this status report was due—Teva provided its position statement to Corcept for the first time.  Corcept responds below to Teva's statement:

*Speaker Fees for Generic Products.*   Teva says it will supplement to indicate that Teva does not maintain a speaker program related to its generic Mifepristone.  However, Teva's statement that it makes no such payments related to generic Mifepristone says nothing about whether Teva makes such payments in connection with its other generics.  Corcept proposed—and Teva never challenged—that speaker fee information (even if the amount is $0) be produced for at least a sampling of 148 generic drugs.  Teva should therefore be ordered to produce documents (or confirm under oath no speaker fees were paid) within 14 days for at least the 148 generic drugs proposed by Corcept (or all generics, given that Teva still has not provided a listing of generic drugs by revenue which is necessary to make the final selection of 148).

*Speaker Fees for Branded Products.*   Teva says it will produce non-custodial data spreadsheets reflecting speaker fee data for its 20 branded drugs.  Corcept asks that the Court order Teva to produce these materials produced within 14 days.[5]

---

[4]    Both admissions suggests Teva's burden objection may have been made without sufficient investigation.

[5]    Corcept disagrees with Teva's suggestion the Court addressed ***custodial*** speaker RFPs. Corcept seeks from Teva a single custodian—the person responsible for Teva's speaker program—

*Distribution Agreements for Generic Products.* Teva indicates it does not have any exclusive agreements related to its generic products. Corcept specifically stated at the hearing that the request was not limited to "exclusive" agreements and thus Corcept is entitled to all distribution agreements and drug-specific addenda related to the 148 selected generic drugs (or all generics given that Teva still has not provided a listing of generic drugs by revenue which is necessary to make the final selection of 148). Corcept asks that the Court order these materials produced within 14 days and that the Court disregard as untimely Teva's purported investigation of the "practicality" of collecting these agreements and addenda. Moreover, the fact that Teva has many drugs is not a legitimate grounds for objection. Teva elected to bring this lawsuit and it cannot now contend that its comparatively larger size somehow exempts it from discovery—particularly when the Court has already ordered that discovery to be produced.

*Distribution Agreements for Branded Products.* Teva indicates that it "anticipates producing responsive documents for its branded drugs." Corcept asks that the Court order these materials produced within 14 days.

### (b)    Teva's Position

As an initial matter, Corcept's position statement rests on multiple false premises. First, Corcept now claims that it "moved to compel ***non-custodial*** documents," that "custodial documents are separately governed by the parties' ESI order," and that it "reserves the right to seek identification of one or more custodians who are likely to have been materially involved in Teva's Orange Book listings, patent litigation, drug distribution activities, and/or speaker fee programs." That is revisionist history. In its own position statement framing this dispute to the Court, Corcept stated that it would be "happy to address" Teva's burden objections "through reasonable and tailored custodians and search terms," *i.e.*, custodial documents. Dkt. 98 at 4. But when Corcept came before the Court it abruptly abandoned that position. Dkt. 5/13/2025 Hearing Tr. at 14. Indeed, had Corcept made that concession in meeting and conferring, motion practice would likely have been entirely unnecessary.

Corcept cannot now backtrack to claim that custodial searches are outside the scope of the Court's order. Nor can Corcept "reserve[] the right" to seek custodial discovery regarding Teva's Orange Book listings and patent litigations when the Court has already expressly ruled that Corcept "may not obtain discovery from Teva" regarding those categories. Dkt. 105 at 2.

Second, Corcept suggests that Teva's objections on burden grounds "may have been made without sufficient investigation." That claim is not well taken. To be clear: Corcept did not agree to limit its discovery to non-custodial data until the May 13, 2025 hearing. Prior to that, Corcept sought ***custodial*** discovery into four broad categories of conduct across 500 products. There is no

---

and is happy to discuss with Teva reasonable search parameters, else present that separate dispute to the Court. That Teva claims to make no speaker payments related to its generic mifepristone is immaterial: Teva could do so (but chose not to); and Teva's criterion for what generally makes a speaker program (regardless of drug) compliant is relevant to rebutting Teva's allegations that Corcept's payments are not (e.g., Corcept's program may meet or exceed those criterion).

serious argument that such a request was anything less than burdensome, particularly when compared to Teva's discovery into a *single product*: Korlym.

