REDACTED VERSION – FILED PUBLICLY

September 12, 2025

**VIA ECF**

| | |
|---|---|
| The Honorable Virginia K. DeMarchi<br>United States District Court for the<br>Northern District of California<br>San Jose Courthouse, Courtroom 2 – 5th Floor<br>280 South First Street<br>San Jose, California 95113 | **PURSUANT TO SECTION 4(C) OF THE COURT'S STANDING ORDER RE CIVIL CASES** |

Re: Joint Discovery Dispute Letter Brief Regarding Corcept's RFPS 86, 87, 88, and 91 in *Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc., and Optime Care Inc.*, Case No. 5:24-cv-03567-NW

To the Honorable Judge DeMarchi:

Pursuant to Section 4 of Your Honor's Standing Order for Civil Cases, Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") and Defendant Corcept Therapeutics, Incorporated ("Corcept") submit this joint discovery letter. The parties have discussed the requested discovery, including a lead-counsel meet-and-confer on August 18, 2025, but they remain at an impasse.

### 1. Statement of Dispute Requiring Resolution

Corcept seeks to compel Teva to search for and produce a limit set of non-custodial documents regarding: (1) Teva's "Pivot to Growth" strategy (RFP 86); (2) Teva's announced 2023 plan to scale back its manufacturing and sale of generic drugs (RFP 87); (3) certain statements from Teva's CEO, Richard Francis in January 2025, that "We're victims of our own success" and the like (RFP 88); and (4) Teva's Actavis acquisition agreement (RFP 91). Teva has declined to search for or produce the requested non-custodial discovery. The parties therefore require the Court's assistance to resolve this dispute.

### 2. Parties' Position Statements

#### (a) Corcept's Position

The requested discovery is pertinent to Corcept's defenses. For example, Teva's strategic shifts (RFPs 86,87,88) clearly bear on *causation*: whether the failure of Teva's generic mifepristone is due to Teva's own choices, not anything Corcept supposedly did. They also relate to *damages*: whether Teva actually suffered any and, assuming so, whether they should be reduced given Teva's own contributions. In addition, with respect to RFP 91, Teva acquired a division of Actavis in 2016 for $40 billion, and through that acquisition, Actavis' potential generic mifepristone product (which became Teva's generic that competes with Corcept's Korlym).

1

Actavis, therefore, is the genesis of Teva's case, and Corcept should get to review the details of that acquisition to see whether and how the generic mifepristone opportunity was characterized and valued in that transaction.[1]

Corcept seeks only limited, ***non-custodial*** discovery as "go-gets," merely requiring Teva to ask employee(s) with knowledge of these subjects to locate what should be a ***handful*** of responsive high-level documents: for RFPs 86 and 87, materials that describe the origin, proposal, and implementation of Teva's "Pivot to Growth" and "scale back generics" strategies; for RFP 88, the underlying material (*e.g.*, a set of bullet points) that is the basis for Mr. Francis' statements; for RFP 91, just the relevant asset purchase/acquisition agreement.

**Pivot to Growth and Scaling Back Generics.** In May 2023, Teva announced a "new strategic framework" called "Pivot to Growth." https://www.tevapharm.com/news-and-media/latest-news/teva-launches-new-pivot-to-growth-strategy/. Among other things, the strategy sought to "return to growth by accelerating [Teva's] strong innovative portfolio" including Teva's ***branded*** AUSTEDO, AJOVY, and UZEDY drugs. *Id.* It is notable because Teva was historically "known for its strong generics' portfolio," but, through "Pivot to Growth," "is now increasingly focused on innovative medicines," *i.e.*, branded drugs. https://www.tevapharm.com/news-and-media/feature-stories/pivot-to-growth-teva-journey/. To the extent generics are part of "Pivot to Growth," it is to "focus on a prioritized portfolio" and "reallocate resources" to those showing the most promise. https://www.tevapharm.com/news-and-media/latest-news/teva-launches-new-pivot-to-growth-strategy/. At the same time it announced "Pivot to Growth," Teva declared "plans to cut back manufacturing of generic drugs" due to "low profitability." https://www.bloomberg.com/news/articles/2023-05-18/teva-plans-cuts-to-generic-drug-production-amid-shortages?sref=XGjS8839.

