1  **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
   Robert W. Stone (Bar No. 163513)
2    robertstone@quinnemanuel.com
   Michael D. Powell (Bar No. 202850)
3    mikepowell@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
4  Redwood Shores, California 94065
   Telephone:      (650) 801-5000
5  Fax:            (650) 801-5100

6  Adam B. Wolfson (Bar No. 262125)
     adamwolfson@quinnemanuel.com
7  50 California Street, 22nd Floor
   San Francisco, California 94111
8  Telephone:      (415) 875-6600
   Fax:            (415) 875-6700

9
   *Attorneys for Defendant Corcept Therapeutics, Incorporated*
10
   **DUANE MORRIS LLP**
11 Lucas C. Wohlford (admitted *pro hac vice*)
     lwohlford@duancemorris.com
12 100 Crescent Court, Suite 1200
   Dallas, TX 75201
13 Telephone:      (214) 257-7200
   Fax:            (214) 257-7201
14
   *Attorney for Defendant Optime Care Inc.*
15
   [Additional Counsel Listed On Signature Page]
16

17                **UNITED STATES DISTRICT COURT**

18              **NORTHERN DISTRICT OF CALIFORNIA**

19                    **SAN JOSE DIVISION**

20
   TEVA PHARMACEUTICALS USA, INC.,          | Case No. 5:24-cv-03567-NW
21
            Plaintiff,                       | Honorable Noël Wise
22
        vs.                                  | **DEFENDANTS' JOINT PARTIAL MOTION
23                                           | TO DISMISS SECOND AMENDED
   CORCEPT THERAPEUTICS, INC., et al.,      | COMPLAINT AND MEMORANDUM OF
24                                           | POINTS AND AUTHORITIES IN SUPPORT
            Defendants.                       | THEREOF**
25
                                             | Hearing Date: February 11, 2026 at 9:00 a.m.
26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION TO DISMISS ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

I.    PRELIMINARY STATEMENT ............................................................. 1

II.   BACKGROUND ..................................................................................... 2

III.  LEGAL STANDARD ............................................................................. 4

IV.   ARGUMENT .......................................................................................... 6

    A.    Teva's Unchanged Claims Based on the '214, '526, '242, '243, '216, '800, and '801 Patents Still Fail (Counts I–II) ...................................... 6

    B.    Teva's Threadbare Omnibus State Law Claim Still Fails (Count VI) ...................... 6

        1.    Teva Fails to Plausibly Allege Standing for Its Omnibus Claim .................. 6

        2.    Teva's Omnibus Claim Fails As to A Number of Jurisdictions' Laws ......... 9

            (a)    Intrastate Conduct, Effect, Or Nexus ................................ 10

            (b)    Unilateral Conduct ........................................................ 13

    C.    Teva's Deficient Claims and Theories Should Be Dismissed With Prejudice ........ 13

V.    CONCLUSION ....................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anziulewicz v. Bluefield Cmty. Hosp., Inc.*,
531 F. Supp. 49 (S.D.W. Va. 1981) ........................................................ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 4, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................... 4

*Bendfeldt v. Window World, Inc.*,
2018 WL 11318516 (W.D.N.C. June 22, 2018) ...................................... 11

*Cessna Fin. Corp. v. White Indus., Inc.*,
1976 WL 1325 (W.D. Mo. Sept. 23, 1976) ............................................ 11

*Corcoran v. CVS Health Corp., Inc.*,
2016 WL 4080124 (N.D. Cal. July 29, 2016) .......................................... 7

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......................................................................... 5

*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) .......................................................................... 8

*Exxon Corp. v. Time Indus., Inc.*,
1974 WL 838 (E.D. Mich. Feb. 7, 1974) ........................................... 10, 11

*Fetter v. Bonner*,
2015 WL 164268 (E.D. Cal. Jan. 13, 2015) ............................................ 6

*GEICO Corp. v. Autoliv, Inc.*,
345 F. Supp. 3d 799 (E.D. Mich. 2018) .................................................. 9

*Harris v. City of Clearlake*,
2018 WL 659015 (N.D. Cal. Feb. 1, 2018) .............................................. 6

*Harris v. CVS Pharmacy, Inc.*,
2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ............................................ 5

*In re Auto. Parts Antitrust Litig.*,
2018 WL 1135504 (E.D. Mich. Jan. 16, 2018) ........................................ 12

*In re Capacitors Antitrust Litig.*,
    154 F. Supp. 3d 918 (N.D. Cal. 2015) ...................................................................9

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
    2015 WL 5166014 (E.D. Tenn. June 24, 2015) ..................................... 10, 11, 12

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    362 F. Supp. 3d 510 (N.D. Ill. 2019) .................................................................11

*In re Effexor Antitrust Litig.*,
    357 F. Supp. 3d 363 (D.N.J. 2018)....................................................................13

*In re German Auto. Mfrs. Antitrust Litig.*,
    497 F. Supp. 3d 745 (N.D. Cal. 2020) .................................................................4

*In re Google Generative AI Copyright Litig.*,
    2025 WL 2624885 (N.D. Cal. Sep. 11, 2025) ....................................................14

*In re Packaged Seafood Prods. Antitrust Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017) .............................................................5, 9

