Michael Shipley (SBN 233674)
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, California 90067
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*Pro Hac Vice*)
Kevin M. Neylan, Jr. (*Pro Hac Vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4800
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | Case No: 5:24-cv-03567-NW |
| Plaintiff, | |
| v. | **TEVA'S OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO DISMISS TEVA'S SECOND AMENDED COMPLAINT** |
| CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., | |
| Defendants. | Date:      February 11, 2026<br>Time:      9:00 a.m. |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.     TEVA HAS ARTICLE III STANDING TO PURSUE ITS STATE CLAIMS ....................... 4

II.    TEVA'S STATE CLAIMS ARE ADEQUATELY PLED ........................................ 8

     A.    Teva Plausibly Alleges Intrastate Effects ............................................ 9

     B.    Teva Plausibly Alleges Concerted Action .......................................... 12

III.    ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE ...................................... 12

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Aggrenox Antitrust Litig.*,
    94 F. Supp. 3d 224 (D. Conn. 2015)................................................................10, 11

*In re Asacol Antitrust Litig.*,
    2016 WL 4083333 (D. Mass. July 20, 2016).............................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................3

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)....................................................................................................5

*In re Auto. Parts Antitrust Litig.*,
    2013 WL 2456612 (E.D. Mich. June 6, 2013).............................................5, 10, 11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997) ......................................................................................9

*In re Broiler Chicken Antitrust Litig.*,
    290 F. Supp. 3d 772 (N.D. Ill. 2017) ...............................................................9, 10, 11

*In re Cardizem CD Antitrust Litig.*,
    105 F. Supp. 2d 618 (E.D. Mich. 2000).............................................................9, 11

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
    2015 WL 5166014 (E.D. Tenn. June 24, 2015)........................................................10

*City of Oakland v. Oakland Raiders*,
    20 F.4th 441 (9th Cir. 2021) .......................................................................................4

*Corcoran v. CVS Health Corp., Inc.*,
    2016 WL 4080124 (N.D. Cal. July 29, 2016)..............................................................6

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
    903 F. Supp. 2d 198 (S.D.N.Y. 2012).........................................................................11

*In re Dig. Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011)..........................................................9, 10, 11, 12

*Don Copeland v. Energizer Holdings, Inc.*,
    716 F. Supp. 3d 749 (N.D. Cal. 2024) ........................................................................5

*In re Flonase Antitrust Litig.*,
    692 F. Supp. 2d 524 (E.D. Pa. 2010) ...........................................................11, 12

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................................12

*GEICO Corp. v. Autoliv, Inc.*,
    345 F. Supp. 3d 799 (E.D. Mich. 2018) ..........................................................7, 13

*In re Google Generative AI Copyright Litig.*,
    2025 WL 2624885 (N.D. Cal. Sept. 11, 2025) ....................................................12

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*,
    425 U.S. 738 (1976).................................................................................................3

*Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*,
    2018 WL 4961908 (C.D. Cal. May 18, 2018) .......................................................7

*In re Intel Corp. Microprocessor Antitrust Litig.*,
    496 F. Supp. 2d 404 (D. Del. 2007)...............................................................10, 11

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ..................................................................6

*U.S. ex rel. Krahling v. Merck & Co.*,
    44 F. Supp. 3d 581 (E.D. Pa. 2014) ......................................................................6

*Lee v. McDonald*,
    2006 WL 3289853 (E.D. Mich. Nov. 9, 2006) .....................................................7

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
    2017 WL 3131977 (D.N.J. July 20, 2017).....................................................10, 11

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) .....................................................6

*Meyers v. Bayer AG*,
    735 N.W.2d 448 (Wis. 2007)...............................................................................11

*Olstad v. Microsoft Corp.*,
    284 Wis. 2d 224 (2005) .......................................................................................11

*Pardini v. Unilever United States, Inc.*,
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) .................................................................6

*Poller v. Columbia Broad. Sys., Inc.*,
    368 U.S. 464 (1962)................................................................................................4

*In re Processed Egg Prods. Antitrust Litig.*,
    851 F.Supp.2d 867 (E.D. Pa.. 2012) .................................................................5, 6

