**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
Michael D. Powell (Bar No. 202850)
  mikepowell@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Fax:               (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Fax:               (415) 875-6700

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

**DUANE MORRIS LLP**
Lucas C. Wohlford (admitted *pro hac vice*)
  lwohlford@duancemorris.com
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone:     (214) 257-7200
Fax:               (214) 257-7201

*Attorney for Defendant Optime Care Inc.*

[Additional Counsel Listed On Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | Case No. 5:24-cv-03567-NW |
| Plaintiff, | Honorable Noël Wise |
| vs. | **DEFENDANTS' REPLY IN SUPPORT OF JOINT PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| CORCEPT THERAPEUTICS, INC., et al., | |
| Defendants. | Hearing Date: February 11, 2026 at 9:00 a.m. |

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..........................................................................................1

II. ARGUMENT .....................................................................................................................2

    A. Teva Concedes Its Claims Based On the '214, '526, '242, '243, '216, '800, and '801 Patents Should Be Dismissed (Counts I–II) ...............................................2

    B. Teva Still Lacks Article III Standing for Its Omnibus Claim (Count VI) ..................2

    C. Teva's Omnibus Claim Still Fails As to Multiple Jurisdictions .................................8

        1. Teva Fails to Plausibly Allege Intrastate Effects ............................................8

        2. Teva Fails to Show That Its "Physician Bribery" Theory Involves Concerted Conduct, Requiring Partial Dismissal ........................................12

    D. Teva Fails to Establish It Should Be Given Leave to Amend .................................13

III. CONCLUSION ................................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anziulewicz v. Bluefield Cmty. Hosp., Inc.*,
    531 F. Supp. 49 (S.D. W.Va. 1981) ........................................................................... 9

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) ................................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 8

*Bendfeldt v. Window World, Inc.*,
    2018 WL 11318516 (W.D.N.C. June 22, 2018) ........................................................ 9

*California v. Infineon Techs. AG*,
    531 F. Supp. 2d 1124 (N.D. Cal. 2007) ................................................................... 10

*Cessna Fin. Corp. v. White Indus., Inc.*,
    1976 WL 1325 (W.D. Mo. Sept. 23, 1976) ............................................................... 9

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ............................................................................................. 3, 5

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) ................................................................................................... 3

*Exxon Corp. v. Time Indus., Inc.*,
    1974 WL 838 (E.D. Mich. Feb. 7, 1974) .................................................................. 9

*GEICO Corp. v. Autoliv, Inc.*,
    345 F. Supp. 3d 799 (E.D. Mich. 2018) .................................................................... 6

*Gerlinger v. Amazon.com Inc., Borders Grp., Inc.*,
    526 F.3d 1253 (9th Cir. 2008) ................................................................................... 3

*In re Asacol Antitrust Litig.*,
    2016 WL 4083333 (D. Mass. July 20, 2016) .......................................................... 11

*In re Auto. Parts Antitrust Litig.*,
    2013 WL 2456612 (E.D. Mich. June 6, 2013) .................................................... 5, 11

*In re Auto. Parts Antitrust Litig.*,
    2018 WL 1135504 (E.D. Mich. Jan. 16, 2018) ......................................................... 9

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    123 F.3d 599 (7th Cir. 1997) ................................................................................... 11

*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................................................................... 11

*In re Cardizem CD Antitrust Litig.*,
   105 F. Supp. 2d 618 (E.D. Mich. 2000) ................................................................... 11

*In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*,
   2015 WL 5166014 (E.D. Tenn. June 24, 2015) ................................................... 9, 10

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
   903 F. Supp. 2d 198 (S.D.N.Y. 2012) ...................................................................... 11

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   362 F. Supp. 3d 510 (N.D. Ill. 2019) .......................................................................... 9

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011) ...................................................................... 11

*In re Dynamic Random Access Memory (Dram) Antitrust Litig.*,
   516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................... 10

*In re Flonase Antitrust Litig.*,
   692 F. Supp. 2d 524 (E.D. Pa. 2010) ....................................................................... 11

*In re Google Generative AI Copyright Litig.*,
   2025 WL 2624885 (N.D. Cal. Sept. 11, 2025) ......................................................... 13

*In re Intel Corp. Microprocessor Antitrust Litig.*,
   496 F. Supp. 2d 404 (D. Del. 2007) ......................................................................... 11

*In re Liquid Aluminum Sulfate Antitrust Litig.*,
   2017 WL 3131977 (D.N.J. July 20, 2017) ............................................................... 11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2015 WL 5458570 (D. Mass. Sept. 16, 2015) .......................................................... 11

*In re Urethane Antitrust Litig.*,
   663 F. Supp. 2d 1067 (D. Kan. 2009) ........................................................................ 9

*In re Wiring Device Antitrust Litig.*,
   498 F. Supp. 79 (E.D.N.Y. 1980) ............................................................................... 9

