Lucas C. Wohlford (admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
100 Crescent Court, Suite 1200
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail:    lwohlford@duanemorris.com

Attorneys for Defendant
OPTIME CARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No. 5:24-CV-03567-NW <br><br> **DEFENDANT OPTIME CARE, INC.'S OPPOSITION TO TEVA'S MOTION FOR LEAVE TO SERVE SUPPLEMENTAL PLEADING UNDER FED. R. CIV. P. 15(d)** <br><br> Hon. Noël Wise |

Pursuant to the Court's January 16, 2026 Order (ECF No. 157), Defendant Optime Care, Inc. ("Optime") files this Opposition to Plaintiff Teva Pharmaceuticals USA, Inc.'s ("Teva") Motion for Leave to Serve Supplemental Pleading Under Fed. R. Civ. P. 15(d) (ECF No. 155), and would respectfully show the Court as follows:

**INTRODUCTION**

Although styled as a motion for leave to serve a supplemental pleading, Teva's motion actually seeks leave to fundamentally change Teva's exclusive dealing claims against Optime. Since Teva commenced this action approximately 18 months ago, all of Teva's claims against Optime have been based solely on Teva's exclusive dealing theory. Specifically, Teva has claimed from the outset that Optime's agreement to exclusively distribute Corcept's branded drug, Korlym, has almost completely foreclosed competition from Teva's generic. Because Teva had access to every existing or potential distribution channel except Optime, and because it is well-established that such

alternative distribution channels "eliminate substantially any foreclosure effect [an exclusive dealing agreement] might have," *see Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997), Teva was forced to make the dubious claim that Optime—a small, privately owned specialty pharmacy based in Missouri—is the only practically effective means of reaching Korlym patients.

In the proposed Third Amended and Supplemental Complaint (the "TASC") attached to Teva's motion (ECF No. 155-1), Teva continues to allege that Optime is the only practically effective means of reaching Korlym patients, but Teva now also takes the inherently conflicting and irreconcilable position that Corcept's exclusive agreement with its new specialty pharmacy, Curant Health ("Curant"), substantially forecloses competition. This makes no sense and completely erodes the fundamental premise on which Teva's claims against Optime are based. Indeed, if Optime is the only practically effective means of reaching Korlym patients, as Teva has alleged all along, Corcept's exclusive agreement with Curant could not possibly foreclose competition in a substantial share of the relevant market. Conversely, if Corcept's exclusive agreement with Curant substantially forecloses competition, as Teva now alleges in the TASC, Optime cannot possibly be the only practically effective means of reaching Korlym patients. In this way, the TASC exposes fundamental and fatal flaws in Teva's claims against Optime that Teva has, up to this point, successfully obscured through artful pleading and argument.

Optime respectfully submits that it would be futile to permit Teva to file the TASC because Teva's new inherently conflicting allegations supporting its exclusive dealing theory render all of Teva's exclusive dealing claims hopelessly implausible. Accordingly, the Court should deny Teva leave to file the TASC.

**ARGUMENT AND AUTHORITIES**

A. **Applicable Legal Standard**

In considering a motion for leave to amend or supplement a complaint under Federal Rule of Civil Procedure 15, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

OPTIME'S OPPOSITION TO TEVA'S MOTION FOR LEAVE TO SERVE SUPPLEMENTAL PLEADING UNDER FED. R. CIV. P. 15(d)

futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (internal quotations omitted). Although it is "the consideration of prejudice to the opposing party that carries the greatest weight . . . a strong showing with respect to one of the other factors may warrant denial of leave to amend." *Stone v. Jaguar Land Rover N. Am., LLC*, 2025 WL 458828, at *1 (N.D. Cal. Feb. 11, 2025). Indeed, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). As the Ninth Circuit has explained: "When a proposed amendment would be futile, there is no need to prolong the litigation by permitting further amendment." *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

**B.    Teva's Proposed Amendments and Supplemental Claims Would be Futile.**

From the outset of this case, Teva's exclusive dealing theory—which is the only theory of wrongdoing Teva has ever alleged against Optime—has been predicated on Teva's assertion that Optime is the only practically effective means of reaching Korlym patients. (ECF No. 1 ¶¶ 24, 146, 149, 152; ECF No. 146 ¶¶ 24, 148, 151, 154). To be sure, Teva had no choice but to claim that Optime is the only practically effective means of distributing Teva's generic drug, because it is undisputed that, until recently, Teva had access to every other existing or potential distribution channel. (ECF No. 1 ¶ 156; ECF No. 146 ¶ 158).

