**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
robertstone@quinnemanuel.com
Michael D. Powell (Bar No. 202850)
mikepowell@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Fax: (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

[Additional Counsel Listed On Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TEVA PHARMACEUTICALS USA, INC.,

Plaintiff,

vs.

CORCEPT THERAPEUTICS, INC., et al.,

Defendants.

Case No. 5:24-cv-03567-NW

Honorable Noël Wise

**CORCEPT'S RESPONSE TO TEVA'S MOTION FOR LEAVE TO SERVE SUPPLEMENTAL PLEADING UNDER FED. R. CIV. P. 15(d)**

Pursuant to the Court's January 16, 2026 order (Dkt. 157), Defendant Corcept Therapeutics, Incorporated submits this response to Teva's motion for leave to supplement (Dkt. 154-1, "Mot.").

With fact discovery imminently set to close on February 27, 2026 (Dkt. 128), Teva now seeks leave to add an additional defendant (Curant) and another claim (a standalone exclusive dealing claim under Section 1 of the Sherman Act) to this case. The focus of Teva's proposed claim—an agreement between Corcept and Curant—has been public since at least as early as October 1, 2025. https://curanthealth.com/curant-rare-announces-pharmacy-partnership-with-corcept-therapeutics/. Yet, Teva waited more than ***three months*** to seek to add Curant, refusing to share its proposed motion or supplemental complaint before its filing on January 14, 2026.

Corcept, Optime, and Teva met-and-conferred on January 16, 2026. During that conference, Corcept, Optime, and Teva agreed that regardless of the proposed supplement and Teva's proposed addition of Curant to this case, the current fact discovery cut-off of February 27, 2026 is not tenable in view of the current status of discovery and outstanding requests that the parties have of one another.

The parties met-and-conferred again today, the day this filing is due. Corcept explained that adding Curant and related claims would require an even larger extension because, for example: (1) Curant would be a new party with its own due process rights, including to file a Rule 12 or other motion and/or to take discovery beyond that which the existing parties have served or obtained; and (2) the parties will need time to take discovery of one another regarding Teva's new claim(s) and theories. To even be in a position to try accomplish this, Corcept proposed that an extension of 9–12 months would likely be necessary (with the caveat that Curant would need to be consulted, given its due process rights and say in determining how much time ***Curant*** would need). Teva declined.

Because Corcept believes that Teva's new claims regarding Corcept's selection of Curant as a distributor of Korlym and its authorized generic significantly alter Teva's liability and damages theories, Corcept opposes Teva's request for leave absent an agreed extension of the case schedule, including moving the trial date. The Court should not countenance Teva's eleventh-hour gambit either. Instead, the Court should deny Teva's request to file ***yet another complaint*** (this would be its fourth), so that after more than a year-and-a-half of litigation, this case can finally proceed to its resolution. Indeed, various factors that courts consider in evaluating whether to grant leave for a

supplemental pleading—undue delay, dilatory motive, prejudice, and futility—weigh against leave here. *Austin v. Tilton*, 2008 WL 111055, at *2 (S.D. Cal. Jan. 10, 2008) (collecting factors).

***Undue Delay.*** Teva's proposed supplement evinces undue delay. It claims that it filed its "motion within a short time after learning enough facts[.]" Mot. at 9. That is incorrect. During a ***July 31, 2025*** earnings call—which ***Teva*** clearly had notice of, because it raised it with Corcept in discovery correspondence on August 12, 2025—a Corcept employee stated publicly that Corcept would be adding a new pharmacy. https://m.investing.com/news/transcripts/earnings-call-transcript-corcept-therapeutics-q2-2025-earnings-beat-expectations-93CH-4164681?ampMode=1. Moreover, Teva's motion openly acknowledges that the Corcept-Curant relationship it challenges was public as of ***October 1, 2025***. Mot. at 3. Further, at Teva's request, Corcept produced the Corcept-Optime agreement—which has the very term Teva challenges (Mot. at 4)—during discovery on ***November 17, 2025***. Teva provides no good reason why it waited ***months*** to raise for the first time its desire to add Curant and a related claim to this case.

***Bad Faith and Dilatory Motive.*** Teva's proposed supplement suggests bad faith, or, at the least, a dilatory motive. It signals a desire to prolong this litigation (and run up Defendants' legal expenses and employees' time spent on this case in doing so) using the proposed supplement (and other issues) as pretext for an extension to cover up Teva's non-prosecution of its case.

Teva has taken a lackadaisical approach to this case for its entirety. On June 30, 2025, this Court set a November 21, 2025 fact discovery cut-off. Dkt. 116. Yet, it took months for Teva to agree on search terms and custodians that it would run in response to Corcept's document requests, and Teva did not make its first custodial document production in response until Fall of 2025.

Defendants then waited for all of Fall 2025 to see if Teva would issue a single deposition notice. But Fall came and went with Teva issuing none. Unusually, ***Corcept***, a Defendant, was the first party to issue a deposition notice, serving its Rule 30(b)(6) deposition notice of Teva on November 21, 2025. Teva then waited another month until December 18, 2025 to issue its deposition notices. But rather than serve the up-to-10 deposition notices each side agreed and the Court ordered when it entered agreed-upon default limits (Dkt. 56 at 10; Dkt. 63 at 1), Teva served nearly double the number and then demanded for the first time—with two months to go, and before it had taken a

single deposition—that the limits be extended. With just over one month to go before the cut-off, Teva has not provided a single date or designee in response to Corcept's 30(b)(6) notice (served two months ago), nor has a single deposition taken place.

