Lucas C. Wohlford (admitted *Pro Hac Vice*)
**DUANE MORRIS LLP**
200 Crescent Court, Suite 900
Dallas, TX 75201
Telephone: +1 214 257 7200
Facsimile: +1 214 257 7201
E-Mail:     lwohlford@duanemorris.com

Attorneys for Defendant
OPTIME CARE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORCEPT THERAPEUTICS, INC., AND OPTIME CARE INC., <br><br> Defendants. | Case No. 5:24-CV-03567-NW <br><br> **DEFENDANT OPTIME CARE, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> Hon. Noël Wise <br><br> Hearing Date: February 18, 2026 at 9:00 a.m. |

Pursuant to the Court's January 27, 2026 Order (ECF No. 163), Defendant Optime Care, Inc. ("Optime") files this Supplemental Brief in Support of Defendants' Motion to Dismiss (ECF No. 151). For the reasons discussed herein, Optime respectfully requests that the Court dismiss with prejudice all claims asserted against Optime in Plaintiff Teva Pharmaceuticals USA, Inc.'s ("Teva") Third Amended and Supplemental Complaint (the "TASC") (ECF No. 166).

**INTRODUCTION**

From the outset of this case, Teva's various claims against Optime have been based solely on exclusive dealing. (ECF No. 1 ¶¶ 134-64, 224-27, 229, 240, 248; ECF No. 166 ¶¶ 135-66, 246-249, 259, 270, 278). Specifically, Teva claims Optime's agreement to exclusively distribute Corcept's branded drug, Korlym, has almost completely foreclosed competition from Teva's generic. (ECF No. 166 ¶ 148).

Teva's exclusive dealing theory has always been in tension with Ninth Circuit precedent. Indeed, the Ninth Circuit has long held that a competitor's ability to distribute its product through

existing or potential alternative distribution channels "eliminate[s] substantially any foreclosure effect [an exclusive dealing agreement] might have." *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997). This basic precept of exclusive dealing law has been a problem for Teva from the beginning, because it is beyond dispute that Optime is the only distribution channel foreclosed by the Corcept-Optime Agreement. Accordingly, every other existing or potential distribution channel was always available to Teva. (ECF No. 1 ¶ 156; ECF No. 166 ¶ 158).

Trying to fit its square-shaped exclusive dealing claims into the round hole left by Ninth Circuit precedent, Teva was forced to make the facially dubious assertion that Optime—a small, privately-owned specialty pharmacy based in Missouri—is the ***only*** practically effective means of reaching Korlym patients. Teva repeated this allegation throughout its initial pleadings, (ECF No. 1 ¶¶ 24, 146, 149, 152; ECF No. 146 ¶¶ 24, 148, 151, 154), and prominently relied on this argument in opposing Defendants' Motion to Dismiss Teva's Second Amended Complaint. (ECF No. 65 at pp. 10-11). Significantly, the Court was persuaded by this argument. In declining to dismiss Teva's exclusive dealing claims, the Court explained that "Optime is the only relevant market for this pleading-stage analysis," (ECF No. 134 at p. 18), that "Teva has alleged that it has already tried the alternate channels, to the extent they exist, without any success," (*id.* at p. 20), and that "[c]hannels that provide negligible impact on the market are neither practical nor feasible." (*Id.*).

Now, in the TASC, Teva makes inconsistent and irreconcilable allegations that vitiate the fundamental premise on which Teva's claims against Optime are based. Although Teva continues to allege that Optime is the only practically effective means of distributing Teva's generic, (ECF No. 166 ¶¶ 24, 151, 154, 161, 188, 203), Teva now also alleges that Corcept's exclusive agreement with Curant violates antitrust laws "by promising to foreclose Teva from accessing the ***only effective means of reaching Korlym patients***." (*Id.* ¶ 257) (emphasis added). Obviously, Optime and Curant cannot both be the ***only*** practically effective means of reaching Korlym patients. And, because Teva's claims against Optime cannot succeed unless Optime is the only practically effective means of competition, Teva's inconsistent and irreconcilable allegations render Teva's claims against Optime hopelessly implausible. Accordingly, all Teva's claims against Optime should be dismissed with prejudice.

