**REDACTED VERSION FILED PUBLICLY**

May 22, 2026

**VIA ECF**

The Honorable Virginia K. DeMarchi
United States District Court for the
Northern District of California
San Jose Courthouse, Courtroom 2 – 5th
Floor
280 South First Street
San Jose, California 95113

**PURSUANT TO SECTION 4(C) OF
THE COURT'S STANDING ORDER
RE CIVIL CASES**

Re:    Joint Discovery Dispute Letter Brief Regarding Documents and Testimony
from Richard Francis in *Teva Pharmaceuticals USA, Inc. v. Corcept
Therapeutics, Inc., and Optime Care Inc.*, Case No. 5:24-cv-03567-NW

To the Honorable Judge DeMarchi:

Pursuant to Section 4 of Your Honor's Standing Order for Civil Cases, Defendant Corcept
Therapeutics ("Corcept") and Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") submit this joint
discovery letter. The parties have discussed the requested discovery, including at a lead-counsel
meet-and-confer on January 8, 2026, but they remain at an impasse.

### 1.    Statement of Dispute Requiring Resolution

Teva has declined to make its CEO, Mr. Richard Francis, available for deposition despite
his unique knowledge relevant to this dispute, warranting production of his documents and a
limited half-day deposition. Teva contends that Mr. Francis's limited involvement in mifepristone
does not justify an Apex deposition or warrant production of his custodial documents. The parties
therefore require the Court's assistance.

### 2.    Parties' Position Statements

### (a)    Corcept's Position

Document discovery confirms that Francis was intimately involved with Teva's failures
with respect to its roll out of generic mifepristone.  It was his "Pivot to Growth" strategy as well
as his direction to his subordinates concerning mifepristone—not Corcept's actions—that led to
such shortcoming, all of which warrants a limited production and half-day deposition. Corcept's
request is timely (L.R. 37-3), and Francis' deposition would be within the parties' agreed
deposition counts.

1

REDACTED VERSION FILED PUBLICLY

### i.    Legal Principles

The "apex" doctrine is inapplicable to document discovery. *Alta Devices, Inc. v. LG Elecs., Inc.*, 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (DeMarchi, J.). Regarding depositions, courts consider "whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case[.]" *Hunt v. Cont'l Cas. Co.*, 2015 WL 1518067, at *2 (N.D. Cal. Apr. 3, 2015). "[T]he party seeking to take such a deposition does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; **instead, where a corporate officer may have any first-hand knowledge of relevant facts, the deposition should be allowed**." *Id.* (cleaned up) (collecting cases); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2014 WL 939287, at *2, *5 (N.D. Cal. Mar. 6, 2014). A "strong showing" is required "before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party carries the "heavy burden"— "extraordinary circumstances"—to establish why no deposition should occur. *Hunt*, 2015 WL 1518067, at *1. A witness's "position as CEO" and "busy schedule" do not suffice. *Transpacific*, 2014 WL 939287, at *3.

### ii.    Francis Has Material, Unique Knowledge

**Pivot to Growth.** Francis became Teva's CEO in January 2023 and in May 2023 announced a "Pivot to Growth" to re-allocate resources to branded drugs and certain generics. Dkt. 136 at 2; https://www.dcatvci.org/features/tevas-president-and-ceo-launches-new-pivot-to-growth-strategy/ ("Teva is proceeding with a new growth strategy *from* Richard Francis"); ███████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████

The shift was a top-down initiative from Francis to return Teva to profitability. https://insights.citeline.com/in-vivo/growth/by-most-measures-a-failure-ten-years-on-from-teva-actavis-ZNFT27KRO5DWVFCT2AY3LO6NAM/. Only Francis can explain *his* considerations and views on Pivot to Growth and how generics like mifepristone factored into it from *his* perspective. Where, as here, a CEO is "the final decision maker regarding the specific matters" at issue, "it is difficult to understand how" someone else "could testify about how [the CEO] arrived at the decisions attributed to him, what factors he considered, or why he decided as he did[.]" *In re Meta Pixel Healthcare Litig.*, 2025 WL 1413402, at *2 (N.D. Cal. May 14, 2025) (DeMarchi, J.).

