UNREDACTED VERSION FILED UNDER SEAL

June 26, 2026

**VIA ECF**

The Honorable Virginia K. DeMarchi
United States District Court for the
Northern District of California
San Jose Courthouse, Courtroom 2 – 5th
Floor
280 South First Street
San Jose, California 95113

**PURSUANT TO SECTION 4(C) OF
THE COURT'S STANDING ORDER
RE CIVIL CASES**

Re:    Joint Discovery Dispute Letter Brief Regarding Teva's Request for Text
Messages Corcept Produced to the DOJ (*Teva Pharmaceuticals USA, Inc.
v. Corcept Therapeutics, Inc., and Optime Care Inc.*, Case No. 5:24-cv-
03567-NW)

To the Honorable Judge DeMarchi:

Pursuant to Section 4 of Your Honor's Standing Order for Civil Cases, Defendant Corcept
Therapeutics ("Corcept") and Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") submit this joint
discovery letter.  The parties have discussed the requested discovery, including at a meet-and-
confer on June 3, 2026, but they remain at an impasse.

## 1.    Statement of Dispute Requiring Resolution

Teva contends that Corcept has declined to produce text messages that were produced to
the DOJ in connection with the investigation by the United States Attorney's Office for the District
of New Jersey into Corcept's sales practices related to Korlym ("DOJ Investigation"), despite
having agreed nearly one year ago to produce documents from the DOJ Investigation that "relate
to physician payments, regardless of the type of payments or whether they are the document's
primary focus.'"  2025.06.18 B. Pepperman Ltr.

Corcept contends that the parties agreed to a finite set of data sources for discovery in this
case, and text messages were not included. In addition, the text messages Teva seeks predate
Teva's launch of its generic mifepristone and are thus irrelevant to Teva's claims and
disproportionate.

The parties therefore require the Court's assistance.

1

**UNREDACTED VERSION FILED UNDER SEAL**

### 2.    Parties' Position Statements

### (a)    Teva's Position

Corcept violated its discovery obligations by withholding relevant text messages from Corcept custodians that Corcept previously produced to the Department of Justice ("DOJ"). DOJ subpoenaed Corcept for records through December 8, 2021, regarding "the sale and promotion of Korlym, Corcept's relationships with and payments to health care professionals who can prescribe or recommend Korlym and prior authorizations and reimbursement for Korlym." The investigation remains ongoing.[1] TAC ¶186. Corcept long ago agreed to reproduce to Teva relevant materials previously produced to DOJ, but (for reasons Corcept refuses to divulge) Corcept withheld all texts from its DOJ reproduction. Worse, Corcept refused to admit the existence of these texts until after the close of fact discovery. The result: prejudice to Teva's prosecution of the case, having been deprived of relevant discovery and prevented from questioning witnesses about highly relevant issues related to these messages.

The events and negotiations on this topic are uncomplicated. On April 16, 2026, Tom Burke, Corcept's VP of Sales and Commercial Training, testified that his "text messages were downloaded" in connection with the DOJ Investigation. Burke Tr. 268:16-22. Teva thereafter advised Corcept that "[t]o the extent any of Mr. Burke's text messages that were produced to DOJ relate to 'Corcept's speaker and physician payments,' they should be produced'" and demanded production of "such responsive text messages from Mr. Burke and any other individual." 2026.04.24 J. Joslin Email. Corcept sat on Teva's request until May 21, 2026—one week after the close of fact discovery—when it confirmed for the first time both that it had produced text messages to DOJ, but withheld those messages from its reproduction to Teva. 2026.05.21 B. Pepperman email.

Corcept's explanation was that it need not have reviewed text messages because it had not "agreed to collect, review, or produce text messages" from custodians in this case. *Id.* That is true but irrelevant: the contemplated production addressed materials *already collected and produced* to DOJ, and therefore does not implicate the parties' agreement regarding custodial ESI. That explains Corcept's failure to raise this issue on June 18, 2025, when Corcept agreed—without qualification as to document format—to "produce documents from DOJ investigation that relate to physician payments, regardless of the type of payments or whether they are the document's primary focus.'" 2025.06.18 B. Pepperman Ltr. Teva understands that Corcept had located the set of materials that had been produced to DOJ, that it had "de-archived" those materials, and would "produce what of them is responsive and non-privileged." 2025.07.03 B. Pepperman Ltr.; 2025.06.02 B. Pepperman Ltr. On December 5, 2025, Corcept represented that it had "conduct[ed] a reasonable search" for documents "related to Corcept's speaker and physician payments," and had "produced what was reasonably located, *responsive to the issues in this case*." 2025.12.05 B. Pepperman Ltr. (emphasis added).

