United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

TEVA PHARMACEUTICALS USA, INC.,

Plaintiff,

v.

CORCEPT THERAPEUTICS, INC., et al.,

Defendants.

Case No.  24-cv-03567-NW  (VKD)

**ORDER RE MAY 22, 2026 DISCOVERY DISPUTE**

Re: Dkt. No. 196

Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") and defendant Corcept Therapeutics, Inc. ("Corcept") ask the Court to resolve a dispute regarding Corcept's request for documents and deposition testimony of Teva's CEO Richard Francis. Dkt. No. 196.[1]  The Court held a hearing on this dispute on June 16, 2026. Dkt. Nos. 202, 205 (hearing transcript).  At the Court's direction, the parties subsequently filed the documents and deposition excerpts cited in the discovery dispute letter. *See* Dkt. No. 207.[2]

Having considered the parties' written submissions, the oral arguments presented, the discovery materials filed after the hearing, and the applicable law, the Court concludes that

---

[1] Corcept moves to seal portions of the May 22, 2026 discovery dispute letter on the ground that Teva claims the contents are confidential. Dkt. No. 195.  Teva filed a statement in support of sealing the portions identified in Corcept's sealing motion. Dkt. No. 199.  As Corcept's sealing motion relates to a discovery matter, the good cause standard applies.  *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 580 U.S. 815 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006).  Good cause appearing, the Court grants defendant's sealing motion. Unredacted portions of the discovery dispute letter (Dkt. No. 195-1) shall remain under seal.

[2] Good cause appearing, the Court also grants Corcept's administrative motion to file under seal the documents and deposition excerpts cited in the discovery dispute letter. Dkt. No. 207.

Corcept should be permitted to take a limited deposition of Mr. Francis regarding his critique of the ███████ nature of Teva's strategies for promoting generic mifepristone and his ideas for possible solutions.

## I.    BACKGROUND

Richard Francis has been Teva's CEO since January 2023. Dkt. No. 196 at 2. According to Corcept, Mr. Francis has information relevant to Teva's claims that Corcept's anticompetitive conduct prevented Teva from effectively competing in the market for treatments of Cushing's syndrome with Teva's generic mifepristone. *Id.* at 1-3. Specifically, Corcept contends that Mr. Francis has unique knowledge of: (1) Teva's "pivot to growth" strategy and how that strategy impacted generics like mifepristone; (2) his critique of the ███████ nature of Teva's strategies for promoting generic mifepristone and possible solutions; (3) decision-making regarding Teva's pricing for generic mifepristone; and (4) Teva's distribution strategy for generic mifepristone, including a possible arrangement with Optime. *Id.* at 2-3. Corcept seeks documents from Mr. Francis's custodial files and a half-day deposition of Mr. Francis. *Id.* at 3.

Teva principally objects that Mr. Francis, as CEO of the company, is an "apex" witness who has "no meaningful involvement with mifepristone" or its promotion, pricing, or distribution. *Id.* at 1, 4. According to Teva, Mr. Francis's relevant knowledge is limited to what he learned from others at Teva. *Id.* at 4-5. Teva argues that its key personnel have already been deposed regarding the matters on which Corcept says it requires discovery of Mr. Francis, and it has already produced documents from 19 custodians, such that further discovery from Mr. Francis would be cumulative and duplicative. *Id.* at 4, 6.

## II.    DISCUSSION

### A.    Deposition

Rule 30 of the Federal Rules of Civil Procedure permits "[a] party . . . [to] depose any person, including a party, without leave of court . . . ." Fed. R. Civ. P. 30(a)(1). However, under Rule 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including forbidding a deposition or limiting its scope. Fed. R. Civ. P. 26(c)(1). The party seeking a protective order

2

bears the burden of showing good cause for the order by "demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

The Ninth Circuit has provided little guidance on the nature and scope (or existence) of the so-called "apex" doctrine. However, district courts within this Circuit have observed that a party's request for the deposition of a high-level executive of an adverse party creates a risk of abuse or harassment. *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012); *see also In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO (VKD), 2025 WL 1413402, at *3 (N.D. Cal. May 14, 2025) (recognizing opportunity for abuse or harassment in deposition of Meta CEO). To address this risk, district courts typically consider the following factors in determining whether to permit or limit the deposition of such an executive: (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted other less intrusive means to obtain the discovery. *Apple*, 282 F.R.D. at 263.

