UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC., | Case No.  24-cv-03567-NW   (VKD) |
| Plaintiff, | |
| v. | **ORDER RE JUNE 26, 2026 DISCOVERY DISPUTE RE TEXT MESSAGES PRODUCED TO DOJ** |
| CORCEPT THERAPEUTICS, INC., et al., | Re: Dkt. No. 210 |
| Defendants. | |

Plaintiff Teva Pharmaceuticals USA, Inc. ("Teva") and defendant Corcept Therapeutics, Inc. ("Corcept") ask the Court to resolve a dispute regarding Teva's request for production of text messages Corcept previously produced to the United States Department of Justice ("DOJ").  Dkt. No. 210.[1]  At the Court's direction, Teva filed certain emails and letters to which the parties refer in the discovery dispute letter.  Dkt. No. 215.  The Court finds this dispute suitable for resolution without oral argument.  Civil L.R. 7-1(b).

As explained below, the Court denies Teva's request for an order requiring Corcept to produce the text messages at issue.

---

[1] Teva moves to seal portions of the June 26, 2026 discovery dispute letter on the ground that Corcept and non-party Dr. Robin Anderson claim the contents are confidential.  Dkt. No. 209. Corcept filed a statement in support of sealing the portions identified in Teva's sealing motion. Dkt. No. 211.  Dr. Anderson did not file a response to the sealing motion.  As Teva's sealing motion relates to a discovery matter, the good cause standard applies.  *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1098-99 (9th Cir.), *cert. denied sub nom FCA U.S. LLC v. Ctr. for Auto Safety*, 580 U.S. 815 (2016); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006).  Good cause appearing, the Court grants Teva's sealing motion. Unredacted portions of the discovery dispute letter (Dkt. No. 209-1) shall remain under seal.

United States District Court
Northern District of California

## I.    BACKGROUND

In late 2021, Corcept received a DOJ subpoena in connection with a *qui tam* action filed in the District of New Jersey.  Dkt. No. 210 at 2, 5.  The subpoena is not attached to the parties' joint discovery dispute letter, but it apparently included requests for documents regarding "the sale and promotion of Korlym, Corcept's relationships with and payments to health care professionals who can prescribe or recommend Korlym[,] and prior authorizations and reimbursement for Korlym." *Id*. at 2 (citing Dkt. No. 166 ¶ 185).  Corcept produced documents in response to this subpoena between 2021 and 2023 ("DOJ materials").  *Id.* at 5.

On February 19, 2025, the Court entered as an order the parties' stipulation regarding discovery of electronically stored information ("ESI protocol"), with some modifications not relevant here.  Dkt. No. 80.  The ESI protocol includes a provision stating that certain categories of ESI "need not be preserved, collected, processed, reviewed, and/or produced."  *Id.* § D.  That provision does not refer to "text messages."  However, the parties apparently agreed in April and May of 2025 that their custodial document productions would *not* include text messages, *see* Dkt. No. 210 at 2, 4-5, and that discovery from non-custodial sources would be limited to "categories of materials each side could collect and review without substantial burden," *id.* at 5; *see also id.* at 2.

According to Teva, in June 2025, Corcept agreed to produce documents previously produced in response to the DOJ subpoena relating to "physician payments, regardless of the type of payments or whether they are the document's primary focus."  *Id.* at 2 (quoting June 18, 2025 B. Pepperman letter).[2]  Corcept asserts that it produced nearly 9,000 documents from the DOJ materials.  *Id.* at 5.  The parties agree that this production did not include text messages.  *Id.* at 2, 5.  They disagree about whether it should have.

## II.    DISCUSSION

Teva asks the Court to order Corcept to search for and produce any text message omitted from its production of DOJ materials, consistent with Corcept's agreement in June 2025.  Corcept

---

[2] Teva does not identify or attach the document request to which it believes these messages are responsive.  Corcept identifies the relevant document request as RFP 124.  *See* Dkt. No. 210 at 5.

opposes this request on three grounds, arguing that (1) Teva's request is untimely; (2) Corcept never agreed to produce text messages from the DOJ materials; and (3) discovery of text messages dating back to 2021 and earlier is not relevant or proportional to the needs of the case.

### A.    Timeliness

Discovery disputes must be presented to the Court for resolution no later than seven days after the fact discovery cutoff.  *See* Civil L.R. 37-3.  As the fact discovery cutoff was May 15, 2026, any discovery disputes should have been submitted no later than May 22, 2026.

Teva argues that good cause supports consideration of this dispute more than 30 days after that deadline.  Specifically, Teva asserts that it raised a question about production of text messages from the DOJ materials with Corcept on April 24, 2026, weeks before the fact discovery cutoff, but received no response from Corcept until after the close of discovery, at which time Corcept disclosed that text messages existed but had not been produced.  Dkt. No. 210 at 3-4.  Corcept responds that Teva delayed raising the issue until the end of discovery and did not follow up regarding Corcept's non-response until after the discovery cut-off.  *Id.* at 6.  Corcept does not explain or try to excuse its failure to promptly respond to Teva's April 24, 2026 inquiry.