Third, despite Corcept's assumption that the Court had ordered discovery into all of Teva's branded drugs—an assumption not born out by the Court's order—Corcept did not raise anything about Teva's branded drugs during the parties' May 16 call. It did so for the first time on May 20. Nevertheless, Teva is working diligently to evaluate Corcept's proposals and is hopeful that the parties will be able to reach agreement as to both generic and branded products. A summary of Teva's position is below:

**Speaker Fees for Generic Products.** Teva will supplement its Responses and Objection to Corcept's RFP Nos. 42-47, which seek documents related to Teva's payments to physicians, to indicate that Teva does not maintain a speaker program related to its generic Mifepristone, or to any other generic products.

**Speaker Fees for Branded Products.** Teva is currently working to gather and intends to produce spreadsheets reflecting speaker fee data for its 20 branded drugs.[6] For the avoidance of doubt, Teva intends to perform database queries and produce non-custodial data, consistent with Corcept's representation to the Court, and consistent with the Court's order. 5/13/2025 Hearing Tr. at 14 (MR. POWELL: "So it's literally just inputting a search parameter in a database to spit out a spreadsheet ...."); *id.* at 16 (THE COURT: "Okay, but it sounds like, at least what Mr. Powell is proposing, is a database query ... Not a custodial search."); Dkt. 105 at 2 (noting that "during the hearing Corcept suggested that the documents it seeks regarding Teva's exclusive dealing agreements and physician payments may be easily identifiable by means of database queries"). During a May 23, 2025 call regarding Teva's custodians, however, Corcept stated that it also seeks to add a custodian with knowledge regarding Teva's speaker programs, even though Teva does not maintain a speaker program for Mifepristone. The parties have already litigated the relevance and burden associated with Teva's speaker fees for non-Mifepristone products, and the Court has already ruled that Corcept is entitled to non-custodial, database queries regarding Teva's speaker fees. Corcept's attempt to reopen the door to custodial searches regarding speaker fees for non-Mifepristone products should be rejected.

**Distribution Agreements for Generic Products.** Teva does not have any exclusive agreements related to its generic products. It understands, however, that Corcept is seeking Teva's distribution agreements (whether or not they are exclusive) for 150 of Teva's generic drugs. Teva has explained to Corcept that Teva's generic products are generally distributed according to broad agreements with distributors that cover multiple products, with product-specific addenda entered into on a case-by-case basis. Teva understands that Corcept is seeking both master purchase agreements, as well as any product-specific addenda for 150 of Teva's drugs. Teva is continuing to investigate the practicality of collecting all such agreements for those 150 drugs, including whether those agreements are accessible from a central source, or whether they would require individualized searching among the various product teams for each of those 150 drugs. Notably,

---

[6]    Teva's innovative medicine list can be found here: https://www.tevausa.com/our-products/article-pages/innovative-medicines-list/.

Corcept compares its request to its own production of a single speaker fee spreadsheet[7] and two distribution agreements, which it did not produce until five and half months after Teva served discovery seeking these documents. Corcept's relative burden was significantly smaller given that Teva has placed just a single drug (with a single distribution channel) at issue. Nonetheless, Teva is working diligently to evaluate Corcept's request and is hopeful that the parties will be able to reach an agreement.

**_Distribution Agreements for Branded Products._** Although Teva is continuing to investigate the parameters of gathering all distribution agreements for its branded products, Teva anticipates producing responsive documents for its branded drugs.

Teva is actively working to ascertain where and how Corcept's requested documents are stored, but given the broad scope of Corcept's request, in addition to the holiday weekend, Teva needs additional time to confirm what is feasible. Teva will promptly provide an update to Corcept as soon as it is able to confirm what it can feasibly produce.

Respectfully submitted,

Dated: May 23, 2025                KIRKLAND & ELLIS LLP

                                   /s/ Michael Shipley
                                   Michael Shipley

                                   _Attorney for Plaintiff Teva Pharmaceuticals USA, Inc._

Dated: May 23, 2025                QUINN    EMANUEL    URQUHART    &
                                   SULLIVAN, LLP

                                   /s/ Michael D. Powell
                                   Michael D. Powell

                                   _Attorney for Defendant Corcept Therapeutics, Incorporated_

---

[7]    Indeed, Corcept's production of speaker fees is limited to just 31 physicians, which Teva identified after Corcept complained about the burden associated with producing all speaker fee data for a single product.