These Teva plans to emphasize its branded drugs and only its prioritized generics are relevant to Corcept's defenses. Teva launched its generic mifepristone—which competes with Corcept's Korlym—in January 2024. Dkt. 13 ("FAC") ¶ 192. Moreover, Teva contends the failure of its mifepristone "is not for lack of effort." Dkt. 65 at 4; FAC ¶ 158. Yet, in the months leading up to Teva launching its generic mifepristone, Teva announced: (a) a strategy to focus on ***branded*** products (***not generics***); and (b) a plan to scale back expenditures on generics. Corcept should be permitted to obtain discovery on these strategies, as Teva's decisions may rebut Teva's contention it made "efforts" to advance its generic mifepristone and instead demonstrate that the true reason for limited adoption of Teva's generic mifepristone stems from Teva's own lack of promotion, spending, and support—*i.e.*, Teva's "pivot" to expending resources on products other than mifepristone. Alternatively, even were Teva to establish Corcept's liability, these strategies may show some of Teva's claimed damages should be reduced for Teva's failure to mitigate—*i.e.*, by not expending resources and efforts on mifepristone.

Corcept's defenses are well-recognized in antitrust law as detailed in prior Joint Statements. Dkts. 131 and 132 (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100,

---

[1] Even if the acquisition agreement is wholly silent as to mifepristone, that, too, is important evidence to support Corcept's defense (that Teva's mifepristone has failed because it simply has not been a priority for Teva) and rebut Teva's claims for damages.

126–27 (1969)). Indeed, courts have found in antitrust cases between pharmaceutical competitors—like this one—that no claim lies where the generic manufacturer attributes the failure of its generic to the branded manufacturer, but the evidence shows the generic was "a 'victim' of its own business strategy," including "expend[ing] no funds to promote its generic[.]" *Mylan Pharms., Inc. v. Warner Chilcott Pub. Co.*, 2015 WL 1736957, at *13 (E.D. Pa. Apr. 16, 2015). Moreover, courts have found evidence regarding a plaintiff's "efforts to develop" its own at-issue product—or the lack thereof—is ***relevant and admissible at trial***, because it bears on "causation, market power, anticompetitive effects, and mitigation of damages." *AngioDynamics, Inc. v. C.R. Bard, Inc.*, 2022 WL 2643583, at *9 (N.D.N.Y. July 8, 2022).

**2025 CEO Statements**. On January 29, 2025, Mr. Francis stated: "We're victims of our own success. We've had a great run, but now we're facing headwinds." https://www.ainvest.com/news/teva-stock-dives-14-we-re-victims-of-our-own-success-says-ceo-250110101706c3d1d07b40cd/. He "attributed [Teva's] struggles to the absence of the one-time payment from Sanofi and the ongoing competition and regulation pressures in the generic drug market." *Id.*

The requested discovery is relevant for multiple reasons. First, it tends to undermine Teva's characterization of itself as some fledgling; rather, Mr. Francis acknowledged that a year after Teva launched its generic mifepristone, Teva has had a "great run," enjoying overall "success" as a company (the opposite of a damaged one)—so much so, Teva has been a "victim" of it. Second, it tends to disprove Teva's failures have anything to do with Corcept—Mr. Francis made no mention of Corcept, and whatever "headwinds" Teva is facing were apparently attributed to other sources.

**Actavis Agreement**. Craig Jones (head of the portfolio management group at Actavis and later Teva) testified in the underlying patent case between Corcept and Teva testified that the original decision to develop and launch generic mifepristone as a treatment for Cushing's syndrome originated at Actavis. Mr. Jones testified that at the time, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Tellingly, Mr. Jones also confirmed in his deposition that, for Korlym, Actavis considered that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Jones identified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and indicated his belief that there were no ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Clearly, discovery into the Actavis acquisition is warranted given it is ground zero for this dispute.