*In re Urethane Antitrust Litig.*,
    663 F. Supp. 2d 1067 (D. Kan. 2009) ................................................................13

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ..........................................................................7

*In re Wiring Device Antitrust Litig.*,
    498 F. Supp. 79 (E.D.N.Y. 1980) ......................................................................11

*Jones v. Micron Technology Inc.*,
    400 F.Supp.3d 897 (N.D. Cal. 2019) .................................................................6, 7

*Khamooshi v. Politico LLC*,
    2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .........................................................5

*Lee v. Am. Nat. Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ...............................................................................5

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .....................................................7

*Mahon v. Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)...................................................................................8

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .............................................................................5

*Meyers v. Bayer AG, Bayer Corp.*,
    2007 WI 99 (Wis. 2007) ....................................................................................12

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
   860 F.3d 1228 (9th Cir. 2017) ...................................................................9

*State ex rel. Palumbo v. Graley's Body Shop, Inc.*,
   188 W. Va. 501 (1992)...........................................................................12

*Pardini v. Unilever United States, Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ...................................................8

*Paulsen v. CNF Inc.*,
   559 F.3d 1061 (9th Cir. 2009) .................................................................7

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ...............................................................14

*Schwartz v. Miller*,
   153 F.4th 918 (9th Cir. 2025) .................................................................6

*Shahinian v. Med. Staff of Los Robles Hosp. & Med. Ctr.*,
   2016 WL 9045473 (C.D. Cal. Feb. 2, 2016) ...........................................4

*System Operations, Inc. v. Scientific Games Development Corp.*,
   555 F.2d 1131 (1977)...............................................................................7

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   581 U.S. 433 (2017) .................................................................................9

*U.S. ex rel. Krahling v. Merck & Co.*,
   44 F. Supp. 3d 581 (E.D. Pa. 2014)..........................................................8

*Van Mourik v. Big Heart Pet Brands, Inc.*,
   2018 WL 1116715 (N.D. Cal. March 1, 2018) .........................................7

## Statutes

Kan. Stat. § 50-132 ...........................................................................................13

Kan. Stat § 132 .................................................................................................13

Mass. Gen. Laws Ch. 93, § 3 ...........................................................................10

Ohio Code § 1331.04.........................................................................................13

## Other Authorities

Fed. R. Civ. P. 12(b)(1) ................................................................................1, 5

Fed. R. Civ. P. 12(b)(6) ...........................................................................1, 2, 4

Fed. R. Civ. P. 23................................................................................................................8

1

<u>**NOTICE OF MOTION TO DISMISS**</u>

2   **PLEASE TAKE NOTICE** that on February 11, 2026 at 9:00 a.m., or at another time set by

3   the Court, Defendants Corcept Therapeutics, Incorporated and Optime Care Inc. will, and hereby do,

4   move to partially dismiss Plaintiff Teva Pharmaceuticals USA's Inc.'s Second Amended Complaint

5   (Dkt. 146, "SAC") with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for

6   lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). This motion is based upon this

7   Notice and Memorandum of Points and Authorities, as well as any such evidence or argument

8   requested or permitted by the Court.

9   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

10  **I.**   <u>**PRELIMINARY STATEMENT**</u>

11  This Court's Order (Dkt. 134, "Order") recently granted in part Defendants' motion to dismiss

12  Teva's First Amended Complaint (Dkt. 39, "FAC"). It substantially narrowed Teva's case,

13  significantly limiting the conduct that Teva could pursue as well as the potential relief that Teva could

14  even hope to obtain. It even dismissed certain of Teva's claims outright, including an omnibus

15  antitrust and consumer protection claim under a grab bag of state laws, as well as a claim for unjust

16  enrichment. Instead of simply moving forward with the claims and theories that the Court allowed to

17  proceed, Teva chose to file a ***third*** complaint. But rather than cure the deficiencies that Defendants

18  and this Court previously identified, Teva's Second Amended Complaint doubles down on them.

19  Defendants therefore file this motion to dismiss: (a) Teva's claims for monopolization and attempted

20  monopolization (Counts I and II) to the extent that they are based on Corcept's assertion of seven

21  patents that the Court found were constitutionally protected by *Noerr-Pennington* immunity; and (b)

22  Teva's omnibus state law claim (Count VI). This time, however, the dismissal should be ***with***

23  ***prejudice***.

24  ***First***, with respect to Teva's "sham" litigation theory, the SAC repeats the same allegations

25  that the Court already found inadequate concerning Corcept's assertion of the '214, '526, '242, '243,

26  '216, '800, and '801 patents in the parties' patent litigation in the District of New Jersey. Indeed, the

27  Court determined that Teva did not (and could not) plausibly establish that Corcept's litigation over

28  these seven patents was a "sham" that gives rise to antitrust injury. The SAC makes zero modifications

to these allegations, and Teva's claims based on them fail for the same reasons the Court identified.