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) .....................................................................12

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline PLC*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) ......................................................9, 11, 12

*Sinclair v. City of Seattle*,
    61 F.4th 674 (9th Cir. 2023), *cert denied*, 144 S. Ct. 88 (2023) ..............................3

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    2015 WL 5458570 (D. Mass. Sept. 16, 2015) ........................................9, 10, 11

*Steel Company v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ...............................................................................5

*Tawfilis v. Allergan, Inc.*,
    157 F. Supp. 3d 853 (C.D. Cal. 2015) ...........................................................5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..............................................................................4

*Van Mourik v. Big Heart Pet Brands, Inc.*,
    2018 WL 1116715 (N.D. Cal. March 1, 2018) .....................................................6

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009) ..................................................................6

**Other Authorities**

Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*,
    ¶348d3 (2025 online ed.) ......................................................................4, 5

iv

**INTRODUCTION**

Defendants' motion to dismiss attempts to dispute well-pleaded factual allegations and distort basic principles of standing law. It should be denied in all respects.[1]

*First*, Teva possesses Article III standing to bring its state antitrust claims. Defendants' argument to the contrary is fatally flawed because it conflates the constitutional requirements of Article III standing with state statutory standing requirements. Moreover, Defendants rely entirely on putative class action cases where the identities of the individual plaintiffs and the nature of their injuries are fundamentally distinct from Teva and the injuries it has suffered.

*Second*, Teva has adequately alleged its state antitrust claims. Contrary to Defendants' suggestion, Teva alleges economic injury in every jurisdiction referenced in the SAC. *See* SAC, ¶¶251-254. Defendants do not dispute that Teva has stated a claim under 11 out of 21 state statutes. For the remaining 10 state claims, Teva has sufficiently alleged intrastate effects and concerted action with respect to its state claims.

**BACKGROUND**

This litigation stems from Defendants years-long, multifaceted scheme to suppress generic competition. Corcept manufactures Korlym, a once-daily pill that is indicated to treat patients with endogenous Cushing's syndrome, a rare disease that affects approximately 20,000 patients in the United States. (¶¶58-64).[2] The FDA approved Korlym in 2012 and conferred orphan drug status in 2007. (¶68). For twelve years, Corcept enjoyed a 100% market share in the market for Korlym and

---

[1] Despite Defendants' suggestion to the contrary, Teva accepts the Court's dismissal of its claims with respect to the patents identified in its Motion to Dismiss Order, Dkt. No. 134, although Teva reserves all rights to pursue those claims at later stages of the case as appropriate, including on appeal if necessary.

[2] Unless otherwise noted, "¶" refers to Teva's Second Amended Complaint ("SAC"), all internal citations and quotations are omitted, and all emphases are added.

its AB-rated generic equivalents, and its market share remains close to 100% today.  (¶¶188-201).  Korlym is Corcept's only product, generating 100% of its revenue.  (¶70).

In 2017, Teva filed an Abbreviated New Drug Application ("ANDA") for a generic version of Korlym (mifepristone), and it received tentative approval in October 2018.  (¶¶73,77).  But Teva was unable to launch for more than five more years, hindered by Corcept's misuse of the patent system by listing improper patents in the FDA's Orange Book, thereby triggering an automatic stay of FDA approval of competing generic products for 30 months, and by Corcept's maintenance of sham litigation against Teva for infringing those patents.  (¶¶73-122).

Teva finally launched its generic version of Korlym in January 2024, listing its product at a 13% price discount compared to the brand.  (¶¶123-27).  But instead of capturing the expected 60-75% of the market that it would have captured in a competitive market, Teva's market share has remained close to zero.  (¶128).  This is not for lack of effort—Teva's product is widely available, including to "all major national wholesalers and a specialty wholesaler, in addition to "all major national specialty pharmacies, several regional specialty pharmacies, and several other national retail pharmacies."  (¶158).  But Teva has been foreclosed from distributing its product through the primary distribution channel—Defendant Optime Care, Inc.—with whom Corcept entered into a 2017 exclusive agreement that made Optime the exclusive distributor of Korlym and forbade Optime from distributing competing products, including Teva's mifepristone.  (¶¶135-66).  This exclusive agreement has been highly effective at blocking Teva from gaining market share because Optime has been a "sticky" distribution channel—fostered in large part by Corcept's close relationships with physicians and outlandish payments meant to entrench prescribing and referral patterns.  (¶¶150-53, 167-87).