*Jones v. Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) ................................................................. 6, 10

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .................................................................................. 12

*Meyers v. Bayer AG, Bayer Corp.*,
   2007 WI 99 (Wis. 2007) ............................................................................................. 9

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
     860 F.3d 1228 (9th Cir. 2017) ........................................................................................ 3

*State ex rel. Palumbo v. Graley's Body Shop, Inc.*,
     188 W. Va. 501 (1992) ................................................................................................... 9

*Salameh v. Tarsadia Hotel*,
     726 F.3d 1124 (9th Cir. 2013) ...................................................................................... 13

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*,
     737 F. Supp. 2d 380 (E.D. Pa. 2010) ........................................................................... 11

*Tawfilis v. Allergan, Inc.*,
     157 F. Supp. 3d 853 (C.D. Cal. 2015) ............................................................................ 3

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
     581 U.S. 433 (2017) ................................................................................................... 3, 5

**Statutes**

Mass. Gen. Laws Ch. 93, § 3 ................................................................................................ 9

**Other Authorities**

Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and
     Their Application*, ¶ 348d3 (2025) ................................................................................ 3

I. **PRELIMINARY STATEMENT**

Defendants' Motion (Dkt. 151, "Mot.") explained why Teva's claims for monopolization and attempted monopolization based on seven particular patents (Counts I and II), as well as Teva's omnibus state law claim (Count VI), as alleged in Teva's Second Amended Complaint (Dkt. 146, "SAC"), should be dismissed for good. Teva's Opposition (Dkt. 152, "Opp.") changes nothing.

*First*, Teva admits that it "accepts the Court's dismissal of its claims" based on Corcept's assertion of seven of nine at-issue Corcept patents. Despite this acknowledgement, Teva never explains why it chose to reassert these claims, verbatim, in the SAC. Given Teva's unambiguous concession, the Court should now dismiss Teva's claims based on Corcept's assertion of the '214, '526, '242, '243, '216, '800, and '801 patents with prejudice.

*Second*, the Court should dismiss Teva's omnibus state law claim under the laws of 21 different states and the District of Columbia. Teva admits that the state laws on which its omnibus state law claim is based mirror federal antitrust law, such that on substance, they should all be construed consistently. The Court already permitted portions of Teva's federal antitrust claims to proceed past the pleading stage. What Teva's omnibus claim—which is really 21 different claims—adds, Teva never says. Practically, the answer is nothing: they are duplicative of each other and of Teva's federal claims, and they run the risk of bogging down the Court, the parties, and (potentially) a jury with confusing and time-consuming disputes about numerous superfluous claims.

More importantly, Teva's attempt to invoke the laws of jurisdictions where Teva has no connection presents a constitutional standing problem under Article III. Teva does not reside in these jurisdictions, nor does it plausibly allege injuries in any of those jurisdictions, much less all of them. Teva's handwaving that it sufficiently alleged antitrust standing so it necessarily alleged Article III standing wrongly conflates statutory standing (for different claims) with constitutional standing, which is the very error that Teva accuses Defendants of (wrongly). Teva's argument that Defendants "rely entirely" on class action cases is also wrong and, in any event, a red herring, because the class action cases that dismiss state law claims on Article III grounds flow from constitutional standing principles that apply to every case (not just class actions). Similarly, Teva's assertion that it has Article III standing for each of the asserted state laws because it generically alleges "nationwide"

injuries would mean that any such plaintiff incanting the word "nationwide" could bring comparable claims of the laws of *any* state, territory, or locality because all are necessarily subsets of the nation. That would swallow the rule on Article III standing whole and render meaningless it and binding authority requiring claim-by-claim Article III standing inquiries.

*Third*, aside from constitutional standing (which should dispose of Teva's omnibus claim based on all 21 laws), a number of Teva's omnibus claims fail for statutory reasons too. Rather than meaningfully address the intrastate nexus and multilateral conduct deficiencies that Defendants' Motion raised, Teva's Opposition doubles down on them. In reality, Teva largely ignores Defendants' cited cases or arguments, or seeks to recharacterize what the SAC's allegations actually say.

*Finally*, Teva fails to justify why further leave to amend should be given. It does not dispute the next complaint would be its fourth. It offers no specific amendment it would make if given the chance. Nor does it engage with Defendants' argument that beyond futility, further amendment would be prejudicial, particularly with the fact discovery cut-off fast approaching.