"Under the antitrust rule of reason, an exclusive dealing arrangement violates Section 1 only if its effect is to foreclose competition in a substantial share of the line of commerce affected." *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group, LP*, 592 F.3d 991, 997 (9th Cir. 2010). The Ninth Circuit has long instructed that, "[i]f competitors can reach ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether [exclusive dealing arrangements] foreclose from competition *any* part of the relevant market." *Omega*, 127 F.3d at 1163. Consequently, an exclusive dealing agreement with a single distributor or even a handful of distributors generally does not violate antitrust laws. *See Hip Hop Bev. Corp. v. Monster Energy Co.*, 733 Fed.Appx. 380, 381 (9th Cir. 2018) (affirming dismissal of exclusive dealing claims when plaintiff "alleged that (at most) four brokers refused to business" with it); *Maximum Availability Ltd.*

*v. Vision Solutions, Inc.*, 2010 WL 11508470, at *4 (C.D. Cal. Dec. 16, 2010) ("Obviously, the existence of a single exclusive dealing arrangement with a distributor is insufficient to show anticompetitive conduct."). Courts have only departed from this general rule when the alternative channels of distribution available to the plaintiff are not practically effective. *See United States v. Dentsply Intern., Inc.*, 399 F.3d 181, 193 (3d Cir. 2005).

In opposing Defendants' Motion to Dismiss Teva's Second Amended Complaint, Teva prominently argued that it stated cognizable claims for exclusive dealing because Optime is the only practically effective means of reaching Korlym patients. (ECF No. 65 at pp. 10-11). Significantly, the Court was persuaded by this argument and declined to dismiss Teva's exclusive dealing claims. In doing so, the Court explained that "Optime is the only relevant market for this pleading-stage analysis," (ECF No. 134 at p. 18), that "Teva has alleged that it has already tried the alternate channels, to the extent they exist, without any success," (*Id.* at p. 20), and that "[c]hannels that provide negligible impact on the market are neither practical nor feasible." (*Id.*).

Teva's proposed TASC completely erodes the fundamental underpinning of Teva's exclusive dealing claims against Optime. Although the TASC continues to allege that Optime is the only practically effective means of distributing Teva's generic, the TASC also alleges that Corcept's exclusive agreement with Curant substantially forecloses competition. (ECF No. 155-1 ¶¶ 25, 152, 162, 189, 204, 253-258). Both cannot be true.

Indeed, if Optime is the ***only*** practically effective means of reaching Korlym patients, as Teva has alleged all along, Curant cannot be a practically effective means of competition and Corcept's agreement with Curant cannot possibly foreclose competition in a substantial share, or any share, of the relevant market. Conversely, if Corcept's agreement with Curant substantially forecloses competition, as Teva now alleges in the TASC, Curant must be a practically effective means of competition and Optime cannot possibly be the ***only*** practically effective means of reaching Korlym patients. These inherently conflicting and irreconcilable allegations in the TASC render hopelessly implausible not only Teva's proposed new claims against Corcept and Curant, but also Teva's amended exclusive dealing claims against Optime. *See Nat'l Western Life Ins. Co. v. Merrill Lynch*,

175 F.Supp.2d 489, 492 (S.D.N.Y. 2000) (denying motion to reconsider order granting motion to dismiss and explaining "there is no authority for the proposition that within a statement of a given claim a party may assert as fact two assertions that directly contradict each other"). Accordingly, Teva's proposed amendments and supplemental claims would be futile.

## CONCLUSION

For the foregoing reasons, Optime respectfully requests that the Court deny Teva's Motion for Leave to Serve Supplemental Pleading Under Rule 15(d). In the event the Court grants Teva's Motion, Optime reserves the right to seek dismissal of the amended exclusive dealing claims against Optime set forth in the TASC, which are fundamentally different than the exclusive dealing claims the Court previously declined to dismiss.

Dated: January 21, 2026

**DUANE MORRIS LLP**

By: */s/ Lucas C. Wohlford*
    Justin J. Fields
    Lucas C. Wohlford (admitted *Pro Hac Vice*)
    Randy D. Gordon (admitted *Pro Hac Vice*)
    Attorneys for Defendant
    OPTIME CARE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2026, I caused to be filed the foregoing document with the United States District Court for the Northern District of California using the CM/ECF system and caused it to be served on all registered participants via notice of electronic filing.

*/s/ Lucas C. Wohlford*
Lucas C. Wohlford