Moreover, in just the last two weeks, Teva raised a flurry of discovery issues that supposedly required Judge DeMarchi's attention. Yet, Teva has not filed a single letter brief, and it agreed to defer them while the parties discussed an appropriate extension (which Teva seemingly closed the door on today by unrealistically posturing regarding as to how much additional time would needed should a new claim and party be added). This further highlights these disputes' actual lack of urgency.

Teva's motion hints that an extension might be necessary "to permit additional time for discovery[.] *E.g.*, Mot. at 9. But during the parties' January 16, 2026 meet-and-confer, Teva agreed that regardless of the Curant situation and whether Curant is added or not, the parties' upcoming February 27 fact discovery cut-off is unworkable. Taken together, all of this suggests Teva chose not to timely prosecute its case and now seeks to be "bailed out" with an extension. It is not Defendants' job to prosecute a case against themselves. To the extent any extension is given, it should be limited to allowing the parties to resolve and complete the claims Teva already has (such as an additional 3 months as the parties have already discussed), not endless relief for Teva to seek new ones.

***Prejudice***.   Teva's case has been pending for more than a year-and-a-half. Fact discovery is set to close in about a month, and trial is set for January 11, 2027. Dkt. 128. Allowing Teva to add a new defendant and a new claim at this late juncture is highly prejudicial to both existing Defendants Corcept and Optime, as well as to the proposed new one (Curant).

Given Teva's tactics (discussed above), it is already questionable whether the parties can complete the existing discovery they have outstanding, including depositions (none have occurred), by February 27, 2026. Adding another Defendant and more claims, and then requiring Corcept, Optime, and Curant to try to pick up the slack in that (or similarly short) timing under the circumstances—all situations of Teva's own making—would be highly prejudicial. *Matsushita Elec. Indus. Co. v. CMC Magnetics Corp.*, 2007 WL 127997, at *4 (N.D. Cal. Jan. 12, 2007) (denying leave for supplemental pleading where there would be a "need to . . . adjust [the] case schedules").

Moreover, Teva acknowledges that Corcept and Curant could "choose to file a motion to

dismiss." Mot. at 9. However, the approaching February 27, 2026 cut-off makes briefing and obtaining a decision before then unlikely, which has problematic ripple effects given Curant's due process rights as well as the need for certainty regarding what substantive claims are in the case to take discovery, fashion expert reports, and prepare dispositive motions accordingly, in view of these also upcoming deadlines. *See* Dkt. 128.

Moreover, beyond the burdens associated with a new claim and party being added to the case, extending the schedule would allow Teva to impose further burdens on Corcept and Optime vis-à-vis the existing claims. Without any limitation, Teva could seek to use the extra time to seek additional discovery from Corcept and Optime regarding the existing claims, beyond the voluminous discovery it has already obtained from them.

***Futility***. As would be highlighted in a future motion to dismiss, Teva's proposed supplement is futile. Indeed, Teva's motion and supplement actually highlight the implausibility of its claims.

Under Ninth Circuit law, "[i]f competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether such restrictions foreclose from competition *any* part of the relevant market." *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997) (cleaned up). But Teva's proposed supplement highlights that since filing this case, Teva's market share in even its ill-defined, gerrymandered, alleged relevant market has increased from 1% to 4%. *See* Dkt. 154-3 at 35. That shows Teva can and is reaching ultimate end-users, and is doing so to ***increased*** success.

Moreover, under exclusive dealing law, there is "no anticompetitive impact where plaintiffs [are] not foreclosed from every alternative." *Omega*, 127 F.3d at 1164 (cleaned up). Teva's new claims and allegations regarding Curant highlight that there were alternative pharmacies available to Teva all along; Optime was ***not*** the only option. Indeed, Corcept understands that Teva has itself distributed products through Curant.

Further, Teva's new assertions highlight that Teva is trying to have it both ways in a way antitrust law forbids. In one breath, Teva claims that Optime is the "key avenue for reaching Korlym patients," and "that even Corcept cannot establish other pharmacies as alternative distribution channels, including Curant, without Optime's direct assistance." Mot. at 4, 8. On the other hand, Teva

alleges that "the Corcept-Curant agreement . . . promis[es] to continue to foreclose Teva from accessing the ***only*** effective means of reaching Korlym patients." *See* TAC ¶ 258.

Both cannot be true. Either Optime is the "key avenue," in which case Teva's claims about an agreement with Curant (now Corcept's only pertinent distributor) supposedly foreclosing Teva are dubious. Or, if the new Curant channel alone supposedly forecloses Teva by itself, that demonstrates that Teva's claims were never about a specific pharmacy (Optime, Curant, or anyone else), but instead whatever pharmacy Corcept happens to contract with (which Teva seeks access to) at any given time. But exclusive dealing law provides that a defendant need not equip a "hypothetical competitor with [its] legitimate competitive advantage," including "controlling the best, most effective, and cheapest source of supply." *Omega*, 127 F.3d at 1163 (cleaned up).

DATED: January 21, 2026

By: */s/ Robert W. Stone*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Robert W. Stone (Bar No. 163513)
robertstone@quinnemanuel.com
Michael D. Powell (Bar No. 202850)
mikepowell@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Fax: (650) 801-5100

Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Fax: (415) 875-6700

Brantley I. Pepperman (Bar No. 322057)
brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Fax: (213) 443-3100

Steig D. Olson (admitted *pro hac vice*)
steigolson@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendant Corcept Therapeutics, Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System, causing it to be electronically served on all attorneys of record.

By *_/s/ Robert W. Stone_*
Robert W. Stone