**ARGUMENT AND AUTHORITIES**

**A.    Inconsistent Allegations Cannot State a Plausible Claim for Relief.**

Although courts generally must assume the truth of a plaintiff's factual allegations in resolving a motion to dismiss, "the court need not accept as true inconsistent allegations in a complaint." *Ussery v. Mercedes-Benz USA, LLC*, 2024 WL 4882856, at *3 (E.D. Cal. Nov. 25, 2024) (collecting cases). Where, as here, a plaintiff's inconsistent allegations are not pleaded in the alternative, they constitute judicial admissions that warrant the dismissal of any claims with which they are incompatible. *Maloney v. Scottsdale Ins. Co.*, 256 Fed.Appx. 29, 31-32 (9th Cir. 2007); *see also Nat'l Western Life Ins. Co. v. Merrill Lynch*, 175 F.Supp.2d 489, 492 (S.D.N.Y. 2000) (denying motion to reconsider order granting motion to dismiss and explaining "there is no authority for the proposition that within a statement of a given claim a party may assert as fact two assertions that directly contradict each other"); *Hartford Cas. Ins. Co v. Am. Dairy and Food Consulting Labs., Inc.*, 2009 WL 4269603, at *12 (E.D. Cal. Nov. 25, 2009) ("if a pled claim is internally inconsistent with itself, the inconsistencies may cancel each other out and render the claim subject to dismissal for failure to state a claim").

**B.    Teva's Inconsistent Allegations Vitiate the Fundamental Premise of Teva's Exclusive Dealing Claims and Warrant the Dismissal of All Teva's Claims Against Optime.**

   *1.    Teva's Claims Against Optime Cannot Survive Unless Optime is the Only Practically Effective Means of Reaching Korlym Patients.*

Exclusive dealing agreements are commonplace, frequently pro-competitive, and many courts consider them to be presumptively lawful. *See Omega*, 127 F.3d at 1162 (discussing "well-recognized economic benefits to exclusive dealing arrangements"); *United States v. Microsoft Corp.*, 253 F.3d 34, 69 (D.C. Cir. 2001) ("Permitting an antitrust action to proceed any time a firm enters into an exclusive deal would both discourage a presumptively legitimate business practice and encourage costly antitrust actions"); *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 44 F.4th 959, 983 (10th Cir. 2022) ("some courts and commentators suggest exclusive dealing contracts should be treated as presumptively lawful in all but a few carefully defined circumstances") (internal quotations omitted). "Under the antitrust rule of reason, an exclusive dealing arrangement violates Section 1 only if its effect is to 'foreclose competition in a

substantial share of the line of commerce affected.'" *Allied Orthopedic Appliances v. Tyco Health Care Group, LP*, 592 F.3d 991, 996 (9th Cir. 2010) (quoting *Omega*, 127 F.3d at 1162). "Because an exclusive deal affecting a small fraction of the market clearly cannot have the requisite harmful effect upon competition, the requirement of a significant degree of foreclosure serves a useful screening function." *Microsoft*, 253 F.3d at 69.

The Ninth Circuit has long acknowledged that "exclusive dealing arrangements imposed on distributors rather than end-users are generally less cause for anticompetitive concern." *Omega*, 127 F.3d at 1162. This is because "[i]f competitors can reach the ultimate consumers of the product by employing existing or potential alternative channels of distribution, it is unclear whether such restrictions foreclose from competition *any* part of the relevant market." *Id.* Consequently, courts frequently dismiss exclusive dealing claims based on agreements with a single distributor or even a handful of distributors. *Hip Hop Bev. Corp. v. Monster Energy Co.*, 733 Fed.Appx. 380, 381 (9th Cir. 2018) (affirming dismissal of exclusive dealing claims when plaintiff "alleged that (at most) four brokers refused to do business" with it); *Maximum Availability Ltd. v. Vision Solutions, Inc.*, 2010 WL 11508470, at *4 (C.D. Cal. Dec. 16, 2010) ("Obviously, the existence of a single exclusive dealing arrangement with a distributor is insufficient to show anticompetitive conduct").