**Mifepristone.** While Teva asserts it started developing mifepristone in 2016 before Francis joined Teva and "the central issue in this case" is Defendants' conduct, that misses the point. Teva *waited* until 2024 (after Francis took over) to launch its generic, and Corcept is entitled to discovery from Teva to negate Teva's contentions and prove Corcept's defenses, including that Teva's own choices, strategies, decisions and Francis—not Corcept—caused Teva's woes.

One reason for Teva's failures is that Teva does not provide patient support services for its generic. Teva contends generics do not do so because they undermine generics' ability to provide price savings over branded products. Francis can uniquely rebut this: as Sandoz's CEO, he touted "patient support services" like training and nurses for Sandoz's generic competitor *to Teva's* Copaxone, showing generic companies do provide such services, as Teva should have here.

2

**REDACTED VERSION FILED PUBLICLY**

https://www.novartis.com/news/media-releases/sandoz-announces-us-fda-approval-and-launch-glatopa-40-mgml-three-times-week-generic-option-relapsing-forms-multiple-sclerosis.

After Francis joined Teva and Teva launched mifepristone, Francis characterized Teva's ███████████████████████████████████████████████████████████████ Francis asked for and received updates █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Francis also ***drove*** Teva's initial distribution strategy. Teva stated "the focus" of its lawsuit is Corcept's "exclusive dealing arrangement" with Optime. Dkt. 62 at 4. Teva's documents show ***Francis*** decided to hinge Teva's success on Optime. ████████████████████████████████████████████████████████████████████████████████████

Teva's documents indicate ***Francis*** decided to launch Teva's generic at only "a 13% price discount compared to brand Korlym[.]" Dkt. 146 ¶ 126. ██████████████████████████████████████████████████████████████████████████████████████████████

When Teva's strategies failed, ***Francis*** had his own views on how to fix things, stating: ██ ███████████████████████████████████████████████████████████ "[N]o other witness c[an] speak to what" ***Francis*** knows about these decisions (his own), "what factors he considered," or "why he decided as he did[.]" *Meta*, 2025 WL 1413402, at *2.

### iii.    The Discovery is Proportional

Defendants included their CEOs as custodians; Teva refused to reciprocate with Francis. While the above documents (from other custodians) describe some of Francis's mifepristone involvement, they highlight gaps in Teva's production, including: (i) communications Francis sent and received from investors about mifepristone; (ii) explanations concerning Francis' decisions regarding pricing and Optime; (iii) explanations of how Teva's ███████████████████████ and (iv) and Francis' ██████████████ A limited production and a half-day deposition are necessary and reasonable to obtain information only Francis has.

As to documents, Corcept proposed limited search strings, which Teva already agreed to for other custodians. Teva claims producing Francis' documents is burdensome and/or duplicative, but: (a) there is no burden to Francis in simply collecting his emails; (b) Teva does not even try to substantiate its objection with hit counts or any estimate of cost/burden; (c) the above gaps in Teva's production show the existing custodians are insufficient to capture Francis' documents, so

**REDACTED VERSION FILED PUBLICLY**

Corcept's request would supplement, not duplicate, discovery; and (d) Teva received reciprocal discovery from Defendants' CEOs, making Corcept's request proportionate.

Further, a limited deposition, at a time and place of Francis' choosing, is the best and most efficient way to obtain the discovery and connect the dots. Teva's "exhaustion" arguments are poorly-taken: (a) exhaustion is ***not*** an absolute requirement, *Hunt*, 2015 WL 1518067, at *2; and (b) where the witness has "unique" knowledge, arguing "that information uniquely known to" the executive "should instead be obtained from other witnesses" first is "simply not persuasive." *Meta*, 2025 WL 1413402, at *3 (DeMarchi, J.); *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 267–68 (N.D. Cal. 2012) (exhaustion unnecessary; "sender" of communications "likely to have his own unique knowledge of what he intended by his comments and questions").

Regardless, Corcept deposed ten Teva witnesses, including those that Teva references below (Bart, Groff, Richardsen, Stultz, and Tobler).



Teva seeks hundreds of millions of dollars in damages and deposed Corcept's CEO, Optime's former CEO, and the CEO of Optime's parent. Permitting custodial discovery and a half-day deposition of Teva's CEO is both proportional and fair. Teva laments Francis is CEO of a big company and busy. But Teva chose to bring suit, and Teva should not be permitted to seek CEO discovery and depositions from Defendants but then hide behind Teva's large size and Francis' schedule to evade relevant, targeted, and reciprocal discovery.