Corcept's representation was incomplete. At the parties' conferral on June 3, Corcept declined to answer questions about the volume of text messages at issue, the Corcept personnel

---

[1]    https://www.sec.gov/ix?doc=/Archives/edgar/data/1088856/000162828026028902/cort-20260331.htm.

whose texts were collected, whether those individuals overlap with custodians, and for what timeframe—in addition to Teva's written questions sent a week prior. 2026.05.27 J. Joslin Ltr. It appears, however, that the texts Corcept produced to DOJ would have been part of whatever materials Corcept "de-archived" and reviewed for relevance. *See* Burke Dep. Tr. 268:1-22. At least some of those texts almost certainly "relate to physician payments," and therefore should have been reproduced to Teva consistent with Corcept's agreement.

Corcept's prior agreement to reproduce these materials is reason enough to compel their production now. *McNeil v. Toor*, 2021 WL 2894145, at *2 (E.D. Cal. July 9, 2021). Corcept has no basis for excluding these documents from review, because non-custodial DOJ texts "that relate to physician payments," 2025.06.18 B. Pepperman Ltr., are squarely relevant to Teva's claims. *See, e.g.*, ECF No. 134 at 27 (sustaining Teva's "[k]ickback [t]heory"); TAC ¶¶167-87 (detailed allegations that Corcept made illicit payments to prescribers). Nor can Corcept credibly argue that such documents are irrelevant given its admission that it has not reviewed any such messages in connection with this dispute. And although the DOJ texts end in 2021, they are relevant and admissible to prove, among other things, Corcept's "intent, preparation, [and] plan" to grease physicians to maintain market share. *See* FRE 404(b); *Sidibe v. Sutter Health*, 103 F.4th 675, 693 (9th Cir. 2024) (reversing exclusion of evidence of similar anticompetitive conduct from more than five years before damages period because it was "probative of whether the defendant in fact engaged in either conduct—even if the specific evidence predates the [relevant time] period"). ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ *See, e.g.,* CORCEPT-TEVA_ANTITRUST-0249025; CORCEPT-TEVA_ANTITRUST-0154423.

Corcept is also wrong to suggest Teva is no longer pursuing its illicit payment allegations. Corcept paid speakers many multiples of what all other manufacturers combined paid to prescribers in the same specialty over the same time periods. TAC ¶184. And fact discovery has revealed many text messages between Corcept's sales representatives and Corcept's speakers— produced *by the speakers*, not Corcept—in which ██████████████████████████████ ██████████████████████████████████████████ *E.g.*, ANDERSON-002854; ANDERSON-003431; ANDERSON-003064. Mr. Burke also confirmed that ███████████ ██████████████████████████████████████████████████████ Burke Tr. 229:3-6, despite ██████████████████████████████████████████████████████████. CORCEPT-TEVA_ANTITRUST-0845000, at -001. This evidence is not technical or complicated; a jury could easily conclude that Corcept's astronomical payments were intended to induce or reward prescriptions.

Corcept's argument that Teva's demand is untimely lacks merit. *First*, Teva raised this issue on April 24, weeks before fact discovery closed on May 15, 2026. It was Corcept that failed to respond for nearly a month, and then only after the close of fact discovery. *Second*, Corcept concealed the *existence* of the DOJ texts until after that deadline had passed.[2] Following Corcept's late disclosure, Teva promptly demanded production, 2026.05.27 J. Joslin T. Ltr, and conferred with Corcept's counsel to tee up this dispute as soon as practicable. Although "motions related to

---

[2] Corcept's lack of candor regarding the existence of the messages was itself prejudicial; had Corcept timely disclosed them, Teva could and would have sought to compel their production promptly.