Here, Corcept wishes to depose Mr. Francis about the four topics summarized above, which it contends are relevant to the question of causation. With respect to the "pivot to growth" strategy, Corcept has shown that Mr. Francis developed the strategy and presented on it to Teva's Board of Directors. *See* Dkt. No. 196 at 2 (citing Dkt. Nos. 207-11, 207-13). Among other things, the record reflects that the "pivot to growth" strategy emphasized innovation and allocated resources away from generics with low profitability. *See* Dkt. No. 136 at 2. However, Corcept has not demonstrated that this company-wide strategy dictated the specific strategy Teva adopted for generic mifepristone. In particular, to the extent Corcept suggests that Teva's generic mifepristone was unsuccessful because Teva shifted its focus away from orphan generics like mifepristone or other generics that rely on specialty pharmacies, the press reports, board presentation, and testimony Corcept has already obtained do not provide support for that thesis. *See* Dkt. No. 196 at 2 (citing materials referenced in Dkt. No. 136 at 2); Dkt. No. 207-11; Dkt. No. 207-2 (Bart) at 26:6-27:20, 29:5-19, 48:7-23, 295:11-297:9; *see also* Dkt. No. 205 at 28:2-7. Nor has Corcept identified any basis for its assertion that Mr. Francis set the strategy for mifepristone specifically. Even assuming, without deciding, that Mr. Francis has unique knowledge about the

United States District Court
Northern District of California

"pivot to growth" strategy, Corcept has not shown that Mr. Francis's knowledge is relevant to any issue of causation. *See, e.g., Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 19-cv-09129-AB-MAAX, 2021 WL 12349625, at *9 (C.D. Cal. Nov. 10, 2021) (denying deposition of defendant's CEO where CEO's knowledge, even if unique, was not relevant to any issue in the case).

With respect to Mr. Francis's critique of the ▮▮▮▮ nature of Teva's strategy for mifepristone, Corcept has shown that shortly after Teva launched its generic mifepristone, Mr. Francis characterized the company's strategy for that drug as ▮▮▮▮ Dkt. No. 207-15, and that after Corcept launched its authorized generic, Mr. Francis asked his team to consider ▮▮▮▮ ▮▮▮▮ to improve Teva's ability to compete with Corcept and indicated he had ▮▮▮▮ ▮▮▮▮ he wished to discuss, Dkt. No. 207-7. Teva emphasizes that Mr. Francis's role was limited and that whatever ideas he may have had were not communicated to the Teva personnel actually responsible for developing and implementing the strategy for mifepristone. Dkt. No. 196 at 5-6; Dkt. No. 205 at 31:9-32:1. Unlike the "privot to growth" strategy, Mr. Francis's observations here are specific to Teva's strategy for mifepristone. Corcept deposed multiple witnesses about these observations, and no one could explain what Mr. Francis meant. More importantly, these observations are directly relevant to a key issue in the case—namely, whether the limited success of Teva's mifepristone can be attributed to Teva's own choices and decisions about how to market and support its product, rather than Corcept's anti-competitive conduct. *See* Dkt. No. 196 at 2-3; Dkt. No. 205 at 12:2-13:25; 36:17-37:1. Thus, Corcept has demonstrated that Mr. Francis has unique first-hand, non-repetitive knowledge of information that is relevant to the issue of causation and that it has already attempted to obtain the information it seeks from him through other, less-intrusive means. *See, e.g., Meta Pixel*, 2025 WL 1413402, at *3 ("Meta's suggestion that information uniquely known to Mr. Zuckerberg should instead be obtained from other witnesses is simply not persuasive."); *Apple*, 282 F.R.D. at 268 (sender of communication likely has unique knowledge of meaning of its contents); *cf. Affinity Labs v. Apple, Inc.*, No. 09-cv-4436 CW (JL), 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011) (denying request for deposition of Apple's CEO based on broad public statement with little relevance to underlying litigation).