In these circumstances, the Court finds good cause exists for the belated submission of this discovery dispute and will address it on the merits.

### B.    Agreement re Production of DOJ Materials

Teva contends that the DOJ materials included text messages that likely relate to "physician payments," and that Corcept should have collected, reviewed, and produced these text messages, as it agreed to do in June 2025.  *Id.* at 2-3.  It argues that the DOJ materials constitute a non-custodial document source that is not subject to the parties' agreement that production from custodial sources will not include text messages.  *Id.* at 2, 4.  Corcept responds that it never agreed to produce all documents relating to physician payments, including text messages, arguing that the June 18, 2025 letter on which Teva relies concerns only the production of "presentations or white papers" from the DOJ materials.  *Id.* at 5.

The Court has reviewed the parties' correspondence regarding production of the DOJ materials.  That correspondence includes no specific references to text messages, nor does it

United States District Court
Northern District of California

United States District Court
Northern District of California

describe precisely what the parties agreed Corcept would produce from the DOJ materials. However, to the extent Teva asserts that Mr. Pepperman's June 2 and 18, 2025 letters commit that Corcept will produce any and all documents that relate in any way to physician payments, or that the parties clearly categorized these documents as "non-custodial," these communications do not support Teva's assertions. *See* Dkt. No. 210 at 2; Dkt. No. 216-3; Dkt. No. 216-4.

Accordingly, Teva has not shown that Corcept previously agreed to produce text messages from the DOJ materials, and there is no justification for compelling the production of these messages on that basis alone, as Teva argues. *See* Dkt. No. 210 at 3.

### C.    Relevance and Proportionality

Nevertheless, Teva argues that text messages that relate to physician payments are "squarely relevant" to Teva's claims in this action. *Id.* Corcept disagrees, arguing that text messages dating back to 2021 and earlier are not relevant to any of Teva's claims. *Id.* at 6. Specifically, Corcept notes that Teva alleges Corcept paid physicians "to induce them to prescribe brand Korlym over Teva's generic." *Id.* It argues that because Teva's generic mifepristone did not even launch until January 2024, text messages from three or more years before the launch cannot be relevant to Teva's "physician payment" theory. *Id.* In addition, Corcept argues that Teva already has access to the payment data itself, third-party production of text messages, and documents and deposition testimony from Corcept's witnesses regarding this same subject matter, and for this reason, requiring Corcept to review its prior production of DOJ materials for responsive text messages is not proportional to the needs of the case. *Id.* at 6-7.

Regarding relevance, Teva responds that even text messages dating back to 2021 are relevant under Rule 404(b) of the Federal Rules of Evidence to show Corcept's intent, preparation, and plan to "grease physicians to maintain market share." *Id.* at 3. Regarding proportionality, Teva argues that Corcept agreed to undertake this burden in June of 2025 and should be held to that undertaking no matter what. *Id.* at 4. Teva further observes that it would not be difficult for Corcept to locate and review text messages in its existing DOJ materials. *Id.* Teva does not address Corcept's argument that Teva has already obtained extensive party and third-party discovery about Corcept's physician payments.

While the Court agrees with Teva that evidence pre-dating the launch of Teva's generic mifepristone *can* be relevant, Teva has not explained why evidence of Corcept's physician payments dating back to 2021 *is* relevant here. *Cf. Sidibe v. Sutter Health*, 103 F.4th 675, 690-703 (9th Cir. 2024) (district court abused its discretion in excluding historical evidence showing how defendant implemented challenged anticompetitive practices, even though that evidence pre-dated by more than five years the period otherwise relevant to the case). At most, Teva says that discovery shows Corcept began engaging in certain anticompetitive practices, in anticipation of generic competition, as early as 2018. Dkt. No. 210 at 3. But Teva does not identify what those practices were, or whether they included the alleged inducement payments to physicians, or how earlier "greasing" evidence has any bearing on Corcept's purported use of payments to induce physicians to prescribe Korlym over Teva's generic mifepristone. *See id*. More importantly, Teva does not explain why *text messages* should be produced when it has apparently obtained substantial discovery of other documents and through other means regarding the nature and extent of Corcept's physician payments.

In short, Teva provides insufficient support for its contention that discovery of text messages concerning Corcept's "physician payments" dating back to 2021 and earlier is relevant and proportional to the needs of this case.

## III. CONCLUSION

For the reasons explained above, the Court denies Teva's request for an order requiring Corcept to produce responsive text messages relating to physician payments from the DOJ materials.

**IT IS SO ORDERED.**

Dated: July 23, 2026

Virginia K. DeMarchi
United States Magistrate Judge