**The Requested Discovery Is Not Burdensome**. The limited, non-custodial discovery Corcept seeks here is not burdensome. As a compromise, Corcept offered to limit the non-custodial documents it seeks for these RFPs to a limited set of easily-gathered documents: For RFPs 86 and 87, documents like PowerPoint slides or PDFs related to the "Pivot to Growth" and the scaling back of Teva's generics plans, reflecting: (1) the initial idea—*i.e.*, when "the light bulb went off" for the idea and the document(s) memorializing the same; (2) the subsequent proposal of the idea to management—*i.e.*, the documents pitching the idea to decisionmakers; and (3) the

3

implementation of the idea—*i.e.*, the documents showing the follow-through and how it is going. For RFP 88, the document(s) Mr. Francis looked at in making the at-issue statements, which his assistant or another Teva employee can easily gather. And, for RFP 91, the purchase agreement itself, which Teva apparently collected since its counsel purports to know what it does and does not say.

None of Teva's objections hold water. First, Teva wrongly contends the requested discovery is "unrelated" to mifepristone. Decisions (explicit or otherwise) to: **not** include mifepristone in its "pivot to growth" (RFP 86); scale back generics, of which Teva's mifepristone is one (RFP 87); and assign (or not assign) a value in the Actavis purchase to mifepristone (RFP 91) **are** related to mifepristone. So are Mr. Francis' statements (RFP 88). They reflect that: (a) mifepristone is **not** a priority for Teva; (b) when Teva wants to, it knows how to successfully promote a drug (Teva simply chooses not to expend those resources for mifepristone); and (c) Teva's own CEO has admitted Teva's overall success and, when mentioning "headwinds," nowhere mentioned Corcept—all of which bear on causation and damages. Second, Teva's proposal to respond to these requests solely through custodial discovery is unlikely to reach responsive documents because the custodians Teva insisted upon do not have primary responsibility for the subject matter of RFPs 86-88 (for example, Mr. Francis is not a custodian), and Teva has not yet agreed to Corcept's proposed search terms. In any event, Corcept's proposal that Teva search for the requested materials non-custodially—by asking the employee(s) with knowledge of these subjects to locate them—is the least burdensome collection and review method and best ensures they will be found. Third, Teva's claim of "burden" is unfounded. It has never proffered any evidence of dollars or hours, and it has similarly requested Corcept search for documents responsive to certain requests as "go-gets," which Corcept has. Fourth, to the extent Teva claims the discovery is competitively sensitive, the Protective Order allows documents to be produced "Outside Counsel Eyes Only."

## (b) Teva's Position

This is the third letter premised on Corcept's unbridled theory that it is entitled to put Teva's entire "business model on trial" under the guise of "causation." Corcept's new demands relate to Teva's overall business strategy, broad statements by Teva's CEO, and the Actavis Agreement. But once again, Corcept has failed to articulate any legitimate nexus between these document requests and Mifepristone. These requests are untethered to the issues at hand and illustrate Corcept's belief that its "causation" theory entitles it to unlimited and irrelevant discovery. Corcept, however, cannot escape that unnecessary discovery based on pure speculation regarding alternative causes is not permitted. *See Trepco Imports & Distribution, Ltd. v. Arizona Beverages USA, LLC*, 2020 WL 1921790 (C.D. Cal. Apr. 16, 2020); *U.S. Wholesale Outlet & Distribution, Inc. v. Living Essentials, LLC*, CV 18-1077-CBM (Ex), Dkt. No. 90, at *1-2 (C.D. Cal. Dec. 19, 2018); *see also Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509 (9th Cir. 1985) (providing that an antitrust plaintiff "need not rule out 'all possible alternative sources of injury,'" and an "antitrust violation need not be the 'sole' cause of the injury for causation to exist"). Because Corcept cannot use discovery to pry into highly sensitive documents in hopes of uncovering something else, its requested relief should be denied.

*First*, Corcept demands non-custodial documents regarding Teva's "Pivot to Growth" strategy (RFP 86) and Teva's "2023 plan to scale back [its] manufacturing and sale of generic

drugs" (RFP 87). Corcept claims it "should be permitted to obtain discovery on these strategies" as they "may rebut Teva's contention it made 'efforts' to advance" Mifepristone. Corcept's relevance argument is predicated on the speculative theory that these documents may reveal that Teva's business decisions—*unrelated* to Mifepristone—will show that Teva did not "expend[] resources and efforts on Mifepristone." Corcept's speculation about what the documents might show is not a license to obtain discovery on Teva's business decisions unrelated to the issues in this case. That is especially true here, where these strategic decisions were tied to Teva's *entire* business and contain commercially sensitive information.