*Second*, Teva's amended omnibus state law claim seeks to invoke the laws of at least twenty states and the District of Columbia—none of which is where Teva or Corcept resides. Teva's allegations as to each of those laws fails to state a claim under Fed. R. Civ. P. 12(b)(6), however, because Teva does not adequately allege injuries *within* each of these jurisdictions or any other connection to them as is constitutionally required in federal court. This is because a plaintiff bringing state law claims pursuant to a district court's supplemental jurisdiction can ordinarily only assert claims arising under the laws of the state of plaintiff's residence, or where the injury occurred. Plaintiffs in federal court lack standing to bring claims under the laws of states to which they have plausibly alleged no connection. Therefore, Teva lacks standing to assert its omnibus claim *in toto*, because Teva lacks standing to assert each of the local (and, in Teva's case, foreign) laws that claim relies on. And even were the Court to consider Teva's claim as to particular asserted laws (it should not), Teva's claim fails as to multiple jurisdictions for jurisdiction-specific reasons.

*Finally*, the SAC reflects Teva's third bite at the apple. That—and Teva's failure to cure the deficiencies the Court identified in its prior Order—confirm that further amendment as to these claims and theories would be futile. Dismissal should therefore be with prejudice.

## II.     **BACKGROUND**

Teva filed this case on June 13, 2024. Dkt. 1. After Defendants each filed motions to dismiss on August 26, 2024, Teva used its one amendment as a matter of right, filing its FAC on September 13, 2024. Dkts. 34, 36, 39. Defendants then filed a joint motion to dismiss on October 14, 2024, briefing closed on November 25, 2024, and the parties submitted supplemental briefing on statute of limitations issues on August 7, 2025. Dkts. 55, 68, 121, 122, 123.

The Court issued its Order on September 12, 2025, granting in part and denying in part Defendants' motion to dismiss the FAC. As the Court has recognized, Counts I and II allege an anticompetitive scheme arising from four types of conduct: (1) Corcept's listing of its '348 and '495 patents in the FDA's Orange Book; (2) Corcept's assertion of nine patents in litigation against Teva in patent infringement litigation in the District of New Jersey; (3) an alleged exclusive dealing arrangement between Corcept and Optime (a small, Missouri-based specialty pharmacy); and (4)

1    Corcept's supposedly "bribing" physicians to prescribe Corcept's Korlym over Teva's generic

2    mifepristone. Order at 1–2, 13.

3         Teva's claims are based on alleged conduct that began before the limitations period. The Court

4    allowed Teva's claims to proceed in certain respects past the pleading stage pursuant to the continuing

5    violation doctrine. Order at 9–15. While the Court allowed Teva's claims to proceed "beyond a statute

6    of limitations challenge," the Court also explained that Teva's "ability to collect damages is limited

7    to" the applicable statute of limitations period. Order at 15–16. The Court explained that this "is no

8    small thing: a significant portion of Defendants' allegedly violative conduct occurred and was felt

9    most acutely before 2020," such that "[t]hose damages are now lost to Teva." *Id.*

10        Accepting Teva's allegations as true as it must at the pleading stage, the Court allowed Counts

11   I and II to proceed on Teva's "scheme" allegations, except that the sham litigation allegations must

12   be limited to the assertion of the '348 and '495 patents. Order at 27. With respect to Corcept's

13   assertion of seven additional patents, the Court concluded that "Teva cannot base its monopoly claims

14   on those litigations." *Id.* That is because the Court determined that: (a) "a reasonable litigant could

15   realistically expect that the '214 patent infringement suit could succeed; in other words that it was not

16   objectively baseless . . . [and that] [t]he same reasoning applies to the assertion of the '800 patent";

17   (b) Teva's allegations as to the remaining '526, '242, '243, '216, '801 patents were conclusory and

18   did not plausibly establish "sham" litigation since "[b]eyond alleging a pattern of voluntary

19   dismissals, Teva does not allege how or why these suits were objectively baseless"; and (c) Corcept's

20   litigation over the '800 and '801 patents "had no delaying effects on Teva's generic because the 30-

21   month stay had already lapsed[.]" *Id.* at 26–27.

22        The Court also allowed Teva's Unfair Competition Law and Section 16600 claims to proceed.

23   Order at 27–28. Teva's UCL claim is based on the "exclusive dealing" and "kickback" allegations;

24   Teva's Section 16600 claim is based only on the alleged exclusive dealing. *Id.*

25        Regarding Teva's omnibus state law claim based on at least 85 different statutes, the Court

26   determined that Teva's allegations were "woefully insufficient" and dismissed the claim. Order at 29.

27   The Court explained that Teva "do[es] no more than gesture at state statutes," and that should Teva

28   choose to try to re-plead this claim, it must include additional specificity. *Id.*

1    Finally, as to unjust enrichment, the Court explained it is "not a cause of action." Order at 29.

2    The Court therefore dismissed that claim with prejudice.

3    Teva then filed its SAC on September 26, 2025. Dkt. 146. The SAC is largely similar to the

4    FAC, but it omits the unjust enrichment claim that the Court found fatally deficient. *See* SAC. As to

5    Teva's sham litigation theory based on Corcept's '214, '526, '242, '243, '216, '800, and '801 patents,

6    the SAC adds no new allegations beyond those in the FAC, which the Court already determined do

7    not give rise to a claim. *Compare* FAC ¶¶ 115–22, *with* SAC ¶¶ 115–22.