Teva brought suit against Corcept and Optime on June 13, 2024, bringing claims under the federal antitrust laws and various state laws.  Dkt. No. 1; Dkt. No. 39.  Defendants filed a joint motion to dismiss on October 14, 2024, arguing that Teva's claims were time-barred and Teva had failed to plead plausible violations of the antitrust laws.  Dkt. No. 55.

On September 12, 2025, the Court denied Defendants motion almost in its entirety. Dkt. No. 134. As to Defendant's timeliness argument, the Court held that "all the conduct alleged [is] part of one continuing violation of the Sherman Act," and Teva's Sherman Act claims are therefore "not time-barred." Dkt. No. 134 at 13-14. On the merits, the Court held that "Teva has alleged an exclusive agreement and substantial market foreclosure," Dkt. No.134 at 20, "Teva has successfully alleged all the necessary elements of a monopolization claim and an attempted monopolization claim," *id.* at 21, and that "Teva has alleged enough" with respect to its kickback claims, *id.* at 27. The Court also denied Defendants' motion to dismiss Teva's fraudulent Orange Book claims, and its sham patent claims with respect to the patents that Corcept fraudulently listed in the Orange Book. *Id.* at 23-27. With respect to Teva's omnibus state law claims, the Court dismissed Teva's claims with leave to amend, instructing that any amendment must provide "(1) a specific citation to the relevant antitrust or consumer protection law giving rise to the claim, (2) the elements for the private right of action created by that provision, (3) the governing statute of limitations and any state-specific tolling/accrual standards, (4) a restatement of, or citation to, the facts currently alleged in the [First Amended Complaint] that establish a claim under that provision, and (5) the degree of similarity between the state law claim and the federal claims alleged in the [First Amended Complaint]." *Id.* at 29. Teva filed its Second Amended Complaint on September 26, 2025, which included the five elements identified by the Court for Teva's 21 remaining state law claims. (¶250).

## ARGUMENT

On a motion to dismiss, the Court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023), *cert denied*, 144 S. Ct. 88 (2023). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[I]n antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." Dkt. No.134 at 9 (quoting *Hosp. Bldg.*

*Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 746 (1976) (quoting *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962) (internal citation omitted))).

## I.    TEVA HAS ARTICLE III STANDING TO PURSUE ITS STATE CLAIMS

Defendants' primary argument is that all of Teva's state-law claims should be dismissed for lack of jurisdiction because, according to Defendants, Teva lacks Article III standing to seek relief under the laws of jurisdictions where it does not reside, or where it has not named "any identifiable Korlym-dispensing pharmacy, Korlym-prescribing doctor, or Korlym-taking patient." (Mot. 8; *id.* 6-9.) This argument is wrong, and Teva has easily cleared the Article III standing hurdle. To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 452 (9th Cir. 2021) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Here, Teva alleges that its generic Korlym product is available nationwide—*i.e.*, in all 50 states (¶158)—but that, "[a]s a direct and proximate result of Defendants' unlawful conduct, Teva has been blocked from effectively selling its lower-cost generic product to health plans and patients who have paid monopoly prices for Korlym in the interim," and that "[a]bsent Defendants' conduct, Teva would have entered the market with a lower-cost generic Korlym as early as October 2018, and would have rapidly gained market share and revenue as reliably happens in competitive pharmaceutical markets following generic entry." (¶¶203-204). Teva alleges that as a result, it "has suffered and continues to suffer substantial lost revenue from its inability to capture market share as would be the case absent Defendants' illegal and anticompetitive behavior." (¶205). In other words, Teva alleges that Defendants' conduct has "effectively blocked meaningful generic competition for Korlym nationwide." (¶250(2)-(21)).