## II.     ARGUMENT

### A.    Teva Concedes Its Claims Based On the '214, '526, '242, '243, '216, '800, and '801 Patents Should Be Dismissed (Counts I–II)

This Court concluded Teva's monopolization and attempted monopolization claims based on Corcept's assertion of seven specific patents failed. Dkt. 134 at 27. Teva's SAC did not even attempt to shore up those deficiencies this Court identified; it simply re-pled the same claims. Mot. at 6. Teva does not dispute this. Instead, it states in a footnote it "accepts the Court's dismissal of its claims with respect to the patents identified in its Motion to Dismiss Order," but reserves its rights, "including on appeal if necessary." Opp at 1 n. 1. Given Teva "accepts" dismissal of its monopolization and attempted monopolization claims to the extent they are based on the '214, '526, '242, '243, '216, '800, and '801 patents, the claims based on those patents should be dismissed with prejudice.

### B.    Teva Still Lacks Article III Standing for Its Omnibus Claim (Count VI)

Teva lacks Article III standing to pursue its omnibus state law claim because Teva is a non-resident of each of the jurisdictions whose laws Teva invokes, and Teva otherwise fails to plausibly allege injuries *in those jurisdictions*. Mot. at 6–9. Teva's arguments to the contrary are unavailing.

*First*, Teva contends that it has **Article III standing** for its **omnibus state law claim** because the Court previously determined that Teva suffered **antitrust injury** for purposes of (some of) its ***federal antitrust claims***. Opp. 4–5. Not so.

Antitrust injury giving rise to statutory standing under federal antitrust law is ***not*** the same as constitutional standing under Article III. *Gerlinger v. Amazon.com Inc., Borders Grp., Inc*., 526 F.3d 1253, 1256 (9th Cir. 2008) ("Antitrust standing is distinct from Article III standing."). Therefore, Teva's citations about antitrust (*i.e.*, statutory) standing for federal antitrust claims do not somehow confer on Teva constitutional standing for its claims under the laws of 21 states and the District of Columbia. *See* Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 348d3 (2025) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504 U.S. 451, 456 (1992) (claims brought under Sherman Act §§ 1 and 2)); *Tawfilis v. Allergan, Inc*., 157 F. Supp. 3d 853, 862–63 (C.D. Cal. 2015) (analyzing statutory antitrust standing for federal antitrust claims); *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n. 31 (1983) (same). Ironically, Teva makes the very error it (wrongly) accuses Defendants of: "conflat[ing] Article III standing with the statutory standing requirements[.]" Opp. at 5.

Nor does it matter that Article III standing "imposes a lower bar than antitrust standing." Opp. at 5 (cleaned up). The point—which Teva misses—is that even if Article III standing for a particular claim imposes a lower bar than does antitrust standing for a federal antitrust claim, Teva must establish Article III standing for each of its claims on a claim-by-claim basis. That is the very teaching of the binding precedent that Defendants cited (Mot. at 8–9) but Teva failed to address. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[s]tanding is not dispensed in gross"); *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin*., 860 F.3d 1228, 1233 (9th Cir. 2017) ("standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted.") (emphases in original); *Town of Chester, N.Y. v. Laroe Ests., Inc*., 581 U.S. 433, 439 (2017) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). Teva's omnibus claim is really 21 different state law claims, and it fails to plausibly plead Article III standing to invoke any of those laws because it is neither a resident of those

jurisdictions, nor plausibly alleges an injury in any of those jurisdictions.

***Second***, Teva posits that Defendants' Article III standing argument is a "statutory standing" argument in disguise. Opp. at 5–6. According to Teva, whether it can sue under a given state's laws is a question of "the text of the statute relied upon" or that "particular state's statutory scheme." *Id.* To be sure, many of Teva's asserted laws do have specific statutory requirements that Teva flunks. Mot. at 9–13. But that is a ***separate*** (and alternative) basis for dismissal. The point, for Article III purposes, is that by being a non-resident of the jurisdictions whose laws Teva's claim depends on, and by failing to plausibly plead an injury ***in those jurisdictions*** (the other basis for Teva to have standing under those laws), Teva fails to raise a justiciable "case or controversy" as to those laws.

That this presents an Article III constitutional standing issue, not a statutory one, is precisely the holding of cases that Defendants cited (Mot. at 9 n.4) but Teva does not meaningfully address. For example, in *In re Packaged Seafood Prods. Antitrust Litig.*, the court explained that "Article III standing is an absolute requirement to litigate in federal Court," such that even if "many state laws permit non-residents to bring suit" (and would confer statutory standing), "such state laws would in no way alter the constitutionally mandated standing inquiry," which a plaintiff fails without a sufficient nexus to that jurisdiction. 242 F. Supp. 3d 1033, 1096–97 (S.D. Cal. 2017) (dismissing non-residents' state law antitrust claims for lack of constitutional standing). The court in *In re Capacitors Antitrust Litig.* explained the same. 154 F. Supp. 3d 918, 925–27 (N.D. Cal. 2015).