When evaluating the foreclosure effect of an exclusive dealing agreement, courts generally must consider all existing and potential alternative distribution channels available to the plaintiff, because such alternatives "eliminate substantially any foreclosure effect [an exclusive dealing agreement] might have." *Omega*, 127 F.3d at 1163. Some courts have held that only alternative channels that are practically effective in reaching consumers should be considered in the foreclosure analysis. *United States v. Dentsply*, 399 F.3d 181, 193 (3d Cir. 2005); *see also Microsoft*, 253 F.3d at 64; *New York ex rel. Schneiderman v. Actavis*, 787 F.3d 638, 656 (2d Cir. 2015); *FTC v. Shkreli*, 581 F.Supp.3d 579, 627 (S.D.N.Y. 2022). However, the Ninth Circuit has cautioned that antitrust laws do not require a manufacturer who has developed the most effective means of distribution to equip its competitors with this legitimate competitive advantage. *Omega*, 127 F.3d at 1163; *General Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 979 (9th Cir. 1983). Accordingly, a plaintiff cannot state a cognizable claim for exclusive dealing merely by alleging that existing and potential

alternative distribution channels are "inadequate substitutes" for the distribution channels foreclosed by exclusive dealing agreements. *Omega*, 127 F.3d at 1163.

From the outset of this case, Teva's claims against Optime have been predicated on Teva's assertion that Optime is the only practically effective means of reaching Korlym patients. (ECF No. 1 ¶¶ 24, 146, 149, 152; ECF No. 146 ¶¶ 24, 148, 151, 154; ECF No. 166 ¶¶ 24, 151, 154, 161, 188, 203). Under well-established exclusive dealing law, Teva had no choice but to claim that Optime was the only practically effective means of competition because it is undisputed that Teva had access to every other existing or potential distribution channel for its generic. (ECF No. 1 ¶ 156; ECF No. 166 ¶ 158). Because all those alternative distribution channels, except Curant, remain available to Teva, Teva's exclusive dealing claims against Optime cannot survive unless Optime is the only practically effective means of competition. Indeed, if Teva can reach ultimate consumers via any of the myriad alternative distribution channels available to it, Optime's agreement to exclusively distribute Korlym cannot have the requisite foreclosure effect. *Omega*, 127 F.3d at 1163.

    2.    *Teva's Inconsistent Allegations Vitiate its Core Assertion that Optime is the Only Practically Effective Means of Reaching Korlym Patients.*

Teva's TASC completely erodes the fundamental premise of Teva's exclusive dealing claims against Optime. Although Teva continues to allege that Optime is the only practically effective means of distributing Teva's generic, (ECF No. 166 ¶¶ 24, 151, 154, 161, 188, 203), Teva now also alleges that Corcept's exclusive agreement with Curant violates antitrust laws "by promising to foreclose Teva from accessing the **only effective means of reaching Korlym patients**." (*Id.* ¶ 257) (emphasis added). Both cannot be true.

Indeed, if Optime is the ***only*** practically effective means of reaching Korlym patients, as Teva has alleged all along, Curant cannot be a practically effective means of competition and Corcept's agreement with Curant cannot possibly foreclose competition in a substantial share, or any share, of the relevant market. Conversely, if Corcept's agreement with Curant substantially forecloses competition because Curant is the "only effective means of reaching Korlym patients," as Teva now alleges in the TASC, Optime cannot possibly be, or have ever been, the ***only*** practically effective means of reaching Korlym patients. In this way, Teva's new allegations regarding Corcept's

agreement with Curant are fundamentally incompatible with the core premise on which Teva's claims against Optime are based. Accordingly, much like colliding matter and antimatter, Teva's inconsistent allegations cancel each other out and require the dismissal of Teva's claims against Optime.