### (b)    Teva's Position

Ten Teva depositions and document discovery from 19 custodians have confirmed that Richard Francis had no meaningful involvement with mifepristone, and his deposition and document discovery would be the kind of harassing and cumulative discovery the apex doctrine prohibits. Teva started developing generic mifepristone in 2016—seven years before Francis joined Teva. Teva received FDA approval for mifepristone in 2020 and developed launch plans between 2016 and 2023. Dkt.166¶¶ 73-77, 120-122. Francis did not join Teva until January 2023, one year before mifepristone launched, and since he joined, whatever Francis has learned about

mifepristone has come from other Teva personnel.

Depositions "at the highest level or 'apex' of corporate management … create[] a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Corcept therefore "must show that the executive has direct personal factual information pertaining to material issues in an action." *Ceiva Logic, Inc. v. Amazon.com, Inc.*, 2021 WL 12349625, at *7 (C.D. Cal. Nov. 10, 2021). Even then, good cause to prevent an apex deposition exists where the "corporate executive lack[s] *unique* or *superior* knowledge of the facts in dispute," *id.* (emphasis added), and where the movant fails to show that the information sought is "unavailable from less intrusive discovery, including interrogatories and the depositions of lower-level employees," *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *6 (N.D. Cal. May 9, 2011); *Symantec Corp. v. Acronis, Inc.*, 2013 WL 12184286, at *1 (N.D. Cal. Oct. 10, 2013); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006).

Neither "Pivot to Growth," nor Francis' occasional questions about mifepristone justify an apex deposition. Pivot to Growth was a mid-2023 growth proposal across Teva's entire business. TEVA-MIF_00328235. It had no specific connection to mifepristone, which did not launch until January 2024. Corcept suggests Pivot to Growth resulted in a reduced focus on generics that has hindered mifepristone. To the contrary, ███████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
Corcept complains that Bart had not reviewed certain Board presentations and news articles regarding Pivot to Growth, but those documents do not mention mifepristone, and Corcept chose not to ask about their substance. Had Corcept done so, Bart would have testified, as he had already done at length, about Pivot to Growth, its impact on the generics business in general and on mifepristone in particular.

Nor does Francis have unique, non-duplicative knowledge regarding Teva's strategy for mifepristone. ████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████ Bart's lack of one-on-one conversations with Francis *confirms* Francis' lack of involvement with mifepristone. Corcept complains that Carrie Groff (VP, Portfolio and New Product Operations) did not speak to Francis to prepare for her deposition, but Groff offered thorough testimony about her interactions with Francis and his occasional questions about mifepristone, explaining that ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

5

[REDACTED] Ernie Richardsen (SVP, US Commercial Generics) likewise confirmed Francis's limited role.  Richardsen testified that [REDACTED]

Richardsen's limited interactions with Francis only underscores Francis's lack of unique, non-duplicative knowledge of mifepristone.

Corcept cites a single email in which Francis writes to Christine Fox (EVP, US Commercial) [REDACTED] TEVA-MIF_00270374.  Corcept fails to mention that it will depose Fox on June 11, 2026, and that the parties are working to schedule another 50 minutes on the record with Ernie Richardsen.  Until Corcept completes those depositions, it cannot show that the information is unavailable except by deposing Francis.  *E.g., Amazon.com*, 2021 WL 12349625, at *5; *Affinity Labs*, 2011 WL 1753982, at *10.  If Francis had actually offered drastic ideas for mifepristone, the people who work on the product—Bart, Groff, and Richardsen—would have known about them.  None did.

Corcept also gestures at Francis' former role as CEO of Sandoz, another international giant, but offers no support for its speculation about Francis's involvement with Glatopa.  In any event, the Glatopa "services" Corcept cites are irrelevant because they include co-pay assistance, which Teva *does* provide for mifepristone (TAC¶126), and injection training, which is irrelevant to a once-daily-pill like mifepristone (TAC¶58).  Moreover, patients can access support services through Teva's specialty pharmacies or their own prescribers.  (Bart.Tr.151; Rudell.Tr.213-14).  Corcept's Glatopa theory is minimally, if at all, relevant.  And it is highly unlikely that Francis would have any relevant or unique knowledge of Glatopa.  If Corcept wanted to test its Glatopa theory, it should have subpoenaed Sandoz; it did not.