UNREDACTED VERSION FILED UNDER SEAL

fact discovery" generally must "be filed [within] 7 days after the fact discovery cut-off," L.R. 37-3, where "good cause exists[,]" courts have "modif[ed] the discovery cut off to allow ... motion to compel ... to be addressed." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756260, at *4 (N.D. Cal. July 31, 2015) (holding "good cause" existed because the moving party's motion to compel was not "ripe" before the discovery cut-off).[3]  Corcept's confirmation of the existence of the DOJ messages six days after the discovery deadline meant a joint letter could not be filed on that schedule.  Teva's diligence is "good cause" for the Court to hear this motion.  If the Court determines that appropriate relief (production of the withheld messages) requires amending the case schedule, Teva requests that Your Honor recommend an appropriate extension to Judge Wise.

Corcept has no credible burden-related arguments, either, because an off-the-shelf reproduction is not burdensome.  *See, e.g.*, *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 2022 WL 17339035, at *6 (E.D. Pa. Nov. 30, 2022) (requiring defendants to produce materials already collected and produced in parallel investigation, nothing that defendants having "previously compiled and produced these documents" meant "a minimal burden in doing so now"); *In re FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) (same).  The point of Teva's request to search and compile a subset of an *existing* production was to minimize Corcept's burden (despite Corcept's *ipse dixit*, locating text messages within a prior electronic production should be low-touch and systematic) while ensuring that Teva received documents relevant to its claims.  Corcept's only obligation was to review those text messages and produce non-privileged documents "that relate to physician payments," as Corcept had agreed to do and what Teva understood Corcept had done.  Corcept should be required to do so now, and any burden argument has been waived given Corcept's unwillingness to quantitatively substantiate its supposed burden.

Finally, Corcept's arguments that Teva should have to collect text messages from its custodians, or pay for Corcept to "reboot[]" and reproduce the DOJ texts, are both meritless.  Teva is not asking Corcept to collect text messages from custodians from scratch, and Corcept should have reviewed and reproduced the DOJ texts long ago, as it had agreed to do.

### (a)    Corcept's Position

The Court should reject Teva's late-filed motion—which would upend the parties' agreed ESI protocol—for any "text messages" Corcept provided to the DOJ years ago. Those materials have little to no relevance to this case.

Early in discovery, the parties set a procedure for custodial discovery, *i.e.*, email and other communications from individuals, as distinct from non-custodial materials like presentations. Each side specified the custodial sources to be searched in this case would ***not*** include text messages. April 4, 2025 Email from B. Pepperman (Corcept agreed to "collect and search" emails, OneDrive files, and files saved in Box); May 20, 2025 Email from A. Garg (Teva stating it "will collect

---

[3]    Teva understands that the Magistrate Judge can hear and decide a discovery dispute filed after the fact discovery cut-off upon "good cause" shown under LR 37-3.  *See, e.g.*, *Illumina, Inc. v. BGI Genomics Co.*, 2021 WL 4305975, at *2 (N.D. Cal. Sept. 22, 2021).  If Your Honor disagrees, Teva will promptly seek leave to bring this motion before Judge Wise.

**UNREDACTED VERSION FILED UNDER SEAL**

emails, Teams chats, on-premises drives, and OneDrive data."). Neither party agreed to collect, review, or produce text messages.

The parties also agreed on non-custodial discovery, which Teva called "go-gets" because they were to be limited categories of materials each side could collect and review without substantial burden, *i.e.*, through interviews and manual collection.

In November 2021, following a 2017 relator's *qui tam* lawsuit, Corcept received a broad subpoena from the U.S. Attorney's Office in New Jersey for documents going back years before that and covering many topics. Corcept complied and produced documents between 2021 and 2023. The DOJ informed Corcept it did not consider Corcept a defendant, Corcept has not heard from the DOJ for years, and the DOJ recently declined to intervene in the relator's *qui tam* case.