With respect to Teva's pricing of mifepristone, Corcept has shown that Mr. Francis was

United States District Court
Northern District of California

United States District Court
Northern District of California

interested in Teva's pricing for mifepristone and asked questions about it, but nothing in the record presented suggests that Mr. Francis dictated the price or the methodology used to set it. Dkt. No. 196 at 3 (citing Dkt. No. 146 ¶ 126; Dkt. No. 207-17); Dkt. No. 207-2 (Bart) at 147:3-148:10 (explaining wholesale and net discounts); Dkt. No. 205 at 14:5-24, 18:25-21:5.  If Corcept wishes to argue that Teva's mifepristone was unsuccessful, in whole or in part, because it was priced at an insufficiently large discount off of the brand price, it does not require Mr. Francis's testimony to make that argument.  For these reasons, Corcept has not shown that Mr. Francis has unique or relevant information about pricing for Teva's mifepristone.

Finally, with respect to Teva's distribution strategy for mifepristone, Corcept has shown that shortly after Teva launched its generic mifepristone, Mr. Francis and others suggested that Teva pursue an arrangement with Optime to distribute the drug, but nothing in the record indicates that Mr. Francis dictated the distribution strategy, as Corcept contends.  Dkt. No. 196 at 3 (citing Dkt. Nos. 207-9, 207-17); Dkt. No. 207-3 (Groff) at 164:3-168:8.  If Corcept believes Teva's effort to enter into a distribution arrangement with Optime is relevant to causation, it does not require Mr. Francis's testimony to make that argument.  For these reasons, Corcept has not shown that Mr. Francis has unique or relevant information about Teva's distribution strategy for mifepristone.

### B.    Document Requests

The apex doctrine does not apply to document discovery.  *See, e.g., Affinity Credit Union v. Apple Inc.*, No. 22-cv-04174-JSW, 2024 WL 3859802, at *2 (N.D. Cal. Aug. 16, 2024); *Alta Devices, Inc. v. LG Elecs., Inc.*, No. 18-cv-00404 LHK (VKD), 2019 WL 8757255, at *1 (N.D. Cal. Feb. 20, 2019).  Rather, discovery of Mr. Francis's custodial files is guided by application of Rule 26, which permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  The Court must protect another party from discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive, and may issue a protective order upon a showing of good cause.  *See* Fed. R. Civ. P. 26(b)(2)(C), (c).

As an initial matter, Corcept identifies no document requests for which it believes Mr. Francis has relevant custodial documents, arguing instead that Teva should collect Mr. Francis's emails and then run search strings to identify relevant documents. Dkt. No. 196 at 3. Teva responds that it has already produced responsive documents from 19 custodians, and that requiring it to collect, review, and produce documents for yet another custodian after the close of fact discovery[3] would be disproportionate to the needs of the case, duplicative, and unduly burdensome. *Id.* at 6.

Corcept has not identified any gaps in Teva's production of custodial documents. In view of the discussion above regarding the limited nature of Mr. Francis's unique, relevant information, the Court is not persuaded that Teva should be required to collect and review Mr. Francis's custodial documents. The fact that Corcept produced documents from its own CEO's custodial files is immaterial. As Corcept has not shown that Mr. Francis is likely to have any non-duplicative relevant documents, requiring Teva to collect, review, and produce such documents would be disproportionate to the needs of the case.

## III.   CONCLUSION

For the reasons explained above, the Court orders as follows:

Corcept may take Mr. Francis's deposition regarding his critique of the ▮▮▮▮▮ nature of Teva's strategies for promoting generic mifepristone and his ideas for possible solutions. The deposition will be limited to two hours on the record. The parties shall cooperate in the scheduling of the deposition for a date and time convenient to the witness that is on or before **August 5, 2026**. Teva need not collect, review, and produce documents from Mr. Francis's custodial files.

**IT IS SO ORDERED.**

Dated: July 15, 2026

*Virginia K. DeMarchi*
Virginia K. DeMarchi
United States Magistrate Judge

---

[3] Fact discovery closed on May 15, 2026. Dkt. No. 176.