To be sure, there is no evidence that these business decisions have any connection to Mifepristone. And to the extent these business decisions had any articulable connection to Mifepristone, the documents will certainly reference Mifepristone and would be produced in response to other requests. In an effort to compromise, Teva has offered to run search terms related to "Pivot to Growth" and the announced "2023 plan to scale back [its] manufacturing and sale of generic drugs" across the *19* already agreed upon custodians. Those custodians are individuals who have been involved with the development, launch, and distribution of Mifepristone. If there are documents in those custodial productions that reflect some nexus between "Pivot to Growth" or the 2023 plan, Teva will produce them. And if Teva's custodial productions reveal an actual nexus between Mifepristone and Corcept's nebulous theories of alternative causation, Teva is willing—as it has explained to Corcept—to revisit discussions about appropriately tailored non-custodial productions. But as it stands, Corcept has no grounds to demand discovery on Teva's overall strategic business decisions, which are wholly irrelevant to the product at issue, highly competitively sensitive in nature, and sought only as part of a fishing expedition. *See Woodway USA, Inc. v. LifeCORE Fitness, Inc.*, 2024 WL 890547, at *3-4 (S.D. Cal. Feb. 29, 2024) (denying defendant's request for company-wide information, noting that "[d]efendant [was] seeking significant and sensitive financial information for a lengthy period of time from a direct competitor regarding products that are unrelated to… this dispute"); *see also J&M Indus., Inc. v. Raven Indus., Inc.*, 2018 WL 1427952 (D. Kan. Mar. 22, 2018) at *3-4 (denying requests unrelated to the product at issue).

*Second*, Corcept claims it is entitled to non-custodial documents relating to Richard Francis's (Teva's CEO) statement that, "We're victims of our own success. We've had a great run, but now we're facing headwinds." (RFP 88). Corcept claims this discovery is relevant to disproving that "Teva's failures have anything to do with Corcept" because "when mentioning 'headwinds'" Francis did not "mention[] Corcept." This relevancy argument is a patently absurd pretext for a fishing expedition into Francis's sensitive documents. Francis's statements were not specific to Mifepristone, and instead followed Teva's fourth quarter 2024 earnings report. Corcept does not and cannot articulate why it is entitled to or how these statements actually bear on the issues at hand. Corcept argues that Francis's statements "undermine Teva's characterization of itself as some fledgling"—a characterization Teva has never made. Corcept goes on to argue that any acknowledgment of Teva's "success" means it cannot be a "damaged" company. But Teva does not claim enterprise value damages, it seeks lost profits and other equitable relief based on a single product—Mifepristone. There is no contradiction. Successful companies can suffer antitrust injury too. Corcept next argues that an acknowledgement of "headwinds" without mention of Corcept somehow disproves Teva's claimed harm. But if there was any nexus between those "headwinds" and Mifepristone, it would appear in custodial documents related to Mifepristone. Indeed, as above, in the spirit of compromise, Teva has already offered to run search

5

terms related to RFP 88 across its 19 agreed custodians—custodians with at least some connection to Mifepristone. If these collections reveal a legitimate nexus between Francis's statements and Mifepristone, Teva is willing to revisit discussions of appropriately tailored non-custodial searches.

*Third*, Corcept demands Teva produce its "agreement(s) to acquire Actavis Generics." (RFP 91). Corcept asserts "discovery into the Actavis acquisition is warranted" because "the original decision to develop and launch generic Mifepristone . . . originated at Actavis." Corcept cites testimony from Craig Jones in the underlying patent case that describes what *Actavis* considered with respect to Mifepristone. But Craig Jones is an agreed custodian, and Teva has already agreed to run search terms related to Actavis *and* Mifepristone across the agreed upon custodians, including Craig Jones, and to produce relevant, non-privileged documents from this search. If Corcept wants to learn more about those considerations, it may depose Craig Jones. But Corcept's contention that it is also entitled to the acquisition agreement between Teva and Actavis is a step too far. The agreement between Teva and Actavis itself has no bearing on the claims or defenses in this case, nor is it reasonably calculated to lead to relevant discovery. Corcept's speculation about whether the agreement assigned "a value" to Mifepristone does not entitle Corcept to a commercially sensitive multi-billion dollar acquisition agreement, which contains commercially sensitive terms. Corcept acknowledges the agreement may not even mention Mifepristone but claims that it is nevertheless entitled to the agreement because it would "support Corcept's defense" that "mifepristone has failed because it simply has not been a priority for Teva." That theory—that anything that doesn't mention Mifepristone proves neglect of Mifepristone—is without limit. Indeed, the suggestion that Mifepristone was not prioritized simply because it may not be mentioned in the acquisition agreement is a non sequitur. This is just another fishing expedition attempt.