8    Regarding Teva's omnibus state law claim, the SAC pares back the list of asserted statutes to

9    approximately twenty-one, though none are those of New Jersey, the jurisdiction where Teva is

10   headquartered. SAC ¶¶ 12, 250. Teva alleges that Defendants' purported exclusive dealing and

11   Corcept's supposed bribes have affected "the commerce of the states and territories whose laws are

12   recited above, by artificially suppressing competition, and raising prices, for brand Korlym pad for

13   and/or dispensed in each of those states and territories," that Defendants have impacted "intrastate

14   commerce and interstate commerce flowing into or out of the states and territories whose laws are

15   recited above," that "millions of dollars' worth of brand Korlym has been . . . sold in the states and

16   territories whose laws are recited above," and that Teva has been "blocked from effectively competing

17   in the market" (which it alleges is national, not sub-national). *Id.* ¶¶ 188, 251–54.

18   On October 14, 2025, the Court entered the parties' stipulation to set a briefing schedule on

19   Defendants' motion to dismiss the SAC. Dkt. 150. This Motion thereafter followed.

20   ## III.    **LEGAL STANDARD**

21   Dismissal is required under Rule 12(b)(6) "when a complaint lacks either a cognizable legal

22   theory or sufficient facts alleged under such a theory." *In re German Auto. Mfrs. Antitrust Litig.*, 497

23   F. Supp. 3d 745, 753 (N.D. Cal. 2020) (cleaned up). "Threadbare recitals of the elements of a cause

24   of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662,

25   678 (2009). A "motion to dismiss is particularly sensible in an antitrust case," *Shahinian v. Med. Staff*

26   *of Los Robles Hosp. & Med. Ctr.*, 2016 WL 9045473, at *1 (C.D. Cal. Feb. 2, 2016), where the

27   extraordinary expense of discovery mandates that courts "insist upon some specificity in pleading

28   before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*,

1    550 U.S. 544, 558 (2007).

2        Dismissal is also required for lack of subject matter jurisdiction under Rule 12(b)(1) where

3    the plaintiff lacks "an actual case or controversy." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th

4    Cir. 2011). Indeed, whether a plaintiff "has made out a 'case or controversy' within the meaning of

5    Art. III is the threshold question in every federal case." *Berry v. Air Force Cent. Welfare Fund*, 115

6    F.4th 948, 952 (9th Cir. 2024) (cleaned up). This standing inquiry, however, "is solely federal in

7    nature; state judiciaries are not constrained by Article III's requirements." *In re Packaged Seafood*

8    *Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1096 (S.D. Cal. 2017) (citation omitted). "Therefore,

9    'a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be

10   foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the

11   requisite [Article III standing].'" *Id.* at 1097 (*quoting Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1001–

12   02 (9th Cir. 2001)).

13       Article III standing is properly raised on a motion to dismiss, and a court "assesses whether

14   the plaintiff has alleged sufficient facts that, taken as true, demonstrate each element of Article III

15   standing." *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025). The

16   plaintiff "must allege facts demonstrating (i) that he suffered an injury in fact that is concrete,

17   particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii)

18   that the injury would likely be redressed by judicial relief." *Id.* (cleaned up).

19       Standing "is claim-specific and 'a plaintiff must demonstrate standing for each claim he seeks

20   to press.'" *Harris v. CVS Pharmacy, Inc.*, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015) (*quoting*

21   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "As the party advocating for the

22   application of [other states' laws], Plaintiff must make at least [a] *prima facie* showing that the [other

23   states' laws] appl[y] to him such that he would have standing to bring that claim." *Harris*, 2015 WL

24   4694047, at *4. "'Courts routinely dismiss claims' for lack of subject-matter jurisdiction 'where no

25   plaintiff is alleged to reside in a state whose laws" the named plaintiff "'seeks to enforce' because the

26   named plaintiff lacks standing to invoke the foreign statute." *Id*. (quotation omitted). In sum,

27   "Plaintiffs must show they have standing for each claim they raise, and Plaintiffs do not have standing

28   to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent

connection." *Jones v. Micron Technology Inc.*, 400 F. Supp .3d 897, 909 (N.D. Cal. 2019).

Finally, dismissal with prejudice is proper where a plaintiff has already serially amended its complaint but fails to cure the deficiencies identified by a defendant and the Court. *See Schwartz v. Miller*, 153 F.4th 918, 932 (9th Cir. 2025) (courts should "consider the number of times the plaintiff has already been allowed to amend" in determining whether to allow further amendment). That indicates further amendment would be futile.

## IV.   ARGUMENT

### A.   Teva's Unchanged Claims Based on the '214, '526, '242, '243, '216, '800, and '801 Patents Still Fail (Counts I–II)

The Court previously found that Teva's monopolization and attempted monopolization claims (Counts I and II) based on Corcept's assertion of seven patents—the '214, '526, '242, '243, '216, '800, and '801 patents—failed. Order at 27 ("Thus, though Corcept's first infringement action—the one that triggered the 30-month stay—suffices to demonstrate antitrust injury, the remaining suits do not. Teva cannot base its monopoly claims on those litigations."). The SAC does not even attempt to add any new allegations to remedy the deficiencies that this Court already found doom Teva's claims based on those seven patents. *Compare* FAC ¶¶ 115–22, *with* SAC ¶¶ 115–22. Therefore, the Court should dismiss (again, but this time ***with prejudice***) Teva's monopolization and attempted monopolization claims based on the '214, '526, '242, '243, '216, '800, and '801 patents. *See Harris v. City of Clearlake*, 2018 WL 659015, at *3 (N.D. Cal. Feb. 1, 2018) (dismissing claim with prejudice, where court previously dismissed claim, and the plaintiff's second amended complaint "contains no new allegations" as to that claim); *Fetter v. Bonner*, 2015 WL 164268, at *7 (E.D. Cal. Jan. 13, 2015) (dismissing claims with prejudice, "[s]ince these claims are unchanged from the claims in Plaintiff's prior complaint, which were dismissed").