Those allegations more than suffice to establish Teva's standing. As the seminal Areeda treatise explains, when, as Teva has alleged, "one manufacturer unlawfully agrees with customers that they will not patronize rival suppliers, *the rivals undoubtedly have standing to sue.*" Areeda &

Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶348d3 (2025 online ed.).

Indeed, this Court has already determined that Teva has alleged antitrust injury: "Teva's injury is the delayed launch of its generic and the continued failure of that generic to grain traction in the market[;] [t]he injury to the market itself is the supracompetitive prices consumers are forced to pay for Korlym." Dkt. No. 134 at 22. And with respect to Teva's surviving claims, the Court has already determined that Teva has sufficiently alleged that "its and the market's injuries flow from Defendants' conduct." *Id.* at 23. Because Teva has alleged antitrust injury, it has necessarily alleged Article III standing, which "imposes a lower bar than antitrust standing." *Tawfilis v. Allergan, Inc.*, 157 F. Supp. 3d 853, 863 (C.D. Cal. 2015); *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n. 31 (1983) ("[h]arm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact . . . .").

Defendants try to impose an additional residency requirement to Article III standing that does not exist. In doing so, Defendants conflate Article III standing with the statutory standing requirements of state antitrust claims. "But whether an out-of-state plaintiff can pursue claims under the law of a particular state presents a merits question, not a question of Article III standing." *Don Copeland v. Energizer Holdings, Inc.*, 716 F. Supp. 3d 749, 771–72 (N.D. Cal. 2024) (denying motion to dismiss state antitrust claims); *see also In re Processed Egg Prods. Antitrust Litig.*, 851 F.Supp.2d 867, 886-87 (E.D. Pa.. 2012) ("*Eggs*") (rejecting the contention that non-residents lacked Article III standing to bring state antitrust claims and holding that "[a]n Article III standing inquiry simply does not require considering the elements of a state claim as 'jurisdictional prerequisites'"); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, **7-12 (E.D. Mich. June 6, 2013) (finding allegations of economic injury sufficient to confer Article III standing regardless of whether they satisfied specific state statutory requirements). As the Supreme Court has held, the "Article III requirement of a remediable injury in fact . . . has nothing to do with the text of the statute relied upon." *Steel Company v. Citizens for a Better Env't*, 523 U.S. 83, 97 n. 2 (1998). What Defendants have mislabeled as Article III standing is actually a merits challenge to whether out of state plaintiffs may ultimately recover

5

**TEVA'S OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO DISMISS
TEVA'S SECOND AMENDED COMPLAINT
CASE No. 5:24-cv-03567-NW**

under a particular state's statutory scheme.  Contrary to Defendants' argument, such an analysis does not implicate Article III constitutional standing; rather, it requires an inquiry into each state's statutory standing requirements to determine whether a plaintiff is eligible to bring suit.

In *Eggs*, 851 F. Supp. 2d at 881-88,  the district court elaborated on the mistake that Defendants make in their brief. There, defendants claimed that plaintiffs lacked Article III standing to bring indirect purchaser claims under the laws of states where no named plaintiff resided.  The district court cautioned parties not to conflate Article III standing with statutory standing.  Statutory standing, unlike Article III standing, "ask[s] whether Plaintiffs have a right to maintain a private enforcement action under the states' statutes . . . ."  *Id.* at 8851.  The Court ultimately held that plaintiffs' allegations that they paid supracompetitive prices for processed eggs was sufficient for Article III standing, regardless of whether the substantive state statutes arguably banned out of state purchasers from recovering.  *Id.*