Contrary to Teva's argument, Defendants do not "try to impose an additional residency requirement to Article III standing that does not exist." Opp. at 5. Cases that Defendants cited in their Motion, like *Packaged Seafood* and *Capacitors*, make clear that courts have held that such a requirement ***does*** exist. That Teva cites other, non-binding opinions going the other way, *i.e.*, *Copeland* and *Eggs* (Opp. at 5–6), does not negate this. Defendants acknowledge that some district courts have treated a plaintiff's nexus to the jurisdiction whose laws the plaintiff seeks to invoke as solely an issue of statutory, not constitutional, standing. Defendants respectfully submit that the better (and correct) approach is to treat it as one of constitutional standing in the first instance, as courts like *Packaged Seafood*, *Capacitors*, and others cited in Defendants' Motion have. That approach is consistent with the Supreme Court's and Ninth Circuit's directives that "standing is not dispensed in

gross" and must be demonstrated "for each claim." *Davis*, 554 U.S. at 734; *Chester*, 581 U.S. at 439.

The opposite approach would allow a plaintiff like Teva (in New Jersey) to invoke the laws of a distant state (like Alaska) simply through handwaving about purported generalized, nationwide injuries. That is wrong because it is contrary to precedent requiring claim-by-claim inquiry. It is also wasteful. Teva admits that "[a]ll of the state statutes" its omnibus claim relies on "mirror the text of the Sherman Act," requiring that they be interpreted "in accordance with federal antitrust law[.]" Opp. at 8 n.3. Moreover, Teva's claimed injuries for both its federal antitrust claims and its omnibus state law claim are the same: supposedly being "blocked from effectively competing in the market[.]" SAC ¶ 253 (Teva's claimed injury for omnibus claim); *see also Id.* ¶ 218 (describing Teva's claimed injury from federal monopolization as being "blocked from competing in the relevant market"). To be clear, Teva will have its day in court: portions of Teva's federal antitrust claims were allowed to proceed past the pleading stage. But allowing Teva to also litigate more than 20 claims across federal and state law, based on overlapping conduct, seeking to recover for the same injuries, is superfluous. For example, should this case proceed to trial, the parties would need to prepare and litigate—and this Court would need to resolve—multiple sets of pre-trial briefing. Similarly, a jury would be asked to sift through voluminous jury instructions and a verdict form covering double digit claims. All of this serves no real purpose, particularly since Teva asserts its omnibus claim falls with its federal claims.

Teva's other citations also miss the mark. Opp. at 5. Contrary to Teva's assertion, *In re Auto. Parts Antitrust Litig.*, did not find Article III standing "regardless of . . . specific state statutory requirements"—rather, it "defer[red] the issue until the class certification stage," which is inapposite here, as class certification will never occur in this single-plaintiff case. *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *11 (E.D. Mich. June 6, 2013). Likewise, Teva cites *Steel Co. v. Citizens for a Better Env't*, for the proposition that the "Article III requirement of remediable injury in fact . . . has nothing to do with the text of the statute relied upon." 523 U.S. 83, 97 n.2 (1998). Teva omits, however, that courts have found the exact language from *Steel Co.* that Teva cites "lends no support" to an "argument that Article III standing should not be examined state law claim by state law claim" and proceeded to dismiss state law claims for lack of nexus to that state as a constitutional, not statutory, standing defect. *Capacitors*, 154 F. Supp. 3d at 925–28.

***Third***, Teva argues Defendants' cited cases are off-base because: (a) they are class actions; and (b) Teva, as a competitor that suffered lost profits, alleges a "fundamentally different" injury than that of purchaser class members paying an overcharge. Opp. at 6–7. Teva's distinctions fail.

Contrary to Teva's argument, Defendants did not "omit the putative class action qualifier" for Defendants' citations. Opp. at 6. Rather, Defendants acknowledged that the Article III standing issue "often arises in the context of a putative class action." Mot. at 8 n.3. Defendants also explained—which Teva ignores—that class cases are nonetheless informative because they flow from the constitutional rule (which is not unique to class actions) that each plaintiff must demonstrate standing as to each claim. *Id.* Indeed, were the Article III issue unique to class actions, then courts would not dismiss individual, non-class plaintiffs' state law claims on these grounds, which is not accurate based on a case that Defendants cited in their opening Motion. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 818–19 (E.D. Mich. 2018) (dismissing non-class plaintiff's state law claims in thirty-three jurisdictions for lack of standing; insufficient allegations as to each specific jurisdiction). Indeed, Teva elsewhere acknowledges Defendants' "non-class case" citation. Opp. at 7.