A closer examination of the TASC reveals just how profoundly Teva's inconsistent allegations undermine its exclusive dealing claims against Optime. For instance, the Court previously declined to dismiss Teva's exclusive dealing claims, in part, because Teva "alleged that it has already tried the alternate channels, to the extent they exist, without any success," and because "[c]hannels that provide negligible impact on the market are neither practical nor feasible." (ECF No. 134 at p. 20). But now, the TASC makes clear that Teva never tried to distribute its generic through Curant, which is a specialty pharmacy that Teva claims is not merely an effective means of reaching Korlym patients, but the "***only*** effective means of reaching Korlym patients." (ECF No. 166 ¶ 257) (emphasis added). Thus, Teva's new allegations completely undercut its contention that Optime must be the only practically effective means of competition because Teva already tried the alternative channels without success. To be sure, the TASC does not identify which specific alternative channels Teva has actually tried, and, more important, which practically effective alternative channels, like Curant, Teva has never tried.

What's more, after claiming for more than a year that Optime is the only practically effective means of reaching Korlym patients, Teva now alleges that Optime is a completely inept distributor. Specifically, Teva alleges that "[p]atients have been made worse off as a result of their dependence on Optime," and that "Optime's deficient performance and delays in filling prescriptions have jeopardized patient health." (ECF No. 166 ¶ 192). It simply cannot be that Optime is both the only practically effective means of reaching Korlym patients and so ineffective at distributing Korlym that it is causing delays in filling prescriptions that are jeopardizing patient health and making patients worse off. While Optime disputes that it has done anything to harm patients or jeopardize patient health, these allegations in the TASC are in direct conflict with, and completely vitiate, Teva's core assertion that Optime is the only practically effective means of competition.

Moreover, the glaring inconsistencies in Teva's allegations are not remedied by Teva's

regurgitation, adoption, and distortion of Corcept's allegations in a separate lawsuit regarding what is necessary to transition Corcept's specialty pharmacy distribution channel to Curant. Teva quotes Corcept's allegations that transitioning from Optime to Curant requires "'data transfers, system integration, and patient communications,'" (ECF No. 166 ¶ 202), and claims these allegations "are a powerful validation" of Teva's assertion that Optime is "the only practically effective channel for reaching Korlym patients." (*Id.* ¶ 203). However, Corcept's allegations regarding what it needs to transition from one specialty pharmacy to another say nothing whatsoever about whether Optime is the only practically effective means of distributing Teva's generic. Indeed, even if Optime were to distribute Teva's generic, Teva would not be entitled to the data, systems, patient lists, or any other information Corcept claims it needs to transition to Curant. As such, it is disingenuous for Teva to cite Corcept's allegations as a "powerful validation" of Teva's assertion that Optime is the only practically effective means of competition, and those allegations do not come close to pushing Teva's ill-conceived exclusive dealing claims across the plausibility threshold.

Finally, Teva's inconsistent allegations reveal that Teva has never actually considered Optime to be a uniquely effective means of competition. Rather, the TASC confirms that Teva's exclusive dealing claims are actually predicated on the erroneous theory that Teva must be allowed to free ride on whatever distribution channels Corcept develops and uses. When Optime was distributing Korlym, Teva claimed Optime was the only practically effective means of competition. Now that Curant is distributing Korlym, Teva claims Curant is the only practically effective means of competition. The problem for Teva is that the Ninth Circuit long ago rejected this theory of exclusive dealing. Indeed, the Ninth Circuit has instructed that "antitrust laws were not designed to equip [one] competitor with [another competitor's] legitimate competitive advantage." *Omega*, 127 F.3d at 1163 (collecting cases). For this additional reason, Teva's inconsistent allegations confirm that Teva's actual theory of exclusive dealing is legally invalid and that Teva's exclusive dealing claims against Optime should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Optime respectfully requests that the Court dismiss all Teva's claims against Optime with prejudice.

Dated: February 5, 2026

**DUANE MORRIS** LLP

By: */s/ Lucas C. Wohlford*
Justin J. Fields
Lucas C. Wohlford (admitted *Pro Hac Vice*)
Randy D. Gordon (admitted *Pro Hac Vice*)
Attorneys for Defendant
OPTIME CARE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2026, I caused to be filed the foregoing document with the United States District Court for the Northern District of California using the CM/ECF system and caused it to be served on all registered participants via notice of electronic filing.

*/s/ Lucas C. Wohlford*
Lucas C. Wohlford