Corcept likewise has no basis to demand Francis's documents, which would be "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Teva has produced documents from **nineteen** custodians, including the key personnel involved in mifepristone.  Francis' lack of involvement in mifepristone means his documents will be cumulative of existing discovery and disproportionately burdensome to produce.  And if Corcept really wanted them, it should have sought them long ago, not after the close of fact discovery. *See True Freight Logistics LLC v. Glob. Tranz Enters. Inc.*, 2019 WL 4169004, at *3 (D. Ariz. Sept. 3, 2019) (denying request to add "high ranking officer[]" custodians who "were not routinely interfacing with or about" contested issues, and "had not been involved" for years of the relevant timeframe).  Since Corcept has no factual basis to support its assertion that Francis has relevant non-duplicative documents, the *Alta Devices, Inc. v. LG Elecs., Inc.* decision supports Teva.  2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019) (permitting movant to add "senior executive" custodians upon demonstrating "factual basis" that such persons had "relevant information," but finding that movant lacked required factual basis to add LG's then-CEO).

Corcept's central case—*Meta*—is easily distinguishable. There, Meta's CEO, Mark Zuckerberg, had highly-relevant "unique, first-hand knowledge" based on several facts absent

here.  *First*, Meta was subject to an FTC Consent Decree requiring Zuckerberg's personal involvement in relevant matters.  *See In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO (VKD) (Dkt. No. 966 at 3-4).  Nothing like that is true here.  *Second*, plaintiff had already deposed Meta personnel *who testified directly* to Zuckerberg's personal involvement in a proposal that the Court found was "relevant to plaintiffs' claims and/or Meta's defenses."  *Id.* at 3; *Meta*, 2025 WL 1413402, at *3.  Here, Teva witnesses have said just the opposite.  *Third*, the Court rejected Meta's argument that plaintiff had not exhausted less intrusive means because Meta identified knowledgeable (non-custodian) individuals in the twilight of discovery and only *after* a prior order requiring Zuckerberg's deposition.  *Meta*, 2025 WL 1413402, at *3.  Here, Teva has already produced documents from the best sources of the information Corcept seeks, including Groff, Bart, and Richardsen.

Lastly, Corcept's argument about "reciprocal" discovery among executives is disingenuous.  Corcept is a small company with one product: Korlym.  Its CEO, Joseph Belanoff, is a named inventor on several patents claiming Korlym and has been a chief architect of Corcept's Korlym business from day one.  Optime is likewise a small company and Korlym has been its most important product.  And, unlike Teva, both Corcept and Optime identified their CEOs on initial disclosures.  Corcept's comparison to Francis—the CEO of an international giant with over 500 FDA-approved drugs and 3,600 medicines—strains credulity.

### 3.  Parties' Views Regarding the Need For A Hearing

#### (a)  Corcept's Position

Corcept believes that a hearing on this matter would be helpful to the Court, so Corcept can further discuss the relevance and importance of the requested document discovery and deposition, including to Corcept's defenses.

#### (b)  Teva's Position

Teva takes no position on Corcept's request for a hearing.

### 4.  Discovery Cut-Off Dates for Fact and Expert Discovery

With the exception of certain depositions that will be taken out-of-time, fact discovery closed on May 15, 2026, and expert discovery is set to close on September 11, 2026. Dkt. 176.

### 5.  Compliance With Meet and Confer Requirement

The parties held a lead counsel meet-and-confer on these issues on January 8, 2026 via Zoom video call. Michael Shipley served as lead counsel for Teva, accompanied by Jen Joslin. Mike Powell served as lead counsel for Corcept, accompanied by Brantley Pepperman.

### 6.  Attachments

The parties have not submitted any attachments to this letter brief.  To the extent it would be helpful to provide any of the discovery cited in this letter to the Court, the parties can do so.

Respectfully submitted,

Dated: May 22, 2026                    KIRKLAND & ELLIS LLP

                                       */s/ Michael Shipley*
                                       Michael Shipley

                                       *Attorney for Plaintiff Teva Pharmaceuticals USA, Inc.*

Dated: May 22, 2026                    QUINN  EMANUEL  URQUHART  & SULLIVAN, LLP

                                       */s/ Michael D. Powell*
                                       Michael D. Powell

                                       *Attorney for Defendant Corcept Therapeutics, Incorporated*