On October 3, 2024, Teva served RFP 124 seeking: "[a]ll Documents and Communications that [Corcept] produced, served, received, or exchanged in connection with the investigation arising out of a subpoena issued ... by the United States Attorney's Office for the District of New Jersey on November 15, 2021." Corcept agreed to conduct a reasonable investigation regarding the DOJ production, de-archive parts of it, and re-produce portions of that subset related to speaker payments. June 2, 2025 Letter from B. Pepperman. Corcept completed its review and production of those materials in August 2025, producing nearly ***9,000*** documents, including slide decks, training materials, sales presentations, speaker contracts, policies, and the like.

Teva waited until April 24, 2026, to ask Corcept for text messages collected and produced as part of the DOJ investigation despite Corcept having completed its re-production of the DOJ "go-get" materials eight months earlier. Teva implies it did not occur to its counsel prior to Mr. Burke's deposition that text messages may have been collected and produced to the DOJ. But Teva and Corcept had discussed ESI discovery a full year earlier and opted not to include text messages within the scope of searchable custodial data. During that time, the parties also extensively discussed Corcept's re-production of certain materials from the DOJ investigation, and Teva never asked for—and Corcept never agreed to produce—text messages provided to the DOJ. Teva's suggestion that Corcept excluded DOJ text messages for any reason other than the parties' agreed search parameters is unfounded and poorly-taken.

Teva incorrectly asserts Corcept "agreed—without qualification as to document format— to 'produce documents from DOJ investigation that relate to physician payments, regardless of the type of payments or whether they are the document's primary focus.'" At no time did Corcept ever agree to search for, review, or produce text messages of any kind, period. Teva omits that the correspondence it quotes was related only to the production of "***presentations or white papers***." June 18, 2025 Letter from B. Pepperman at 1.

Teva also disingenuously suggests Corcept should have explicitly indicated its DOJ "go-get" would not include text messages. There was no reason to do so, because Corcept and Teva had long before excluded text messages from the ESI sources that would be collected for discovery in this case. Dkt. 80, § E.1. In so agreeing, Teva opted to pursue text messages through third-party subpoenas to **30+** doctors. Teva should not be permitted to now up-end the parties' agreement—a year later, after the close-of-fact discovery—to search a custodial source that each side mutually agreed was outside the scope of party discovery.

**UNREDACTED VERSION FILED UNDER SEAL**

Teva articulates no compelling explanation how text messages produced to the DOJ are relevant to its claims. While Teva's "speaker program" theory asserts Corcept's speaker payments were "bribes and kickbacks to prescribers to induce them to *prescribe brand Korlym over Teva's generic*" (Dkt. 89 at 3 (emphasis added)), the DOJ issued its subpoena in *2021*. Teva did not even launch its generic mifepristone until *January 2024*. Teva's contention that such discovery is relevant to proving Corcept's efforts to "grease" physicians to acquire their allegiance if a generic were ever to enter the market is a *red herring* since it already has access to the payment data which is publicly available. Moreover, despite Teva's assertion that it will continue to pursue its "illicit payment allegations," Teva has all but abandoned the theory as Teva's recently-served expert reports do not even opine that Corcept's speaker payments were illicit.

Teva next asserts that "Corcept has no credible burden-related arguments, either, because an off-the-shelf reproduction is not burdensome to complete." Not so. Teva assumes Corcept's DOJ production is easily accessible and catalogued, such that text messages could all easily be identified and extracted. In reality, any text messages Corcept produced are intertwined within much larger productions, and individually isolating these files—which the parties never agreed to search for in the first place—would take considerable time and effort. To the extent Teva suggests that Corcept *en masse* re-produce the entire DOJ production (or texts from it), Teva itself believes cloned discovery is "of the type that courts routinely reject, due to the impropriety of compelling a party to produce in one case pre-existing productions made for other purposes in [a] separate case." *Mylan Pharmaceuticals Inc. v. Teva Pharmaceuticals Industries, Ltd*., Case No. 2:21-cv-13087 (D.N.J.), Dkt. 25 at 3. On this legal point, Corcept (and the weight of authority) agrees. *King Cnty. v. Merrill Lynch & Co*., 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011) ("requesting all documents produced or received during other litigation or investigations" not proper); *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying antitrust plaintiff's motion to compel cloned discovery that defendant produced to government in parallel government investigation because "plaintiffs' counsel must do their own work"); *Chen v. Ampco Sys. Parking*, 2009 WL 2496729, at *3 (S.D. Cal. Aug. 14, 2009) (explaining "Plaintiff must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case" because an "attempt to piggyback on the discovery conducted" in other cases is improper).