Corcept asserts that its aforementioned requests are "easily-gathered documents" that do not present a burden to Teva. But Teva would be required to conduct extensive custodial interviews of senior executives to locate and produce non-custodial documents related to RFPs 86, 87, and 88. And for RFPs 86 and 87, Corcept's proposal to collect all PowerPoint slides and PDFs about the origin, proposal, and implementation of plans (including "documents showing the follow-through and how it is going") is on its face a *very* broad set. As explained in response to Corcept's request to compel *all* Board of Director materials and *all* distribution agreements for hundreds of Teva's drugs, Corcept can obtain discovery to support its theory through far less burdensome, invasive, and wasteful means. It can, for example, serve interrogatories or requests for admissions or question witnesses in depositions about how Teva prioritized Mifepristone. *See Andrich v. Arpaio*, 2018 WL 9785501, at *2 (D. Ariz. Apr. 18, 2018) (stating that discovery is "subject to reasonable limitations," and that courts "must limit the frequency or extent of discovery otherwise allowed" if it "can be obtained from some other source that is more convenient, less burdensome, or less expensive"). Corcept's theory that anything *unrelated* to Mifepristone is somehow relevant to Mifepristone by negative inference cannot pass muster under Rule 26. Corcept does not need—and is not entitled to—commercially sensitive materials related to Teva's business decisions and CEO statements unrelated to Mifepristone, and an unrelated acquisition agreement (especially when Teva has already agreed to produce relevant, non-privileged custodial documents). *See United States v. Real Property*, 2024 WL 4474867, at *11 (C.D. Cal. June 17, 2024) ("[W]hile the scope of discovery is broad, Rule 26(b)(1) does not countenance the kind of speculative fishing expedition called for in these document requests."). As such, the Court should

deny Corcept's motion to compel the production of documents in response to Corcept's RFP No. 86, 87, 88, and 91.

### 3. Parties' Views Regarding the Need For A Hearing

#### (a) Corcept's Position

Corcept believes that a hearing on this matter—such as at the upcoming September 23 hearing the Court has scheduled on Corcept's other discovery motions—would be helpful to the Court, so Corcept can further discuss the relevance and importance of this discovery, including to Corcept's defenses.

#### (b) Teva's Position

Teva believes that this matter may be resolved without a hearing. Were the Court to find a hearing helpful, Teva will be prepared to explain why the Court should deny Corcept's motion to compel this irrelevant discovery.

### 4. Discovery Cut-Off Dates for Fact and Expert Discovery

The Court has currently set fact discovery to close on February 27, 2026 and expert discovery to close on June 26, 2026. Dkt. 128.

### 5. Compliance With Meet and Confer Requirement

The parties held a lead counsel meet-and-confer on these issues on August 18, 2025 via Zoom video call. Michael Shipley served as lead counsel for Teva, accompanied by Jen Joslin. Mike Powell served as lead counsel for Corcept, accompanied by Brantley Pepperman and Jeffrey Boxer.

### 6. Attachments

An excerpted copy of Teva's Responses and Objections to Corcept's Second Set of Requests for Production to Teva is attached as **Exhibit A**.

Respectfully submitted,

| | |
|---|---|
| Dated: September 12, 2025 | KIRKLAND & ELLIS LLP |
| | */s/ Michael Shipley* |
| | Michael Shipley |
| | *Attorney for Plaintiff Teva Pharmaceuticals USA, Inc.* |
| Dated: September 12, 2025 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | */s/ Robert W. Stone* |
| | Robert W. Stone |
| | *Attorney for Defendant Corcept Therapeutics, Incorporated* |