### B.   Teva's Threadbare Omnibus State Law Claim Still Fails (Count VI)

#### 1.   Teva Fails to Plausibly Allege Standing for Its Omnibus Claim

Teva's omnibus state law claim challenges Corcept's supposed exclusive dealing with Optime and Corcept's purported payments to physicians. *See* SAC ¶ 250. It is based on the laws of twenty states and the District of Columbia. "Courts in the Ninth Circuit have consistently held that a plaintiff

[ . . .] lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *Jones*, 400 F. Supp. 3d at 908.[1] Teva concedes it is not a resident of any of these jurisdictions: Teva is based in New Jersey. SAC ¶ 12. And, Teva fails to plead any nonconclusory facts that would establish injury in these jurisdictions, or otherwise plausibly establish its constitutional standing under Article III to assert claims under any of their laws.[2] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To have Article III standing to assert a state law claim, Teva must plausibly establish a causal relationship to that state. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) (explaining that "a plaintiff whose injuries have no causal relation to Pennsylvania . . . has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state."); *see also Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *3–*4 (N.D. Cal. Sept. 22, 2014) (dismissing state law antitrust claims for lack of standing for those jurisdictions where no plaintiff resided or suffered injury in the form of overcharge); *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, at *1–*2 (N.D. Cal. March 1, 2018) (holding named plaintiff, a resident of Texas, lacked standing to bring claims under California law where she did not reside in California and did not suffer injury there); *Corcoran v. CVS Health Corp., Inc.*, 2016 WL 4080124, at *2-3 (N.D. Cal. July 29, 2016) (holding named plaintiffs lacked standing

---

[1]  In *Jones*, the plaintiffs brought claims (antitrust and other) under the laws of twenty-five states even though the named plaintiffs alleged they were residents of only five. 400 F. Supp. 3d at 909. Because the named plaintiffs did not plausibly allege they were injured or had any pertinent connection to the twenty other states that they sought to invoke, the court dismissed the claims under the twenty other states' laws for lack standing. *Id.*

[2]  Should any portion of Teva's Count VI survive, the Court will be asked at some point to engage in a conflict of laws analysis to determine whether or not Teva may simultaneously pursue duplicative claims under the laws of several jurisdictions. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action involving supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state."); *see also System Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1136–38 (1977) ("Since the present cause of action for product disparagement is indeed based on state, not federal, law, the district court's selection of applicable rules of product disparagement law should have been governed by the choice-of-law principles of the forum state . . ." and concluding that in a competitor case involving a New Jersey resident plaintiff," it was "better" to "choos[e] the law of a single state rather than" attempt "to apply the laws of many states simultaneously").

to bring claims under the laws of thirty-eight states "to which they have alleged no connection");
*Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (plaintiff lacked
standing to assert claims under laws of states other than state where plaintiff purchased the product
at issue); *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 603 (E.D. Pa. 2014) (dismissing
state law antitrust claims for lack of standing, as complaint "does not specify what, if any, injuries
the named Plaintiffs suffered in any of the twenty-two jurisdictions whose laws they invoke").[3]

Teva' apparent theory is that even though it is not a resident of any of the jurisdictions whose
laws its omnibus Count VI relies on, it suffered injuries in those jurisdictions because it lost sales to
Corcept in each of them. But Teva alleges no specific facts to establish the presence of any identifiable
Korlym-dispensing pharmacy, Korlym-prescribing doctor, or Korlym-taking patient in any of the
jurisdictions—*i.e.*, the stuff that would be required for Teva to plausibly establish it lost opportunities,
and thus profits, in each of the jurisdictions whose laws Teva seeks to invoke. Teva alleges injury
regarding Count VI in a single sentence: "As a direct and proximate result of Defendants' violation
of each of the foregoing laws, Teva has been harmed because it has been blocked from effectively
competing in the market, despite the cheaper cost of its equivalent product." SAC ¶ 254. This is a
conclusion that lacks the "factual content" required under *Twombly*, *Iqbal*, and the like for Teva to
plausibly establish the standing needed to invoke these jurisdictions' laws for its omnibus claim.

Teva's oversight is fatal to its omnibus claim because "standing is not dispensed in gross."
*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up). "Instead, the standing inquiry
requires careful judicial examination of a complaint's allegations to ascertain whether the *particular*

---

[3]  A plaintiff's lack of standing to assert a claim under a particular jurisdiction's antitrust law often
arises in the context of a putative class action. In such circumstances, a named plaintiff that resides
in one state attempts to assert a claim under the laws of a different state, on the grounds that while the
named plaintiff is not a resident of the asserted state and thus individually lacks standing as to that
claim, an absent class member that resides in the asserted state would have standing. That this issue
and pertinent judicial decisions frequently arise in class actions does not make them any less
instructive here, where Teva asserts individual (not class) claims. The point is that these class actions
decisions flow from the constitutional rule—which applies beyond class actions—that each plaintiff
must demonstrate standing as to each claim. Were the class action cases to hold otherwise and allow
a plaintiff to assert a state law claim for a jurisdiction in which he lacks standing, that would
improperly cause a "federal rule" to "alter a constitutional requirement." *See Mahon v. Ticor Title
Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (explaining Rule 23 cannot displace Article III standing).