Defendants' cited cases do not support their argument.  Virtually all are putative class action cases involving individual plaintiffs who purchased a defendant's products at supracompetitive prices. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 147 (E.D. Pa. 2009) (putative class of indirect purchasers); *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, *1 (N.D. Cal. Sept. 22, 2014) (same); *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, at *1 (N.D. Cal. March 1, 2018) (putative class of consumers); *Corcoran v. CVS Health Corp., Inc.*, 2016 WL 4080124, at *1 (N.D. Cal. July 29, 2016) (same); *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1051 (N.D. Cal. 2013) (same); *U.S. ex rel. Krahling v. Merck & Co.*, 44 F. Supp. 3d 581, 586 (E.D. Pa. 2014) (same).  In each case the standing inquiry was limited to an issue endemic to putative class actions: does a named plaintiff have standing to sue on behalf of unnamed plaintiffs in states where they do not reside and suffered no injury.  This was the question posed in *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897 (N.D. Cal. 2019), for example, and the court was clear that "[c]ourts in the Ninth Circuit have consistently held that a plaintiff *in a putative class action* lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured." *Id.* at 908 (emphasis added).  Defendants conveniently omit the putative class action qualifier with ellipses when quoting this language in their motion, and it is clear why: there is no Ninth Circuit

precedent that denies Article III standing to an antitrust plaintiff suing a direct competitor for blocking its ability to effectively compete in a national market. Even *Geico*, Defendants' sole non-class case, involved a direct purchaser that had opted out of a class, not a competitor that has been blocked from competing in a nationwide market, as Teva has here. *Cf. GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 808 (E.D. Mich. 2018).

Defendants' argument fails independently because Teva has plausibly alleged injury in every jurisdiction cited in the SAC. Teva alleges that Defendants "market and sell Korlym in interstate commerce, in all states and territories of the United States." (¶17). It alleges that its generic Korlym is available nationwide (¶158), that the "relevant geographic market is the United States, the District of Columbia, and United States territories," (¶188), and that Defendants have "blocked meaningful generic competition for Korlym nationwide" (¶250(2)-(21)). Further, Teva alleges that its injury includes its inability to enter that nationwide market sooner, and its inability to capture market share and revenues in that nationwide market since its launch in January 2024. (¶¶204-205). And Teva alleges that it has been "prevented from reaching health plans and patients with lower-cost generic mifepristone in each respective state." (¶209). Defendants identify no basis to disregard those allegations or to demand more specificity, which would be inappropriate on a motion to dismiss. *See Lee v. McDonald*, 2006 WL 3289853, at *3 (E.D. Mich. Nov. 9, 2006) (Noting that "[b]ecause the Court is considering a motion to dismiss, Defendant's argument that Plaintiff has failed to provide factual support beyond his allegations is not a basis for granting the motion.").

Defendants likewise fail to recognize that Teva's injuries are fundamentally different from the injuries asserted by class members in the purchaser cases Defendants rely on, where an individual purchases a product at a supercompetitive price in the state in which they reside. Because Teva's injuries stem from its inability to compete in a nationwide marketplace, it is injured in every state and jurisdiction where Korlym is sold, which includes those cited in the SAC. That is more than sufficient to establish Teva's standing. *See Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*, 2018 WL 4961908, at *7 (C.D. Cal. May 18, 2018) (holding that "because Plaintiff pleads tenable antitrust claims, as well

7

**TEVA'S OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO DISMISS
TEVA'S SECOND AMENDED COMPLAINT
CASE No. 5:24-cv-03567-NW**

1   as injury flowing from those claims, and the Market is nationwide in scope, Plaintiff alleges injury

2   from conduct in California . . . .").

3   ## II.   TEVA'S STATE ANTITRUST CLAIMS ARE ADEQUATELY PLED

4            Aside from their legally erroneous Article III standing theory, Defendants do not contest that

5   Teva has adequately stated a claim for 11 of Teva's 21 state law claims: Alaska, Florida, Idaho,

6   Illinois, Iowa, Maine, Nebraska, New Mexico, Oklahoma, Virgina, and Washington.  *Compare* (¶250)

7   *with* Dkt. No. 151 at 10-13.  Because Teva has adequately alleged Article III standing and Defendants

8   do not contest that Teva has stated a claim under the laws of these 11 states, the Court can easily

9   dispose of Defendant's motion to dismiss with respect to these claims.[3]

10           Defendants argue that Teva has failed to allege intrastate antitrust effects sufficient to state a

11  claim under the laws of the District of Columbia, Massachusetts, Michigan, Missouri, North Carolina,