While Teva harps that it brings a competitor case based on lost profits, rather than a consumer case based on an overcharge, it does not explain why that matters (it does not) for Article III purposes. Opp. at 7. Article III makes no distinction; regardless of the *type* of plaintiff and its claimed injury, the plaintiff must establish a nexus between it and the state law it seeks to invoke to have standing. *Cf. GEICO*, 345 F. Supp. 3d at 818–19 (non-class plaintiff automobile insurer lacked standing regarding supposed insurance reimbursement payments); *Capacitors*, 154 F. Supp. 3d at 925 (indirect purchasers of metal capacitors lacked standing regarding product purchases containing capacitors). One way to do so is by residence in that state (inapplicable to Teva here); another is by suffering an injury in that state. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) ("Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection."). So while it is often true that this issue arises in consumer cases where, by virtue of the plaintiff being a consumer, the nature of the injury happens to be an overcharge (*i.e.*, paying higher prices), that does not mean it cannot arise in a non-consumer (*i.e.*, a competitor case). Rather, it just means the nature of the relevant injury—lost profits—in a

competitor case is different, as must be a competitor plaintiff's allegations as to that lost profits injury. And just as courts dismiss for lack of Article III standing state law claims of consumer plaintiffs where they do not sufficiently allege paying higher prices (their claimed injury) in those states (Mot. at 7–8), this Court should dismiss Teva's claims for failure to sufficiently allege lost profits (its analogous claimed injury) in the asserted jurisdictions.

Teva also asserts that Defendants identify "no precedent that denies Article III standing to an antitrust plaintiff" on these grounds in the competitor context. Opp. at 6–7. However, Teva likewise cites no authority conferring Article III standing on a competitor to invoke the laws of jurisdictions it does not reside in or plausibly plead any pertinent causal connection to. The absence of citations to such competitor cases—where, say, an Alaska plaintiff sues a California defendant competitor under the antitrust laws of Puerto Rico—does not undermine Defendants' argument. Rather, by showing that corporate plaintiffs apparently do not seek to invoke otherwise irrelevant state laws against their competitors (like Teva does), it highlights the peculiarity of Teva's omnibus state law claim, which adds nothing to the portions of its federal antitrust claims that have proceeded past the pleading stage.

*Finally*, Teva's argument that it "has plausibly alleged injury in every jurisdiction cited in the SAC" defies reality. Opp. at 7. The allegations it actually points to say only that Defendants engaged in commerce ***nationwide***, Teva's generic is available ***nationwide***, the geographic market is ***nationwide***, Defendants impeded competition ***nationwide***, and Teva would have competed more effectively ***nationwide***. Opp. at 7. Such threadbare conclusions about what supposedly happened ***nationwide*** mask (and thus do not plausibly allege) what happened in the ***specific jurisdictions*** whose laws Teva invokes. In other words, Teva claims it "is injured in every state and jurisdiction where Korlym is sold." *Id.* But where ***Corcept*** sells Korlym does not dictate Teva's injury because ***Teva*** would need to sell its generic mifepristone and lose opportunities to suffer injury in those states. On this front, Teva offers only barebones conclusions that are state-agnostic, not specific facts as to each jurisdiction, such as opportunities lost in each jurisdiction vis-à-vis specific prescribers and patients.

Teva's citations do not help it. Opp. at 7. *Lee v. McDonald*, is a pre-*Twombly*, pre-*Iqbal* decision that declined to dismiss a plaintiff's Equal Protection claim based on the defendant's argument "that Plaintiff has failed to provide factual support for his claim that he was denied any

constitutional right." 2006 WL 3289853, at *3 (E.D. Mich. Nov. 9, 2006). That says nothing about Article III standing, state law antitrust claims, or what the current standard (plausibility) requires.[1]

Teva's other citation, *Hurst Int'l, LLC v. Sinclair Sys. Int'l, LLC*, supports Defendants, not Teva. 2018 WL 4961908, at *7 (C.D. Cal. May 18, 2018). Teva claims *Hurst* stands for the proposition that gesturing to "nationwide" conduct and effects is enough to invoke a state law because state is within that broader nation. Opp. at 7–8. But it omits the full quote from its citation: "Because Plaintiff pleads tenable antitrust claims, as well as injury flowing from those claims, and the Market is nationwide in scope, Plaintiff alleges injury from conduct in California, ***particularly in light of its substantial presence in California***." *Hurst*, 2018 WL 4961908, at *7 (emphasis added). In denying the motion to dismiss the California state law claim, the court in *Hurst* credited the plaintiff's allegation "that 40% to 50% of its total business is in California, as well as both its own and Defendant's principal place of businesses." *Id.* That substantial connection to California is a far cry from Teva's non-existent connection to the jurisdictions it invokes and Teva's lack of specifics.

### C. Teva's Omnibus Claim Still Fails As to Multiple Jurisdictions

#### 1. Teva Fails to Plausibly Allege Intrastate Effects

Teva attempts to defend its state law claims by setting up a strawman argument while ignoring the plain deficiency of its allegations. Teva spends most of its Opposition arguing that "the alleged effects do not need to occur entirely or predominately within a state," and that if there are "nationwide antitrust violations" (*i.e.*, conduct), that necessarily means there are ***intra***state effects. Opp. at 9–10. The question, however, is not whether it is ***theoretically*** possible for nationwide conduct to give rise to intrastate effects; it is whether Teva has plausibly alleged that is the case here. Teva has not (Mot. at 9–10), and nothing in Teva's Opposition says otherwise.