As to Teva's delay in requesting the DOJ text messages, Teva says little and tries to blame Corcept, arguing "Corcept concealed the *existence* of the DOJ text messages until after that deadline had passed." Teva waited until the end of discovery to raise the issue (eight months after receiving Corcept's DOJ re-production), then waited until May 19 (*after* the cut-off) to follow up; Corcept responded on May 21, Teva waited until May 27 to reply, and the parties conferred on June 3. That Corcept confirmed Burke's text messages were collected in a separate proceeding (within a few weeks of his deposition, and in the midst of all the other depositions the parties took in the last month of discovery) does not change that the parties agreed text messages would **not** be part of this litigation in April 202**5**, and that Teva inexplicably did not move to undo that agreement and file this motion until weeks after the Court's deadline to file discovery motions.

Moreover, Teva obtained substantial discovery on its now-abandoned "bribery" theory. Corcept produced 9,000 documents from the DOJ investigation, and other custodial and non-custodial documents from this case about Corcept's speaker program (including based on custodians and search terms that Teva itself proposed). Teva subpoenaed dozens of practitioners

6

in Corcept's speaker program and obtained text messages from some. Teva deposed Corcept employees and two non-party practitioners in Corcept's speaker program—all under oath denied any "illicit" payments. Teva does not highlight any of that here. Teva gambitted reciprocally excluding its own witnesses' text messages from discovery, and the nearly *1 million* pages of Corcept discovery, non-party discovery (including texts), and depositions (in excess of the default limits) that Teva obtained did not bear fruit. Teva therefore belatedly requests a fishing expedition into Corcept text messages from years prior to Teva's market entry in hopes there is something juicier about a theory Teva's experts abandoned. That is no reason to allow this broad, irrelevant, and disproportionate discovery, particularly after the cut-off.

At a minimum, if text messages provided to the DOJ are ordered produced, the Court should order: (1) Teva to run Corcept's search terms against Teva's custodians (some acknowledged texting about the subjects of *this case*); and/or (2) Teva to pay for the cost of having the DOJ data rebooted and text messages therein identified/reviewed.

### 3.    Parties' Views Regarding the Need For A Hearing

#### (a)    Teva's Position

Teva believes that this matter may be resolved without a hearing.  Were the Court to find a hearing helpful, Teva will be prepared to explain why Teva's request to compel production of the DOJ text messages should be granted.

#### (b)    Corcept's Position

Corcept defers to the Court as to whether a hearing on Teva's untimely motion is warranted. Were the Court to find a hearing helpful, Corcept will be prepared to explain why Teva's request should be denied.

### 4.    Discovery Cut-Off Dates for Fact and Expert Discovery

With the exception of certain depositions that have been taken out-of-time, fact discovery closed on May 15, 2026, and expert discovery is set to close on September 11, 2026. Dkt. 176.

### 5.    Compliance With Meet and Confer Requirement

The parties held a lead counsel meet-and-confer on these issues on June 3, 2026 via Zoom video call.  T.J. McCarrick served as lead counsel for Teva, accompanied by Andrew Basso.  Mike Powell served as lead counsel for Corcept, accompanied by Brantley Pepperman and Nicholas LoCastro.

### 6.    Attachments

Teva has not attached documents referred to herein, but will promptly produce them to the Court upon request.

**UNREDACTED VERSION FILED UNDER SEAL**

Respectfully submitted,

Dated: June 26, 2026                              KIRKLAND & ELLIS LLP

                                                  /s/ T.J. McCarrick
                                                  T.J. McCarrick

                                                  *Attorney for Plaintiff Teva Pharmaceuticals USA, Inc.*

Dated: June 26, 2026                              QUINN    EMANUEL    URQUHART    &
                                                  SULLIVAN, LLP

                                                  /s/ Michael D. Powell
                                                  Michael D. Powell

                                                  *Attorney for Defendant Corcept Therapeutics, Incorporated*

8