1   *plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Oregon Prescription Drug*

2   *Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017) (cleaned up)

3   (emphases in original). Thus, "a plaintiff must demonstrate standing for each claim he seeks to press

4   and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433,

5   439 (2017). Teva does not plausibly do so for each of the twenty-one separately asserted laws in its

6   omnibus claim.

7       Indeed, Teva must—but does not—plausibly allege facts that would allow the Court to

8   conclude that Teva was harmed (by losing profits) in each of the asserted jurisdiction. That, in turn,

9   would involve allegations of specific facts regarding respective sales, business opportunities,

10  operations, and the like for Corcept's Korlym and Teva's generic mifepristone, respectively, in each

11  of the at-issue jurisdictions. *Cf. GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 818–19 (E.D.

12  Mich. 2018) (dismissing non-class plaintiff's state law claims in thirty-three jurisdictions for lack of

13  standing; insufficient allegations as to each specific jurisdiction). Because Teva offers only

14  generalities—not jurisdiction-specific facts—it has not plausibly alleged Article III standing to assert

15  the laws of jurisdictions in which Teva is a non-resident, requiring dismissal of its omnibus claim.[4]

16      ### 2.   Teva's Omnibus Claim Fails As to A Number of Jurisdictions' Laws

17      As discussed in Section IV.B.1., the Court should dismiss Teva's omnibus state law claim in

18  its entirety because it depends on the laws of jurisdictions in which Teva does not reside, but for

19  which Teva does not even plausibly allege Article III standing. Even were the Court to proceed to

20  evaluate Teva's claim, it must, at the very least, be substantially narrowed, because it fails as to a

21  number of the asserted laws, for several jurisdiction-specific reasons.

22  ---

23  [4]  The question of whether Teva, as a non-resident, has Article III standing to assert a claim under
    the law of a particular jurisdiction is different than that of whether that jurisdiction's law statutorily

24  authorizes claims by non-residents. Courts have explained that "Article III standing is an absolute
    requirement to litigate in federal Court," such that even if "many state laws permit non-residents to

25  bring suit, . . . such state laws would in no way alter the constitutionally mandated standing inquiry."
    *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1097 (S.D. Cal. 2017); *accord*

26  *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) ("Article III standing is
    different from, and not to be measured by, statutory standing."). Thus, even if some of the state laws

27  allow a non-resident to sue, particularly regarding interstate (rather than intrastate) commerce—which
    a number do not, as discussed *infra*—Teva's omnibus claim still fails across the board for lack of

28  Article III standing, as Teva alleges insufficient facts to invoke all the predicate laws in the first place.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a)     **Intrastate Conduct, Effect, Or Nexus**

Teva's omnibus claim further fails as to a number of jurisdictions because those jurisdictions' laws require substantially ***intrastate*** conduct, effect, or nexus. While Teva generically alleges that Corcept's supposed exclusive dealing with Optime and Corcept's purported payments to physicians "have affected (and continue to affect) both intrastate commerce and interstate commerce flowing into or out of the states and territories whose laws are recited above" (SAC ¶¶ 251–54), that does not suffice for many of the state laws that Teva seeks to invoke.

**District of Columbia.**  Teva asserts a claim under D.C. antitrust law. SAC ¶ 250(1). But to invoke D.C. antitrust law, a plaintiff must allege "facts specific to the District of Columbia" and "address how" a defendant's actions have "affected intrastate commerce in the District of Columbia." *In re Cast Iron Soil Pipe And Fittings Antitrust Litig*., 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015). Importantly, generic allegations that "competition was restrained, suppressed, and eliminated throughout" D.C., that "prices were raised" in D.C., and that D.C. residents "paid supracompetitive" prices do not suffice. *Id.* (dismissing D.C. antitrust claim on this basis). Here, Teva offers even less: it does not actually include D.C.-specific allegations, but instead generic allegations as to all the asserted states. SAC ¶¶ 251–54. That fails, and Teva's D.C. claim should be dismissed.

**Massachusetts.**  Teva asserts a claim under Massachusetts antitrust law. SAC ¶ 250(9). Massachusetts statutory law, however, makes clear that "[n]othing in the Massachusetts Antitrust Act . . . shall apply to any course of conduct, pattern of activity, or activities ***unless they occur and have their competitive impact primarily and predominantly within the commonwealth and at most, only incidentally outside New England***[.]" Mass. Gen. Laws Ch. 93, § 3 (emphasis added). Teva does not assert that Corcept's conduct occurred—or that its effects were felt—"primarily and predominantly within Massachusetts" and "at most, only incidentally outside New England." To the contrary, Teva alleges that the relevant geographic market is the United States and that Corcept's alleged conduct "has substantially effected ***interstate*** commerce." SAC ¶¶ 188, 206 (emphasis added). Teva's Massachusetts claim therefore fails.