12  South Dakota, West Virginia, and Wisconsin.  Dkt. No. 151 at 10-12.  As to Teva's claims under the

13  Kansas and Ohio antitrust laws, Defendants do not dispute that Teva has stated a claim with respect

14  to its exclusive dealing theory.  *Id.* at 13 (noting that Kansas and Ohio law require multilateral conduct

15  and conceding that Teva's claim based on the Corcept-Optime agreement "is 'concerted' in that it

16  involves multilateral conduct; an alleged 'exclusive dealing' agreement between Corcept and

17  Optime." (emphasis omitted)).   But Defendants argue that Teva cannot state a claim based on

18  physician kickbacks under the laws of Kansas and Ohio.  *Id.* at 13.  Both arguments fail.

19

20

21   _____

22   [3]   Defendants ask the Court to engage in a conflicts of law analysis in the event Teva's state claims

23   survive. *See* Mot. at 7 n. 2. Teva believes this is unnecessary.  All of the state statutes invoked by

24   Teva mirror the text of the Sherman Act and often contain harmonization provisions requiring

25   courts to interpret them in accordance with federal antitrust law when interpreting the state law.

26   *See* SAC (¶250).

27

28
                                          8

1

### A.     Teva Plausibly Alleges Intrastate Effects

2      It is well settled that allegations of nationwide antitrust violations satisfy "intrastate" statutory

3   requirements when combined with allegations that the impact of the conduct had an effect in those

4   states.  *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017) ("In

5   light of the obvious fact that Broilers are purchased in substantial numbers throughout the United

6   States, these allegations plausibly establish "substantial" *intra*state effects[.]"); *In re Dig. Music*

7   *Antitrust Litig.*, 812 F. Supp. 2d 390, 407–08 (S.D.N.Y. 2011); *Sheet Metal Workers Loc. 441 Health*

8   *& Welfare Plan v. GlaxoSmithKline PLC*, 737 F. Supp. 2d 380, 393-402 (E.D. Pa. 2010); *In re Solodyn*

9   *(Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *16 (D. Mass. Sept. 16, 2015).

10   Likewise, the alleged effects do not need to occur entirely or predominately within a state to satisfy

11   this requirement.  *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir.

12   1997) (noting that there are "virtually no sales" anywhere in the United States that are wholly

13   intrastate); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 665-70 (E.D. Mich. 2000)

14   (rejecting argument that state antitrust statutes only apply to conduct that is "wholly or predominately

15   intrastate in character").

16      Here, Teva's SAC alleges that Defendants' unlawful acts "have had, and continue to have, a

17   substantial and foreseeable effect on the commerce of the states and territories whose laws are recited

18   above, by artificially suppressing competition, and raising prices, for brand Korlym paid for and/or

19   dispensed in each of those states and territories" (¶251); that those unlawful acts "have affected (and

20   continue to affect) both intrastate commerce and interstate commerce flowing into or out of the states

21   and territories whose laws are recited above, and have had (and continue to have) direct, substantial,

22   and reasonably foreseeable effects upon trade and commerce in each of the states and territories whose

23   laws are recited above" (¶252); that "[t]hrough either Defendants themselves or agents/contractors

24   they have engaged for the sale of brand Korlym, millions of dollars' worth of brand Korlym has been,

25   and continues to be, sold in the states and territories whose laws are recited above every year" (¶253);

26   and that "[a]s a direct and proximate result of Defendants' violation of each of the foregoing laws,

27   Teva has been harmed because it has been blocked from effectively competing in the market, despite

28

9

the cheaper cost of its equivalent product … while, Corcept has enjoyed ill-gotten gains from the overly inflated cost and sales of its branded drug" (¶254). These allegations satisfy the statutory requirements of each antitrust law referenced in Defendants' motion. Dkt. No. 151 at 10-13.