***First***, Teva does not dispute that one way to satisfy the various at-issue laws is to plead intrastate ***conduct*** within those states. Mot. at 10. Yet, it does not actually point to any specific factual allegations about ***conduct*** that supposedly occurred in D.C., Massachusetts, Michigan, Missouri,

---

[1] Indeed, the modern pleading standard makes clear that a plaintiff must allege "more than labels and conclusions" and instead provide "[f]actual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

North Carolina, South Dakota, West Virginia, or Wisconsin. Teva thus cannot rely on **conduct** within the jurisdictions as a basis to satisfy their nexus requirements. Instead, it can only hope to rely on intrastate *effects* in those jurisdictions from national conduct (which fails, as discussed *infra*).

*Second*, Teva ignores the vast majority of cases and statutes that Defendants cited in support of their arguments. Mot. at 10–11; *see also In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *23, *25–*26 (E.D. Tenn. June 24, 2015) (D.C., North Carolina, Missouri, South Dakota, West Virginia, Wisconsin); Mass. Gen. Laws Ch. 93, § 3 (Massachusetts);[2] *Exxon Corp. v. Time Indus., Inc.*, 1974 WL 838, at *1 (E.D. Mich. Feb. 7, 1974) (Michigan); *Cessna Fin. Corp. v. White Indus., Inc.*, 1976 WL 1325, at *3 (W.D. Mo. Sept. 23, 1976) (Missouri); *In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 84 (E.D.N.Y. 1980) (Missouri); *Bendfeldt v. Window World, Inc.*, 2018 WL 11318516, at *1 (W.D.N.C. June 22, 2018) (North Carolina); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 549 (N.D. Ill. 2019) (North Carolina); *In re Auto. Parts Antitrust Litig.*, 2018 WL 1135504, at *3–*4 (E.D. Mich. Jan. 16, 2018) (South Dakota); *Anziulewicz v. Bluefield Cmty. Hosp., Inc.*, 531 F. Supp. 49, 53 (S.D. W.Va. 1981) (West Virginia); *State ex rel. Palumbo v. Graley's Body Shop, Inc.*, 188 W. Va. 501, 507 (1992) (West Virginia); *Meyers v. Bayer AG, Bayer Corp.*, 2007 WI 99, ¶ 24 (Wis. 2007) (Wisconsin); *In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1084 (D. Kan. 2009) (Wisconsin). Teva's pretending these cases do not exist, as well as Teva's gesturing at other cases that it claims come out the other way, does nothing to respond to *these cases*, or Defendants' specific arguments based on them.[3]

---

[2]  Teva states Massachusetts' law "mirrors the Sherman Act," and courts interpreting *similar* statutes have reached different results. Opp. at 10. That Massachusetts has a harmonization provision with federal law insofar as substantive antitrust interpretation does not preclude Massachusetts from having state-specific requirements beyond federal law. Indeed, Defendants cited the text of the statute confirming Massachusetts requires intra-state conduct and effects "predominantly" within the state "and, at most, only incidentally outside New England." Mot. at 10. That a different case addresses a different statute says nothing about *the* Massachusetts statute, which Teva does not even acknowledge. Teva takes a similar (incorrect) tact as to Missouri, pointing to a case interpreting other statutes, not Defendants' citations addressing Missouri's statute. Mot. at 11; Opp. at 10–11.

[3]  The one citation Teva purports to respond to is *In re Cast Iron Soil Pipe And Fittings Antitrust Litig.*, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015). Teva claims *Cast Iron* "contains minimal analysis, no citations, and contravenes the overwhelming weight of authority." Opp. at 10. For starters, Teva ignores the many citations in *Cast Iron* that precede the pin cited page. Teva also conveniently omits that ***Teva itself*** has relied on *Cast Iron* (and similar cases) as persuasive authority

***Third***, the allegations Teva offers in support of supposed intrastate effects are the epitome of conclusory. As Teva acknowledges in its Opposition, its ***only*** allegations relating to the supposed intrastate effects of Defendants' conduct in these states and territories—the District of Columbia, Massachusetts, Michigan, Missouri, North Carolina, South Dakota, West Virginia, and Wisconsin—are a series of sweeping generalizations, tacked on to the end of its Count VI, which do not even name a single state or territory. Opp. at 9–10. Instead, they assert, in broad and general language, that Corcept's conduct has affected "the commerce of the states and territories whose laws are recited above," and had "direct, substantial, and reasonably foreseeable effects upon trade and commerce in each of the states and territories whose laws are recited above." SAC ¶¶ 251–53.