**Michigan.**  Teva asserts a claim under Michigan antitrust law. SAC ¶ 250(10). Courts have explained that Michigan's "antitrust laws" are "applicable only to intrastate commerce." *Exxon Corp.*

*v. Time Indus., Inc*., 1974 WL 838, at *1 (E.D. Mich. Feb. 7, 1974) (granting summary judgment on defense based on "violations of the Michigan antitrust laws" because "[t]he transactions underlying this case involve interstate, not intrastate, commerce" such that "the statutes have no application to the transactions involved in this lawsuit."). Teva does not allege effects to only Michigan commerce. Instead, Teva asserts that the challenged conduct affected "***interstate*** commerce" as well. SAC ¶ 17. That requires dismissal of Teva's Michigan claim.

**Missouri.**   Teva asserts a claim under Missouri antitrust law. SAC ¶ 250(11). Courts have explained, though, that "[t]he Missouri antitrust statutes do not apply to . . . interstate commerce." *Cessna Fin. Corp. v. White Indus., Inc.*, 1976 WL 1325, at *3 (W.D. Mo. Sept. 23, 1976); *accord In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 84 (E.D.N.Y. 1980). Teva makes no allegations as to Missouri-only conduct or effects; rather, it claims the challenged conduct affected "***interstate*** commerce" (SAC ¶ 17). That requires dismissal of Teva's Missouri claim.[5]

**North Carolina.**   Teva asserts a claim under North Carolina antitrust law. SAC ¶ 250(14). Courts applying North Carolina law generally hold that "a business must have *both* suffered an injury in North Carolina *and* have an operational presence within the state in order to have a claim[.]" *Bendfeldt v. Window World, Inc.*, 2018 WL 11318516, at *1 (W.D.N.C. June 22, 2018) (emphases in original). Here, Teva does not plausibly allege a North Carolina-specific injury that is substantial, ***or*** that Teva maintains an "operational presence" within North Carolina (rather, Teva's U.S. headquarters are in New Jersey, *see* SAC ¶ 12). That dooms Teva's North Carolina claim. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 549 (N.D. Ill. 2019) (North Carolina statute "reaches only conduct causing a substantial in-state injury, not merely an incidental one" and dismissing claim where "plaintiffs do not allege that any wrongful conduct occurred in North Carolina," because allegations that purchasers "payed [sic] inflated prices are not sufficient") (cleaned up); *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *23, *25–*26

---

[5]   Teva does allege that Optime is based in Missouri. SAC ¶ 14. However, Teva also alleges that Corcept is based in California (which is not Missouri). *Id.* ¶ 13. In such circumstances, Missouri's intrastate commerce requirement is ***not*** met. *See Cessna*, 1976 WL 1325, at *3 (striking defense based on Missouri antitrust statutes; defense based on contract between Kansas and Missouri parties, pursuant to which some instruments executed in Kansas and others executed in Missouri, such that transaction was "clearly an interstate transaction," rather than an intrastate one).

1    (dismissing North Carolina state law claims on similar grounds).

2         **South Dakota.**  Teva asserts a claim under South Dakota antitrust law. SAC ¶ 250(17). But

3    "South Dakota's antitrust statute requires that part of the anticompetitive conduct occur within South

4    Dakota or have an effect within South Dakota." *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,

5    2015 WL 5166014, at *25. Even where a plaintiff includes *some* (albeit conclusory) allegations about

6    South Dakota, courts have dismissed South Dakota antitrust claims. *In re Auto. Parts Antitrust Litig.*,

7    2018 WL 1135504, at *3–*4 (E.D. Mich. Jan. 16, 2018) ("boilerplate language" regarding "effects"

8    of defendants' conduct being felt in South Dakota, prices being "fixed . . . through South Dakota,"

9    and plaintiffs paying "supra-competitive" prices in South Dakota insufficient). Here, Teva offers

10   *none*, so its South Dakota claim fails. *See In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015

11   WL 5166014, at *26 (dismissing South Dakota antitrust claim because it was "conclusory" and did

12   not adequately address "connection between" South Dakota "and the wrongful conduct").

13        **West Virginia.**  Teva asserts a claim under West Virginia antitrust law. SAC ¶ 250(20). But

14   "West Virginia's antitrust law is directed towards intrastate commerce." *Anziulewicz v. Bluefield*

15   *Cmty. Hosp., Inc.*, 531 F. Supp. 49, 53 (S.D. W.Va. 1981); *accord State ex rel. Palumbo v. Graley's*

16   *Body Shop, Inc.*, 188 W. Va. 501, 507 (1992). Thus, "a plaintiff must show that the wrongful conduct

17   occurred in West Virginia or was felt in West Virginia to assert a violation of the West Virginia

18   Antitrust Act." *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *25. Teva

19   offers no specific allegations about conduct or effects in West Virginia in particular, so it cannot

20   invoke West Virginia law. *Id.* at *26 (dismissing West Virginia antitrust claim because it was

21   "conclusory" and did not adequately address "connection between" West Virginia "and the wrongful

22   conduct").