**District of Columbia**:  A number of courts have found the District's antitrust statute to apply to nationwide schemes where plaintiffs have alleged substantial sales across the country, including in the District.  *See In re Broiler Chicken*, 290 F. Supp. 3d at 816; *In re Solodyn*, 2015 WL 5458570, at *16; *In re Auto. Parts*, 2013 WL 2456612, at *20 ("*Auto Parts I*"); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253 (D. Conn. 2015); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 412 (D. Del. 2007) ("*Microprocessors*"); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d at 407–08 ("*Digital Music*"); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *24–25 (D.N.J. July 20, 2017).  Defendants cite one case, *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015), which contains minimal analysis, no citations, and contravenes the overwhelming weight of authority.

**Massachusetts**: The text of Massachusetts' antitrust statute closely mirrors the Sherman Act, and courts interpreting similar statutes have noted that substantial intrastate effects can still exist when plaintiffs allege nationwide schemes with sales in the states in question.  *See In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 253 (D. Conn. 2015) (noting that for statutes that "require that the challenged conduct take place, or that its effects occur, purely or primarily within the state . . . it is not obvious why the *intra*state effect of anticompetitive conduct would not be reached . . . merely because *inter*state conduct predominates.").

**Michigan**: Michigan's antitrust statute has been interpreted to apply to nationwide schemes where sales are alleged to have been made in Michigan.  *See In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 407–08 (S.D.N.Y. 2011) (finding allegations sufficient to allege intrastate effects under Michigan's antitrust statute where plaintiffs alleged sales occurred in all listed states).

**Missouri**: The text of Missouri's antitrust statute closely mirrors the Sherman Act, and courts interpreting similar statutes have noted that substantial intrastate effects can still exist when plaintiffs allege nationwide schemes with sales in the states in question.  *See In re Aggrenox Antitrust Litig.*, 94

F. Supp. 3d 224, 253 (D. Conn. 2015) (noting that for statutes that "require that the challenged conduct take place, or that its effects occur, purely or primarily within the state . . . it is not obvious why the *intra* state effect of anticompetitive conduct would not be reached . . . merely because *inter* state conduct predominates.").

**North Carolina**: Several courts have found allegations that mirror Teva's sufficient to satisfy North Carolina's intrastate effects requirement. *See Auto Parts I*, 2013 WL 2456612, at *20; *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 231 (S.D.N.Y. 2012); *Sheet Metal Workes*, 737 F. Supp. 2d at 400; *Liquid Aluminum*, 2017 WL 3131977, at *24-25. *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 540 (E.D. Pa. 2010).

**South Dakota**: A number of courts have found allegations that mirror Teva's sufficient to satisfy South Dakota's intrastate effects requirement. *See Auto Parts I*, 2013 WL 2456612, at *20; *Microprocessors*, 496 F. Supp. 2d at 414; *Digital Music*, 812 F. Supp. 2d at 407-08; *Liquid Aluminum*, 2017 WL 3131977, at *24-25.

**West Virginia**: A number of courts have found allegations that mirror Teva's sufficient to satisfy West Virginia's intrastate effects requirement. *See Solodyn*, 2015 WL 5458570, at *16; *Auto Parts I*, 2013 WL 2456612, at *20; *Microprocessors*, 496 F. Supp. 2d at 414; *Sheet Metal Workers*, 737 F. Supp. 2d at 397; *Digital Music*, 812 F. Supp. 2d at 407-08; *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *13-14; *Liquid Aluminum*, 2017 WL 3131977, at *24-25.

**Wisconsin**: Wisconsin's antitrust statute expressly applies to nationwide conduct whose impacts primarily occur outside the state. *See Olstad v. Microsoft Corp.*, 284 Wis. 2d 224, 262 (2005) (conduct that "substantially affects" Wisconsin and "has impacts in this state" establishes a claim under the statute, "even if the illegal activity resulting in those impacts occurred predominantly or exclusively outside this state."). *See also Meyers v. Bayer AG*, 735 N.W.2d 448, 456-65 (Wis. 2007); *Broiler Chicken*, 290 F. Supp.at 816; *Aggrenox*, 94 F. Supp. 3d at 253; *Cardizem*, 105 F. Supp. 2d at 666; *Flonase*, 692 F. Supp. 2d at 535; *Sheet Metal Workers*, 737 F. Supp. 2d at 401-02; *Digital Music*, 812 F. Supp. 2d at 407-08; *Asacol*, 2016 WL 4083333, at *13-14.