This is insufficient. That Teva conclusorily alleges nationwide conduct does not allow it to simply assume that conduct affected the intrastate commerce of each and every state individually. *Jones*, 400 F. Supp. 3d at 924–25 (dismissing claims under antitrust statutes of D.C., Michigan, North Carolina, South Dakota, West Virginia, and Wisconsin where plaintiffs simply alleged that conspiracy "affect[ed] all states," and complaint was "devoid of any allegations concerning effects within the[] particular states."); *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1155–60 (N.D. Cal. 2007) (dismissing claims under several state antitrust statutes because allegations of impact were "made with no differentiation among particular states"); *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1098–99 (N.D. Cal. 2007) (finding intrastate effects insufficiently pled where the "complaint does not specifically allege any conduct or conspiracy that takes place, or has any effect within [the particular state]"); *Cast Iron*, 2015 WL 5166014, at *26 (dismissing claims under several state antitrust statutes where intrastate allegations are "conclusory without addressing any connection between the individual state[s] and the wrongful conduct.").

Teva's citations about nationwide conduct supposedly causing intrastate effects do not help it. Opp. at 9–11. Teva's citations are almost entirely conspiracy cases brought by ***purchasers*** (not

---

in seeking dismissal of state law antitrust claims on these grounds. *See, e.g.*, *In re: Copaxone Antitrust Litig.*, Case No. 2:22-cv-1232 (D.N.J.), Dkt. 41-1 at 23–27 (citing *Cast Iron* and other cases; seeking dismissal of D.C., North Carolina, West Virginia, and Wisconsin claims for lack of state nexus; arguing "'nationwide impacts' is insufficient" and relying on many of same cases as Defendants here).

competitors) claiming injury from overcharges (not lost profits).[4] Ironically, Teva elsewhere in its Opposition chided Defendants for citing purchaser cases, claiming its "injuries" (lost profits) "are fundamentally different from the injuries" (overcharges) "asserted by class members in the purchaser cases Defendants rely on[.]" Opp. at 7. While that is a distinction without a difference for purposes of Article III standing (as discussed above), that distinction *does* matter for statutory standing vis-à-vis the at-issue jurisdictions with intrastate nexus requirements. Indeed, in a consumer case involving an overcharge, it is plausible that nationwide conduct and distribution into each state could yield intrastate effects in those states: conduct is occurring across states, the supracompetitively-priced good is sold across states, and the plaintiff consumers purchasing those goods across states therefore are injured in those states (because they bought, and thus paid the overcharge, in those states).

But that is *not* the case in a *competitor* case, where the pertinent injury is lost profits (not overcharge). In such a competitor case, then, the injury is shown by lost opportunities that could have been, but were not, realized due to the challenged conduct. Teva provides no factual allegations that would render it plausible to assume that Defendants' conduct caused Teva to specifically lose opportunities (and thus profits) in the particular asserted jurisdictions. To the contrary, Teva alleges the relevant market is extraordinarily narrow and specialized—the opposite of a case involving a "national scheme" where conduct occurs, products are sold, and purchases are made across states around the entire country so as to inflict effects in those states. Indeed, Teva alleges "Korlym treats a small patient base with a limited number of physicians," "the market . . . is highly concentrated, with a relatively small number of physicians," and the patient population for this drug is so small that "[a]s of 2013, approximately 300 endocrinologists treated approximately 70% of all Cushing's syndrome

---

[4] *See e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 816 (N.D. Ill. 2017); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 396 (S.D.N.Y. 2011); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 396 (E.D. Pa. 2010); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *16 (D. Mass. Sept. 16, 2015); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456612, at *20; *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 602 (7th Cir. 1997); *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 668 (E.D. Mich. 2000); *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 410 (D. Del. 2007); *In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *30 (D.N.J. July 20, 2017); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 228 (S.D.N.Y. 2012); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 532 (E.D. Pa. 2010); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *14 (D. Mass. July 20, 2016).

patients in the United States." SAC ¶¶ 64, 149, 161. Therefore, even more so than with a standard product, that Teva claims there was nationwide conduct (itself a legal conclusion, not a fact) does not plausibly allow for the conclusion that Teva lost sales in, for example, Alaska.