23        **Wisconsin.**  Teva asserts a claim under Wisconsin antitrust law. SAC ¶ 250(21). The

24   Wisconsin Supreme Court has confirmed that to assert such a claim, a plaintiff "must allege either

25   that actionable conduct occurred within the state, or that the conduct complained of substantially

26   affects the people of Wisconsin and has impacts in this state." *Meyers v. Bayer AG, Bayer Corp.*,

27   2007 WI 99, ¶ 24 (Wis. 2007). Here, Teva does not plausibly allege either. *See, e.g.*, *In re Cast Iron*

28   *Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *23–*27 (dismissing Wisconsin state

1    law claim because plaintiffs' allegations were "conclusory"); *In re Urethane Antitrust Litig.*, 663 F.

2    Supp. 2d 1067, 1084 (D. Kan. 2009) (same; even where plaintiffs specifically alleged they were

3    located in Wisconsin and defendants "shipped millions of dollars" of products to Wisconsin).

4                              **(b)    Unilateral Conduct**

5            Teva's omnibus claim fails as to other jurisdictions whose antitrust laws only proscribe

6    concerted conduct, rather than unilateral conduct. Teva's claim is based on: (1) the Corcept-Optime

7    agreement; and (2) Corcept's alleged payments to physicians. *See* SAC ¶ 250. The former is

8    "concerted" in that it involves ***multilateral*** conduct: an alleged "exclusive dealing" agreement

9    between Corcept and Optime. But the latter is ***unilateral*** in that it involves no actual "agreement" or

10   "conspiracy" between Corcept and the physicians (and Teva does not allege otherwise). That requires

11   dismissal of Teva's Kansas and Ohio antitrust claims (SAC ¶¶ 250(7), 250(15)) to the extent they are

12   based on Corcept's physician payments.

13           **Kansas.**    Teva asserts that Kansas law—specifically Kan. Stat § 50-132—bars

14   "monopolization and attempted monopolization[.]" SAC ¶ 250(7). In reality, that statute bars "any

15   person doing business within the state of Kansas" from "***conspir[ing] or combin[ing]*** with any other

16   persons . . . for the purpose of monopolizing any line of business[.]" Kan. Stat. § 50-132 (emphases

17   added). In other words, the statute "emphasizes agreements between two or more individuals" and

18   thus "require[s] more than unilateral conduct." *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 394

19   (D.N.J. 2018). As to the supposed "bribery," Teva alleges no "agreements" between Corcept and

20   physicians, which requires dismissal of Teva's Kansas claim to that extent.

21           **Ohio.**    Teva contends that Corcept "violated" Ohio antitrust law, specifically Ohio Code §

22   1331.04. But that statute prevents a "combination, contract, or agreement in the form of a trust[.]" *Id.*

23   Again, regarding the alleged "bribery," Teva does not allege a "combination, contract, or agreement"

24   between Corcept and the physicians. This, too, requires dismissal of Teva's Ohio claim to this extent.

25           **C.    Teva's Deficient Claims and Theories Should Be Dismissed With Prejudice**

26           Teva's SAC is its third bite at the apple. It comes after Teva filed two earlier complaints,

27   Defendants filed two motions to dismiss, and the Court's Order dismissing in part Teva's FAC. In

28   light of Teva's serial amendments, the Court has "particularly broad" discretion to deny Teva further

leave to amend. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). The SAC does not cure the deficiencies that the Court identified regarding Teva's monopolization and attempted monopolization claims based on Corcept's assertion of the '214, '526, '242, '243, '216, '800, and '801 patents, or Teva's omnibus state law claim. That indicates further amendment would be futile. *See In re Google Generative AI Copyright Litig.*, 2025 WL 2624885, at *12 (N.D. Cal. Sep. 11, 2025) (finding further amendment futile "in light of the previous opportunities to amend and Plaintiffs' failure to cure pleading deficiencies"). Imposing a fourth round of motion to dismiss briefing on Defendants—particularly given the current case schedule (Dkt. 128)—would also be unduly prejudicial. For these reasons, the Court should therefore dismiss these claims and theories with prejudice.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully requests that the Court grant their Motion and dismiss Teva's deficient claims with prejudice.

DATED:  October 31, 2025

By: */s/ Robert W. Stone*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
Michael D. Powell (Bar No. 202850)
  mikepowell@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:      (650) 801-5000
Fax:              (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:      (415) 875-6600
Fax:              (415) 875-6700

Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone:      (213) 443-3000
Fax:              (213) 443-3100

Steig D. Olson (admitted *pro hac vice*)
  steigolson@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone:      (212) 849-7000
Fax:              (212) 849-7100

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

By: */s/ Lucas C. Wohlford*
**DUANE MORRIS LLP**
Lucas C. Wohlford (admitted *pro hac vice*)
  lwohlford@duanemorris.com
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone:      (214) 257-7200
Fax:              (214) 257-7201

Justin J. Fields (SBN 259491)
  jfields@duanemorris.com
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone:      (415) 957-3000
Fax:              (415) 957-3001

*Attorneys for Defendant Optime Care Inc.*

## CIVIL LOCAL RULE 5-1 ATTESTATION

I, Robert W. Stone, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the signatories listed above.

DATED: October 31, 2025

By          /s/ Robert W. Stone
            Robert W. Stone

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By          /s/ Robert W. Stone
            Robert W. Stone