**TEVA'S OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO DISMISS**
**TEVA'S SECOND AMENDED COMPLAINT**
**CASE No. 5:24-cv-03567-NW**

### B.    Teva Plausibly Alleges Concerted Action

Defendants argue that Teva's monopolization claims with respect to the payment of kickbacks and bribes to physicians under the laws of Kansas and Ohio should be dismissed because they do not plausibly allege "concerted action."  This misses the mark.  Teva provides a detailed overview of the years-long bribery and kickback scheme designed to hobble competition that benefited both Defendants, and in which both Defendants played an integral role, with Corcept making illicit payments to prescribers to induce them to continue routing prescriptions through Optime and selecting Korlym notwithstanding the availability of Teva's lower priced generic, and with Optime enabling the scheme by refusing to stock Teva's generic and by helping cement the prescribing patterns of those prescribers.  *See* SAC (¶¶167-87).

### III.    ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE

If the Court finds any of Teva's state claims deficient, they should be dismissed without prejudice and with leave to amend.  Amendment should be permitted unless the opposing party makes a showing of "undue delay, bad faith ..., undue prejudice ..., [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Defendants' argument that two amended complaints is enough to show futility is not supported by Defendants' cited cases.  In *Salameh v. Tarsadia Hotel*, for example, the plaintiffs failed to comply with specific instructions the Court provided for amending their complaint.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124 (9th Cir. 2013).  Here, Teva's SAC included the five elements for each state law claim that the Court required in its September 12 Order.  Dkt.134 at 29.  And in *In re Google Generative AI Copyright Litigation*, multiple factors weighed in favor of dismissal with prejudice, include that many of Plaintiffs claims were "not supported by a *single* factual allegation" and that the case had "been pending for more than two years" and the parties had engaged in five motions to dismiss across related actions.  *In re Google Generative AI Copyright Litig.*, 2025 WL 2624885, at *13 (N.D. Cal. Sept. 11, 2025).  Those conditions do not exist here.  Teva has adequately pleaded that Korlym is sold in every state, and that Teva has been injured in the form of its inability to penetrate the nationwide market for Korlym and its AB-rated equivalents, and its inability to reach "health plans and patients with lower-cost generic mifepristone in each respective

state." (¶¶17, 206-09). If the Court determines that additional allegations are required, Teva should be permitted to amend. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 819 (E.D. Mich. 2018) (granting leave to amend where not state antitrust laws were not pleaded with adequate particularity).

## <u>CONCLUSION</u>

For the reasons set forth above, Teva respectfully requests that Defendants' motion be denied in its entirely. Should the Court determine that Defendants' arguments have merit and dismisses claims, Teva respectfully requests leave to amend.

Dated: November 21, 2025

By: */s/ Michael Shipley*

Michael Shipley
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, California 90067
Tel: (213) 680-8400
michael.shipley@kirkland.com

Devora W. Allon, P.C. (*pro hac vice*)
Kevin M. Neylan, Jr. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446 5967
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Attorneys for Plaintiff*
*Teva Pharmaceuticals USA, Inc.*

**TEVA'S OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO DISMISS**
**TEVA'S SECOND AMENDED COMPLAINT**
**CASE No. 5:24-cv-03567-NW**

### FILER'S ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), regarding signatures, I, Michael Shipley, attest that concurrence in the filing of this document has been obtained.

/s/ Michael Shipley
Michael Shipley

**TEVA'S OPPOSITION TO DEFENDANTS' JOINT PARTIAL MOTION TO DISMISS**
**TEVA'S SECOND AMENDED COMPLAINT**
**CASE No. 5:24-cv-03567-NW**

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on November 21, 2025, I caused to be filed the foregoing document with

3

the United States District Court for the Northern District of California using the CM/ECF system and

4

caused it to be served on all registered participants via notice of electronic filing.

5

6

*/s/ Michael Shipley*

7

Michael Shipley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16