### 2. Teva Fails to Show That Its "Physician Bribery" Theory Involves Concerted Conduct, Requiring Partial Dismissal

Teva does not dispute that its claims under Kansas and Ohio law require concerted, not unilateral, conduct. Mot. at 13; Opp. at 12. Instead, Teva attempts to shoehorn its "physician bribery" theory into these states' laws by reframing it as one of multilateral conduct involving both Corcept and Optime. That reframing has no basis in the SAC. The portion of the SAC that Teva refers to describing this theory (¶¶ 167–187) does not allege Optime's participation in—or even its knowledge of—the supposed bribery. Rather, Teva alleges that Corcept (not Optime) made the alleged payments. *See, e.g.*, *Id.* ¶¶ 167 (alleging "Corcept has also engaged in a years-long campaign to steer prescribers"), 168 (referring to supposed data on money "Corcept paid"), 186 (referring to "Corcept's [alleged] bribery campaign"). The only mentions of Optime in this section are as a ***subject*** of Corcept's alleged scheme—*i.e.*, the pharmacy to which Corcept supposedly influenced doctors to route their prescriptions—not as a participant or even a knowing party. Indeed, if Teva were to allege some sort of "conspiracy" between Corcept and Optime involving bribes, Ninth Circuit law would require Teva to ***plead***, as to ***that*** supposed concerted conduct, answers to "the basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008) (affirming dismissal of antitrust concerted action claim on this basis). Teva does not even attempt to do so, despite being on its third complaint and well into discovery.

Perhaps most tellingly, Teva does not mention the alleged bribery a single time in its Count III alleging concerted action between Corcept and Optime under Section 1 of the Sherman Act. SAC ¶¶ 224–230. It ***does***, however, mention this theory in its Count I alleging ***unilateral*** conduct by Corcept under Sherman Act Section 2. *Id.* ¶ 215. Because Teva's "bribery" theory as alleged in the SAC does not involve any concerted action between Corcept and Optime, Teva's claims under the antitrust laws of Kansas and Ohio must be dismissed insofar as they are based on that theory.

### D. Teva Fails to Establish It Should Be Given Leave to Amend

As Defendants explained (Mot. at 13–14), Teva's SAC is its third bite at the apple; it should not be given a fourth. Teva's arguments for leave to amend are unavailing. Opp. at 12–13.

For starters, Teva fails to identify any specific amendment it would make to cure the deficiencies Defendants identified. Instead, it attempts to distinguish Defendants' citations, but fails. It claims *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) is inapposite because unlike that case, "Teva's SAC included the five elements for each state law claim that the Court required in its September 12 Order." Opp. at 12. In reality, the Court instructed Teva to plead explicitly each element of its various state law causes of action; inherent in that instruction was the requirement that Teva plead its Article III standing to bring those causes of action in the first place, as well as satisfy all applicable statutory requirements for the predicate laws. Order at 29. Similarly, Teva attempts to distinguish *In re Google Generative AI Copyright Litig.*, 2025 WL 2624885, at *12 (N.D. Cal. Sept. 11, 2025) on the grounds that it featured "multiple factors" that "weighed in favor of dismissal with prejudice[.]" Opp. at 12. That misses Defendants' point (Mot. at 14), which is that one factor—present both in *Google Generative AI* and here—is a serial failure "to cure pleading deficiencies despite several previous opportunities to amend," which indicates futility. 2025 WL 2624885, at *12.

Besides futility, Teva utterly ignores Defendants' argument (Mot. at 14) about undue prejudice and the case schedule. Under the current schedule, fact discovery closes in February 2026. Dkt. 128 at 1. Allowing Teva to file a fourth complaint (bringing with it a possible fourth round of briefing) is prejudicial to Defendants and the Court, all of whom have an interest in efficiency, economy, and pushing this case forward. By failing to respond to this argument, Teva concedes it.

### III. CONCLUSION

For these reasons, Defendants request that the Court grant their Motion and dismiss Teva's deficient claims with prejudice.

DATED:  December 5, 2025

By: /s/ *Robert W. Stone*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
  robertstone@quinnemanuel.com
Michael D. Powell (Bar No. 202850)
  mikepowell@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Fax:              (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Fax:              (415) 875-6700

Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone:     (213) 443-3000
Fax:              (213) 443-3100

Steig D. Olson (admitted *pro hac vice*)
  steigolson@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone:     (212) 849-7000
Fax:              (212) 849-7100

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

By: /s/ *Lucas C. Wohlford*
**DUANE MORRIS LLP**
Lucas C. Wohlford (admitted *pro hac vice*)
  lwohlford@duanemorris.com
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone:     (214) 257-7200
Fax:              (214) 257-7201

Justin J. Fields (SBN 259491)
  jfields@duanemorris.com
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone:     (415) 957-3000
Fax:              (415) 957-3001

*Attorneys for Defendant Optime Care Inc.*

-14-     Case No. 5:24-cv-03567-NW
DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS

## CIVIL LOCAL RULE 5-1 ATTESTATION

I, Robert W. Stone, am the ECF user whose credentials were utilized in the electronic filing of this document. In accordance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the signatories listed above.

DATED: December 5, 2025

By  */s/ Robert W. Stone*
Robert W. Stone

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December 2025, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By  */s/ Robert W. Stone*
Robert W. Stone